SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No.: 161335/2018

-------------------------------------------------------------------------x

MARISSA HOECHSTETTER, JANE DOE #8,
JANE DOE #9, JANE DOE #10, JANE DOE #11
JANE DOE #12, JANE DOE #13, JANE DOE #14,
JANE DOE #15, JANE DOE #16, JANE DOE #17,
JANE DOE #18, JANE DOE #19, JANE DOE #21,
JANE DOE #22, JANE DOE #23, JANE DOE #26,
JANE DOE #27, JANE DOE #28 AND JANE DOE #30,

Plaintiffs Designate
NEW YORK COUNTY
as the Place of Trial
Venue Is Based Upon
Defendant's Principle
Place of Business.

Plaintiffs,

- against -

COLUMBIA UNIVERSITY; THE NEW YORK AND
PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN
MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL
CENTER; COLUMBIA-PRESBYTERIAN MEDICAL
CENTER, EAST SIDE ASSOCIATES; EAST SIDE
ASSOCIATES; ROBERT HADDEN; THE TRUSTEES OF
COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK;
COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS
AND SURGEONS; PRESBYTERIAN HOSPITAL
PHYSICIAN SERVICES ORGANIZATION, INC.;
COLUMBIA-CORNELL CARE, LLC; COLUMBIA
CORNELL NETWORK PHYSICIANS, INC.;
SLOANE HOSPITAL FOR WOMEN,

**SUPPLEMENTAL
SUMMONS**

Defendants.

COUNTY OF NEW YORK

-------------------------------------------------------------------------x

To the above named defendant(s):

**YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve

a copy of your answer or, if the complaint is not served with this summons, to serve a notice of

appearance, on the Plaintiffs' Attorneys within 20-days after the service of this summons,

exclusive of the day of service (or within 30 days after the service is complete if this summons is

not personally delivered to you within the State of New York; and in case of your failure to

appear or answer, judgment will be taken for the relief demanded herein.

Case 1:19-cv-02978-ALC   Document 24-1   Filed 04/29/19   Page 2 of 232

Dated: New York, New York
       March 24, 2019

                                    Law Office of Anthony T. DiPietro, P.C.


                                    By:
                                    Anthony T. DiPietro
                                    Attorney for Plaintiffs
                                    The Woolworth Building
                                    233 Broadway - Suite 880
                                    New York, New York  10279
                                    (212) 233-3600


Defendants' Addresses:
COLUMBIA UNIVERSITY - 630 West 168th St., New York, NY 10032
THE NEW YORK AND PRESBYTERIAN HOSP - 525 E. 68th Street, New York, NY 10021
COLUMBIA PRESBYTERIAN MED CTR - 525 E. 68th Street, New York, NY 10021
COLUMBIA UNIVERSITY MEDICAL CTR - 630 West 168th St., New York, NY 10032
COLUMBIA-PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES - 622 W
168th Street, New York, NY or 16 E. 60th Street, Suite 408, New York, NY 10022
EAST SIDE ASSOCIATES - 16 E. 60th Street, Suite 408, New York, NY 10022
ROBERT HADDEN - 59 Sherwood Rd., Tenafly NJ 07670
THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK - 211 Low
Library, 535 West 116th Street, Mail Code 4324, New York, NY 10027
COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS - 630 West 168th
St., New York, NY 10032
PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORG., INC. - c/o McDermott Will &
Emery, 1211 Avenue of the Americas, New York, NY 10036
COLUMBIA-CORNELL CARE, LLC - 16 E. 60th Street, Suite 480, New York, NY 10022
COLUMBIA CORNELL NETWORK PHYSICIANS, INC. - 900 Third Avenue, Suite 500
New York, NY 10022
SLOANE HOSPITAL FOR WOMEN - 161 Fort Washington Avenue, New York, NY 10032

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK                              Index No.: 161335/2018
-----------------------------------------------------------------x
MARISSA HOECHSTETTER, JANE DOE #8,
JANE DOE #9, JANE DOE #10, JANE DOE #11
JANE DOE #12, JANE DOE #13, JANE DOE #14,
JANE DOE #15, JANE DOE #16, JANE DOE #17,
JANE DOE #18, JANE DOE #19, JANE DOE #21,
JANE DOE #22, JANE DOE #23, JANE DOE #26,
JANE DOE #27, JANE DOE #28 AND JANE DOE #30,

                                  Plaintiffs,

                  - against -
                                                **AMENDED**
COLUMBIA UNIVERSITY; THE NEW YORK AND           **VERIFIED COMPLAINT**
PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN
MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL
CENTER; COLUMBIA-PRESBYTERIAN MEDICAL
CENTER, EAST SIDE ASSOCIATES; EAST SIDE
ASSOCIATES; ROBERT HADDEN; THE TRUSTEES OF
COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK;
COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS
AND SURGEONS; PRESBYTERIAN HOSPITAL
PHYSICIAN SERVICES ORGANIZATION, INC.;
COLUMBIA-CORNELL CARE, LLC; COLUMBIA
CORNELL NETWORK PHYSICIANS, INC.;
SLOANE HOSPITAL FOR WOMEN,

                                  Defendants.
-----------------------------------------------------------------x

        Plaintiffs MARISSA HOECHSTETTER, JANE DOE #8, JANE DOE #9, JANE DOE

#10, JANE DOE #11, JANE DOE #12, JANE DOE #13, JANE DOE #14, JANE DOE #15,

JANE DOE #16, JANE DOE #17, JANE DOE #18, JANE DOE #19, JANE DOE #21, JANE

DOE #22, JANE DOE #23, JANE DOE #26, JANE DOE #27, JANE DOE #28 and JANE DOE

#30, complaining of the defendants by their attorneys, Law Office of Anthony T. DiPietro, P.C.,

respectfully state:

## GENERAL ALLEGATIONS AS TO THE PARTIES

1. This action seeks to vindicate the rights of women who were sexually exploited, abused, harassed and molested at the hands of serial sexual predator defendant ROBERT HADDEN (hereinafter referred to as "HADDEN"), while they were patients at defendant COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS; PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE, LLC; COLUMBIA CORNELL NETWORK PHYSICIANS, INC. (hereinafter referred to as ""CORP. ENTITIES""), under the supervision management and/or control of the THE BOARD OF TRUSTEES OF COLUMBIA UNIVERSITY (hereinafter referred to as "TRUSTEES" and/ or "CORP. ENTITIES"), and their medical facilities, hospitals, offices and/or clinics.

2. While attending defendant ""CORP. ENTITIES"" medical facilities, Plaintiffs were forced to repeatedly seek medical treatment from defendant-sexual predator ROBERT HADDEN, due to the fact that ""CORP. ENTITIES"", their agents, servants, employees, chaperones, other doctors, and supervisors, repeatedly and actively concealed, conspired, and enabled, the sexual exploitation and abuse being committed by defendant ROBERT HADDEN. During which time ROBERT HADDEN used this position of trust and authority to sexually exploit and serially sexually abuse Plaintiffs on countless occasions by engaging in deviant sexual acts that included, but are not limited to: grooming, sexually exploiting, fondling, ogling,

Case 1:19-cv-01878-AEC  Document 21-19  Filed 04/25/19  Page 5 of 232

penetrating and groping Plaintiffs' bodies and genitalia for no medical purpose; forcing Plaintiffs to strip naked; groping and/or fondling Plaintiffs' breasts; digitally penetrating Plaintiffs' vaginas; digitally penetrating Plaintiffs' anuses, grooming Plaintiffs for further exploitation and sexual abuse; making sexually inappropriate remarks and deviant statements to plaintiffs in an effort to lower their boundaries and break-down their defenses; performing inappropriate and sexually abusive "mole checks"; spreading open Plaintiffs' anal crevices so he could leer at their bodies and anuses for his own deviant sexual gratification; increasing the level of inappropriate statements and sexual exploitation and abuse of Plaintiffs over time; evading, manipulating and/or intimidating medical chaperones and/or university personnel; performing serial vaginal examinations for no medical purpose, performing serial PAP smears as an excuse to access and penetrate their vaginas for his own deviant sexual gratification and pleasure, sexually exploiting female patients to satisfy his own prurient and deviant sexual desires, and surreptitiously licking countless patients' vaginas during the performance of phony, and medically unnecessary, vaginal examinations and PAP smears.

3. Despite the fact that medical chaperones, nurses, supervisors, administrators, doctors and other hospital personnel were aware of the sexual exploitation and abuse being perpetrated by ROBERT HADDEN, dating back to at least the 1990's, Defendant "CORP. ENTITIES", their TRUSTEES, their medical facilities, offices, clinics, and their agents, servants, and/or employees, actively and deliberately - and inexplicably - concealed ROBERT HADDEN's sexual abuse for decades, and continued to grant ROBERT HADDEN unfettered access to vulnerable, unsuspecting, pregnant and non-pregnant female patients at COLUMBIA

UNIVERSITY MEDICAL CENTER and their related entities, all in a deceitful and disdainful attempt to protect Defendants COLUMBIA UNIVERSITY, its TRUSTEES, and affiliated and related CORP. ENTITIES' reputation, their status amongst other Ivy League institutions, their status amongst other universities and hospitals in New York and nationally, and their own corporate and financial interests.

### PLAINTIFF MARISSA HOECHSTETTER

4. Plaintiff MARISSA HOECHSTETTER was born in 1979, and currently resides in the State of Massachusetts. Plaintiff MARISSA HOECHSTETTER was an OBGYN patient of defendants COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS; PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE, LLC; COLUMBIA CORNELL NETWORK PHYSICIANS, INC. (Hereinafter "CORP. ENTITIES") and their agent, servant, and/or employee ROBERT HADDEN, during which time MARISSA HOECHSTETTER was serially sexually exploited and abused by ROBERT HADDEN — who was enabled by the acts and omissions of the within named defendants and "CORP. ENTITIES".

5. Plaintiff MARISSA HOECHSTETTER saw ROBERT HADDEN at "CORP. ENTITIES" medical facilities between October 6, 2009 and May 8, 2012 for what was supposed to be

gynecologic and obstetric care and treatment. Beginning with MARISSA HOECHSTETTER's initial office visit, defendant ROBERT HADDEN began subjecting her to a course of predatory grooming, boundary violating, mental, emotional, and physical sexual exploitation and abuse. During the visits, ROBERT HADDEN assailed MARISSA HOECHSTETTER with a barrage of wily, inappropriate, invasive and exploitive questions and statements about her physique and physical appearance, sexual history, sexuality, and pornography. ROBERT HADDEN's approach to grooming was a mix of being awkward, authoritative, self-deprecating, disarming, self-pitying, alarming, and overtly offensive. HADDEN knowingly and intentionally exploited plaintiff MARISSA HOECHSTETTER's close personal friendship with HADDEN's own niece to disarm, manipulate, and sexually abuse MARISSA HOECHSTETTER.

6. While ROBERT HADDEN was actively and verbally breaking down MARISSA HOECHSTETTER's boundaries, he forced MARISSA HOECHSTETTER to answer questions about the number of sexual partners and sexual acts she had engaged in, whether or not her partner was able "satisfy her", and peppered her with a series of irrelevant and medically inappropriate questions for long periods while ogling and groping her breasts and unclothed body. A Chaperone was present in the room during some of the verbal and physical assaults and witnessed ROBERT HADDEN's verbal and physical sexual abuse firsthand, yet did nothing to prevent ROBERT HADDEN's sexual exploitation and abuse of Plaintiff MARISSA HOECHSTETTER. Other times, a Chaperone was not present and Hadden would use the relationship MARISSA HOECHSTETTER had with his own niece to exploit the situation. This included, but is not limited to, performing serial, prolonged, and

medically inappropriate breast examinations. During one such examination, ROBERT HADDEN told MARISSA HOECHSTETTER, apropos of nothing, "I can tell you had sex last night".

7. In April of 2011, ROBERT HADDEN became listed as the physician in attendance of the birth of MARISSA HOECHSTETTER's twins. During her hospital stay, after she had given birth, ROBERT HADDEN presented to her bedside and exposed MARISSA HOECHSTETTER's breasts. ROBERT HADDEN, looking down upon her exposed breasts, told MARISSA HOECHSTETTER "You look like a porn star." As if that were not enough, during a postpartum visit in May 2012, while MARISSA HOECHSTETTER was lying prone on the examination table, Hadden pretended to be performing some kind of vaginal examination. After touching her vagina with his ungloved hand, and while ducking down under MARISSA HOECHSTETTER's gown, ROBERT HADDEN proceeded to touch his tongue to plaintiff MARISSA HOECHSTETTER's vagina. ROBERT HADDEN has serially sexually assaulted countless female patients of COLUMBIA UNIVERSITY and NEW YORK-PRESBYTERIAN HOSPITAL while carrying out his sick fantasies surrounding doctor sexual abuse. All of which has been enabled by defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES. ROBERT HADDEN's depraved mind and scheme to perform deviant and sexually exploitive acts upon women led him to acting out, in a serial fashion, his sick fantasies of being able to touch his tongue to countless patients' vaginas under the guise of "medical care" -- while trying to get away with it. These events are not isolated, and they were not done outside the knowledge and awareness of his employers ("CORP. ENTITIES").

Amongst the medical assistants and chaperones with whom he worked, ROBERT HADDEN was known as "a shark" because he knew how to outmaneuver chaperones, making quick hits at sexually abusing female patients, and would then keep going. In fact, at least one nurse who worked with ROBERT HADDEN in 1992-1993 walked in on ROBERT HADDEN sexually abusing a female patient at defendant COLUMBIA UNIVERSITY's Audubon Clinic. However, when the nurse reported to her supervisor what ROBERT HADDEN was doing, the supervisor's response was for her to just "keep quiet", "stay with your doctor", and "don't let him get himself in trouble".

8. For the sake of completeness, ROBERT HADDEN has pleaded guilty in Criminal Court to sexually abusing two other patients; one by licking her vagina during a purported vaginal examination - which was the second time that the patient stated that ROBERT HADDEN had done it. The other conviction is based upon ROBERT HADDEN's guilty plea to sexually abusing another female patient, who ROBERT HADDEN knew to be HIV positive, with his ungloved hand.

9. Finally, as a result of being listed as the physician in attendance at the birth MARISSA HOECHSTETTER's twins, ROBERT HADDEN's name is present on the original birth certificates of both her daughters. Every time MARISSA HOECHSTETTER registers either of her girls for summer camp, or sends them off to a new school, she is re-traumatized by the sight of this sick sexual predator's name on the birth certificates of her little girls. To date, Columbia University, New York-Presbyterian Hospital, and their agents, partners, servants, and/or employees have refused to issue either an apology, or a letter which will allow the removal of ROBERT HADDEN's name from these children's birth certificates.

10. Because Defendant "CORP. ENTITIES"' Chaperones stood by, silently, as ROBERT HADDEN sexually exploited and abused Plaintiff MARISSA HOECHSTETTER, MARISSA HOECHSTETTER reasonably believed that ROBERT HADDEN was conducting legitimate medical treatment while he was ogling, groping, verbally assaulting, and physically abusing, violating, sexually abusing, and penetrating her, although she now knows that ROBERT HADDEN's conduct was, in fact, sexual exploitation and abuse. Despite the "CORP. ENTITIES"' chaperones' first-hand observation of the abuse, and "CORP. ENTITIES" prior reports about ROBERT HADDEN's sexual misconduct, Defendant "CORP. ENTITIES" and their agents, partners, servants and employees actively concealed the sexually exploitative behavior and abuse being perpetrated by ROBERT HADDEN, as well as the complaints of HADDEN's sexually exploitative behavior and abuse, and inexplicably continued to allow ROBERT HADDEN to have unfettered sexual access to COLUMBIA UNIVERSITY MEDICAL CENTER, NEW YORK-PRESBYTERIAN HOSPITAL, and Defendant "CORP. ENTITIES"' female patient populations. Based on the words and conduct of each of the defendants, their agents, servants, and/or employees, plaintiff was induced to not file a complaint earlier. Further, plaintiff has been emotionally traumatized by the defendants' conduct and abuse, and has lacked the capacity to deal with, and confront, the important legal issues and rights herein until the present.

### JANE DOE #8

11. Plaintiff JANE DOE #8 was born in 1985, and currently resides in the State of New York. Plaintiff JANE DOE #8 was an OBGYN patient of defendants COLUMBIA UNIVERSITY,

THE NEW YORK AND PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS; PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE, LLC; COLUMBIA CORNELL NETWORK PHYSICIANS, INC. (Hereinafter "CORP. ENTITIES") and their agent, servant, and/or employee ROBERT HADDEN, during which time JANE DOE #8 was serially sexually exploited and abused by ROBERT HADDEN — who was enabled by the acts and omissions of the within named defendants and "CORP. ENTITIES".

12. Plaintiff JANE DOE #8 saw ROBERT HADDEN at "CORP. ENTITIES" medical facilities between April 2006, and July 2011, for what was supposed to be gynecological and obstetrical care and treatment. Beginning with JANE DOE #8's initial office visit, defendant ROBERT HADDEN began subjecting her to a course of predatory grooming, boundary violating, mental, emotional, and physical sexual exploitation and abuse. During the visits, ROBERT HADDEN assailed JANE DOE #8 with a barrage of wily, inappropriate, invasive and exploitive questions and statements about her body, and physical appearance, sexual history, her partner, and the use of pornography. ROBERT HADDEN's approach to grooming was a mix of being awkward, authoritative, self-deprecating, disarming, self-pitying, alarming, and overtly offensive.

13. While ROBERT HADDEN was actively and verbally breaking down JANE DOE #8's boundaries, he forced JANE DOE #8 to answer questions about the number of sexual

partners and sexual acts she had engaged in, whether or not her partner was able "satisfy her", and peppered her with a series of irrelevant and medically inappropriate questions for long periods while ogling and groping her breasts and unclothed body. A Chaperone was present in the room during some of the verbal and physical assaults and witnessed ROBERT HADDEN's verbal and physical sexual abuse firsthand, yet did nothing to prevent or stop ROBERT HADDEN's sexual exploitation and abuse of Plaintiff JANE DOE #8. Other times, a Chaperone was not present - or would leave the room before the "examination" was complete at which point ROBERT HADDEN would continue to physically sexually exploit and abuse JANE DOE #8. This included, but is not limited to, performing serial, prolonged, and medically inappropriate breast examinations, serial and medically-inappropriate PAP smears, and vaginal exams, while divulging wholly improper and inappropriate personal information about himself and family - all in furtherance of his never-ending grooming of female patients.

14. Following the births of JANE DOE #8's children on December 5, 2007, and June 17, 2011, ROBERT HADDEN was listed as the physician in attendance. During the postpartum period, following the birth of her child in 2011, ROBERT HADDEN continued to sexually exploit and abuse JANE DOE #8. During one of the office visits, while JANE DOE #8's breasts were engorged, ROBERT HADDEN insisted that a breast examination was necessary. After making JANE DOE #8 remove her clothing, for no legitimate medical purpose, ROBERT HADDEN proceeded to grope and cup JANE DOE #8's breasts. During this prolonged, and wholly medically unnecessary "breast examination", ROBERT HADDEN began to pinch, squeeze, and tug on JANE DOE #8's nipples so as to express breast milk while allowing it to run down her breasts. JANE DOE #8 has endured indescribable conflict, confusion, and

mental injury due to her inability to comprehend the reasons and level of depravity of the abuse inflicted upon her by ROBERT HADDEN. Despite sharing these accounts with her husband back when they were happening, she was met with the normal and customary responses received by the other women mentioned herein which is a version of 'doctors don't do deviant things' and 'nobody likes going to the doctor, so feeling uncomfortable is normal'.

15. ROBERT HADDEN was well aware of the cognitive dissonance that his patients - who were being sexually abused by him - would experience with regard to their inability to come to grips with the thought that their own medical doctor was sexually exploiting and abusing them. ROBERT HADDEN used this knowledge and medical training to his advantage, and leveraged his position of status and authority bestowed on him by COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES", to his benefit, and in furtherance of his scheme to sexually abuse and exploit as many women as possible under the guise of performing medical procedures. As a result, ROBERT HADDEN was enabled to sexually abuse countless female patients of COLUMBIA UNIVERSITY and NEW YORK-PRESBYTERIAN HOSPITAL, in a serial fashion, while carrying out his sick fantasies surrounding doctor sexual abuse.

16. These events are not isolated, and they were not done outside the knowledge and awareness of his employers ("CORP. ENTITIES"). ROBERT HADDEN was known as "a shark" - who knew how to outmaneuver chaperones, make quick hits at sexually abusing female patients, and keep going - amongst the medical assistants and chaperones with whom he worked. At least one nurse who worked with ROBERT HADDEN in 1992-1993 walked in on ROBERT

HADDEN sexually abusing a female patient at defendant COLUMBIA UNIVERSITY's Audubon Clinic. However, when the nurse reported to her supervisor the abuse ROBERT HADDEN was committing, the supervisor's response was for her to just "keep quiet" and "stay with your doctor" and "don't let him get himself in trouble".

17. COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES", have created an environment that was not only conducive to doctor sexual abuse, but actually enabled it to happen. By failing to properly educate, train, empower, and support the medical assistants and chaperones, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES" created an environment where patients were duped and deceived into believing that there was a medical chaperone in the examination room who would keep them safe. But, in reality, the hidden imbalance of power that existed between their chaperones and medical doctors - where nurses were afraid to speak-up for fear of losing their jobs - had the practical effect of making doctor sexual abuse appear to be legitimate medical care on account of the chaperone's silence.

18. For the sake of completeness, ROBERT HADDEN has pleaded guilty in Criminal Court to sexually abusing two-other patients; one by licking her vagina during a purported vaginal examination - which was during the second time that the patient stated that ROBERT HADDEN had done it. The other is when ROBERT HADDEN pleaded guilty to sexually abusing a separate female patient, who ROBERT HADDEN knew to be HIV positive, with his ungloved hand.

19. Finally, as a result of being listed as the physician in attendance at the birth of two of JANE DOE #8's children, ROBERT HADDEN's name is present on the original birth certificates of both children. Every time JANE DOE #8 registers either of her children for summer camp, or sends them off to a new school, she is re-traumatized by the sight of this sick sexual predator's name on the birth certificates of her children. To date, Columbia University, New York-Presbyterian Hospital, and their agents, partners, servants, and/or employees have refused to issue either an apology, or a letter which will allow the removal of ROBERT HADDEN's name from these children's birth certificates.

20. Because Defendant "CORP. ENTITIES"' Chaperones stood by, silently, as ROBERT HADDEN sexually exploited and abused Plaintiff JANE DOE #8, JANE DOE #8 reasonably believed that ROBERT HADDEN was conducting legitimate medical treatment while he was ogling, groping, verbally assaulting, and physically abusing, violating, sexually abusing, expressing breast milk for no medical purpose during the postpartum period, and penetrating her, although she now knows that ROBERT HADDEN's conduct was, in fact, sexual exploitation and abuse. Despite the "CORP. ENTITIES"' chaperones' first-hand observation of the abuse, and "CORP. ENTITIES" prior reports about ROBERT HADDEN's sexual misconduct, Defendant "CORP. ENTITIES" and their agents, partners, servants and employees actively concealed the sexually exploitative behavior and abuse being perpetrated by ROBERT HADDEN, as well as the complaints of HADDEN's sexually exploitative behavior and abuse, and inexplicably continued to allow ROBERT HADDEN to have unfettered sexual access to COLUMBIA UNIVERSITY MEDICAL CENTER, NEW YORK-PRESBYTERIAN HOSPITAL, and Defendant "CORP. ENTITIES"' female patient populations. Based on the words and conduct of each of the defendants, their agents,

servants, and/or employees, plaintiff was induced to not file a complaint earlier. Further, plaintiff has been emotionally traumatized by the defendants' conduct and abuse, and has lacked the capacity to deal with, and confront, the important legal issues and rights herein until the present.

### JANE DOE #9

21. Plaintiff JANE DOE #9 was born in 1971, and currently resides in the State of New York. Plaintiff JANE DOE #9 was an OBGYN patient of defendants COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS; PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE, LLC; COLUMBIA CORNELL NETWORK PHYSICIANS, INC. (Hereinafter "CORP. ENTITIES") and their agent, servant, and/or employee ROBERT HADDEN, during which time JANE DOE #9 was serially sexually exploited and abused by ROBERT HADDEN — who was enabled by the acts and omissions of the within named defendants and "CORP. ENTITIES".

22. Plaintiff JANE DOE #9 saw ROBERT HADDEN at "CORP. ENTITIES" medical facilities between 2002 and 2011 for what was supposed to be gynecologic and obstetric care and treatment. Beginning with JANE DOE #9's initial office visit, defendant ROBERT HADDEN began subjecting her to a course of predatory grooming, boundary violating, mental, emotional, and physical sexual exploitation and abuse. During the visits, ROBERT

HADDEN assailed JANE DOE #9 with a barrage of wily, inappropriate, invasive and exploitive questions and statements about her body, and physical appearance, sexual history, whether her partner satisfied her, whether she experienced orgasms and the use of pornography. ROBERT HADDEN's approach to grooming was a mix of being awkward, authoritative, self-deprecating, disarming, self-pitying, alarming, and overtly offensive. On multiple occasions ROBERT HADDEN made inappropriate, gratuitous remarks about JANE DOE #9's body and physical appearance, declaring several times: "You're built like a Barbie Doll with large breasts and a small waist". ROBERT HADDEN's obsession with JANE DOE #9's body and appearance included probing and medically irrelevant questions about where she had her private area waxed. ROBERT HADDEN then proceed to follow up his abuse by telling JANE DOE #9 -- who had absolutely no interest in knowing -- where several of ROBERT HADDEN's other patients went to have their waxing performed.

23. While ROBERT HADDEN was actively and verbally breaking down JANE DOE #9's boundaries, he forced JANE DOE #9 to answer questions about the number of sexual partners and sexual acts she had engaged in, whether or not her partner was able "satisfy her", and peppered her with a series of irrelevant and medically inappropriate questions for long periods while ogling and groping her breasts and unclothed body. At every visit ROBERT HADDEN required JANE DOE #9 to get completely naked - in his presence - as he ogled and exploited her. A Chaperone was present in the room during some of the verbal and physical assaults and witnessed ROBERT HADDEN's verbal and physical sexual abuse firsthand, yet did nothing to prevent or stop ROBERT HADDEN's sexual exploitation and abuse of Plaintiff JANE DOE #9. Other times, a Chaperone was not present - or would leave the room before the "examination" was complete at which point ROBERT HADDEN would

continue to physically sexually exploit and abuse JANE DOE #9. This included, but is not limited to, performing serial, prolonged, and medically inappropriate breast examinations, serial and medically-inappropriate PAP smears, vaginal exams, and medically inappropriate and unwarranted "mole-checks" where ROBERT HADDEN would require JANE DOE #9 to lay on the table unclothed while he rubbed his hands up and down her body, spread her buttocks, groped her breasts, and examined her entire body and private areas. All the while, ROBERT HADDEN would engage in idle chatter or begin divulging wholly improper and inappropriate personal information about himself and family - all in furtherance of his never-ending sexual exploitation and grooming of female patients. During the serial, and medically non-indicated vaginal examinations that ROBERT HADDEN performed at practically every single visit, ROBERT HADDEN would repeatedly penetrate JANE DOE #9 by inserting his fingers into JANE DOE #9's vagina in a rough and aggressive manner. This continued, and was impossibly painful, to the point where JANE DOE #9 requested that someone else conduct any future internal vaginal examinations that may have been needed.

24. Following the birth of her son on September 9, 2009, ROBERT HADDEN was listed as the physician in attendance. During the postpartum period, ROBERT HADDEN continued to sexually exploit and abuse JANE DOE #9. During one of the postpartum office visit, while JANE DOE #9's breasts were engorged, ROBERT HADDEN insisted that a breast examination was necessary. After making JANE DOE #9 remove her clothing, for no legitimate medical purpose, ROBERT HADDEN proceeded to grope and cup JANE DOE #9's breasts. During this prolonged, and wholly medically unnecessary and unwarranted "breast examination", ROBERT HADDEN began to pinch, squeeze, and tug on JANE DOE #9's nipples so as to express breast milk while allowing it to run down her breasts. JANE

DOE #9 has endured indescribable conflict, confusion, and mental injury due to her inability to comprehend the reasons and level of depravity of the abuse inflicted upon her by ROBERT HADDEN. Despite sharing these accounts with her husband back when they were happening, she was met with the normal and customary responses received by the other women mentioned herein which is a version of 'he's a doctor, I'm sure he wouldn't risk his career and license'.

25. ROBERT HADDEN was well aware of the cognitive dissonance that his patients - who he was sexually abusing - would experience with regard to their inability to come to grips with the unfathomable idea that their own medical doctor was sexually exploiting and abusing them. ROBERT HADDEN used this knowledge and medical training to his advantage while leveraging his position of status and authority bestowed on him by COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES", to his advantage, and in furtherance of his scheme to sexually abuse and exploit as many women as possible under the guise of performing medical procedures. As a result, ROBERT HADDEN was enabled to sexually abuse countless female patients of COLUMBIA UNIVERSITY and NEW YORK-PRESBYTERIAN HOSPITAL, in a serial fashion, while carrying out his sick fantasies surrounding doctor sexual abuse.

26. These events are not isolated, and they were not done outside the knowledge and awareness of his employers ("CORP. ENTITIES"). ROBERT HADDEN was known as "a shark" - who knew how to outmaneuver chaperones, make quick hits at sexually abusing female patients, and keep going - amongst the medical assistants and chaperones with whom he worked. At least one nurse who worked with ROBERT HADDEN in 1992-1993 walked in on ROBERT

HADDEN sexually abusing a female patient at defendant COLUMBIA UNIVERSITY's Audubon Clinic. However, when the nurse reported the abuse ROBERT HADDEN was committing to her supervisor, the supervisor's response was for her to just "keep quiet", "stay with your doctor" and "don't let him get himself in trouble". COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES", have created an environment that was not only conducive to doctor sexual assaults, but actually enabled it. By failing to properly educate, train, empower, and support the medical assistants and chaperones, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES" created an environment where patients were duped into believing that there was someone in the examination room who would keep them safe. But, in reality, the hidden imbalance of power that existed between the chaperones and medical doctors - where the chaperones were afraid to speak-up for fear of losing their jobs - had the practical effect of making doctor sexual abuse appear to be legitimate medical care.

27. For the sake of completeness, ROBERT HADDEN has pleaded guilty in Criminal Court to sexually abusing two-other patients; one by licking her vagina during a purported vaginal examination - which was during the second time that the patient stated that ROBERT HADDEN had done it. The other is when ROBERT HADDEN pleaded guilty to sexually abusing a separate female patient, who ROBERT HADDEN knew to be HIV positive, with his ungloved hand.

28. Finally, as a result of being listed as the physician in attendance at the September 2009 birth of JANE DOE #9's child, ROBERT HADDEN's name is present on the original birth

certificate of her son. Every time JANE DOE #9 registers her child for summer camp, or sends him off to a new school, she is re-traumatized by the sight of this sick sexual predator's name on the birth certificate of her child. To date, Columbia University, New York-Presbyterian Hospital, and their agents, partners, servants, and/or employees have refused to issue either an apology, or a letter which will allow the removal of ROBERT HADDEN's name from her son's birth certificate.

29. Because Defendant "CORP. ENTITIES"' Chaperones stood by, silently, as ROBERT HADDEN sexually exploited and abused Plaintiff JANE DOE #9, JANE DOE #9 reasonably believed that ROBERT HADDEN was conducting legitimate medical treatment while he was ogling, groping, verbally assaulting, and physically abusing, violating, sexually abusing, expressing breast milk for no medical purpose during the postpartum period, and penetrating her, although she now knows that ROBERT HADDEN's conduct was, in fact, sexual exploitation and abuse. Despite the "CORP. ENTITIES"' chaperones' first-hand observation of the abuse, and "CORP. ENTITIES" prior reports about ROBERT HADDEN's sexual misconduct, Defendant "CORP. ENTITIES" and their agents, partners, servants and employees actively concealed the sexually exploitative behavior and abuse being perpetrated by ROBERT HADDEN, as well as the complaints of HADDEN's sexually exploitative behavior and abuse, and inexplicably continued to allow ROBERT HADDEN to have unfettered sexual access to COLUMBIA UNIVERSITY MEDICAL CENTER, NEW YORK-PRESBYTERIAN HOSPITAL, and Defendant "CORP. ENTITIES"' female patient populations. Based on the words and conduct of each of the defendants, their agents, servants, and/or employees, plaintiff was induced to not file a complaint earlier. Further, plaintiff has been emotionally traumatized by the defendants' conduct and abuse, and has

lacked the capacity to deal with, and confront, the important legal issues and rights herein until the present.

### JANE DOE #10

30. Plaintiff JANE DOE #10 was born in 1972, and currently resides in the State of Texas. Plaintiff JANE DOE #10 was an OBGYN patient of defendants COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS; PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE, LLC; COLUMBIA CORNELL NETWORK PHYSICIANS, INC. (Hereinafter "CORP. ENTITIES") and their agent, servant, and/or employee ROBERT HADDEN, during which time JANE DOE #10 was serially sexually exploited and abused by ROBERT HADDEN — who was enabled by the acts and omissions of the within named defendants and "CORP. ENTITIES".

31. Plaintiff JANE DOE #10 saw ROBERT HADDEN at "CORP. ENTITIES" medical facilities between November 2010 and October; 2011, for what was supposed to be gynecologic and obstetric care and treatment. Beginning with JANE DOE #10's initial office visit, defendant ROBERT HADDEN began subjecting her to a course of predatory grooming, boundary violating, mental, emotional, and physical sexual exploitation and abuse. During the visits, ROBERT HADDEN assailed JANE DOE #10 with a barrage of wily, inappropriate, invasive and exploitive questions and statements about her body, and physical appearance, sexual

history, whether her partner satisfied her, whether she experienced orgasms and the use of pornography. ROBERT HADDEN's approach to grooming was a mix of being awkward, authoritative, self-deprecating, disarming, self-pitying, alarming, and overtly offensive. On multiple occasions ROBERT HADDEN made inappropriate, gratuitous comments about JANE DOE #10's body and physical appearance, declaring several times she was "Fit" and "Hot", and that her husband had better "appreciate it". ROBERT HADDEN's grooming also included telling JANE DOE #10 that he and other COLUMBIA doctors would discuss "which [other] patients are 'nannies' and which are 'moms' based upon how hot they are". ROBERT HADDEN expressed his "shock" when he found out that JANE DOE #10 was in the "mom" category because -- as he explained -- her pregnancy was not obvious until she was in her 20th week.

32. While ROBERT HADDEN was actively and verbally breaking down JANE DOE #10's boundaries, he forced JANE DOE #10 to answer questions about the number of sexual partners and sexual acts she had engaged in, whether or not her partner was able "satisfy her", and peppered her with a series of irrelevant and medically inappropriate questions for long periods while ogling and groping her breasts and unclothed body with his bare hands. At every visit ROBERT HADDEN required JANE DOE to get completely naked - in his presence - as he ogled and exploited her. A Chaperone was rarely, if ever, present in the room during any of the verbal and physical assaults and committed by ROBERT HADDEN upon JANE DOE #10. ROBERT HADDEN would take advantage of his position of power and trust by sexually exploiting and abusing JANE DOE #10. This included, but is not limited to, performing serial, prolonged, and medically inappropriate breast examinations, serial and medically-inappropriate PAP smears and vaginal exams, all conducted with ungloved hands.

All the while, ROBERT HADDEN would engage in idle chatter or begin divulging wholly improper and inappropriate personal information about himself and family, and discussions about his own daughter's ballet dancing - all in furtherance of his never-ending sexual exploitation and grooming of female patients during and after the "examinations" HADDEN was performing.

33. At one point around JANE DOE #10's 32nd week of pregnancy, during a prenatal visit, ROBERT HADDEN instructed JANE DOE #10 to get naked for another examination. After exposing her breasts, ROBERT HADDEN began grabbing and squeezing her nipples with his ungloved hands in a forceful manner while telling JANE DOE #10 that he needed to "massage her breasts" in that fashion to get ready for the milk to come out. Due to the fact that this was her first pregnancy, JANE DOE #10 had no way of knowing how incredibly exploitative and abusive this was — aside from the really painful, rough and forceful nature in which the "examinations" were being performed. Following every exploitative and abusive encounter, ROBERT HADDEN would bring JANE DOE #10 into his office to discuss his own daughter who he claimed was a "ballet dancer".

34. During the following prenatal visit, ROBERT HADDEN instructed JANE DOE #10 to again get naked because she needed another "vaginal exam". While in stirrups, pregnant, and naked from the waist down, ROBERT HADDEN verbally told JANE DOE #10 that he was performing a PAP smear but instead licked her vagina. ROBERT HADDEN then stated "Everything tongues good, I mean, looks good". Plaintiff JANE DOE #10 was mortified and could not process what had just happened. She left and called her insurance carrier to inquire about switching medical care providers but was informed that she could not switch obstetricians in the middle of a pregnancy. JANE DOE #10 could just not process what was

happening and proceeded to convince herself that the sexual assaults never actually

happened, that perhaps she was just mistaken, or her hormones or sensations were off

because of her pregnancy. Feeling that she had no other choice, she reluctantly continued

under the "care" of ROBERT HADDEN. At her next prenatal visit, ROBERT HADDEN,

under the guise of rendering "medical care and treatment", once again, instructed JANE

DOE #10 to get naked because she needed another "vaginal exam". Again, while in stirrups,

pregnant, and naked from the waist down, ROBERT HADDEN licked her vagina. Plaintiff

JANE DOE #10 was embarrassed, mortified made to feel guilt and shame that somehow she

was at fault for the actions of her abuser ROBERT HADDEN. JANE DOE #10 gave birth to

her child very soon after, and returned for her first postpartum care visit with her newborn in

tow, feeling that somehow the sight of the newborn infant would deter ROBERT HADDEN

from assaulting and sexually abusing her. During the postpartum visit, ROBERT HADDEN

advised JANE DOE #10 that she needed a postpartum "vaginal exam". With her newborn

baby in the room, while pretending to perform the medically unnecessary and unwarranted

"vaginal examination", ROBERT HADDEN again put his tongue to JANE DOE #10's

vagina, this time in the presence of her child. JANE DOE #10 never returned to HADDEN

after the third sexual assault on her person.

35. ROBERT HADDEN was well aware of the cognitive dissonance that his patients - who he

was sexually abusing - would experience with regard to their inability to come to grips with

the unfathomable thought that their own medical doctor was sexually exploiting and abusing

them. ROBERT HADDEN used this knowledge and medical training to his advantage while

leveraging his position of status and authority bestowed on him by COLUMBIA

UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-

PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES", to his advantage, and in furtherance of his scheme to sexually abuse and exploit as many women as possible under the guise of performing medical procedures. As a result, ROBERT HADDEN was enabled to sexually abuse countless female patients of COLUMBIA UNIVERSITY and NEW YORK-PRESBYTERIAN HOSPITAL, in a serial fashion, while carrying out his sick fantasies surrounding doctor sexual abuse.

36. These events are not isolated, and they were not done outside the knowledge and awareness of his employers ("CORP. ENTITIES"). ROBERT HADDEN was known as "a shark" - who knew how to outmaneuver chaperones, make quick hits at sexually abusing female patients, and keep going - amongst the medical assistants and chaperones with whom he worked. At least one nurse who worked with ROBERT HADDEN in 1992-1993 walked in on ROBERT HADDEN sexually abusing a female patient at defendant COLUMBIA UNIVERSITY's Audubon's Clinic. However, when the nurse reported the abuse ROBERT HADDEN was committing to her supervisor, the supervisor's response was for her to just "keep quiet", "stay with your doctor" and "don't let him get in trouble". COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES", have created an environment that was not only conducive to doctor sexual assaults, but actually enabled it. By failing to properly educate, train, empower, and support the medical assistants and chaperones, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES" created an environment where patients were duped into believing that there was a chaperone in the examination room who would keep them safe. But, in reality, the hidden imbalance of power that exists between the chaperones and medical

doctors - where nurses are afraid to speak-up for fear of losing their jobs, and leave the room mid-examination - had the practical effect of making doctor sexual abuse appear to be legitimate medical care.

37. For the sake of completeness, ROBERT HADDEN has pleaded guilty in Criminal Court to sexually abusing the two-other patients referenced above. One by licking her vagina during a purported vaginal examination - which was during the second time that the patient stated that ROBERT HADDEN had done it. The other is when ROBERT HADDEN pleaded guilty to sexually abusing another female patient, who ROBERT HADDEN knew to be HIV positive, with his ungloved hand.

38. Because ROBERT HADDEN was licensed and had privileges with defendant COLUMBIA UNIVERSITY MEDICAL CENTER, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES", JANE DOE #10 reasonably believed that ROBERT HADDEN was conducting legitimate medical treatment while he was ogling, groping, verbally assaulting, physically abusing, violating, sexually abusing, and penetrating her, although she now knows that ROBERT HADDEN's conduct was, in fact, sexual exploitation and abuse. Further, defendant "CORP. ENTITIES" and their agents, partners, servants and employees actively concealed the sexually exploitative behavior and abuse being perpetrated by ROBERT HADDEN, as well as the complaints of HADDEN's sexually exploitative behavior and abuse, and inexplicably continued to allow ROBERT HADDEN to have unfettered sexual access to COLUMBIA UNIVERSITY MEDICAL CENTER, NEW YORK-PRESBYTERIAN HOSPITAL, and Defendant "CORP. ENTITIES"' female patient populations. Based on the words and conduct of each of the defendants, their agents, servants, and/or employees, plaintiff was induced to not file a complaint earlier. Further,

plaintiff has been emotionally traumatized by the defendants' conduct and abuse, and has lacked the capacity to deal with, and confront, the important legal issues and rights herein until the present.

## JANE DOE #11

39. Plaintiff JANE DOE #11 was born in 1972, and currently resides in the State of New York. JANE DOE #11 was an OBGYN patient of defendants COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS; PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE, LLC; COLUMBIA CORNELL NETWORK PHYSICIANS, INC. (Hereinafter "CORP. ENTITIES") and their agent, servant, and/or employee ROBERT HADDEN, during which time JANE DOE #11 was serially sexually exploited and abused by ROBERT HADDEN — who was enabled by the acts and omissions of the within named defendants and "CORP. ENTITIES".

40. Plaintiff JANE DOE #11 saw ROBERT HADDEN at "CORP. ENTITIES" medical facilities between November 2006, and July 2010 for what was supposed to be obstetrical and gynecological care and treatment. Beginning with JANE DOE #11's initial office visit, defendant ROBERT HADDEN began subjecting her to a course of predatory grooming, boundary violating, mental, emotional, and physical sexual exploitation and abuse. During the visits, ROBERT HADDEN assailed JANE DOE #11 with a barrage of wily,

inappropriate, invasive and exploitive questions and statements about her body, ethnicity and physical appearance. ROBERT HADDEN's approach to grooming was a mix of being awkward, authoritative, self-deprecating, disarming, self-pitying, alarming, and overtly offensive.

41. While ROBERT HADDEN was actively and verbally breaking down JANE DOE #11's boundaries, he subjected JANE DOE #11 to medically inappropriate questions for long periods while ogling and groping her, and performing non-medically indicated physical examinations. JANE DOE #11 is a survivor of childhood sexual abuse. And the sexual exploitation and abuse that ROBERT HADDEN subjected her to as an adult has had, and continues to have, a profoundly negative impact on her life and mental health. Further, JANE DOE #11 has been subjected to extreme distress on account of the fact that COLUMBIA UNIVERSITY MEDICAL CENTER, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES" employed - and are now going to great lengths to protect - a deviant sexual predator like ROBERT HADDEN. At the same time, the "CORP. ENTITIES" have done nothing to support and protect the countless women who ROBERT HADDEN sexually exploited and abused. The failure of defendants COLUMBIA and NY-PRESBYTERIAN HOSPITAL to take any action against ROBERT HADDEN, and their failure to support each of the women that ROBERT HADDEN has sexually exploited and abused, continues to cause JANE DOE #11 to feel marginalized, trivialized, and re-traumatized all over again. The sexual abuse and exploitation committed by ROBERT HADDEN, and enabled by "CORP. ENTITIES" including COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and NEW YORK PRESBYTERIAN HOSPITAL, re-traumatized JANE DOE #11 who is a

survivor of childhood sexual abuse - and continues to re-traumatize her to this date knowing that ROBERT HADDEN has still not been brought to justice, nor have the "CORP. ENTITIES" taken responsibility for enabling the abuse to occur for over 20-years at their facilities.

42. Because Defendant "CORP. ENTITIES"' Chaperones stood by, silently, as ROBERT HADDEN sexually exploited and abused Plaintiff JANE DOE #11, JANE DOE #11 reasonably believed that ROBERT HADDEN was conducting legitimate medical treatment while he was ogling, groping, verbally assaulting, and physically abusing, violating, sexually abusing, and penetrating her, although she now knows that ROBERT HADDEN's conduct was, in fact, sexual exploitation and abuse. Despite the "CORP. ENTITIES"' chaperones' first-hand observation of the abuse, and "CORP. ENTITIES" prior reports about ROBERT HADDEN's sexual misconduct, Defendant "CORP. ENTITIES" and their agents, partners, servants and employees actively concealed the sexually exploitative behavior and abuse being perpetrated by ROBERT HADDEN, as well as the complaints of HADDEN's sexually exploitative behavior and abuse, and inexplicably continued to allow ROBERT HADDEN to have unfettered sexual access to COLUMBIA UNIVERSITY MEDICAL CENTER, NEW YORK-PRESBYTERIAN HOSPITAL, and Defendant "CORP. ENTITIES"' female patient populations. Based on the words and conduct of each of the defendants, their agents, servants, and/or employees, plaintiff was induced to not file a complaint earlier. Further, plaintiff has been emotionally traumatized by the defendants' conduct and abuse, and has lacked the capacity to deal with, and confront, the important legal issues and rights herein until the present.

43. Finally, as a result of being listed as the physician in attendance at the birth her son, ROBERT HADDEN's name is present on JANE DOE #11's child's original birth certificate. Every time JANE DOE #11 registers her child for summer camp, or sends him off to a new school, she is re-traumatized by the sight of this sick sexual predator's name on the birth certificate of her child. To date, Columbia University, New York-Presbyterian Hospital, and their agents, partners, servants, and/or employees have refused to issue either an apology, or a letter which will allow the removal of ROBERT HADDEN's name from her child's birth certificate. The sexual abuse and exploitation committed by ROBERT HADDEN, and enabled by "CORP. ENTITIES" including COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and NEW YORK PRESBYTERIAN HOSPITAL, re-traumatized JANE DOE #11 who is a survivor of childhood sexual abuse - and continues to re-traumatize her to this date knowing that ROBERT HADDEN has still not been brought to justice, nor have the "CORP. ENTITIES" taken responsibility for enabling the abuse to occur for over 20-years at their facilities.

### JANE DOE #12

44. Plaintiff JANE DOE #12 was born in 1974, and currently resides in the State of New York. Plaintiff JANE DOE #12 was an OBGYN patient of defendants COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS; PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC.;

COLUMBIA-CORNELL CARE, LLC; COLUMBIA CORNELL NETWORK PHYSICIANS, INC. (Hereinafter "CORP. ENTITIES") and their agent, servant, and/or employee ROBERT HADDEN, during which time JANE DOE #12 was serially sexually exploited and abused by ROBERT HADDEN — who was enabled by the acts and omissions of the within named defendants and "CORP. ENTITIES".

45. Plaintiff JANE DOE #12 saw ROBERT HADDEN at "CORP. ENTITIES" medical facilities between May 2012 and August 2012 for what was supposed to be obstetric care and treatment. Beginning with JANE DOE #12's initial office visit, defendant ROBERT HADDEN began subjecting her to a course of predatory grooming, boundary violating, mental, emotional, and physical sexual exploitation and abuse. During the visits, ROBERT HADDEN assailed JANE DOE #12 with a barrage of wily, inappropriate, invasive and exploitive questions and statements about her body, and physical appearance, and sexual history. ROBERT HADDEN's approach to grooming was a mix of being awkward, authoritative, self-deprecating, disarming, self-pitying, alarming, and overtly offensive. On multiple occasions ROBERT HADDEN made inappropriate, gratuitous remarks about JANE DOE #12's body and physical appearance, declaring "You'll be back in a bikini by summer".

46. While ROBERT HADDEN was actively and verbally breaking down JANE DOE #12's boundaries, he subjected JANE DOE #12 to inappropriate and idle questions for long periods while ogling and groping her body. During the visits, Hadden would require JANE DOE #12 to undress - during every office visit - so that he could perform what was ultimately a medically unnecessary, unwarranted, and non-indicated pelvic examination - all while JANE DOE #12 was pregnant with her unborn child. During these "examinations" ROBERT HADDEN would lubricate his hands, as well as JANE DOE #12's vagina. During the

application of the lubricant ROBERT HADDEN would routinely stroke JANE DOE #12's clitoris for no purpose other than to feed ROBERT HADDEN's own sick desires of being able to sexually exploit and abuse as many female patients as possible. After a period of externally stroking JANE DOE #12's vagina, ROBERT HADDEN would then proceed to penetrate her vagina with his ungloved fingers in furtherance of his scheme to feed his own deviant sexual desires.

47. As ROBERT HADDEN was sexually violating and exploiting JANE DOE #12, he also would continue to verbally groom her with irrelevant and inappropriate disclosures about his personal life and his son who was disabled. As ROBERT HADDEN was confiding in JANE DOE #12 his secrets surrounding his own family and personal struggles, he was — in reality — engaging in high-level grooming wherein his true objective was to trigger as much compassion and sympathy as possible from JANE DOE #12 (as he did with the countless other patients who he groomed over the course of two-decades) which allowed him to commit further acts of sexual exploitation and abuse upon his wholly unsuspecting patients.

48. ROBERT HADDEN was well aware of the cognitive dissonance that his patients - who he was actively exploiting and sexually abusing - would experience with regard to their inability to come to grips with the idea that their own medical doctor was sexually exploiting and abusing them. Plaintiff JANE DOE #12 is an attorney who is licensed to practice in the State of New York. However, ROBERT HADDEN used all of his knowledge and medical training to create the illusion of "medical care" — while leveraging the position of status and authority bestowed on him by COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP.

ENTITIES" --- in furtherance of his scheme to sexually abuse and exploit JANE DOE #12 and as many other women as possible under the guise of "medical care".

49. These events are not isolated, and they were not done outside the knowledge and awareness of his employers ("CORP. ENTITIES"). ROBERT HADDEN was known as "a shark" - who knew how to outmaneuver chaperones, make quick hits at sexually abusing female patients, and keep going - amongst the medical assistants and chaperones with whom he worked. At least one nurse who worked with ROBERT HADDEN in 1992-1993 walked in on ROBERT HADDEN sexually abusing a female patient at defendant COLUMBIA UNIVERSITY's Audubon Clinic. However, when the nurse reported the abuse ROBERT HADDEN was committing to her supervisor, the supervisor's response was for her to just "keep quiet" and "stay with your doctor". COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES", have created an environment that was not only conducive to committing doctor sexual assaults, but actually enabled it. By failing to properly educate, train, empower, and support the medical assistants and chaperones, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES" created an environment where patients were duped into believing that there was a medical chaperone in the examination room who would keep them safe. But, in reality, the hidden imbalance of power that exists between the chaperones and medical doctors - where nurses are afraid to speak-up for fear of losing their jobs - has the practical effect of making doctor sexual abuse appear to be legitimate medical care.

50. For the sake of completeness, ROBERT HADDEN has pleaded guilty in Criminal Court to sexually abusing both of the two-other patients referenced above. One by licking her vagina

during a purported vaginal examination - which was during the second time that the patient stated that ROBERT HADDEN had done it. The other is when ROBERT HADDEN pleaded guilty to sexually abusing another female patient, who ROBERT HADDEN knew to be HIV positive, with his ungloved hand.

51. When ROBERT HADDEN stopped attending to patients in the middle of JANE DOE #12's pregnancy in 2012, the defendant "CORP. ENTITIES" and their staff embarked upon a course of actual fraud and deceit by telling patients -- including JANE DOE #12 -- and the public at large, that ROBERT HADDEN was out on "sick" leave. Defendant "CORP. ENTITIES"' active fraud is not only deplorable, it creates estoppel which prohibits them from trying to assert any kind of time limitation as a defense. As time passed, defendants' story about ROBERT HADDEN's absence kept changing. JANE DOE #12 was later told she needed to "switch" doctors one-month prior to delivering her child - because ROBERT HADDEN was not returning from "sick leave". To date, the truth about ROBERT HADDEN being a "convicted sexual felon" has not been divulged by COLUMBIA UNIVERSITY MEDICAL CENTER, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL and "CORP. ENTITIES". To date, Columbia University, New York-Presbyterian Hospital, and their agents, partners, servants, and/or employees have refused to issue an apology, let alone take responsibility, for enabling ROBERT HADDEN to commit serial sexual assaults upon the premises of COLUMBIA UNIVERSITY MEDICAL CENTER, NEW YORK PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES" over the course of two-decades from 1992 through 2012. Based on the words and conduct of each of the defendants, their agents, servants, and/or employees, plaintiff was induced to not file a complaint earlier. Further, plaintiff has been emotionally traumatized by the defendants'

conduct and abuse, and has lacked the capacity to deal with, and confront, the important legal issues and rights herein until the present.

52. Because Defendant "CORP. ENTITIES"' agents, servants, and/or employees actively, and knowingly, lied to patients about the abuse committed by ROBERT HADDEN, and because the Chaperones stood by, silently, as ROBERT HADDEN sexually exploited and abused Plaintiff JANE DOE #12, JANE DOE #12 reasonably believed that ROBERT HADDEN was conducting legitimate medical treatment while he was ogling, groping, verbally assaulting, and physically abusing, violating, sexually abusing, and penetrating her, although she now knows that ROBERT HADDEN's conduct was, in fact, sexual exploitation and abuse. Despite the "CORP. ENTITIES"' chaperones' first-hand observation of the abuse, and "CORP. ENTITIES" prior reports about ROBERT HADDEN's sexual misconduct, Defendant "CORP. ENTITIES" and their agents, partners, servants and employees actively concealed the sexually exploitative behavior and abuse being perpetrated by ROBERT HADDEN, as well as the complaints of HADDEN's sexually exploitative behavior and abuse, and inexplicably continued to allow ROBERT HADDEN to have unfettered sexual access to COLUMBIA UNIVERSITY MEDICAL CENTER, NEW YORK-PRESBYTERIAN HOSPITAL, and Defendant "CORP. ENTITIES"' female patient populations. Based on the words and conduct of each of the defendants, their agents, servants, and/or employees, plaintiff was induced to not file a complaint earlier. Further, plaintiff has been emotionally traumatized by the defendants' conduct and abuse, and has lacked the capacity to deal with, and confront, the important legal issues and rights herein until the present.

## JANE DOE #13

53. Plaintiff JANE DOE #13 was born in 1984, and currently resides in the State of New York. Plaintiff JANE DOE #13 was an OBGYN patient of defendants COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS; PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE, LLC; COLUMBIA CORNELL NETWORK PHYSICIANS, INC., the AUDUBON CLINIC (Hereinafter "CORP. ENTITIES") and their agent, servant, and/or employee ROBERT HADDEN, during which time JANE DOE #13 was serially sexually exploited and abused by ROBERT HADDEN — who was enabled by the acts and omissions of the within named defendants and "CORP. ENTITIES".

54. Plaintiff JANE DOE #13 saw ROBERT HADDEN at "CORP. ENTITIES" medical facilities between 2003 and 2004 for what was supposed to be gynecological and obstetrical care and treatment. Beginning with JANE DOE #13's initial office visit, defendant ROBERT HADDEN began subjecting her to a course of predatory grooming, boundary violating, mental, emotional, and physical sexual exploitation and abuse. During the visits, ROBERT HADDEN assailed JANE DOE #13 with a barrage of wily, inappropriate, invasive and exploitive questions and statements about her body, and physical appearance, sexual history, her partner and specific sexual acts she engaged in, whether she experienced orgasms and the use of pornography. ROBERT HADDEN's approach to grooming was a mix of being

awkward, authoritative, self-deprecating, disarming, self-pitying, alarming, and overtly offensive. On multiple occasions ROBERT HADDEN made inappropriate, gratuitous remarks about JANE DOE #13's body and physical appearance.

55. While ROBERT HADDEN was actively and verbally breaking down JANE DOE #13's boundaries, he forced JANE DOE #13 to answer questions about the number of sexual partners and sexual acts she engaged in, whether she and her partner enjoyed pornography, and peppered her with a series of irrelevant and medically inappropriate questions for long periods while ogling and groping her breasts and unclothed body. At every visit ROBERT HADDEN required JANE DOE #13 to get naked as he ogled and exploited her.

56. A Chaperone was present in the room during some of the verbal and physical assaults and witnessed ROBERT HADDEN's verbal and physical sexual abuse firsthand, yet did nothing to prevent, or stop, ROBERT HADDEN's sexual exploitation and abuse of Plaintiff JANE DOE #13. Other times, a Chaperone was not present - or would leave the room before the "examination" was complete at which point ROBERT HADDEN would continue to physically sexually exploit and abuse JANE DOE #13. This included, but is not limited to, performing serial, prolonged, and medically inappropriate breast examinations, serial and medically-inappropriate PAP smears, vaginal exams, and medically inappropriate, unwarranted and unnecessary "mole-checks" where ROBERT HADDEN would require JANE DOE #13 to either lay on the table unclothed while he rubbed his hands up and down her body, or bend over the table while her spread her buttocks, groped her breasts, and examined her entire body and private areas. ROBERT HADDEN would repeatedly tell JANE DOE #13 that her PAP smears were abnormal which he used as a pretext to then do additional, unnecessary, unwarranted and non-medically indicated testing and vaginal

examinations at each visit. To that end, HADDEN would knowingly and intentionally exploit the fact that JANE DOE #13 had HPV as a way to justify his need to chronically examine, leer at and penetrate, her vagina. All the while, ROBERT HADDEN would engage in idle chatter or begin divulging wholly improper and inappropriate personal information about himself and family - all in furtherance of his never-ending sexual exploitation and grooming of female patients. During the serial, unnecessary, unwarranted and medically non-indicated vaginal examinations that ROBERT HADDEN performed at practically every single visit, ROBERT HADDEN would repeatedly penetrate JANE DOE #13 by inserting his fingers into JANE DOE #13's vagina in a deviant sexual manner - often with his ungloved hands.

57. ROBERT HADDEN was well aware of the cognitive dissonance that his patients - who he was sexually abusing - would experience with regard to their inability to come to grips with the idea that their own medical doctor was sexually exploiting and abusing them. ROBERT HADDEN used this knowledge and medical training to his advantage while leveraging his position of status and authority bestowed on him by COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES", to his advantage, and in furtherance of his scheme to sexually abuse and exploit as many women as possible under the guise of performing medical procedures. As a result, ROBERT HADDEN was enabled to sexually abuse countless female patients of COLUMBIA UNIVERSITY and NEW YORK-PRESBYTERIAN HOSPITAL, in a serial fashion, while carrying out his sick fantasies surrounding doctor sexual abuse.

58. These events are not isolated, and they were not done outside the knowledge and awareness of his employers ("CORP. ENTITIES"). ROBERT HADDEN was known as "a shark" - who knew how to out maneuver chaperones, make quick hits at sexually abusing female patients,

and keep going - amongst the medical assistants and chaperones with whom he worked. At least one nurse who worked with ROBERT HADDEN in 1992-1993 walked in on ROBERT HADDEN sexually abusing a female patient at defendant COLUMBIA UNIVERSITY's Audubon Clinic. But when the nurse reported the abuse ROBERT HADDEN was committing to her supervisor, the supervisor's response was for her to just "keep quiet", "stay with your doctor" and "don't let him get himself in trouble". COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES", have created an environment that was not only conducive to doctor sexual assault, but actually enabled it. By failing to properly educate, train, empower, and support the medical assistants and chaperones, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES" created an environment where patients were duped into believing that there would be someone in the examination rooms who would keep them safe. But, in reality, the hidden imbalance of power that exists between the chaperones and medical doctors - where nurses are afraid to speak-up for fear of losing their jobs - had the practical effect of making doctor sexual abuse appear to be legitimate medical care.

59. For the sake of completeness, ROBERT HADDEN has pleaded guilty in Criminal Court to sexually abusing the two-other patients referenced above. One by licking her vagina during a purported vaginal examination - which was during the second time that the patient stated that ROBERT HADDEN had done it. The other is when ROBERT HADDEN pleaded guilty to sexually abusing another female patient, who ROBERT HADDEN knew to be HIV positive, with his ungloved hand.

60. Because Defendant "CORP. ENTITIES"' Chaperones stood by, silently, as ROBERT HADDEN sexually exploited and abused Plaintiff JANE DOE #13, JANE DOE #13 reasonably believed that ROBERT HADDEN was conducting legitimate medical treatment while he was ogling, groping, verbally assaulting, and physically abusing, violating, sexually abusing, and penetrating her, although she now knows that ROBERT HADDEN's conduct was, in fact, sexual exploitation and abuse. Despite the "CORP. ENTITIES"' chaperones' first-hand observation of the abuse, and "CORP. ENTITIES" prior reports about ROBERT HADDEN's sexual misconduct, Defendant "CORP. ENTITIES" and their agents, partners, servants and employees actively concealed the sexually exploitative behavior and abuse being perpetrated by ROBERT HADDEN, as well as the complaints of HADDEN's sexually exploitative behavior and abuse, and inexplicably continued to allow ROBERT HADDEN to have unfettered sexual access to COLUMBIA UNIVERSITY MEDICAL CENTER, NEW YORK-PRESBYTERIAN HOSPITAL, and Defendant "CORP. ENTITIES"' female patient populations. Based on the words and conduct of each of the defendants, their agents, servants, and/or employees, plaintiff was induced to not file a complaint earlier. Further, plaintiff has been emotionally traumatized by the defendants' conduct and abuse, and has lacked the capacity to deal with, and confront, the important legal issues and rights herein until the present.

61. ROBERT HADDEN may be listed as the physician in attendance at the birth of JANE DOE #13's child, in 2004. To the extent this is correct, a letter allowing the removal of ROBERT HADDEN's name from her son's birth certificate is demanded.

62. Finally, plaintiffs have a good-faith reason to reason to believe COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN

HOSPITAL, and defendant "CORP. ENTITIES" have colluded with ROBERT HADDEN in order to enable and permit ROBERT HADDEN to apply, and become approved, for certain "disability benefits" that enable ROBERT HADDEN to continue to receive financial support and enjoy what may otherwise be considered an "early retirement". Defendants' collective complicity - and active fraud - in actively helping ROBERT HADDEN to support himself financially after sexually, and feloniously, abusing countless female patients over the course of two-decades is worthy of criminal prosecution, and intense public scrutiny.

### JANE DOE #14

63. Plaintiff JANE DOE #14 was born in 1973, and currently resides in the State of New York. Plaintiff JANE DOE #14 became an OBGYN patient of defendants COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS; PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE, LLC; COLUMBIA CORNELL NETWORK PHYSICIANS, INC., the AUDUBON CLINIC (Hereinafter "CORP. ENTITIES") and their agent, servant, and/or employee ROBERT HADDEN, during which time JANE DOE #14 was serially sexually exploited and abused by ROBERT HADDEN — who was enabled by the acts and omissions of the within named defendants and "CORP. ENTITIES".

64. Plaintiff JANE DOE #14 saw ROBERT HADDEN at "CORP. ENTITIES" medical facilities between May 1998 and November 2010 for what was supposed to be gynecological and obstetrical care and treatment. Beginning with JANE DOE #14's initial office visit, defendant ROBERT HADDEN began subjecting her to a course of predatory grooming, boundary violating, mental, emotional, and physical sexual exploitation and abuse. During the visits, ROBERT HADDEN assailed JANE DOE #14 with a barrage of wily, inappropriate, invasive and exploitive questions and statements about her body, and physical appearance, and sexual history. ROBERT HADDEN's approach to grooming was a mix of being awkward, authoritative, self-deprecating, disarming, self-pitying, alarming, and overtly offensive. On multiple occasions ROBERT HADDEN made inappropriate, gratuitous remarks about JANE DOE #14's body and physical appearance.

65. While ROBERT HADDEN was actively and verbally breaking down JANE DOE #14's boundaries, he engaged JANE DOE #14 in idle chatter about medically irrelevant issues and peppered her with a series of irrelevant and medically inappropriate questions for long periods while ogling and groping her breasts and unclothed body. At every visit ROBERT HADDEN required JANE DOE #14 to get naked as he ogled and exploited her. On two occasions, with her top off, ROBERT HADDEN made completely inappropriate comments about JANE DOE #14 breasts and apologized for his distasteful, unprofessional and gratuitous remark on one of those occasions.

66. A Chaperone was present in the room during some of the verbal and physical assaults and witnessed ROBERT HADDEN's verbal and physical sexual abuse firsthand, yet did nothing to prevent, or stop, ROBERT HADDEN's sexual exploitation and abuse of Plaintiff JANE DOE #14. Other times, a Chaperone was not present - or would leave the room before the

"examination" was complete at which point ROBERT HADDEN would continue to physically sexually exploit and abuse JANE DOE #14. This included, but is not limited to, performing serial, prolonged, and medically inappropriate breast examinations, and serial and medically-inappropriate PAP smears and vaginal examinations. During the unnecessary and non-indicated vaginal exams ROBERT HADDEN would penetrate JANE DOE #14's vagina with multiple fingers in a non-medical way, for non-medical purposes. ROBERT HADDEN would also digitally penetrate JANE DOE #14's anus, again for no medical purpose. All the while, ROBERT HADDEN would engage in idle chatter or begin divulging wholly improper and inappropriate personal information about himself and family - all in furtherance of his never-ending sexual exploitation and grooming of female patients. During the serial, and medically non-indicated vaginal examinations that ROBERT HADDEN performed at practically every single visit, ROBERT HADDEN would repeatedly penetrate JANE DOE #14 by inserting his fingers into JANE DOE #14's vagina, and at times anus, in a deviant sexual manner.

67. During every office visit, ROBERT HADDEN insisted that a breast examination was necessary. After making JANE DOE #14 remove her clothing, for no legitimate medical purpose, ROBERT HADDEN proceeded to grope and cup JANE DOE #14's breasts. During these prolonged, and wholly medically unnecessary "breast examinations", ROBERT HADDEN would to pinch and squeeze JANE DOE #14's nipples. JANE DOE #14 has endured indescribable conflict, confusion, and mental injury due to her inability to comprehend the reasons and level of depravity of the abuse inflicted upon her by ROBERT HADDEN.

68. ROBERT HADDEN was well aware of the cognitive dissonance that his patients - who he
was sexually abusing - would experience with regard to their inability to come to grips with
the idea that their own medical doctor was sexually exploiting and abusing them. ROBERT
HADDEN used this knowledge and medical training to his advantage while leveraging his
position of status and authority bestowed on him by COLUMBIA UNIVERSITY, THE
TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL,
and "CORP. ENTITIES", to his advantage, and in furtherance of his scheme to sexually
abuse and exploit as many women as possible under the guise of performing medical
procedures. As a result, ROBERT HADDEN was enabled to sexually abuse countless female
patients of COLUMBIA UNIVERSITY and NEW YORK-PRESBYTERIAN HOSPITAL, in
a serial fashion, while carrying out his sick fantasies surrounding doctor sexual abuse.

69. As if that were not enough, during her final appointment, Hadden pretended to be performing
some kind of vaginal examination. After touching her vagina with his ungloved hand, and
while ducking down under the cloth draped over JANE DOE #14's legs, and while her view
was obstructed, ROBERT HADDEN proceeded to touch his tongue to plaintiff JANE DOE
#14's vagina. JANE DOE #14 could not process what was happening and froze.

70. JANE DOE #14 is a survivor of childhood sexual abuse. When ROBERT HADDEN placed
his tongue on her vagina, she was unable to comprehend how or why a medical doctor would
sexually abuse her in that manner. The memories of her childhood sexual abuse came
flooding back and she became mentally, and even physically, paralyzed. ROBERT
HADDEN, seeing only the surface of the emotional and physical trauma he had just inflicted
on JANE DOE #14 proceeded to say he was "sorry for making you uncomfortable".
Following this sexual attack by ROBERT HADDEN, JANE DOE #14 was unable to subject

herself to another gynecological visit for approximately two-years. In 2012, JANE DOE #14 finally found the courage to see another doctor, whose physical examination was unlike any she had endured under ROBERT HADDEN. Years later, after discovering that ROBERT HADDEN had been arrested for sexual assault, JANE DOE #14, worried of the oral contact perpetrated upon her by HADDEN, sought testing to ensure that she had not been infected with any STD's or HIV, causing her tremendous fear, anxiety and distress.

71. ROBERT HADDEN has serially sexually assaulted countless female patients of COLUMBIA UNIVERSITY and NEW YORK-PRESBYTERIAN HOSPITAL while carrying out his sick fantasies surrounding doctor sexual abuse. His depraved mind and scheme to perform deviant and sexually exploitive acts upon women led to him acting out, in a serial fashion, his fantasies of being able to touch his tongue to a patient's vagina in the guise of "medical care" and treatment - while trying to get away with it.

72. These events are not isolated, and they were not done outside the knowledge and awareness of his employers ("CORP. ENTITIES"). ROBERT HADDEN was known as "a shark" - who knew how to outmaneuver chaperones, make quick hits at sexually abusing female patients, and keep going - amongst the medical assistants and chaperones with whom he worked. At least one nurse who worked with ROBERT HADDEN in 1992-1993 walked in on ROBERT HADDEN sexually abusing a female patient at defendant COLUMBIA UNIVERSITY's Audubon Clinic. However, when the nurse reported the abuse ROBERT HADDEN was committing to her supervisor, the supervisor's response was for her to just "keep quiet", "stay with your doctor" and "don't let him get himself into trouble". COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES", have created an environment that

was not only conducive to doctor sexual assaults, but actually enabled it. By failing to properly educate, train, empower, and support the medical assistants and chaperones, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES" created an environment where patients were duped into believing that there was a medical professional in the examination room who would keep them safe. But, in reality, the hidden imbalance of power that existed between the chaperones and medical doctors - where nurses were afraid to speak-up for fear of losing their jobs - had the practical effect of making doctor sexual abuse appear to be legitimate medical care.

73. For sake of completeness, ROBERT HADDEN has pleaded guilty in Criminal Court to sexually abusing two-other patients female patients referenced above. One by licking her vagina during a purported vaginal examination - which was during the second time the patient stated ROBERT HADDEN had done it. And the other is when ROBERT HADDEN pleaded guilty to sexually abusing another female patient, who ROBERT HADDEN knew to be HIV positive, with his ungloved hand.

74. Because Defendant "CORP. ENTITIES"' Chaperones stood by, silently, as ROBERT HADDEN sexually exploited and abused Plaintiff JANE DOE #14, JANE DOE #14 reasonably believed that ROBERT HADDEN was conducting legitimate medical treatment while he was ogling, groping, verbally assaulting, and physically abusing, violating, sexually abusing, and penetrating her, although she now knows that ROBERT HADDEN's conduct was, in fact, sexual exploitation and abuse. Despite the "CORP. ENTITIES"' chaperones' first-hand observation of the abuse, and "CORP. ENTITIES" prior reports about ROBERT HADDEN's sexual misconduct, Defendant "CORP. ENTITIES" and their agents, partners,

servants and employees actively concealed the sexually exploitative behavior and abuse

being perpetrated by ROBERT HADDEN, as well as the complaints of HADDEN's sexually

exploitative behavior and abuse, and inexplicably continued to allow ROBERT HADDEN to

have unfettered sexual access to COLUMBIA UNIVERSITY MEDICAL CENTER, NEW

YORK-PRESBYTERIAN HOSPITAL, and Defendant "CORP. ENTITIES"' female patient

populations. Based on the words and conduct of each of the defendants, their agents,

servants, and/or employees, plaintiff was induced to not file a complaint earlier. Further,

plaintiff has been emotionally traumatized by the defendants' conduct and abuse, and has

lacked the capacity to deal with, and confront, the important legal issues and rights herein

until the present.

75. Finally, plaintiffs have a good-faith reason to reason to believe COLUMBIA UNIVERSITY,

THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN

HOSPITAL, and defendant "CORP. ENTITIES" have colluded with ROBERT HADDEN in

order to enable and permit ROBERT HADDEN to apply, and become approved, for certain

"disability benefits" that enable ROBERT HADDEN to continue to receive financial support

and enjoy what may otherwise be considered an "early retirement". Defendants' collective

complicity - and active fraud - in actively helping ROBERT HADDEN to support himself

financially after sexually, and feloniously, abusing countless female patients over the course

of two-decades is worthy of criminal prosecution, and intense public scrutiny. Further, it

directly causes JANE DOE #14 to feel further marginalized and trivialized.

**JANE DOE #15**

76. Plaintiff JANE DOE #15 was born in 1982, and currently resides in the State of Florida.

Plaintiff JANE DOE #15 became an gynecological patient of defendants COLUMBIA

UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS; PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE, LLC; COLUMBIA CORNELL NETWORK PHYSICIANS, INC., the AUDUBON CLINIC (Hereinafter "CORP. ENTITIES") and their agent, servant, and/or employee ROBERT HADDEN, during which time JANE DOE #15 was serially sexually exploited and abused by ROBERT HADDEN — who was enabled by the acts and omissions of the within named defendants and "CORP. ENTITIES".

77. Plaintiff JANE DOE #15 saw ROBERT HADDEN at "CORP. ENTITIES" medical facilities between 2002 and 2009, for what was supposed to be gynecologic care and treatment. Beginning with JANE DOE #15's initial office visit, defendant ROBERT HADDEN began subjecting her to a course of predatory grooming, boundary violating, and mental, emotional, and physical sexual exploitation and abuse. During the visits, ROBERT HADDEN assailed JANE DOE #15 with a barrage of wily, inappropriate, invasive and exploitive questions and statements about her body, physical appearance, pornography, whether her partner satisfied her and detailed - and wholly medically irrelevant — questions and comments about the performance of oral sex on men. ROBERT HADDEN's approach to grooming was a mix of being awkward, authoritative, self-deprecating, disarming, self-pitying, alarming, and overtly offensive.

78. While ROBERT HADDEN was actively and verbally breaking down JANE DOE #15's boundaries, he engaged JANE DOE #15 in idle chatter about medically irrelevant issues and peppered her with a series of irrelevant and medically inappropriate questions for long periods while ogling and groping her breasts and unclothed body. At each visit ROBERT HADDEN required JANE DOE #15 to get naked as he ogled and exploited her.

79. A Chaperone was present in the room during some of the verbal and physical assaults and witnessed ROBERT HADDEN's verbal and physical sexual abuse firsthand, yet did nothing to stop or prevent ROBERT HADDEN's sexual exploitation and abuse of Plaintiff JANE DOE #15. On most occasions a Chaperone was present at the beginning of the examination, and would then leave the room before the "examination" was complete. After the chaperone exited the room, the exploitation and abuse would continue with ROBERT HADDEN proceeding to perform serial, prolonged, and medically inappropriate breast examinations, and serial and medically-inappropriate PAP smears and vaginal examinations and medically inappropriate "mole-checks" where ROBERT HADDEN would require JANE DOE #15 to lay face-down on the examination table, unclothed, while he rubbed his hands up and down her body, and spread her buttocks to "look for moles" in and around her anus.

80. During the regular — and wholly unnecessary -- serial "vaginal exams", "breast exams", and "mole-checks" ROBERT HADDEN would perform on JANE DOE #15, ROBERT HADDEN would penetrate JANE DOE #15's vagina with his fingers in a non-medical way, for non-medical purposes, and often without gloves on his hands. ROBERT HADDEN would also digitally penetrate JANE DOE #15's anus, again for no medical purpose. All the while, ROBERT HADDEN would engage in idle chatter or begin divulging wholly improper

and inappropriate personal information about himself and family - all in furtherance of his never-ending sexual exploitation and grooming of female patients.

81. At one office visit, ROBERT HADDEN instructed JANE DOE #15 to come into his office where the lights were dimmed and closed the door. During this visit ROBERT HADDEN told JANE DOE he was going to give her an HPV shot. This was JANE DOE #15's third HPV vaccination. This time however, ROBERT HADDEN instructed JANE DOE #15 to pull her pants down and bend over his desk, so he could administer the shot into her buttocks.   When JANE DOE #15 questioned this action, ROBERT HADDEN assured her not to worry and told her to just do it.

82. After the inappropriate HPV injection was placed into JANE DOE #15's buttock, ROBERT HADDEN told her to stand up, get completely naked, and then bend over and touch her toes while he stood behind her to "check her spine". All the while, ROBERT HADDEN was continuing to groom JANE DOE #15 by engaging in irrelevant prater about his family and son with special needs in his twisted effort to gain her confidence and present the image of himself as a caring, "family man".

83. ROBERT HADDEN was well aware of the cognitive dissonance that his patients - who he was sexually exploiting and abusing - would experience with regard to their inability to come to grips with the idea that their own medical doctor was sexually exploiting and abusing them. ROBERT HADDEN used this knowledge and medical training to his advantage while leveraging his position of status and authority bestowed on him by COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES", to his advantage, and in furtherance of his scheme to sexually abuse and exploit as many women as possible under

the guise of performing medical procedures. As a result, ROBERT HADDEN was enabled to sexually abuse countless female patients of COLUMBIA UNIVERSITY and NEW YORK-PRESBYTERIAN HOSPITAL in a serial fashion. ROBERT HADDEN has serially sexually abused countless female patients of COLUMBIA UNIVERSITY and NEW YORK-PRESBYTERIAN HOSPITAL while carrying out his sick fantasies surrounding doctor sexual abuse. His depraved mind and scheme to perform deviant and sexually exploitive acts upon women led to him acting out, in a serial fashion, his fantasies of being able to touch his tongue to his patients' vaginas in the guise of "medical care" - while trying to get away with it.

84. These events are not isolated, and they were not done outside the knowledge and awareness of his employers ("CORP. ENTITIES"). ROBERT HADDEN was known as "a shark" - who knew how to outmaneuver chaperones, make quick hits at sexually abusing female patients, and keep going - amongst the medical assistants and chaperones with whom he worked. At least one nurse who worked with ROBERT HADDEN in 1992-1993 walked in on ROBERT HADDEN sexually abusing a female patient at defendant COLUMBIA UNIVERSITY's Audubon Clinic. But when the nurse reported the abuse ROBERT HADDEN was committing to her supervisor, the supervisor's response was for her to just "keep quiet", "stay with your doctor" and "don't let him get himself in trouble". COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES", have created an environment that was not only conducive to doctor sexual assault, but actually enabled it. By failing to properly educate, train, empower, and support the medical assistants and chaperones, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW

YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES" created an environment where patients were duped into believing that there was someone in the examination room who would keep them safe. But, in reality, the hidden imbalance of power that exists between the chaperones and medical doctors - where nurses are afraid to speak-up for fear of losing their jobs - has the practical effect of making doctor sexual abuse appear to be legitimate medical care.

85. For the sake of completeness, ROBERT HADDEN has pleaded guilty in Criminal Court to sexually abusing both of the two-other patients referenced above. One by licking her vagina during a purported vaginal examination - which was during the second time that the patient stated that ROBERT HADDEN had done it. The other is when ROBERT HADDEN pleaded guilty to sexually abusing another female patient, who ROBERT HADDEN knew to be HIV positive, with his ungloved hand.

86. Because Defendant "CORP. ENTITIES"' Chaperones stood by, silently, as ROBERT HADDEN sexually exploited and abused Plaintiff JANE DOE #15, JANE DOE #15 reasonably believed that ROBERT HADDEN was conducting legitimate medical treatment while he was ogling, groping, verbally assaulting, and physically abusing, violating, sexually abusing, and penetrating her, although she now knows that ROBERT HADDEN's conduct was, in fact, sexual exploitation and abuse. Despite the "CORP. ENTITIES"' chaperones' first-hand observation of the abuse, and "CORP. ENTITIES" prior reports about ROBERT HADDEN's sexual misconduct, Defendant "CORP. ENTITIES" and their agents, servants and employees actively concealed the sexually exploitative behavior and abuse being perpetrated by ROBERT HADDEN, as well as the complaints of HADDEN's sexually exploitative behavior and abuse, and inexplicably continued to allow ROBERT HADDEN to

have unfettered sexual access to COLUMBIA UNIVERSITY MEDICAL CENTER, NEW

YORK-PRESBYTERIAN HOSPITAL, and Defendant "CORP. ENTITIES"' female patient

populations.

87. Finally, plaintiffs have a good-faith reason to reason to believe COLUMBIA UNIVERSITY,

THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN

HOSPITAL, and defendant "CORP. ENTITIES" have colluded with ROBERT HADDEN in

order to enable and permit ROBERT HADDEN to apply, and become approved, for certain

"disability benefits" that enable ROBERT HADDEN to continue to receive financial support

and enjoy what may otherwise be considered an "early retirement". Defendants' collective

complicity - and active fraud - in actively helping ROBERT HADDEN to support himself

financially after sexually, and feloniously, abusing countless female patients over the course

of two-decades is worthy of criminal prosecution, and intense public scrutiny. Further, it

directly caused JANE DOE #15 to feel further marginalized and trivialized.

## JANE DOE #16

88. Plaintiff JANE DOE #16 was born in 1994, and currently resides in the State of New Jersey.

JANE DOE #16 was a gynecology patient of defendants (and/or to be named Defendants)

including: COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN

HOSPITAL; COLUMBIA PRESBYTERIAN MEDICAL CENTER; COLUMBIA

UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL

CENTER, EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF

COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY

COLLEGE OF PHYSICIANS AND SURGEONS; PRESBYTERIAN HOSPITAL

PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE, LLC;

COLUMBIA CORNELL NETWORK PHYSICIANS, INC., (Hereinafter "CORP. ENTITIES") and their agent, servant, and/or employee ROBERT HADDEN, during which time JANE DOE #16 was serially sexually exploited and abused by ROBERT HADDEN — who was enabled by the acts and omissions of the within named defendants and "CORP. ENTITIES".

89. Plaintiff JANE DOE #16 saw ROBERT HADDEN at "CORP. ENTITIES" medical facilities for what was supposed to be gynecologic care and treatment. At the time of the visit JANE DOE #16 was a full-time high-school student and a minor under the laws of the State of New York. Further, ROBERT HADDEN was the physician who had delivered JANE DOE #16 a decade earlier. ROBERT HADDEN was well aware of this fact and used this relationship with both the patient, and her mother, as leverage in order to carry out his scheme of sexual exploitation and sexual abuse of the minor child, JANE DOE #16.

90. Beginning with JANE DOE #16's initial office visit as a gynecology patient, defendant ROBERT HADDEN began subjecting her to a course of predatory grooming, boundary violating, mental, emotional, and physical sexual abuse. During the visits, ROBERT HADDEN assailed JANE DOE #16 with a barrage of wily, inappropriate, invasive and exploitive questions and statements about her mother, appearance, body, sexual history, and sexual activity. Questioning JANE DOE #16 about her virginity and eliciting intimate and inappropriate details about how close she has gotten to experiencing sexual intercourse with a male. ROBERT HADDEN's approach to grooming JANE DOE #16 was a mix of being authoritative, awkward, self-deprecating, disarming, self-pitying, alarming, fear mongering, and overtly offensive.

91. While ROBERT HADDEN was actively and verbally breaking down JANE DOE #16's boundaries, he forced JANE DOE #16 to answer questions about herself, her school, and her mother; and peppered her with a series of irrelevant and medically inappropriate questions for long periods while ogling and groping her unclothed body, breasts and vagina. While ogling and groping JANE DOE #16's unclothed body, ROBERT HADDEN continued to engage in idle chatter about wholly medically irrelevant information.

92. A Chaperone was present in the room at the beginning of the visit and during the verbal and physical exploitation and assaults, and witnessed ROBERT HADDEN's verbal and physical sexual abuse firsthand, yet did nothing to prevent or stop ROBERT HADDEN's sexual exploitation and abuse of Plaintiff JANE DOE #16. During this initial visit, ROBERT HADDEN directed JANE DOE #16 to remove all of her clothes and "get on all fours" on the table. While naked and on all fours, ROBERT HADDEN proceeded to perform a prolonged, medically-inappropriate, unnecessary and unwarranted breast examination, prolonged, medically-inappropriate, unnecessary, and unwarranted vaginal examination, and a prolonged and medically-inappropriate exploration of a rash around JANE DOE #16's pubic area, all the while as JANE DOE #16 was being posed on her hands and knees naked before ROBERT HADDEN, who then proceeded to rub both of his ungloved hands up and down her body, groped her body, spread her buttocks, examined the crevices of the most intimate parts of her body, and spread her vagina as he leered into all of her private areas. All the while, ROBERT HADDEN would continue to engage in idle chatter about JANE DOE #16, her body, and her lack of sexual activity, in furtherance of ROBERT HADDEN's never-ending pedophiliac-grooming and sexual exploitation of this minor-female patient. During the serial, prolonged, medically-inappropriate unnecessary and unwarranted vaginal

examinations that ROBERT HADDEN performed at both visits, ROBERT HADDEN would penetrate JANE DOE #16 by inserting his fingers into JANE DOE #16's vagina. All of these so-called "examinations" were done in a deviant and sexual manner solely for ROBERT HADDEN's own prurient, deviant, and lecherous sexual gratification.

93. During the second visit, ROBERT HADDEN learned that JANE DOE #16 had just recently lost her virginity. At the time, JANE DOE #16 had only one-boyfriend/partner, and very little experience with sex or sexual activity. Despite her age and lack of sexual experience, ROBERT HADDEN instructed JANE DOE #16 that a vaginal examination and PAP Smear was necessary. During this exploitative and abusive visit, ROBERT HADDEN spent a long time doing the medically unnecessary and inappropriate PAP Smear and vaginal examination. Because of her young age, and due to the fact that ROBERT HADDEN was the first gynecologist that JANE DOE #16 saw, this didn't seem abnormal simply because JANE DOE #16 had nothing to compare it to. Following the abusive and exploitative vaginal examination, JANE DOE #16 did not return to defendant ROBERT HADDEN.

94. ROBERT HADDEN was well aware of the cognitive dissonance that his patients - who he was sexually abusing - would experience with regard to their inability to come to grips with the unfathomable idea that their own medical doctor was sexually exploiting and abusing them - especially as a minor who was literally brought into this world into the hands of ROBERT HADDEN who had delivered her as a baby just 16-years earlier. ROBERT HADDEN used this knowledge and medical training to his advantage while leveraging his position of status and authority bestowed on him by COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES", to his own depraved-benefit, and in furtherance of his scheme to

sexually abuse and exploit as many women as possible under the guise of performing medical procedures. As a result, ROBERT HADDEN was enabled to sexually abuse countless female patients of COLUMBIA UNIVERSITY and NEW YORK-PRESBYTERIAN HOSPITAL, in a serial fashion, while carrying out his sick fantasies surrounding doctor sexual abuse.

95.  These events are not isolated, and they were not done outside the knowledge and awareness of his employers ("CORP. ENTITIES"). ROBERT HADDEN was known as "a shark" - who knew how to outmaneuver chaperones, make quick hits at sexually abusing female patients, and keep going - amongst the medical assistants and chaperones with whom he worked. At least one nurse who worked with ROBERT HADDEN in 1992-1993 walked in on ROBERT HADDEN sexually abusing a female patient at defendant COLUMBIA UNIVERSITY's Audubon Clinic. However, when the nurse reported the abuse ROBERT HADDEN was committing to her supervisor, the supervisor's response was for her to just "keep quiet", "stay with your doctor" and "don't let him get himself in trouble". COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES", have created an environment that was not only conducive to doctor sexual assaults, but actually enabled it. By failing to properly educate, train, empower, and support the medical assistants and chaperones, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES" created an environment where patients were duped into believing that there was someone in the examination room who would keep them safe. But, in reality, the hidden imbalance of power that existed between the chaperones and medical doctors - where the chaperones were afraid to speak-up

for fear of losing their jobs - had the practical effect of making doctor sexual abuse appear to be legitimate medical care.

96. For the sake of completeness, ROBERT HADDEN has pleaded guilty in Criminal Court to sexually abusing two-other patients female patients referenced above. One by licking her vagina during a purported vaginal examination - which was the second time that the patient stated ROBERT HADDEN had done it. And the other is when ROBERT HADDEN pleaded guilty to sexually abusing a separate female patient, who ROBERT HADDEN knew to be HIV positive, with his ungloved hands.

97. Because Defendant "CORP. ENTITIES"' Chaperones stood by silently and watched - and also actively participated in the sexual exploitation, abuse, and coverup of ROBERT HADDEN's serial sexual exploitation and abuse by failing to prevent or stop ROBERT HADDEN - JANE DOE #16 reasonably believed that ROBERT HADDEN must have been conducting legitimate medical treatment while he was ogling, groping, verbally assaulting, and physically abusing, violating, sexually abusing, and penetrating her, although she now knows that ROBERT HADDEN's conduct was, in fact, sexual exploitation and abuse. Despite the "CORP. ENTITIES"' chaperones' first-hand observation of the abuse and ROBERT HADDEN's history of evading their observation by telling the Chaperones to leave the room, and "CORP. ENTITIES" prior reports about ROBERT HADDEN's sexual misconduct, Defendant "CORP. ENTITIES" and their agents, partners, servants and employees actively concealed JANE DOE #16's abuse and ROBERT HADDEN's sexually exploitative behavior, and inexplicably continued to allow ROBERT HADDEN to have unfettered sexual access to COLUMBIA UNIVERSITY MEDICAL CENTER, NEW YORK-PRESBYTERIAN HOSPITAL, and Defendant "CORP. ENTITIES"' female and

minor-female patient populations. Based on the words and conduct of each of the defendants, their agents, servants, and/or employees, plaintiff was induced to not file a complaint earlier. Further, plaintiff has been emotionally traumatized by the defendants' conduct and abuse, and has lacked the capacity to deal with, and confront, the important legal issues and rights herein until the present.

98. Further, plaintiffs have a good-faith reason to believe COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and defendant "CORP. ENTITIES" continue to collude with ROBERT HADDEN to permit and enable ROBERT HADDEN to apply for, obtain, and maintain certain "disability benefits" which allow ROBERT HADDEN to receive financial compensation while enjoying what may otherwise be considered a "paid, early retirement" from the practice of medicine. Defendants' collective complicity - and active fraud - in helping ROBERT HADDEN to support himself financially after sexually, and feloniously, abusing countless female patients over the course of two-decades is worthy of criminal prosecution, and intense public scrutiny. Particularly in this day and age, the use of either Corporate or State taxpayer-dollars for the financial benefit of a convicted sexual predator seems like the exact kind of thing that would be a notable and newsworthy story. Further, ROBERT HADDEN's sexual exploitation, pedophilia, and sexual abuse of minor-female patients should be the subject of a comprehensive State investigation and criminal prosecution.

## JANE DOE #17

99. Plaintiff JANE DOE #17 was born in 1973, and currently resides in the State of New York. Plaintiff JANE DOE #17 became an OBGYN patient of defendants COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL; COLUMBIA

PRESBYTERIAN MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS; PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE, LLC; COLUMBIA CORNELL NETWORK PHYSICIANS, INC., the AUDUBON CLINIC (Hereinafter "CORP. ENTITIES") and their agent, servant, and/or employee ROBERT HADDEN, during which time JANE DOE #17 was sexually exploited and abused by ROBERT HADDEN — who was enabled by the acts and omissions of the within named defendants and "CORP. ENTITIES".

100. Plaintiff JANE DOE #17 saw ROBERT HADDEN at "CORP. ENTITIES" medical facilities in or around February 2005 for what was supposed to be the start of obstetrical and prenatal care and treatment for her pregnancy with her first child. Beginning with JANE DOE #17's initial office visit, defendant ROBERT HADDEN began subjecting her to a course of predatory grooming, boundary violating, and mental, emotional, and physical sexual exploitation and abuse. During the visit, ROBERT HADDEN began assailing JANE DOE #17 with a barrage of wily, inappropriate, invasive and exploitative questions and statements about her body, physical appearance and wholly medically irrelevant questions about her sexuality and sexual activity. ROBERT HADDEN's approach to grooming was a mix of being awkward, authoritative, self-deprecating, disarming, self-pitying, alarming, and overtly offensive.

101. While ROBERT HADDEN was actively and verbally breaking down JANE DOE #17's boundaries, he engaged JANE DOE #17 in idle chatter about medically irrelevant issues while peppering her with a series of irrelevant and medically inappropriate questions for long periods while ogling her breasts and unclothed body.

102. A Chaperone was present in the room at the beginning of the examination, and then left before the "examination" was complete. After the chaperone exited the room, the exploitation and abuse continued with ROBERT HADDEN proceeding to perform serial, prolonged, and medically inappropriate breast examinations, and a medically-inappropriate vaginal examination with his bare, ungloved hands.

103. During the wholly unnecessary "physical examination" - while JANE DOE #17 was completely naked - ROBERT HADDEN instructed JANE DOE #17 to stand up, and then bend over while he checked for "scoliosis". All the while, as JANE DOE #17 was naked and bent over, ROBERT HADDEN was continuing to groom JANE DOE #17 by running his ungloved hands all over her body, simultaneously offering her lots of comments about how great her skin was, how she didn't have to "worry about stretch marks", and engaging in other kinds irrelevant prater.

104. ROBERT HADDEN was well aware of the cognitive dissonance that his patients - who he was sexually abusing - would experience with regard to their inability to come to grips with the unfathomable thought that their own medical doctor was sexually exploiting and abusing them. ROBERT HADDEN used this knowledge and medical training to his advantage while leveraging his position of status and authority bestowed on him by COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES", to his benefit, advantage, and in

furtherance of his scheme to sexually abuse and exploit as many women as possible under the guise of performing medical procedures. As a result, ROBERT HADDEN was enabled to sexually abuse countless female patients of COLUMBIA UNIVERSITY and NEW YORK-PRESBYTERIAN HOSPITAL, in a serial fashion, while carrying out his sick fantasies surrounding doctor sexual abuse.

105. ROBERT HADDEN has serially sexually assaulted countless female patients of COLUMBIA UNIVERSITY and NEW YORK-PRESBYTERIAN HOSPITAL. His depraved mind and scheme to perform deviant and sexually exploitive acts upon women have led him to acting out, in a serial fashion, his sick fantasies of being able to penetrate his patients' vaginas for non-medical purposes - as well as touch his tongue to his patients' vaginas in the guise of "medical care" - while trying to get away with it.

106. These events are not isolated, and they were not done outside the knowledge and awareness of his employers ("CORP. ENTITIES"). ROBERT HADDEN was known as "shark" - who knew how to outmaneuver chaperones, make quick hits at sexually abusing female patients, and keep going - amongst the medical assistants and chaperones with whom he worked. At least one nurse who worked with ROBERT HADDEN in 1992-1993 walked in on ROBERT HADDEN sexually abusing a female patient at defendant COLUMBIA UNIVERSITY's Audubon Clinic. But when the nurse reported the abuse ROBERT HADDEN was committing to her supervisor, the supervisor's response was for her to just "keep quiet", "stay with your doctor" and "don't let him get himself in trouble". COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES", have created an environment that was not only conducive to doctor sexual assault, but actually enabled it. By failing to

properly educate, train, empower, and support the medical assistants and chaperones, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES" created an environment where patients were duped into believing that there was someone in the examination room who would keep them safe. But, in reality, the hidden imbalance of power that exists between the chaperones and medical doctors - where nurses are afraid to speak-up for fear of losing their jobs - has the practical effect of making doctor sexual abuse appear to be legitimate medical care.

107. For the sake of completeness, ROBERT HADDEN has pleaded guilty in Criminal Court to sexually abusing both of the two-other patients referenced above. One by licking her vagina during a purported vaginal examination - which was during the second time that the patient stated that ROBERT HADDEN had done it. The other is when ROBERT HADDEN pleaded guilty to sexually abusing another female patient, who ROBERT HADDEN knew to be HIV positive, with his ungloved hand.

108. Because Defendant "CORP. ENTITIES"' Chaperones stood by, silently, as ROBERT HADDEN sexually exploited and abused Plaintiff JANE DOE #17 - and even left the examination room before the "examination" was complete - JANE DOE #17 reasonably believed that ROBERT HADDEN was conducting legitimate medical treatment while he was ogling, groping, verbally assaulting, and physically abusing, violating, sexually abusing, and penetrating her, although she now knows that ROBERT HADDEN's conduct was, in fact, sexual exploitation and abuse. Despite the "CORP. ENTITIES"' chaperones' first-hand observation of the abuse, and "CORP. ENTITIES" prior reports about ROBERT HADDEN's sexual misconduct, Defendant "CORP. ENTITIES" and their agents, servants and employees

actively concealed the sexually exploitative behavior and abuse being perpetrated by ROBERT HADDEN, as well as the complaints of HADDEN's sexually exploitative behavior and abuse, and inexplicably continued to allow ROBERT HADDEN to have unfettered sexual access to COLUMBIA UNIVERSITY MEDICAL CENTER, NEW YORK-PRESBYTERIAN HOSPITAL, and Defendant "CORP. ENTITIES"' female patient populations. Based on the words and conduct of each of the defendants, their agents, servants, and/or employees, plaintiff was induced to not file a complaint earlier. Further, plaintiff has been emotionally traumatized by the defendants' conduct and abuse, and has lacked the capacity to deal with, and confront, the important legal issues and rights herein until the present.

109. Finally, plaintiffs have a good-faith reason to believe COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and defendant "CORP. ENTITIES" have colluded with ROBERT HADDEN in order to enable and permit ROBERT HADDEN to apply, and obtain approval, for certain "disability benefits" that enable ROBERT HADDEN to continue to receive financial support and enjoy what might otherwise be considered a paid, "early retirement". Defendants' collective complicity - and active fraud - in helping ROBERT HADDEN to support himself financially after sexually, and feloniously, abusing countless female patients over the course of two-decades is worthy of criminal investigation, prosecution, and intense public scrutiny. Further, it directly causes JANE DOE #17 to feel further marginalized and trivialized.

**JANE DOE #18**

110. Plaintiff JANE DOE #18 was born in 1967, and currently resides in the State of Maryland. JANE DOE #18 was a student of Columbia University at the time of the sexual assaults committed by COLUMBIA UNIVERSITY doctor ROBERT HADDEN.

111. The sexual harassment, abuse and assaults committed by ROBERT HADDEN were unwelcomed, severe and pervasive, happened to JANE DOE #18 on multiple occasions — to countless other female students and female patients — and had a profound and severe negative impact on JANE DOE #18, her person, her overall educational experience, and her ultimate professional endeavors.

112. Defendants COLUMBIA UNIVERSITY and "CORP. ENTITIES" were on notice of ROBERT HADDEN's conduct as described above. Nonetheless, defendants failed to carry out their duties to investigate and take corrective and mandatory action against ROBERT HADDEN.

113. Defendants' actions, as stated herein, have and will continue to interfere with Plaintiff's right to be free from gender discrimination in the form of sexual harassment.

114. During Plaintiff JANE DOE #18's time as a student of Defendant COLUMBIA UNIVERSITY, Defendants engaged in oppressive and unlawful tactics in ignoring, concealing, and ultimately suppressing the patient and employee complaints of sexual exploitation and abuse being committed by ROBERT HADDEN. Plaintiffs were exploited, sexually abused, intimidated and dissuaded from reporting ROBERT HADDEN's sexually abusive actions, by ROBERT HADDEN's own intimidating and humiliating conduct, as well as the conspiratorial silence and inaction of Defendant COLUMBIA UNIVERSITY and THE TRUSTEES OF COLUMBIA UNIVERSITY's chaperones. These intentional acts of concealment of ROBERT HADDEN'S abusive behavior violated plaintiff JANE DOE #18's

right to be free from discrimination on the basis of her gender, under the laws of the State of New York.

115. Furthermore, the plaintiff was deprived of her right to Due Process of Law, when various complaints by Defendant COLUMBIA UNIVERSITY's agents, servants and/or employees failed to trigger any report, investigation, or other action by Defendant COLUMBIA UNIVERSITY, who was required to do so, both under its own policies and procedures, as well as under the mandated reporting laws of New York State.

116. Defendant COLUMBIA UNIVERSITY's wrongful conduct was intended to, and did successfully interfere with Plaintiffs' Rights to be free from gender discrimination and harassment, as well as interfered with their rights of Due Process under State law.

117. Defendant COLUMBIA UNIVERSITY unlawfully and wrongfully used, or employed others to wrongfully use threats, intimidation, oppression, exploitation, harassment, violence, and coercion over Plaintiff's person, to which Plaintiff had no relief except to submit to the Defendants' wrongful threats, intimidation, oppression, exploitation, harassment, violence, and coercion, which rendered Plaintiff's submission involuntary.

118. Defendant COLUMBIA UNIVERSITY's above-noted actions and omissions were the legal and proximate causes of physical, psychological, emotional, and economic damages, and damage to the Plaintiffs, who have suffered and continue to suffer to this day. The actions and omissions of Defendants have also resulted in Plaintiffs incurring, and will require them to incur into the future, expenses for medical and psychological treatment, therapy, and counseling.

119. As a result of the above-described conduct, Plaintiffs suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional

distress, embarrassment, loss of self-esteem, disgrace, shame, humiliation, and loss of enjoyment of life; have suffered and will continue to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; have and will continue to sustain loss of earning capacity; and have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling. Plaintiffs have also suffered economic, vocational and employment losses, as well.

120. In subjecting Plaintiffs to the sexual exploitation and abuse described herein, Defendants acted willfully and maliciously with the intent to harm Plaintiffs, and in conscious disregard of Plaintiffs' rights, entitling Plaintiffs to compensatory damages in a sum to be shown according to proof, emotional distress damages in a sum to be shown according to proof, punitive and/or exemplary damages, attorney's fees, and other damages pursuant to New York State Law.

121. In subjecting the Plaintiffs to the sexual exploitation and abuse herein described, Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and CORP. ENTITIES acted willfully and maliciously with the intent to harm Plaintiffs, and in conscious disregard of Plaintiffs' Rights, so as to constitute malice and oppression under New York State Law. Plaintiffs are therefore entitled to the recovery of punitive damages, in an amount to be determined by the Court, against Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and CORP. ENTITIES in a sum to be shown according to proof.

122. Plaintiff JANE DOE #18 became an OBGYN patient of defendants COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL; COLUMBIA

PRESBYTERIAN MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS; PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE, LLC; COLUMBIA CORNELL NETWORK PHYSICIANS, INC., (Hereinafter "CORP. ENTITIES") and their agent, servant, and/or employee ROBERT HADDEN, during which time JANE DOE #18 was sexually exploited and abused by ROBERT HADDEN — who was enabled by the acts and omissions of the within named defendants and "CORP. ENTITIES".

123. Plaintiff JANE DOE #18 saw ROBERT HADDEN at "CORP. ENTITIES" Washington Heights, Columbia-Presbyterian medical facilities between February 1998 and January 1999 for what was supposed to be obstetrical and prenatal care and treatment for her pregnancy with her first child. Beginning with JANE DOE #18's initial office visit, defendant ROBERT HADDEN began subjecting her to a course of predatory grooming, boundary violating, and mental, emotional, and physical sexual exploitation and abuse. ROBERT HADDEN's approach to grooming was a mix of being awkward, authoritative, self-deprecating, disarming, self-pitying, alarming, and overtly offensive.

124. While ROBERT HADDEN was actively and verbally breaking down JANE DOE #18's boundaries, he engaged JANE DOE #18 in idle chatter about medically irrelevant issues while peppering her with a series of irrelevant and medically inappropriate questions for long periods while ogling her breasts and unclothed body.

125. On occasion, a Chaperone would be present in the room at the beginning of the examination, but left before the "examination" was complete. After the chaperone exited the room, the exploitation and abuse continued with ROBERT HADDEN proceeding to perform serial, prolonged, and medically inappropriate breast examinations, and medically-inappropriate, unwarranted and unnecessary vaginal examinations with his ungloved hands. Other times, no chaperone would be present at all.

126. During the wholly unnecessary and exploitative "physical examinations" - even while JANE DOE #18 was pregnant - ROBERT HADDEN would performed serial, prolonged, and medically inappropriate breast examinations and vaginal examinations during which he groped, physically assaulted and sexually and emotionally exploited and abused JANE DOE #18, all while not wearing any gloves. This exploitation and abuse continued throughout JANE DOE #18's pregnancy with her unborn child.

127. When the time came to deliver her daughter, ROBERT HADDEN intentionally and maliciously - with scienter and a depraved and evil mind - withheld anesthesia during the labor and delivery, requiring JANE DOE #18 to endure the full pain of a child passing through her birth canal which was too small to accommodate the baby. During the torturous and barbaric delivery, JANE DOE #18 asked, then pleaded ROBERT HADDEN for anesthesia, but HADDEN — out of sheer vindictiveness and cruelty — told her "no" and that "it will give [her] incentive to deliver" her baby. After her daughter tore her vagina on the way out, ROBERT HADDEN told JANE DOE #18 that he would "sew it up". A petrified JANE DOE #18 pleaded and begged ROBERT HADDEN for anesthesia to help her tolerate the excruciating pain of applying sutures to her already torn vagina. Despite her pleas, ROBERT HADDEN inexplicably refused to provide any form of anesthesia during the

suturing, and proceeded - in what can only be described as sadism - to "sew up" JANE DOE #18's vagina and cause her to suffer intolerable and unimaginable pain with each stitch. All the while, none of the hospital personnel uttered a word about the medically inappropriate and barbaric violations of the standards of patient care that was being meted out by ROBERT HADDEN.

128. Following the birth of her child on November 18, 1998, ROBERT HADDEN was listed as the physician in attendance of the birth of JANE DOE #18's child. During the postpartum period, ROBERT HADDEN continued to sexually exploit and abuse JANE DOE #18. During one of the postpartum office visits, while JANE DOE #18's breasts were engorged, ROBERT HADDEN insisted that a breast examination was necessary. After making JANE DOE #18 remove her clothing, for no legitimate medical purpose, ROBERT HADDEN proceeded to grope and cup JANE DOE #18's breasts. During this prolonged, and wholly medically unnecessary "breast examination", ROBERT HADDEN proceeded to pinch, squeeze, and tug on JANE DOE #18's nipples so as to express breast milk, from both of her breasts, for his own deviant sexual gratification, all conducted with JANE DOE #18's newborn in the room. JANE DOE #18 has endured indescribable conflict, confusion, physical pain and mental injury due to her inability to comprehend the reasons and levels of depravity of the abuse inflicted upon her by ROBERT HADDEN.

129. ROBERT HADDEN was well aware of the cognitive dissonance that his patients - who he was sexually abusing - would experience with regard to their inability to come to grips with the unfathomable thought that their own medical doctor was sexually exploiting and abusing them. ROBERT HADDEN used this knowledge and medical training to his advantage while leveraging his position of status and authority bestowed on him by COLUMBIA

UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES", to his benefit, advantage, and in furtherance of his scheme to sexually abuse and exploit as many women as possible under the guise of performing medical procedures. As a result, ROBERT HADDEN was enabled to sexually abuse countless female patients of COLUMBIA UNIVERSITY and NEW YORK-PRESBYTERIAN HOSPITAL, in a serial fashion, while carrying out his sick fantasies surrounding doctor sexual abuse.

130. ROBERT HADDEN has serially sexually assaulted countless female patients of COLUMBIA UNIVERSITY and NEW YORK-PRESBYTERIAN HOSPITAL. His depraved mind and scheme to perform deviant and sexually exploitive acts upon women have led him to act out, in a serial fashion, his sick fantasies of being able to touch his tongue to his patients' vaginas in the guise of "medical care" - while trying to get away with it.

131. These events are not isolated, and they were not done outside the knowledge and awareness of his employers ("CORP. ENTITIES"). ROBERT HADDEN was known as "a shark" - who knew how to outmaneuver chaperones, make quick hits at sexually abusing female patients, and keep going - amongst the medical assistants and chaperones with whom he worked. At least one nurse who worked with ROBERT HADDEN in 1992-1993 walked in on ROBERT HADDEN sexually abusing a female patient at defendant COLUMBIA UNIVERSITY's Audubon Clinic. However, when the nurse reported the abuse ROBERT HADDEN was committing to her supervisor, the supervisor's response was for her to just "keep quiet", "stay with your doctor" and "don't let him get himself in trouble". COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES", have created an environment that

was not only conducive to doctor sexual assault, but actually enabled it. By failing to properly educate, train, empower, and support the medical assistants and chaperones, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES" created an environment where patients were duped into believing that there was someone in the examination room who would keep them safe. But, in reality, the hidden imbalance of power that exists between the chaperones and medical doctors - where nurses are afraid to speak-up for fear of losing their jobs - has the practical effect of making doctor sexual abuse appear to be legitimate medical care.

132. For the sake of completeness, ROBERT HADDEN has pleaded guilty in Criminal Court to sexually abusing both of the two-other patients referenced above. One by licking her vagina during a purported vaginal examination - which was during the second time that the patient stated that ROBERT HADDEN had done it. The other is when ROBERT HADDEN pleaded guilty to sexually abusing another female patient, who ROBERT HADDEN knew to be HIV positive, with his ungloved hand.

133. Because Defendant "CORP. ENTITIES"' Chaperones stood by, silently, as ROBERT HADDEN sexually exploited and abused Plaintiff JANE DOE #18 - and even left the examination room before the "examination" was complete - JANE DOE #18 reasonably believed that ROBERT HADDEN was conducting legitimate medical treatment while he was ogling, groping, verbally assaulting, and physically abusing, violating, sexually abusing, and penetrating her, although she now knows that ROBERT HADDEN's conduct was, in fact, sexual exploitation and abuse. Despite the "CORP. ENTITIES"' chaperones' first-hand observation of the abuse, and "CORP. ENTITIES" prior reports about ROBERT HADDEN's

sexual misconduct, Defendant "CORP. ENTITIES" and their agents, servants and employees actively concealed the sexually exploitative behavior and abuse being perpetrated by ROBERT HADDEN, as well as the complaints of HADDEN's sexually exploitative behavior and abuse, and inexplicably continued to allow ROBERT HADDEN to have unfettered sexual access to COLUMBIA UNIVERSITY MEDICAL CENTER, NEW YORK-PRESBYTERIAN HOSPITAL, and Defendant "CORP. ENTITIES"' female patient populations. Based on the words and conduct of each of the defendants, their agents, servants, and/or employees, plaintiff was induced to not file a complaint earlier. Further, plaintiff has been emotionally traumatized by the defendants' conduct and abuse, and has lacked the capacity to deal with, and confront, the important legal issues and rights herein until the present.

134. Finally, plaintiffs have a good-faith reason to believe COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and defendant "CORP. ENTITIES" have colluded with ROBERT HADDEN in order to enable and permit ROBERT HADDEN to apply, and become approved, for certain "disability benefits" that enable ROBERT HADDEN to continue to receive financial support and enjoy what might otherwise be considered a paid, "early retirement". Defendants' collective complicity - and active fraud - in helping ROBERT HADDEN to support himself financially after sexually, and feloniously, abusing countless female patients over the course of two-decades is worthy of criminal investigation, prosecution, and intense public scrutiny. Further, it directly causes JANE DOE #18 to feel further marginalized and trivialized.

**JANE DOE #19**

135. Plaintiff JANE DOE #19 was born in 1963, and currently resides in the State of New Jersey. Plaintiff JANE DOE #19 was an OBGYN patient of defendants COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS; PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE, LLC; COLUMBIA CORNELL NETWORK PHYSICIANS, INC. (Hereinafter "CORP. ENTITIES") and their agent, servant, and/or employee ROBERT HADDEN, during which time JANE DOE #19 was serially sexually exploited and abused by ROBERT HADDEN — who was enabled by the acts and omissions of the within named defendants and "CORP. ENTITIES".

136. Plaintiff JANE DOE #19 saw ROBERT HADDEN at "CORP. ENTITIES" medical facilities between January 1993 and August 2012 for what was supposed to be gynecological and obstetrical care and treatment. Beginning with JANE DOE #19's initial office visit, defendant ROBERT HADDEN began subjecting her to a course of predatory grooming, boundary violating, mental, emotional, and physical sexual exploitation and abuse. During the visits, ROBERT HADDEN assailed JANE DOE #19 with a barrage of wily, inappropriate, invasive and exploitive questions and statements about her body, physical appearance, her sexuality, the use of pornography, and the kinds of sexual positions she engaged in with her partner. ROBERT HADDEN's approach to grooming was a mix of being awkward, authoritative, self-deprecating, disarming, self-pitying, alarming, and overtly

offensive. ROBERT HADDEN knowingly and intentionally exploited plaintiff JANE DOE #19's professional involvement in the care of children with disabilities - and indirectly his own child's care - to disarm, manipulate, and sexually exploit and abuse JANE DOE #19.

137. While ROBERT HADDEN was actively and verbally breaking down JANE DOE #19's boundaries, he forced JANE DOE #19 to answer questions about the number of sexual partners and sexual acts she had engaged in and peppered her with a series of irrelevant and medically inappropriate questions for long periods while ogling and groping her breasts and unclothed body. At each visit ROBERT HADDEN required JANE DOE #19 to get naked - in his presence - as he ogled and exploited her. A Chaperone was present in the room during some of the verbal and physical assaults and witnessed ROBERT HADDEN's verbal and physical sexual abuse firsthand, yet did nothing to prevent, or stop, ROBERT HADDEN's sexual exploitation and abuse of Plaintiff JANE DOE #19.

138. Other times, a Chaperone was not present - or would leave the room before the "examination" was complete - at which point ROBERT HADDEN would continue to physically sexually exploit and abuse JANE DOE #19. This included, but is not limited to, performing serial, prolonged, and medically inappropriate breast examinations, serial, unwarranted, unnecessary and medically-inappropriate PAP smears and vaginal exams. Each of these exams were, in reality, being conducted with his ungloved-hands so that ROBERT HADDEN could see, touch, penetrate, and abuse JANE DOE #19. All the while, ROBERT HADDEN would engage in idle chatter or continue divulging wholly improper and inappropriate personal information about himself, his family, and his disabled child - all in furtherance of his never-ending sexual exploitation and grooming of female patients. During the serial, and medically non-indicated, unwarranted and unnecessary breast and vaginal

examinations that ROBERT HADDEN performed at practically every visit, ROBERT HADDEN would massage JANE DOE #19's breasts for prolonged periods of time while making idle chatter about irrelevant topics. During several of these "breast examinations" ROBERT HADDEN would compliment JANE DOE #19's breasts, their appearance, and how they felt to him. During the serial, and medically-unnecessary vaginal examinations and PAP smears, ROBERT HADDEN would penetrate JANE DOE #19's vagina by inserting his fingers — with ungloved hands — into JANE DOE #19's vagina in a rough, deep and forceful manner.

139. ROBERT HADDEN was listed as the physician in attendance at the births of JANE DOE #19's three children. During the postpartum periods, ROBERT HADDEN continued to sexually exploit and abuse JANE DOE #19. During these visits ROBERT HADDEN continued to instruct JANE DOE #19 that serial breast examinations, PAP smears, and vaginal "examinations" were needed -- when in fact, they were being performed so that ROBERT HADDEN could continue to ogle, grope, and sexually exploit and abuse JANE DOE #19. JANE DOE #19 has endured indescribable conflict, confusion, and mental injury due to her inability to comprehend the reasons and level of depravity of the abuse inflicted upon her by ROBERT HADDEN. The fact that ROBERT HADDEN regularly used his own son's disabilities in furtherance of his scheme to sexually exploit female patients - including JANE DOE #19 who had direct and personal knowledge of his son, and his son's care - constitutes a degree of depravity that is incomprehensible and abhorrent.

140. ROBERT HADDEN was well aware of the cognitive dissonance that his patients - who he was sexually abusing - would experience with regard to their inability to come to grips with the unfathomable thought that their own medical doctor was sexually exploiting and abusing

them. ROBERT HADDEN used this knowledge and medical training to his advantage while leveraging his position of status and authority bestowed on him by COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES", to his benefit, advantage, and in furtherance of his scheme to sexually abuse and exploit as many women as possible under the guise of performing medical procedures. As a result, ROBERT HADDEN was enabled to sexually abuse countless female patients of COLUMBIA UNIVERSITY and NEW YORK-PRESBYTERIAN HOSPITAL, in a serial fashion, while carrying out his sick fantasies surrounding doctor sexual abuse.

141. These events are not isolated, and they were not done outside the knowledge and awareness of his employers ("CORP. ENTITIES"). ROBERT HADDEN was known as a "shark" - who knew how to out maneuver chaperones, make quick hits at sexually abusing female patients, and keep going - amongst the medical assistants and chaperones with whom he worked. At least one nurse who worked with ROBERT HADDEN in 1992-1993 walked in on ROBERT HADDEN sexually abusing a female patient at defendant COLUMBIA UNIVERSITY's Audubon Clinic. But when the nurse reported the abuse ROBERT HADDEN was committing to her supervisor, the supervisor's response was for her to just "keep quiet", "stay with your doctor" and "don't let him get himself in trouble". COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES", have created an environment that was not only conducive to doctor sexual assault, but actually enabled it. By failing to properly educate, train, empower, and support the medical assistants and chaperones, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW

YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES" created an environment where patients were duped into believing that there was someone in the examination room who would keep them safe. But, in reality, the hidden imbalance of power that exists between the chaperones and medical doctors - where nurses are afraid to speak-up for fear of losing their jobs - has the practical effect of making doctor sexual abuse appear to be legitimate medical care.

142. To date, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES" have failed to inform any of their patients that ROBERT HADDEN is actually a convicted sexual predator. Instead of disclosing to their patients, and the public at large, that they had exposed their female patients to a sexual predator for over 20-years, the defendants and "CORP. ENTITIES", including COLUMBIA UNIVERSITY and THE TRUSTEES OF COLUMBIA UNIVERSITY, kept ROBERT HADDEN's profile and photograph on the CUMC.edu website for several years after ROBERT HADDEN was indicted for sexually exploiting and abusing six (6) of their own patients. This was a prosecution where nineteen (19) survivors-witnesses of ROBERT HADDEN's sexual abuse came forward, including a nurse-witness who worked with ROBERT HADDEN and walked-in on him sexually abusing a young, female, Hispanic patient back in 1992-1993.

143. ROBERT HADDEN has subsequently pleaded guilty in Criminal Court to sexually abusing two of those female patients. One by licking her vagina during a purported vaginal examination - which was during the second time that the patient stated it happened. And the other is when ROBERT HADDEN pleaded guilty to sexually abusing another female patient, who ROBERT HADDEN knew to be HIV positive, with his ungloved hand.

144. Further, as a result of being listed as the physician in attendance at the births of JANE DOE #19's children, the name of ROBERT HADDEN - a convicted sexual felon - is currently present on her children's original birth certificates. Every time JANE DOE #19 registers her children for summer camps, or sends them off to a new school, she is re-traumatized by the sight of this sick sexual predator's name on their birth certificates. To date, COLUMBIA UNIVERSITY, The TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and their agents, servants, and/or employees have refused to issue either an apology, or a letter which will allow the removal of ROBERT HADDEN's name from her children's birth certificates.

145. Because Defendant "CORP. ENTITIES"' Chaperones stood by, silently, as ROBERT HADDEN sexually exploited and abused Plaintiff JANE DOE #19 - and even left the examination room before the "examination" was complete - JANE DOE #19 reasonably believed that ROBERT HADDEN was conducting legitimate medical treatment while he was ogling, groping, verbally assaulting, and physically abusing, violating, sexually abusing, and penetrating her, although she now knows that ROBERT HADDEN's conduct was, in fact, sexual exploitation and abuse. Despite the "CORP. ENTITIES"' chaperones' first-hand observation of the abuse, and "CORP. ENTITIES" prior reports about ROBERT HADDEN's sexual misconduct, Defendant "CORP. ENTITIES" and their agents, servants and employees actively concealed the sexually exploitative behavior and abuse being perpetrated by ROBERT HADDEN, as well as the complaints of HADDEN's sexually exploitative behavior and abuse, and inexplicably continued to allow ROBERT HADDEN to have unfettered sexual access to COLUMBIA UNIVERSITY MEDICAL CENTER, NEW YORK-PRESBYTERIAN HOSPITAL, and Defendant "CORP. ENTITIES"' female patient

populations. Based on the words and conduct of each of the defendants, their agents, servants, and/or employees, plaintiff was induced to not file a complaint earlier. Further, plaintiff has been emotionally traumatized by the defendants' conduct and abuse, and has lacked the capacity to deal with, and confront, the important legal issues and rights herein until the present.

146. Finally, plaintiffs have a good-faith reason to believe COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and defendant "CORP. ENTITIES" have colluded with ROBERT HADDEN in order to enable and permit ROBERT HADDEN to apply, and obtain approval, for certain "disability benefits" that enable ROBERT HADDEN to continue to receive financial support and enjoy what might otherwise be considered a paid, "early retirement". Defendants' collective complicity - and active fraud - in helping ROBERT HADDEN to support himself financially after sexually, and feloniously, abusing countless female patients over the course of two-decades is worthy of criminal investigation, prosecution, and intense public scrutiny. Further, it directly causes JANE DOE #19 to feel further exploited, marginalized and trivialized.

**JANE DOE #21**

147. Plaintiff JANE DOE #21 was born in 1972, and currently resides in the State of New York. Plaintiff JANE DOE #21 was an OBGYN patient of defendants COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS;

PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE, LLC; COLUMBIA CORNELL NETWORK PHYSICIANS, INC. (Hereinafter "CORP. ENTITIES") and their agent, servant, and/or employee ROBERT HADDEN, during which time JANE DOE #21 was serially sexually exploited and abused by ROBERT HADDEN — who was enabled by the acts and omissions of the within named defendants and "CORP. ENTITIES".

148. Plaintiff JANE DOE #21 saw ROBERT HADDEN at "CORP. ENTITIES" medical facilities between June 2003 and March 2011 for what was supposed to be gynecological and obstetrical care and treatment. Beginning with JANE DOE #21's initial office visit, defendant ROBERT HADDEN began subjecting her to a course of predatory grooming, boundary violating, mental, emotional, and physical sexual exploitation and abuse. During the visits, ROBERT HADDEN assailed JANE DOE #21 with a barrage of wily, inappropriate, invasive and exploitive questions and statements about her body, and physical appearance, sexual history, her sexuality and race. ROBERT HADDEN's approach to grooming was a mix of being awkward, authoritative, self-deprecating, disarming, self-pitying, alarming, and overtly offensive. On multiple occasions ROBERT HADDEN made inappropriate, gratuitous remarks about JANE DOE #21's body and physical appearance.

149. While ROBERT HADDEN was actively and verbally breaking down JANE DOE #21's boundaries, he forced JANE DOE #21 to answer questions about the number of sexual partners she had, the kinds of sexual acts she engaged in, and peppering her with a series of other irrelevant and medically inappropriate questions for long periods while ogling and groping her breasts and unclothed body. At every visit ROBERT HADDEN required JANE DOE #21 to get naked - in his presence - as he ogled and exploited her. A Chaperone was

present in the room during some of the verbal and physical assaults and witnessed ROBERT

HADDEN's verbal and physical sexual abuse firsthand, yet did nothing to prevent or stop

ROBERT HADDEN's sexual exploitation and abuse of Plaintiff JANE DOE #21. Other

times, a Chaperone was not present - or would leave the room before the "examination" was

complete at which point ROBERT HADDEN would continue to physically sexually exploit

and abuse JANE DOE #21. This included, but is not limited to, performing serial, prolonged,

and medically inappropriate breast examinations, serial and unwarranted, non-indicated and

medically-inappropriate PAP smears and vaginal exams. All the while, ROBERT HADDEN

would engage in idle chatter or begin divulging wholly improper and inappropriate personal

information about himself and his family - all in furtherance of his never-ending sexual

exploitation and grooming of female patients. During the serial, and medically non-

indicated, unwarranted and unnecessary breast and vaginal examinations that ROBERT

HADDEN performed at practically every visit, ROBERT HADDEN would massage JANE

DOE #21's breasts for prolonged periods of time while making idle chatter about irrelevant

topics. During several of these "breast examinations" ROBERT HADDEN "complimented"

the appearance of JANE DOE #21's breasts and how they felt to him. During the serial,

unwarranted, unnecessary, and medically-non-indicated vaginal examinations and PAP

smears, ROBERT HADDEN would penetrate JANE DOE #21's vagina by inserting his

fingers — with ungloved hands — into JANE DOE #21's vagina in a non-medical manner.

150. Following the delivery of JANE DOE #21's children, ROBERT HADDEN was listed as the

physician in attendance at their births. During the postpartum periods, ROBERT HADDEN

continued to sexually exploit and abuse JANE DOE #21. During several of the office visits,

while JANE DOE #21's breasts were engorged, ROBERT HADDEN insisted that breast

examinations were necessary. After making JANE DOE #21 remove her clothing, for no legitimate medical purpose, ROBERT HADDEN proceeded to grope and cup JANE DOE #21's breasts. During these prolonged, and wholly medically unnecessary "breast examinations", ROBERT HADDEN proceeded to pinch, squeeze, and tug on JANE DOE #21's breasts so as to express breast milk from her nipples. JANE DOE #21 has endured indescribable conflict, confusion, and mental injury due to her inability to comprehend the reasons and level of depravity of the abuse inflicted upon her by ROBERT HADDEN. Despite sharing these accounts with her husband back when they were happening, she was met with the normal and customary responses received by the other women mentioned herein which is a version of 'he's the doctor, what's he's doing must be ok'.

151. ROBERT HADDEN was well aware of the cognitive dissonance that his patients - who he was sexually abusing - would experience with regard to their inability to come to grips with the unfathomable idea that their own medical doctor was sexually exploiting and abusing them. ROBERT HADDEN used this knowledge and medical training to his advantage while leveraging his position of status and authority bestowed on him by COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES", to his benefit, and in furtherance of his scheme to sexually abuse and exploit as many women as possible under the guise of performing medical procedures. As a result, ROBERT HADDEN was enabled to sexually abuse countless female patients of COLUMBIA UNIVERSITY and NEW YORK-PRESBYTERIAN HOSPITAL, in a serial fashion, while carrying out his sick fantasies surrounding doctor sexual abuse.

152. These events are not isolated, and they were not done outside the knowledge and awareness of his employers ("CORP. ENTITIES"). ROBERT HADDEN was known as "a shark" - who knew how to outmaneuver chaperones, make quick hits at sexually abusing female patients, and keep going - amongst the medical assistants and chaperones with whom he worked. At least one nurse who worked with ROBERT HADDEN in 1992-1993 walked in on ROBERT HADDEN sexually abusing a female patient at defendant COLUMBIA UNIVERSITY's Audubon Clinic. But when the nurse reported the abuse ROBERT HADDEN was committing to her supervisor, the supervisor's response was for her to just "keep quiet", "stay with your doctor" and "don't let him get himself in trouble". COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES", have created an environment that was not only conducive to doctor sexual assault, but actually enabled it. By failing to properly educate, train, empower, and support the medical assistants and chaperones, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES" created an environment where patients were duped into believing that there was someone in the examination room who would keep them safe. But, in reality, the hidden imbalance of power that exists between the chaperones and medical doctors - where nurses are afraid to speak-up for fear of losing their jobs - has the practical effect of making doctor sexual abuse appear to be legitimate medical care.

153. During her last office visit with ROBERT HADDEN in 2011, JANE DOE #21 observed ROBERT HADDEN acting abnormal - even for ROBERT HADDEN. She had the thought that maybe he was taking drugs. However, to date, COLUMBIA UNIVERSITY, THE

TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES" have failed to inform any of their patients that ROBERT HADDEN is actually a convicted sexual predator. Instead of disclosing to their patients, and the public at large, that they had exposed their female patients to a sexual predator for over 20-years, the defendants and "CORP. ENTITIES", including COLUMBIA UNIVERSITY and THE TRUSTEES OF COLUMBIA UNIVERSITY, kept ROBERT HADDEN's profile and photograph on the CUMC.edu website for several years after ROBERT HADDEN was indicted for sexually exploiting and abusing six (6) of their patients. Despite the fact that ROBERT HADDEN's criminal prosecution included the support of the Manhattan District Attorney -- along with nineteen (19) survivors-witnesses of ROBERT HADDEN's sexual abuse, including a nurse-witness from defendant's Audubon Clinic who worked with ROBERT HADDEN and saw him sexually abusing a young female hispanic patient back in 1992-1993 -- COLUMBIA UNIVERSITY and THE TRUSTEES OF COLUMBIA UNIVERSITY have held ROBERT HADDEN out as a reputable doctor who had an impeccable record for patient care.

154. For the sake of completeness, ROBERT HADDEN has pleaded guilty in Criminal Court to sexually abusing both of the two-other patients referenced above. One by licking her vagina during a purported vaginal examination - which was during the second time that the patient stated that ROBERT HADDEN had done it. The other is when ROBERT HADDEN pleaded guilty to sexually abusing another female patient, who ROBERT HADDEN knew to be HIV positive, with his ungloved hand.

155. Further, as a result of being listed as the physician in attendance at the birth of JANE DOE #21's children, the name of ROBERT HADDEN - a convicted sexual felon - is currently

present on these children's original birth certificates. Every time JANE DOE #21 registers her children for summer camps, or sends them off to a new school, she is re-traumatized by the sight of this sick sexual predator's name on their birth certificates. To date, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and their agents, servants, and/or employees have refused to issue either an apology, or a letter which will allow the removal of ROBERT HADDEN's name from her children's birth certificates.

156. Because Defendant "CORP. ENTITIES"' Chaperones stood by, silently, as ROBERT HADDEN sexually exploited and abused Plaintiff JANE DOE #21 - and even left the examination room, during the abuse, and before the "examination" was complete - JANE DOE #21 reasonably believed that ROBERT HADDEN was conducting legitimate medical treatment while he was ogling, groping, verbally assaulting, and physically abusing, violating, sexually abusing, and penetrating her, although she now knows that ROBERT HADDEN's conduct was, in fact, sexual exploitation and abuse. Despite the "CORP. ENTITIES"' chaperones' first-hand observation of the abuse, and "CORP. ENTITIES" prior reports about ROBERT HADDEN's sexual misconduct, Defendant "CORP. ENTITIES" and their agents, servants and employees actively concealed the sexually exploitative behavior and abuse being perpetrated by ROBERT HADDEN, as well as the complaints of HADDEN's sexually exploitative behavior and abuse, and inexplicably continued to allow ROBERT HADDEN to have unfettered sexual access to COLUMBIA UNIVERSITY MEDICAL CENTER, NEW YORK-PRESBYTERIAN HOSPITAL, and Defendant "CORP. ENTITIES"' female patient populations. Based on the words and conduct of each of the defendants, their agents, servants, and/or employees, plaintiff was induced to not file a

complaint earlier. Further, plaintiff has been emotionally traumatized by the defendants' conduct and abuse, and has lacked the capacity to deal with, and confront, the important legal issues and rights herein until the present.

## JANE DOE #22

157. Plaintiff JANE DOE #22 was born in 1978, and currently resides in the State of New York. Plaintiff JANE DOE #22 was an OBGYN patient of defendants COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS; PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE, LLC; COLUMBIA CORNELL NETWORK PHYSICIANS, INC. (Hereinafter "CORP. ENTITIES") and their agent, servant, and/or employee ROBERT HADDEN, during which time JANE DOE #22 was serially sexually exploited and abused by ROBERT HADDEN — who was enabled by the acts and omissions of the within named defendants and "CORP. ENTITIES".

158. Plaintiff JANE DOE #22 saw ROBERT HADDEN at "CORP. ENTITIES" medical facilities between December 2006 and August 2012 for what was supposed to be gynecological and obstetrical care and treatment. Beginning with JANE DOE #22's initial office visit, defendant ROBERT HADDEN began subjecting her to a course of predatory grooming, boundary violating, mental, emotional, and physical sexual exploitation and

abuse. During the visits, ROBERT HADDEN assailed JANE DOE #22 with a barrage of wily, inappropriate, invasive and exploitive questions and statements about her body, and physical appearance, sexual history, whether her partner satisfied her, whether she experienced orgasms and the use of pornography and sex "toys". ROBERT HADDEN's approach to grooming was a mix of being awkward, authoritative, self-deprecating, disarming, self-pitying, alarming, and overtly offensive. On multiple occasions ROBERT HADDEN made inappropriate, gratuitous remarks about JANE DOE #22's body and physical appearance.

159. While ROBERT HADDEN was actively and verbally breaking down JANE DOE #22's boundaries, he forced JANE DOE #22 to answer questions about the number of sexual partners and sexual acts she had engaged in, whether or not her partner was able "satisfy her", and peppered her with a series of irrelevant and medically inappropriate questions for long periods while ogling and groping her breasts and unclothed body. At every visit ROBERT HADDEN required JANE DOE #22 to get completely naked - in his presence - as he ogled and exploited her. A Chaperone was present in the room during some of the verbal and physical assaults and witnessed ROBERT HADDEN's verbal and physical sexual abuse firsthand, yet did nothing to prevent or stop ROBERT HADDEN's sexual exploitation and abuse of Plaintiff JANE DOE #22. Often times the Chaperone would leave the room before the "examination" was complete at which point ROBERT HADDEN would continue to physically sexually exploit and abuse JANE DOE #22. This included, but is not limited to, performing serial, prolonged, and medically inappropriate breast examinations, and serial, unwarranted, unnecessary, and medically-inappropriate PAP smears and vaginal examinations. All the while, ROBERT HADDEN would engage in idle chatter or begin

divulging wholly improper and inappropriate personal information about himself and his family - all in furtherance of his never-ending sexual exploitation and grooming of female patients. During the serial, and medically non-indicated vaginal examinations and PAP-smears that ROBERT HADDEN performed, ROBERT HADDEN would repeatedly penetrate JANE DOE #22 by inserting his fingers into JANE DOE #22's vagina.

160. During the postpartum period, ROBERT HADDEN continued to sexually exploit and abuse JANE DOE #22. During these office visits, while JANE DOE #22's breasts were engorged, ROBERT HADDEN insisted that breast examinations were necessary - despite the fact that she stated unequivocally that she was not experiencing any problems breastfeeding her babies. After making JANE DOE #22 remove her clothing, for no legitimate medical purpose, ROBERT HADDEN proceeded to grope and cup JANE DOE #22's breasts. During this prolonged, and wholly medically unnecessary "breast examination", ROBERT HADDEN began to pinch, squeeze, and tug on JANE DOE #22's nipples so as to express breast milk from her breasts. JANE DOE #22 has endured indescribable conflict, confusion, and mental injury due to her inability to comprehend the reasons for — and level of depravity of — the abuse inflicted upon her by ROBERT HADDEN, including while she was pregnant and in the postpartum periods. Despite sharing these accounts with her husband back when they were happening, she was met with the normal and customary responses received by the other women mentioned herein which is a version of 'he's the doctor, I'm sure he knows what he's doing'.

161. ROBERT HADDEN was well aware of the cognitive dissonance that his patients - who he was sexually abusing - would experience with regard to their inability to come to grips with the unfathomable thought that their own medical doctor was sexually exploiting and abusing

them. ROBERT HADDEN used this knowledge and medical training to his advantage while leveraging his position of status and authority bestowed on him by COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES", to his benefit, advantage, and in furtherance of his scheme to sexually abuse and exploit as many women as possible under the guise of performing medical procedures. As a result, ROBERT HADDEN was enabled to sexually abuse countless female patients of COLUMBIA UNIVERSITY and NEW YORK-PRESBYTERIAN HOSPITAL, in a serial fashion, while carrying out his sick fantasies surrounding doctor sexual abuse.

162. These events are not isolated, and they were not done outside the knowledge and awareness of his employers ("CORP. ENTITIES"). ROBERT HADDEN was known as "a shark" - who knew how to outmaneuver chaperones, make quick hits at sexually abusing female patients, and keep going - amongst the medical assistants and chaperones with whom he worked. At least one nurse who worked with ROBERT HADDEN in 1992-1993 walked in on ROBERT HADDEN sexually abusing a female patient at defendant COLUMBIA UNIVERSITY's Audubon Clinic. But when the nurse reported the abuse ROBERT HADDEN was committing to her supervisor, the supervisor's response was for her to just "keep quiet", "stay with your doctor" and "don't let him get himself in trouble". COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES", have created an environment that was not only conducive to doctor sexual assault, but actually enabled it. By failing to properly educate, train, empower, and support the medical assistants and chaperones, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW

YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES" created an environment where patients were duped into believing that there was someone in the examination room who would keep them safe. But, in reality, the hidden imbalance of power that exists between the chaperones and medical doctors - where nurses are afraid to speak-up for fear of losing their jobs - has the practical effect of making doctor sexual abuse appear to be legitimate medical care.

163. For the sake of completeness, ROBERT HADDEN has pleaded guilty in Criminal Court to sexually abusing both of the two-other patients referenced above. One by licking her vagina during a purported vaginal examination - which was during the second time that the patient stated that ROBERT HADDEN had done it. The other is when ROBERT HADDEN pleaded guilty to sexually abusing another female patient, who ROBERT HADDEN knew to be HIV positive, with his ungloved hand.

164. Because Defendant "CORP. ENTITIES"' Chaperones stood by, silently, as ROBERT HADDEN sexually exploited and abused Plaintiff JANE DOE #22 - and even left the examination room before the "examination" was complete - JANE DOE #22 reasonably believed that ROBERT HADDEN was conducting legitimate medical treatment while he was ogling, groping, verbally assaulting, and physically abusing, violating, sexually abusing, and penetrating her, although she now knows that ROBERT HADDEN's conduct was, in fact, sexual exploitation and abuse. Despite the "CORP. ENTITIES"' chaperones' first-hand observation of the abuse, and "CORP. ENTITIES" prior reports about ROBERT HADDEN's sexual misconduct, Defendant "CORP. ENTITIES" and their agents, servants and employees actively concealed the sexually exploitative behavior and abuse being perpetrated by ROBERT HADDEN, as well as the complaints of HADDEN's sexually exploitative behavior

and abuse, and inexplicably continued to allow ROBERT HADDEN to have unfettered sexual access to COLUMBIA UNIVERSITY MEDICAL CENTER, NEW YORK-PRESBYTERIAN HOSPITAL, and Defendant "CORP. ENTITIES"' female patient populations. Based on the words and conduct of each of the defendants, their agents, servants, and/or employees, plaintiff was induced to not file a complaint earlier. Further, plaintiff has been emotionally traumatized by the defendants' conduct and abuse, and has lacked the capacity to deal with, and confront, the important legal issues and rights herein until the present.

## JANE DOE #23

165. Plaintiff JANE DOE #23 was born in 1983, and currently resides in the State of Washington. JANE DOE #23 was a gynecology patient of defendants COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS; PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE, LLC; COLUMBIA CORNELL NETWORK PHYSICIANS, INC., (Hereinafter "CORP. ENTITIES") and their agent, servant, and/or employee ROBERT HADDEN, during which time JANE DOE #23 was serially sexually exploited and abused by ROBERT HADDEN — who was enabled by the acts and omissions of the within named defendants and "CORP. ENTITIES".

166. Plaintiff JANE DOE #23 saw ROBERT HADDEN at "CORP. ENTITIES" medical facilities for what was supposed to be gynecologic care and treatment. JANE DOE #23 is a high-end fashion model, who was also a student during the time she was a patient at defendant COLUMBIA UNIVERSITY, "CORP. ENTITIES" and defendant ROBERT HADDEN. Further, JANE DOE #23 was referred to ROBERT HADDEN by a physician who employed JANE DOE #23's mother on his office staff. ROBERT HADDEN was aware of this referral and used the leverage he had with the referring physician - and the power the referring physician had over JANE DOE #23's mother - in order to sexually exploit and abuse JANE DOE #23.

167. Beginning with JANE DOE #23's initial office visit, defendant ROBERT HADDEN began subjecting her to a course of predatory grooming, boundary violating, mental, emotional, and physical sexual abuse. During the visits, ROBERT HADDEN assailed JANE DOE #23 with a barrage of wily, inappropriate, invasive and exploitive questions and statements about her heritage, appearance, sexual history, and sexual activity. ROBERT HADDEN's approach to grooming JANE DOE #23 was a mix of being authoritative, awkward, self-deprecating, disarming, self-pitying, alarming, fear mongering, and overtly offensive.

168. While ROBERT HADDEN was actively and verbally breaking down JANE DOE #23's boundaries, he forced JANE DOE #23 to answer questions about herself and her partner, and peppered her with a series of irrelevant and medically inappropriate questions for long periods while ogling and groping her breasts and unclothed body. While ogling and groping JANE DOE #23's unclothed body, ROBERT HADDEN repeatedly told JANE DOE #23 "you're perfection", "your boyfriend is so lucky to have you" and "he would be crazy to lose you".

169. A Chaperone was present in the room during many of the verbal and physical assaults and witnessed ROBERT HADDEN's verbal and physical sexual abuse firsthand, yet did nothing to prevent or stop ROBERT HADDEN's sexual exploitation and abuse of Plaintiff JANE DOE #23. Other times, a Chaperone was not present - or would leave the room before the "examination" was complete at which point ROBERT HADDEN would continue to physically sexually exploit and abuse JANE DOE #23. At one visit, ROBERT HADDEN instructed the Chaperone to leave the room in the middle of the sexually exploitative and abusive "examination" — with JANE DOE #23 laying unclothed on the examination table. The Chaperone became startled, offering JANE DOE #23 only a look of sorrow as if to say "I know I shouldn't be leaving", yet still left the room and did absolutely nothing to protect JANE DOE #23 from the sexual exploitation and abuse that the Chaperone knew was taking place during the visit — by both the Chaperone and ROBERT HADDEN.

170. The abuse perpetrated by ROBERT HADDEN upon JANE DOE #23 includes, but is not limited to, performing serial, prolonged, medically-inappropriate, unnecessary and unwarranted breast examinations, serial, prolonged, medically-inappropriate, unnecessary, and unwarranted PAP Smears, vaginal exams, and "mole-checks" where ROBERT HADDEN would require JANE DOE #23 to lay on the table unclothed while he rubbed his hands up and down her body, groped her breasts, and "examined" her entire body and all private areas. All the while, ROBERT HADDEN would engage in idle chatter about JANE DOE #23, her body, or her boyfriend in furtherance of ROBERT HADDEN's never-ending sexual exploitation and grooming of female patients. During the serial, prolonged, medically-inappropriate unnecessary and unwarranted vaginal examinations that ROBERT HADDEN performed at practically every single visit, ROBERT HADDEN would repeatedly

penetrate JANE DOE #23 by inserting his fingers into JANE DOE #23's vagina. All of these so-called "examinations" were done in a deviant and sexual manner solely for ROBERT HADDEN's own prurient, deviant, sexual gratification.

171. During one of the later visits, ROBERT HADDEN instructed JANE DOE #23 to "be the last patient of the day". At the time, JANE DOE #23 thought this would enable her to more easily schedule an appointment to defendant "CORP. ENTITIES"' busy medical offices. JANE DOE #23, unknowingly exchanged her trust as a patient for the grooming and exploitation being offered by ROBERT HADDEN, and dutifully returned to defendants' offices for her scheduled follow up visits for more "examinations" as the last patient of the day.

172. Even as the last patient of the day, a Chaperone would still be in the office. But ROBERT HADDEN would tell the Chaperone to leave the room. JANE DOE #23 thought it was strange that ROBERT HADDEN would tell the Chaperone to leave, but she was just grateful to be able to have an appointment. During the exploitative and abusive visits, ROBERT HADDEN would spend a long time doing PAP Smears and vaginal examinations. Since ROBERT HADDEN was one of the first gynecologists that JANE DOE #23 saw, this didn't seem abnormal at the time because she had very little to compare it to. During her final "last patient of the day" visit, ROBERT HADDEN instructed JANE DOE #23 that she needed yet another vaginal examination. During the so called "examination" , while JANE DOE #23 was lying on the examination table, with her legs draped, and her view obstructed, ROBERT HADDEN dipped his head down and surreptitiously touched his mouth to JANE DOE #23's vagina. Immediately as JANE DOE #23 felt his mouth on her vagina, she thought to herself "that could not have just happened, did it, did that really just happen?" Confused, JANE

DOE #23 got dressed and left the office. JANE DOE #23 did not return to defendant

ROBERT HADDEN after that final visit during which he put his mouth on her vagina.

173. ROBERT HADDEN was well aware of the cognitive dissonance that his patients - who he

was sexually abusing - would experience with regard to their inability to come to grips with

the unfathomable idea that their own medical doctor was sexually exploiting and abusing

them - let alone putting his mouth on their vaginas during what was supposed to be a clinical

pelvic examination. ROBERT HADDEN used this knowledge and medical training to his

advantage while leveraging his position of status and authority bestowed on him by

COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW

YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES", to his advantage, and in

furtherance of his scheme to sexually abuse and exploit as many women as possible under

the guise of performing medical procedures. As a result, ROBERT HADDEN was enabled to

sexually abuse countless female patients of COLUMBIA UNIVERSITY and NEW YORK-

PRESBYTERIAN HOSPITAL, in a serial fashion, while carrying out his sick fantasies

surrounding doctor sexual abuse.

174. These events are not isolated, and they were not done outside the knowledge and awareness

of his employers ("CORP. ENTITIES"). ROBERT HADDEN was known as "a shark" - who

knew how to outmaneuver chaperones, make quick hits at sexually abusing female patients,

and keep going - amongst the medical assistants and chaperones with whom he worked. At

least one nurse who worked with ROBERT HADDEN in 1992-1993 walked in on ROBERT

HADDEN sexually abusing a female patient at defendant COLUMBIA UNIVERSITY's

Audubon Clinic. However, when the nurse reported the abuse ROBERT HADDEN was

committing to her supervisor, the supervisor's response was for her to just "keep quiet",

"stay with your doctor" and "don't let him get himself in trouble". COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES", have created an environment that was not only conducive to doctor sexual assaults, but actually enabled it. By failing to properly educate, train, empower, and support the medical assistants and chaperones, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES" created an environment where patients were duped into believing that there was someone in the examination room who would keep them safe. But, in reality, the hidden imbalance of power that existed between the chaperones and medical doctors - where the chaperones were afraid to speak-up for fear of losing their jobs - had the practical effect of making doctor sexual abuse appear to be legitimate medical care.

175. For the sake of completeness, ROBERT HADDEN has pleaded guilty in Criminal Court to sexually abusing two-other patients female patients referenced above. One by licking her vagina during a purported vaginal examination - which was the second time that the patient stated ROBERT HADDEN had done it. And the other is when ROBERT HADDEN pleaded guilty to sexually abusing a separate female patient, who ROBERT HADDEN knew to be HIV positive, with his ungloved hands.

176. Because Defendant "CORP. ENTITIES"' Chaperones stood by silently and watched - and also actively participated in the sexual exploitation, abuse, and coverup of ROBERT HADDEN's serial sexual exploitation and abuse by validating the abuse as a form of legitimate medical treatment, condoning the sexually exploitative and abusive acts, pretending as thought the abuse was legitimate medical treatment, and failing to prevent or

stop ROBERT HADDEN - JANE DOE #23 reasonably believed that ROBERT HADDEN must have been conducting legitimate medical treatment while he was ogling, groping, verbally assaulting, and physically abusing, violating, sexually abusing, and penetrating her, although she now knows that ROBERT HADDEN's conduct was, in fact, sexual exploitation and abuse. Despite the "CORP. ENTITIES"' chaperones' first-hand observation of the abuse and ROBERT HADDEN's history of evading their observation by telling the Chaperones to leave the room, and "CORP. ENTITIES" prior reports about ROBERT HADDEN's sexual misconduct, Defendant "CORP. ENTITIES" and their agents, partners, servants and employees actively concealed JANE DOE #23's abuse and ROBERT HADDEN's sexually exploitative behavior, and inexplicably continued to allow ROBERT HADDEN to have unfettered sexual access to COLUMBIA UNIVERSITY MEDICAL CENTER, NEW YORK-PRESBYTERIAN HOSPITAL, and Defendant "CORP. ENTITIES"' female patient populations. Based on the words and conduct of each of the defendants, their agents, servants, and/or employees, plaintiff was induced to not file a complaint earlier. Further, plaintiff has been emotionally traumatized by the defendants' conduct and abuse, and has lacked the capacity to deal with, and confront, the important legal issues and rights herein until the present.

177. Finally, plaintiffs have a good-faith reason to believe COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and defendant "CORP. ENTITIES" have colluded with ROBERT HADDEN to permit and enable ROBERT HADDEN to apply for, and obtain, certain "disability benefits" which now allow ROBERT HADDEN to receive financial compensation while enjoying what may otherwise be considered a "paid, early retirement" from the practice of medicine.

Defendants' collective complicity - and active fraud - in helping ROBERT HADDEN to support himself financially after sexually, and feloniously, abusing countless female patients over the course of two-decades is worthy of criminal investigation, prosecution, and intense public scrutiny. Particularly in this day and age, the use of either Corporate or State taxpayer-dollars for the financial benefit of a convicted sexual predator seems like the exact kind of thing that would be a notable and newsworthy story.

## JANE DOE #26

178. Plaintiff JANE DOE #26 was born in 1977, and currently resides in the State of New York. JANE DOE #26 was an OBGYN patient of defendants COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS; PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE, LLC; COLUMBIA CORNELL NETWORK PHYSICIANS, INC. (Hereinafter "CORP. ENTITIES") and their agent, servant, and/or employee ROBERT HADDEN, during which time JANE DOE #26 was serially sexually exploited and abused by ROBERT HADDEN — who was enabled by the acts and omissions of the within named defendants and "CORP. ENTITIES".

179. Plaintiff JANE DOE #26 saw ROBERT HADDEN at "CORP. ENTITIES" medical facilities between December 2004 and June 2007 for what was supposed to be gynecological and obstetrical care and treatment which included her pregnancy with her first child.

Beginning with JANE DOE #26's initial office visit, defendant ROBERT HADDEN began subjecting her to a course of predatory grooming, boundary violating, mental, emotional, and physical sexual exploitation and abuse. During the visits, ROBERT HADDEN assailed JANE DOE #26 with a barrage of wily, inappropriate, invasive and exploitive questions and statements about her sexual history, and the use of pornography. ROBERT HADDEN's approach to his predatory grooming tactics was a mix of being awkward, authoritative, self-deprecating, disarming, self-pitying, alarming, and overtly offensive.

180. While ROBERT HADDEN was actively and verbally breaking down JANE DOE #26's boundaries, he forced JANE DOE #26 to answer questions about the number of sexual partners and orgasms she had experienced, whether or not her spouse/partner was able "satisfy her", and peppered her with a series of irrelevant and medically inappropriate questions for long periods of time about the different kinds of sexual positions she enjoyed while ogling her unclothed body. A Chaperone was rarely present in the room during the verbal and physical assaults being levied by ROBERT HADDEN, and to the extent one was present, nothing was done to prevent or stop ROBERT HADDEN's sexual exploitation and abuse of Plaintiff JANE DOE #26.

181. During several of the assaults ROBERT HADDEN performed prolonged breast and vaginal examinations in a rough and domineering manner, with his bare, ungloved hands. While performing the serial, prolonged, and medically inappropriate breast examinations ROBERT HADDEN would continue to groom JANE DOE #26 by disclosing personal and private information about himself and his family. ROBERT HADDEN would routinely perform his invasive and prolonged "examinations" of JANE DOE #26's breasts while making her both stand-up and lay down on the examining table.

182. During another assault, ROBERT HADDEN make wholly inappropriate remarks about JANE DOE #26's breasts while remarking about inappropriate sexual activity, sexual positions, and making unprofessional, offensive "dirty jokes" - all while JANE DOE #26 was unclothed and just trying to obtain basic medical care.

183. Because Defendant "CORP. ENTITIES"' failed to provide Chaperones -- and when they did provide Chaperones, the Chaperones stood by silently and/or left the room as ROBERT HADDEN sexually exploited and abused plaintiff JANE DOE #26 -- JANE DOE #26 reasonably believed that ROBERT HADDEN was conducting legitimate medical treatment while he was ogling, groping, verbally assaulting, and physically abusing, violating, sexually abusing, and penetrating her, although she now knows that ROBERT HADDEN's conduct was, in fact, sexual exploitation and abuse. Despite the "CORP. ENTITIES"' chaperones' first-hand observation of the abuse, and "CORP. ENTITIES" prior reports about ROBERT HADDEN's sexual misconduct, Defendant "CORP. ENTITIES" and their agents, partners, servants and employees inexplicably continued to allow ROBERT HADDEN to have unfettered sexual access to COLUMBIA UNIVERSITY MEDICAL CENTER, NEW YORK-PRESBYTERIAN HOSPITAL, and Defendant "CORP. ENTITIES"' female patient populations. Based on the words and conduct of each of the defendants, their agents, servants, and/or employees, plaintiff was induced to not file a complaint earlier. Further, plaintiff has been emotionally traumatized by the defendants' conduct and abuse, and has lacked the capacity to deal with, and confront, the important legal issues and rights herein until the present.

184. Further, the sexual abuse and exploitation committed by ROBERT HADDEN, and enabled by "CORP. ENTITIES" including COLUMBIA UNIVERSITY, THE TRUSTEES OF

COLUMBIA UNIVERSITY, and NEW YORK PRESBYTERIAN HOSPITAL, continues to profoundly and negatively affect JANE DOE #26 to this date knowing that ROBERT HADDEN has still not been brought to justice, nor have the "CORP. ENTITIES" taken responsibility for enabling the abuse to occur for over 20-years at their facilities.

185. Finally, defendants, their agents, servants, and/or employees had a moral, ethical, and legal duty to timely and properly attend to and treat the within named patients in a manner that is consistent with the standards of safe and accepted medical practices, free of sexual exploitation, predatory grooming, sexual harassment and sexual abuse.

186. Defendants, their agents, servants, and/or employees violated their duties by committing and enabling the sexual exploitation, predatory grooming, sexual harassment and sexual abuse of each of the within named plaintiffs - and countless of other female patients of defendant CORP. ENTITIES.

187. Defendants' individual and collective violations of the duties owed to the herein named plaintiffs, and countless other women, have resulted in permanent and severe injuries to the herein named plaintiffs in an amount which exceeds the jurisdiction of all other courts.

### JANE DOE #27

188. Plaintiff JANE DOE #27 was born in 1972 and currently resides in the Bronx in the State of New York. Plaintiff JANE DOE #27 was an OBGYN patient of defendants COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE

OF PHYSICIANS AND SURGEONS; PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE, LLC; COLUMBIA CORNELL NETWORK PHYSICIANS, INC. (Hereinafter "CORP. ENTITIES") and their agent, servant, and/or employee ROBERT HADDEN, during which time JANE DOE #27 was serially sexually exploited and abused by ROBERT HADDEN — who was enabled by the acts and omissions of the within named defendants and "CORP. ENTITIES".

189. Plaintiff JANE DOE #27 was a patient of defendants and their medical facilities between January 2008 and August 2012 for what was supposed to be gynecological and obstetrical care and treatment. Beginning with JANE DOE #27's initial office visit, defendant ROBERT HADDEN began subjecting her to a course of predatory grooming, boundary violating, mental, emotional, and physical sexual exploitation and abuse. During the visits, ROBERT HADDEN assailed JANE DOE #27 with a barrage of wily, inappropriate, invasive and exploitive questions and statements about her body and physical appearance.

190. While ROBERT HADDEN was actively and verbally breaking down JANE DOE #27's boundaries, he would perform serial vaginal examinations and physical examinations for no medical purpose. During these purported examinations a Chaperone was present in the room during some of the verbal and physical assaults and witnessed ROBERT HADDEN's verbal and physical sexual abuse firsthand, yet did nothing to prevent, or stop, ROBERT HADDEN's sexual exploitation and abuse of Plaintiff JANE DOE #27. Other times, no chaperone would be present at all,

191. ROBERT HADDEN was well aware of the cognitive dissonance that his patients - who he was sexually abusing - would experience with regard to their inability to come to grips with the unfathomable thought that their own medical doctor was sexually exploiting and abusing

them. ROBERT HADDEN used this knowledge and medical training to his advantage while leveraging his position of status and authority bestowed on him by COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES", to his benefit, advantage, and in furtherance of his scheme to sexually abuse and exploit as many women as possible under the guise of performing medical procedures. As a result, ROBERT HADDEN was enabled to sexually abuse countless female patients of COLUMBIA UNIVERSITY and NEW YORK-PRESBYTERIAN HOSPITAL, in a serial fashion, while carrying out his sick fantasies surrounding doctor sexual abuse.

192. To date, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES" have failed to inform any of their patients that ROBERT HADDEN is a convicted sexual predator. Instead of disclosing to their patients, and the public at large, that they had exposed their female patients to a sexual predator for over 20-years, the defendants and "CORP. ENTITIES", including COLUMBIA UNIVERSITY and THE TRUSTEES OF COLUMBIA UNIVERSITY, kept ROBERT HADDEN's profile and photograph on the CUMC.edu website for several years after ROBERT HADDEN was indicted for sexually exploiting and abusing six (6) of their own patients. This was a prosecution where 19 survivors-witnesses of ROBERT HADDEN's sexual abuse came forward, including a nurse-witness who worked with ROBERT HADDEN and walked-in on him sexually abusing a young, female, Hispanic patient back in 1992-1993. Further, defendants continued to maintain his profile and listing as part of the "CORP. ENTITIES"'s OBGYN practice group through 2013.

193. Because Defendant "CORP. ENTITIES"' Chaperones stood by, silently, as ROBERT HADDEN sexually exploited and abused Plaintiff JANE DOE #27, reasonably believed that ROBERT HADDEN was conducting legitimate medical treatment while he was ogling, groping, verbally assaulting, and physically abusing, violating, sexually abusing, and penetrating her, although she now knows that ROBERT HADDEN's conduct was, in fact, sexual exploitation and abuse. Despite the "CORP. ENTITIES"' chaperones' first-hand observation of the abuse, and "CORP. ENTITIES" prior reports about ROBERT HADDEN's sexual misconduct, Defendant "CORP. ENTITIES" and their agents, servants and employees actively concealed the sexually exploitative behavior and abuse being perpetrated by ROBERT HADDEN, as well as the complaints of HADDEN's sexually exploitative behavior and abuse, and inexplicably continued to allow ROBERT HADDEN to have unfettered sexual access to COLUMBIA UNIVERSITY MEDICAL CENTER, NEW YORK-PRESBYTERIAN HOSPITAL, and Defendant "CORP. ENTITIES"' female patient populations. Based on the words and conduct of each of the defendants, their agents, servants, and/or employees, plaintiff was induced to not file a complaint earlier. Further, plaintiff has been emotionally traumatized by the defendants' conduct and abuse, and has lacked the capacity to deal with, and confront, the important legal issues and rights herein until the present.

194. Finally, plaintiffs have a good-faith reason to believe COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and defendant "CORP. ENTITIES" have colluded with ROBERT HADDEN in order to enable and permit ROBERT HADDEN to apply, and obtain approval, for certain "disability benefits" that enable ROBERT HADDEN to continue to receive financial support and enjoy

what might otherwise be considered a paid, "early retirement". Defendants' collective complicity - and active fraud - in helping ROBERT HADDEN to support himself financially after sexually, and feloniously, abusing countless female patients over the course of two-decades is worthy of a criminal investigation, prosecution, and intense public scrutiny. Further, this directly causes JANE DOE #27 to feel even more exploited, marginalized and trivialized.

195. Defendants' individual and collective violations of the duties owed to the herein named plaintiffs, and countless other women, have resulted in permanent and severe injuries to the herein named plaintiffs in an amount which exceeds the jurisdiction of all other courts.

### JANE DOE #28

196. Plaintiff JANE DOE #28 was born in 1980, and currently resides in the State of New York. JANE DOE #28 was a patient of defendants COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS; PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE, LLC; COLUMBIA CORNELL NETWORK PHYSICIANS, INC., (Hereinafter "CORP. ENTITIES") and their agent, servant, and/or employee ROBERT HADDEN, during which time JANE DOE #28 was serially sexually exploited and abused by ROBERT HADDEN — who was enabled by the acts and omissions of the within named defendants and "CORP. ENTITIES".

197. Plaintiff JANE DOE #28 saw ROBERT HADDEN at "CORP. ENTITIES" medical facilities for what was supposed to be OBGYN care and treatment between 2002 and August 2012. Beginning with JANE DOE #28's initial office visit, defendant ROBERT HADDEN began subjecting her to a course of predatory grooming, boundary violating, mental, emotional, and physical sexual abuse. During the visits, ROBERT HADDEN assailed JANE DOE #28 with a barrage of wily, inappropriate, invasive and exploitive questions and statements about her body, appearance, sexual history, and sexual activity. ROBERT HADDEN's approach to grooming JANE DOE #28 was a mix of being authoritative, professional, awkward, self-deprecating, disarming, self-pitying, and sexually inappropriate.

198. While ROBERT HADDEN was actively and verbally breaking down JANE DOE #28's boundaries, he forced JANE DOE #28 to answer questions about herself and her partner, and peppered her with a series of irrelevant and medically inappropriate questions for long periods while ogling and groping her breasts and unclothed body. While ogling and groping JANE DOE #28's unclothed body, ROBERT HADDEN repeatedly told JANE DOE #28 "you're looking good", and after she had her child that her body was "back to normal".

199. A Chaperone was present in the room during many of the verbal and physical assaults and witnessed ROBERT HADDEN's verbal and physical sexual abuse firsthand, yet did nothing to prevent or stop ROBERT HADDEN's sexual exploitation and abuse of Plaintiff JANE DOE #28. Other times, a Chaperone was not present - or would leave the room before the "examination" was complete at which point ROBERT HADDEN would continue to physically sexually exploit and abuse JANE DOE #28.

200. During some of the visits, defendant ROBERT HADDEN would declare the need to perform unplanned and medically unnecessary "mole checks", and during other visits he

would perform serial and medically unnecessary PAP smears. All in an effort to get JANE DOE #28 unclothed so that he could view, grope and molest JANE DOE #28's naked body.

201. At a routine post-partum visit after JANE DOE #28 delivered her child, ROBERT HADDEN began asking her detailed questions about her sex life with her husband. The questions were awkward and were being posed for no-legitimate medical purpose. On her way out of the exam room, after being peppered with these questions, ROBERT HADDEN stood up and approached JANE DOE #28, embraced her in a hug, and attempted to kiss her on the lips. Quickly, JANE DOE #28 turned her head and ROBERT HADDEN's lips landed on right cheek. Stunned and confused, JANE DOE #28 walked out of the office in a daze, unable to process what had just happened.

202. The abuse perpetrated by ROBERT HADDEN upon JANE DOE #28 includes, but is not limited to, performing serial, prolonged, medically-inappropriate, unnecessary and unwarranted breast examinations, serial, prolonged, medically-inappropriate, unnecessary, and unwarranted PAP Smears, vaginal exams, and "mole-checks" where ROBERT HADDEN would require JANE DOE #28 to lay on the table unclothed while he rubbed his hands up and down her body, groped her breasts, and "examined" her entire body and all private areas. All the while, ROBERT HADDEN would engage in idle chatter about JANE DOE #28, her body, or her husband in furtherance of ROBERT HADDEN's never-ending sexual exploitation and grooming of female patients.

203. ROBERT HADDEN was well aware of the cognitive dissonance that his patients - who he was sexually abusing - would experience with regard to their inability to come to grips with the unfathomable idea that their own medical doctor was sexually exploiting and abusing them. All the while ROBERT HADDEN was leveraging his position of status and authority

bestowed on him by COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES", to his advantage, and in furtherance of his scheme to sexually abuse and exploit as many women as possible under the guise of performing medical procedures. As a result, ROBERT HADDEN was enabled to sexually abuse countless female patients of COLUMBIA UNIVERSITY and NEW YORK-PRESBYTERIAN HOSPITAL, in a serial fashion, while carrying out his sick fantasies surrounding doctor sexual abuse.

204. Because Defendant "CORP. ENTITIES"' Chaperones stood by silently and watched - and also actively participated in the sexual exploitation, abuse, and coverup of ROBERT HADDEN's serial sexual exploitation and abuse by validating the abuse as a form of legitimate medical treatment, condoning the sexually exploitative and abusive acts, pretending as though the abuse was legitimate medical treatment, and failing to prevent or stop ROBERT HADDEN - JANE DOE #28 reasonably believed that ROBERT HADDEN must have been conducting legitimate medical treatment while he was ogling, groping, verbally assaulting, and physically abusing, violating, sexually abusing, and penetrating her, although she now knows that ROBERT HADDEN's conduct was, in fact, sexual exploitation and abuse. Despite the "CORP. ENTITIES"' chaperones' first-hand observation of the abuse and ROBERT HADDEN's history of evading their observation by telling the Chaperones to leave the room, and "CORP. ENTITIES" prior reports about ROBERT HADDEN's sexual misconduct, Defendant "CORP. ENTITIES" and their agents, partners, servants and employees actively concealed JANE DOE #28's abuse and ROBERT HADDEN's sexually exploitative behavior, and inexplicably continued to allow ROBERT HADDEN to have unfettered sexual access to COLUMBIA UNIVERSITY MEDICAL CENTER, NEW

YORK-PRESBYTERIAN HOSPITAL, and Defendant "CORP. ENTITIES"' female patient populations. Based on the words and conduct of each of the defendants, their agents, servants, and/or employees, plaintiff was induced to not file a complaint earlier. Further, plaintiff has been emotionally traumatized by the defendants' conduct and abuse, and has lacked the capacity to deal with, and confront, the important legal issues and rights herein until the present.

205. Finally, plaintiffs have a good-faith reason to believe COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and defendant "CORP. ENTITIES" have colluded with ROBERT HADDEN to permit and enable ROBERT HADDEN to apply for, and obtain, certain "disability benefits" which now allow ROBERT HADDEN to receive financial compensation while enjoying what may otherwise be considered a "paid, early retirement" from the practice of medicine. Defendants' collective complicity - and active fraud - in helping ROBERT HADDEN to support himself financially after sexually, and feloniously, abusing countless female patients over the course of two-decades is worthy of a criminal investigation, prosecution, and intense public scrutiny.

206. To this day, plaintiff JANE DOE #28 has been unable to process this abuse and is undergoing professional psychological counseling in order to help her try to understand and manage the indelible memories of exploitation and abuse that she now carries around with her every day of her life. As a result of this, she finds it difficult to function like a "normal person" in society and remains unable to comprehend the basis and reasons that her deep trust in the medical profession has been, and continues to be, violated by each of the defendants herein.

207. Defendants' individual and collective violations of the duties owed to the herein named plaintiffs, and countless other women, have resulted in permanent and severe injuries to the herein named plaintiffs in an amount which exceeds the jurisdiction of all other courts.

### JANE DOE #30

208. Plaintiff JANE DOE #30 was born in 1978, and currently resides in the State of South Carolina. Plaintiff JANE DOE #30 was an OBGYN patient of defendants COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS; PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE, LLC; COLUMBIA CORNELL NETWORK PHYSICIANS, INC. (Hereinafter "CORP. ENTITIES") and their agent, servant, and/or employee ROBERT HADDEN, during which time JANE DOE #30 was serially sexually exploited and abused by ROBERT HADDEN — who was enabled by the acts and omissions of the within named defendants and "CORP. ENTITIES".

209. Plaintiff JANE DOE #30 saw ROBERT HADDEN at "CORP. ENTITIES" medical facilities between 2002 and 2010 for what was supposed to be gynecologic and obstetric care and treatment. Beginning with JANE DOE #30's initial office visit, defendant ROBERT HADDEN began subjecting her to a course of predatory grooming, boundary violating, mental, emotional, and physical sexual exploitation and abuse. During the visits, ROBERT HADDEN assailed JANE DOE #30 with a barrage of wily, inappropriate, invasive and

exploitive questions and statements about her body, and physical appearance. ROBERT HADDEN's approach to grooming was a mix of being awkward, authoritative, self-deprecating, disarming, self-pitying, alarming, and overtly offensive.

210. While ROBERT HADDEN was actively and verbally breaking down JANE DOE #30's boundaries, he peppered her with a series of irrelevant and medically inappropriate questions for long periods while ogling and groping her breasts and unclothed body. At each visit ROBERT HADDEN required JANE DOE #30 to get completely naked - in his presence - as he ogled and exploited her. A Chaperone was present in the room during some of the verbal and physical assaults and witnessed ROBERT HADDEN's verbal and physical sexual abuse firsthand, yet did nothing to prevent or stop ROBERT HADDEN's sexual exploitation and abuse of Plaintiff JANE DOE #30. Other times, a Chaperone was not present - or would leave the room before the "examination" was complete at which point ROBERT HADDEN would continue to physically sexually exploit and abuse JANE DOE #30. This included, but is not limited to, performing serial, prolonged, and medically inappropriate breast examinations, serial and medically-inappropriate PAP smears and vaginal exams

211. All the while, ROBERT HADDEN would engage in idle chatter or begin divulging wholly improper and inappropriate personal information about himself and family - all in furtherance of his never-ending sexual exploitation and grooming of female patients. During the serial, and medically non-indicated vaginal examinations that ROBERT HADDEN would also examine JANE DOE #30 with ungloved hands.

212. ROBERT HADDEN knowingly and intentionally used the position of power and authority bestowed on him by defendant CORP. ENTITIES to manipulate and exploit their female patients. With regard to JANE DOE #30, ROBERT HADDEN used both his position as a

medical doctor at COLUMBIA UNIVERSITY, and his identification as a "Catholic", in order to control and abuse this patient. At one visit while ROBERT HADDEN was grooming JANE DOE #30, he told her that her feelings of discomfort around him as a male were the result of the guilt instilled in her by her "typical Irish Catholic parents". Predator ROBERT HADDEN was constantly probing to find out where each of patients' weaknesses were, and when he found them, he would then use all of his medical training, intelligence and the position of trust and authority granted to him by CORP. ENTITIES, to exploit those female patients for his maximum, deviant benefit.

213. Defendant CORP. ENTITIES knew and/or should have know of these risk, and yet they ignored the reports, failed to supervise ROBERT HADDEN, failed to properly train and supervise their ancillary staff, and violated the duties they owed to their patients.

214. During one visit ROBERT HADDEN proceeded to ask JANE DOE #30 what her preferred method of hair removal in her bikini area was, while "complimenting" the "great job" she was doing with her chosen method.

215. ROBERT HADDEN had a habit of performing multiple breast exams on JANE DOE #30 during the same visit, the second "examination" was always done when a nurse was not in the room.

216. During some visits ROBERT HADDEN would "accidentally" touch parts of JANE DOE #30's vagina with his hands during what are now believed to be wholly unnecessary vaginal examinations and serial Pap smears. These assaults were frequently performed when a nurse would leave the room, including one at defendants' Hospital after delivery her son. During this "vaginal exam" while JANE DOE #30 was alone and not in fully in control of her own faculties due to pain medication administered to her following a painful delivery,

217. During another instance, ROBERT HADDEN directed JANE DOE #30 to lay down and on her side so he could examine her anus. ROBERT HADDEN's decision to perform this anal examination of JANE DOE #30 occurred after she told him that she had cold sores on her mouth — and she simply wanted to know whether a certain medication for genital herpes was effective for cold sores. It remains unknown why ROBERT HADDEN felt that performing an anal examination was a prerequisite to answering JANE DOE #30's question, but it is clear that ROBERT HADDEN's actions have no basis in medically necessary care and treatment. At the next office visit, a Chaperone was present for part of the visit. During that visit, JANE DOE #30 went to lay on my side at the end of the exam - as she had been taught - at which point ROBERT HADDEN became startled, looked sideways at the nurse and said "Oh no! You don't need to do that." The Chaperone did not say anything, but instead simply continued to look straight ahead. In retrospect, it is clear that this sort of "misunderstanding" was not a surprise to her.

218. Following the birth of her child, ROBERT HADDEN would require JANE DOE #30 to remove her top so that he could fondle and grope her while expressing breast milk from her engorged breasts and nipples. This so-called "examination" was performed by ROBERT HADDEN despite JANE DOE #30 telling him that she was doing fine breast feeding and had been working with a lactation consultant.

219. It is now believed that defendants' Chaperone(s) were aware of ROBERT HADDEN's proclivities to exploit and abuse female patients, and was/were part of the abuse. At one particular visit during JANE DOE #30's pregnancy, ROBERT HADDEN's nurse informed her that he would be checking her cervix at the next exam, and indicated that JANE DOE

#30 should groom her bikini area prior as that it was ROBERT HADDEN's "preference" that patients were waxed or shaved prior to their vaginal examinations.

220. JANE DOE #30 has endured indescribable conflict, confusion, and mental injury due to her inability to comprehend the reasons and level of depravity of the abuse inflicted upon her by ROBERT HADDEN.

221. ROBERT HADDEN was well aware of the cognitive dissonance that his patients - who he was sexually abusing - would experience with regard to their inability to come to grips with the unfathomable idea that their own medical doctor was sexually exploiting and abusing them. ROBERT HADDEN used this knowledge and medical training to his advantage while leveraging his position of status and authority bestowed on him by COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK-PRESBYTERIAN HOSPITAL, and "CORP. ENTITIES", to his advantage, and in furtherance of his scheme to sexually abuse and exploit as many women as possible under the guise of performing medical procedures. As a result, ROBERT HADDEN was enabled to sexually abuse countless female patients of COLUMBIA UNIVERSITY and NEW YORK-PRESBYTERIAN HOSPITAL, in a serial fashion, while carrying out his sick fantasies surrounding doctor sexual abuse.

222. Because Defendant "CORP. ENTITIES"' Chaperones stood by, silently, as ROBERT HADDEN sexually exploited and abused Plaintiff JANE DOE #30, JANE DOE #30 reasonably believed that ROBERT HADDEN was conducting legitimate medical treatment while he was ogling, groping, verbally assaulting, and physically abusing, violating, sexually abusing, expressing breast milk for no medical purpose during the postpartum period, and penetrating her, although she now knows that ROBERT HADDEN's conduct was, in fact,

sexual exploitation and abuse. Despite the "CORP. ENTITIES"' chaperones' first-hand observation of the abuse, and "CORP. ENTITIES" prior reports about ROBERT HADDEN's sexual misconduct, Defendant "CORP. ENTITIES" and their agents, partners, servants and employees actively concealed the sexually exploitative behavior and abuse being perpetrated by ROBERT HADDEN, as well as the complaints of HADDEN's sexually exploitative behavior and abuse, and inexplicably continued to allow ROBERT HADDEN to have unfettered sexual access to COLUMBIA UNIVERSITY MEDICAL CENTER, NEW YORK-PRESBYTERIAN HOSPITAL, and Defendant "CORP. ENTITIES"' female patient populations. Based on the words and conduct of each of the defendants, their agents, servants, and/or employees, plaintiff was induced to not file a complaint earlier. Further, plaintiff has been emotionally traumatized by the defendants' conduct and abuse, and has lacked the capacity to deal with, and confront, the important legal issues and rights herein until the present.

223. Finally, as a result of being listed as the physician in attendance at the April 8, 2009 birth of JANE DOE #30's child, ROBERT HADDEN's name is present on the original birth certificate of her son. Every time JANE DOE #30 recalls her child's birth, images and memories of the abuse flood her mind and she is re-traumatized by those memories. The thought, and sight, of this sick sexual predator's name on the birth certificate of her child is an emotional trigger which continues to bother her to this day. Yet, to date, Columbia University, New York-Presbyterian Hospital, and their agents, partners, servants, and/or employees have refused to issue either an apology, or a letter which will allow the removal of ROBERT HADDEN's name from her child's birth certificate. Not only have defendants' refused to stand with survivors and support them in their effort of ridding ROBERT

HADDEN's name from their children's birth certificates, the defendants have done everything possible to try and ensure that ROBERT HADDEN's name does not get removed.

224. On February 7, 2019, the New York City Council conducted a public hearing in an effort to pass a bill that would allow women, who were sexually abused by their doctor, to remove the predator's name from their child's birth certificates. During this recent hearing, an agent for defendant CORP. ENTITIES named GRETCHEN VAN WYE - serving in a dual role as a Co-Chair of the New York City Department of Health and Mental Hygiene - made a personal appearance with the sole-purpose of publicly objecting to the bill, which thwarted the efforts of these women to obtain some small degree of closure around this issue. As a result of Ms. Van Wye's actions, the bill was not passed by City Council and ROBERT HADDEN's name remains on the birth certificates of the children whose mothers ROBERT HADDEN sexually abused.

225. Defendants' individual and collective violations of the duties owed to the herein named plaintiffs, and countless other women, have resulted in permanent and severe injuries to the herein named plaintiffs in an amount which exceeds the jurisdiction of all other courts.

### DEFENDANT ROBERT HADDEN – THE PERPETRATOR

226. Defendant ROBERT HADDEN, at all times mentioned herein was and is an adult male, who worked at defendant "CORP. ENTITIES", and who plaintiffs are informed and believe lives in the State of New Jersey during the period of time during which the predatory grooming, sexual exploitation, molestation, harassment, and sexual abuse took place. Plaintiffs are informed and believe, and on this basis state, that ROBERT HADDEN received his medical degree from the New York Medical College in 1987 and completed his medical internship and residency in Obstetrics and Gynecology at Columbia University in New York,

NY. Upon completion of his residency, ROBERT HADDEN was hired by Defendant "CORP. ENTITIES" including COLUMBIA UNIVERSITY and THE TRUSTEES OF COLUMBIA UNIVERSITY as a full-time gynecologist at COLUMBIA UNIVERSITY's medical centers, offices, hospitals, and related clinics, and was employed in that capacity until 2012, when Defendants allowed ROBERT HADDEN to quietly and surreptitiously take an alleged "leave of absence", with a financial bonus paid by Defendants and/or their related entities to ROBERT HADDEN, in a deliberate and covert attempt to continue concealing ROBERT HADDEN's decades of sexual exploitation and abuse from Plaintiffs and the countless other female patients that ROBERT HADDEN sexually abused over the course of more than two (2) decades, and also to hide the real facts constituting the abuse from law enforcement, the State of New York Medical Board/OPMC, the public at large, and other competing universities and hospitals.

227. During his 20 year tenure at COLUMBIA UNIVERSITY and its related "CORP. ENTITIES", Plaintiffs are informed and believe, and on this basis state, that ROBERT HADDEN sexually exploited, abused and molested hundreds of female patients, including Plaintiffs, through the use of his position, and authority as a full-time gynecologist employed by defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES", as well as their offices, clinics and other entities and locations.

228. It was only in 2012, when Defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES", paid ROBERT HADDEN a substantial financial bonus-incentive so that HADDEN would quietly resign —

such that Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES", could continue to actively conceal the myriad complaints they had received about ROBERT HADDEN's sexually abusive behavior that had been perpetrated against and upon female patients over the course of the past couple decades — that the systematic sexual abuse, sexual exploitation, and molestation of female patients being committed upon their premises and in their hospitals, offices and clinics by ROBERT HADDEN was finally halted.

229. At all times herein stated, ROBERT HADDEN was an agent, servant and/or employee of Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES", its medical clinics, facilities and locations, and/or was under their complete control and/or direct supervision.

230. ROBERT HADDEN was retained and/or contracted by Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES", as an Obstetrician-Gynecologist to provide medical care and treatment to women as private patients, service patients, and also as students who were attending COLUMBIA UNIVERSITY as undergraduate and graduate patients, many of whom had never received any previous gynecological or obstetric care or treatment before. It was through this position of access, trust and authority, that ROBERT HADDEN sexually exploited and abused countless women in an effort to feed his insatiable and depraved sexual desires. All of the sexually exploitative, manipulative, abusive and harassing conduct stated herein was done for ROBERT HADDEN's own sexual gratification, and was rooted in the willingness to put his own deviant sexual desires above the need to provide safe and

professional medical services to Plaintiffs MARISSA HOECHSTETTER, JANE DOE #8,

JANE DOE #9, JANE DOE #10, JANE DOE #11, JANE DOE #12, JANE DOE #13, JANE

DOE #14, JANE DOE #15, JANE DOE #16, JANE DOE #17, JANE DOE #18, JANE DOE

#19, JANE DOE #21, JANE DOE #22, JANE DOE #23, JANE DOE #26, JANE DOE #27,

JANE DOE #28 and JANE DOE #30.

231. Since ROBERT HADDEN has been prosecuted and convicted of a felony for the conduct

stated herein, Plaintiffs further seek attorneys' fees against ROBERT HADDEN and CORP.

ENTITIES.

**DEFENDANTS COLUMBIA UNIVERSITY; THE NEW YORK AND PRESBYTERIAN
HOSPITAL; COLUMBIA PRESBYTERIAN MEDICAL CENTER; COLUMBIA
UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL
CENTER, EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF
COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY
COLLEGE OF PHYSICIANS AND SURGEONS; PRESBYTERIAN HOSPITAL
PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE,
LLC; and COLUMBIA CORNELL NETWORK PHYSICIANS, INC. (CORP. ENTITIES)
- THE ENABLERS**

232. Defendant COLUMBIA UNIVERSITY at all times mentioned herein was and is a New

York Corporation, having its principal place of business in the State of New York, County of

New York. Plaintiffs are informed and believe COLUMBIA UNIVERSITY and "CORP.

ENTITIES" are part of a private research university, established on July 17, 1754, located in

New York, New York. Defendant COLUMBIA UNIVERSITY boasts of being "a world-

renowned Ivy League institution", "a world-class university dedicated to teaching, research,

and clinical care", and of having "an illustrious 250 year history, an impeccable record of

academic excellence and an extensive roster of distinguished alumni and faculty".

COLUMBIA UNIVERSITY and its affiliated medical facilities including New York-

Presbyterian Hospital boast of having "More Top-Doctors Than Any Other U.S. hospital."

Defendant COLUMBIA UNIVERSITY states as follows: "Columbia University expects all

officers of instruction, research, libraries, athletics, and administration; support staff; and students to maintain the highest standards of ethical conduct." Columbia University set forth a Code of Ethics as follows:

### Principles

The basic principles of Ethical Conduct are:

1. Be honest, ethical and truthful.

2. Obey the law.

3. Follow University policies and procedures.

### Procedures

1. Report conduct that concerns you. If you believe that an activity may be illegal, unethical or otherwise troubling, you should report it to your supervisor.

2. An individual's failure to live up to these principles may result in disciplinary action, including suspension, termination, and monetary fines consistent with University policy.

### Respect for Others

Respect for others is the central principle that governs interactions between people at Columbia University. Two primary expectations that flow from this principle are to act with civility and to refrain from abuse of power. Respect for others is expected in peer to peer relationships, between service providers and people within and outside of the Columbia community, between people who are clients or customers and service providers at the University, and within a supervisory context (e.g., manager to employee and employee to manager).

### Where should I go with a Concern?

"The first recommended resource for a clarification on a policy, regulation or law is your direct supervisor."

233. Upon information and belief, Defendant COLUMBIA UNIVERSITY maintains in excess of a $10,900,000,000.00 ($10.9 billion) endowment as of June 30, 2018, and a $345,900,000.00 ($345.9 million) joint budget with New York Presbyterian Hospital for the 2018 fiscal year.

Defendant COLUMBIA UNIVERSITY holds itself out to be one of the world's most elite, prestigious and reputable hospitals and higher learning institutions. Defendant COLUMBIA UNIVERSITY deliberately crafted this public image in order to actively conceal the fact that it employs a countless number of sexual predators in all areas of its university - including ROBERT HADDEN - a serial sexual predator, who COLUMBIA UNIVERSITY, the TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES" enabled to serially sexual assault its female patients at their medical office and clinics for over 20 years.

234. Defendant COLUMBIA UNIVERSITY at all times mentioned herein was and is a New York Corporation, having its principal place of business in the State of New York, County of New York.

235. Each of the plaintiffs herein were patients of COLUMBIA UNIVERSITY, and/or their agents, servants, employees, and CORP. ENTITIES.

236. Defendant TRUSTEES OF COLUMBIA UNIVERSITY at all times mentioned herein was and is a New York Corporation, having its principal place of business in the State of New York, County of New York. Upon information and belief, THE BOARD OF TRUSTEES OF COLUMBIA UNIVERSITY is the governing body of COLUMBIA UNIVERSITY and exercises the ultimate dominion and control of same. THE BOARD OF TRUSTEES OF COLUMBIA UNIVERSITY is comprised of a collection of well established, politically connected, businesspeople from within, and outside of, the City of New York.

237. Upon information and belief, Defendant THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK (hereinafter "TRUSTEES"), has no parent corporation and has no publicly held corporations that own 10% or more of its stock.

238. Upon information and belief, Defendant "TRUSTEES" is a domestic not-for-profit

corporation organized and existing under and by virtue of the laws of the State of New York with its principal offices located at 622 W. 168th Street, New York, NY 10032.

239. Upon information and belief, Defendant "TRUSTEES" is a domestic not-for-profit corporation organized and existing under and by virtue of the laws of the State of New York with its principal offices located at 622 W. 168th Street, New York, NY 10032.

240. Upon information and belief, Defendant "TRUSTEES" is a domestic not-for-profit corporation organized and existing under and by virtue of the laws of the State of New York with its principal offices located at 16 E. 60th Street, Suite 480, New York, NY 10022.

241. Upon information and belief, Defendant "TRUSTEES" oversees, operates, manages, and/or controls the obstetrics and gynecological service within COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL (hereinafter "NYPH"), and the Department of Obstetrics and Gynecology of the COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS (hereinafter "CUCPS"). Upon information and belief, Defendant NYPH and Defendant CUCPS, doing business as SLOANE HOSPITAL FOR WOMEN, is located at 161 Fort Washington Avenue, New York, NY 10032.

242. Upon information and belief, Defendant "TRUSTEES" oversees, operates, manages, and/or controls the obstetrics and gynecological service within COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL, and the Department of Obstetrics and Gynecology of the NEW YORK PRESBYTERIAN HOSPITAL. Upon information and belief, Defendant NYPH and Defendant TRUSTEES doing business as COLUMBIA PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES, is located at 16 E. 60th Street, Suite 408, New York, NY 10022.

243. Upon information and belief, Defendant "TRUSTEES" oversees, operates, manages, and/or

controls the obstetrics and gynecological service within COLUMBIA UNIVERSITY, COLUMBIA UNIVERSITY MEDICAL CENTER, and the Department of Obstetrics and Gynecology of the COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS. Upon information and belief, Defendant NYPH and Defendant CUCPS, doing business as EAST SIDE ASSOCIATES, is located at 16 E. 60th Street, Suite 408, New York, NY 10022.

244. Upon information and belief, Defendant COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS (hereinafter "CUCPS") is a domestic not-for-profit corporation organized and existing under and by virtue of the laws of the State of New York with its principal offices located at 622 W. 168th Street, New York, NY 10032.

245. Upon information and belief, Defendant THE NEW YORK AND PRESBYTERIAN HOSPITAL (hereinafter "NYPH") is a domestic not-for-profit corporation organized and existing under and by virtue of the laws of the State of New York with its principal offices located at 525 East 68th Street, New York, NY 10065.

246. Upon information and belief, SLOANE HOSPITAL FOR WOMEN serves as the obstetrics and gynecological service within THE NEW YORK AND PRESBYTERIAN HOSPITAL, and the Department of Obstetrics and Gynecology of the COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS. Upon information and belief, Defendant NYPH and Defendant CUCPS, doing business as SLOANE HOSPITAL FOR WOMEN, is located at 161 Fort Washington Avenue, New York, NY 10032.

247. Upon information and belief, Defendant COLUMBIA PRESBYTERIAN MEDICAL CENTER (hereinafter "CPMC") is a domestic not-for-profit corporation organized and existing under and by virtue of the laws of the State of New York with its principal offices

located at 525 East 68th Street, New York, NY 10065.

248. Upon information and belief, Defendant COLUMBIA UNIVERSITY MEDICAL CENTER (hereinafter "CUMC") is a domestic not-for-profit corporation organized and existing under and by virtue of the laws of the State of New York with its principal offices located at 630 West 168th St., New York, NY 10032.

249. Upon information and belief, Defendant PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC. (hereinafter "PHPSO") is a domestic not-for-profit corporation organized and existing under and by virtue of the laws of the State of New York with its principal offices located at 1211 Avenue of the Americas, New York, NY 10036.

250. Upon information and belief, Defendant COLUMBIA-CORNELL CARE, LLC (hereinafter "CCC") is a domestic not-for-profit entity with its principal office located at 16 E. 60th Street, Suite 480, New York, NY 10022.

251. Upon information and belief, Defendant COLUMBIA CORNELL NETWORK PHYSICIANS, INC. (hereinafter "CCNP") is a domestic not-for-profit corporation organized and existing under and by virtue of the laws of the State of New York with its principal offices located at 900 Third Avenue, Suite 500, New York, NY 10022.

252. Upon information and belief, COLUMBIA PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES ("CPMC-ESA") serves as an obstetrics and gynecological service to THE NEW YORK AND PRESBYTERIAN HOSPITAL, and the Department of Obstetrics and Gynecology of the COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS. Upon information and belief, Defendant NYPH and Defendant CUCPS, doing business as COLUMBIA PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES, is located at 16 E. 60th Street, Suite 408, New York, NY 10022.

253. Upon information and belief, EAST SIDE ASSOCIATES ("ESA") serves as the obstetrics and gynecological service within THE NEW YORK AND PRESBYTERIAN HOSPITAL, and the Department of Obstetrics and Gynecology of the COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS. Upon information and belief, Defendant NYPH and Defendant CUCPS, doing business as EAST SIDE ASSOCIATES, is located at 16 E. 60th Street, Suite 408, New York, NY 10022.

254. Upon information and belief, COLUMBIA PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES serves as an obstetrics and gynecological service to THE NEW YORK AND PRESBYTERIAN HOSPITAL, and the Department of Obstetrics and Gynecology of the COLUMBIA UNIVERSITY MEDICAL CENTER. Upon information and belief, Defendant NYPH and Defendant CUMC, doing business as COLUMBIA PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES, is located at 16 E. 60th Street, Suite 408, New York, NY 10022.

255. Upon information and belief, EAST SIDE ASSOCIATES serves as the obstetrics and gynecological service within THE NEW YORK AND PRESBYTERIAN HOSPITAL, and the Department of Obstetrics and Gynecology of the COLUMBIA UNIVERSITY MEDICAL CENTER. Upon information and belief, Defendant NYPH and Defendant CUMC, doing business as EAST SIDE ASSOCIATES, is located at 16 E. 60th Street, Suite 408, New York, NY 10022.

256. Upon information and belief, Defendant ROBERT HADDEN, is and was a resident of the State of New York, New York.

257. Upon information and belief, Defendant ROBERT HADDEN, is and was a resident of the State of New Jersey, residing in Tenafly, New Jersey.

258. At all times herein mentioned, defendant ROBERT HADDEN, was an agent, servant or employee of defendant COLUMBIA.

259. At all times herein mentioned, defendant ROBERT HADDEN, was an agent, servant or employee of defendant TRUSTEES.

260. At all times herein mentioned, defendant ROBERT HADDEN, was an agent, servant or employee of defendant CUCPS.

261. At all times herein mentioned, defendant ROBERT HADDEN, was an agent, servant or employee of defendant NYPH.

262. At all times herein mentioned, defendant ROBERT HADDEN, was an agent, servant or employee of defendant CPMC.

263. At all times herein mentioned, defendant ROBERT HADDEN, was an agent, servant or employee of defendant CUMC.

264. At all times herein mentioned, defendant ROBERT HADDEN, was an agent, servant or employee of defendant PHPSO.

265. At all times herein mentioned, defendant ROBERT HADDEN, was an agent, servant or employee of defendant CCC.

266. At all times herein mentioned, defendant ROBERT HADDEN, was an agent, servant or employee of defendant CCNP.

267. At all times herein mentioned, defendant ROBERT HADDEN, was an agent, servant or employee of defendant CPMC-ESA.

268. At all times herein mentioned, defendant ROBERT HADDEN, was an agent, servant or employee of defendant EAST SIDE ASSOCIATES.

269. At all times herein mentioned, defendant ROBERT HADDEN, was an agent, servant or

employee of defendant SLOANE.

270. At all times herein mentioned, defendant NYPH, was a domestic corporation, duly organized and existing under and by virtue of the laws of the State of New York.

271. At all times herein mentioned, defendant NYPH was the owner of a hospital known as NEW YORK PRESBYTERIAN HOSPITAL, located at 525 E. 68th Street, New York, NY 10021.

272. At all times herein mentioned, defendant NYPH operated, managed and controlled the aforesaid hospital.

273. At all times herein mentioned, defendant Columbia-Presbyterian Medical Center, East Side Associates, was a domestic corporation, duly organized and existing under and by virtue of the laws of the State of New York.

274. At all times herein mentioned, defendant NYPH was the owner of a medical facility known as Columbia-Presbyterian Medical Center, East Side Associates, located at 16 E. 60th Street, Suite 408, New York, NY 10022.

275. At all times herein mentioned, defendant NYPH was the owner of a medical facility known as East Side Associates, located at 16 E. 60th Street, Suite 408, New York, NY 10022.

276. At all times herein mentioned, defendant NYPH operated, managed and controlled CPMC-ESA.

277. At all times herein mentioned, defendant COLUMBIA operated, managed and controlled ESA.

278. At all times herein mentioned, defendant NYPH operated, managed and controlled ESA.

279. At all times herein mentioned, defendant CUMC operated, managed and controlled CPMC-ESA.

280. At all times herein mentioned, defendant CUMC operated, managed and controlled ESA.

281. At all times herein mentioned, defendant SLOANE operated, managed and controlled CPMC-ESA.

282. At all times herein mentioned, defendant SLOANE operated, managed and controlled ESA.

283. At all times herein mentioned, defendant PHPSO operated, managed and controlled CPMC-ESA.

284. At all times herein mentioned, defendant PHPSO operated, managed and controlled ESA.

285. At all times herein mentioned, defendant CUCPS operated, managed and controlled CPMC-ESA.

286. At all times herein mentioned, defendant CUCPS operated, managed and controlled ESA.

287. At all times herein mentioned, defendant CCNP operated, managed and controlled CPMC-ESA.

288. At all times herein mentioned, defendant CCNP operated, managed and controlled ESA.

289. At all times herein mentioned, defendant CUMC was the owner of a medical facility known as Columbia-Presbyterian Medical Center, East Side Associates, located at 16 E. 60th Street, Suite 408, New York, NY 10022.

290. At all times herein mentioned, defendant CUMC was the owner of a medical facility known as East Side Associates, located at 16 E. 60th Street, Suite 408, New York, NY 10022.

291. At all times herein mentioned, defendant CPMC was the owner of a medical facility known as Columbia-Presbyterian Medical Center, East Side Associates, located at 16 E. 60th Street, Suite 408, New York, NY 10022.

292. At all times herein mentioned, defendant CPMC was the owner of a medical facility known as East Side Associates, located at 16 E. 60th Street, Suite 408, New York, NY 10022.

293. At all times herein mentioned, defendant COLUMBIA was the owner of a medical facility known as Columbia-Presbyterian Medical Center, East Side Associates, located at 16 E. 60th Street, Suite 408, New York, NY 10022.

294. At all times herein mentioned, defendant PHPSO was the owner of a medical facility known as Columbia-Presbyterian Medical Center, East Side Associates, located at 16 E. 60th Street, Suite 408, New York, NY 10022.

295. At all times herein mentioned, defendant PHPSO was the owner of a medical facility known as East Side Associates, located at 16 E. 60th Street, Suite 408, New York, NY 10022.

296. At all times herein mentioned, defendant CCNP was the owner of a medical facility known as Columbia-Presbyterian Medical Center, East Side Associates, located at 16 E. 60th Street, Suite 408, New York, NY 10022.

297. At all times herein mentioned, defendant CCNP was the owner of a medical facility known as East Side Associates, located at 16 E. 60th Street, Suite 408, New York, NY 10022.

298. At all times herein mentioned, all of the physicians, nurses and other personnel involved in the diagnosis, care and treatment of the plaintiffs in defendant COLUMBIA, were agents, servants and/or employees of defendant COLUMBIA.

299. At all times herein mentioned, all of the physicians, nurses and other personnel involved in the diagnosis, care and treatment of the plaintiffs in defendants medical offices, hospitals, and/or clinics, were agents, servants and/or employees of defendant COLUMBIA.

300. At all times herein mentioned, all of the physicians, nurses and other personnel involved in the diagnosis, care and treatment of the plaintiffs in defendant NYPH, were agents, servants and/or employees of defendant NYPH.

301. At all times herein mentioned, all of the physicians, nurses and other personnel involved in the diagnosis, care and treatment of the plaintiffs in defendant Columbia-Presbyterian Medical Center, East Side Associates, were agents, servants and/or employees of defendant NYPH.

302. At all times herein mentioned, all of the physicians, nurses and other personnel involved in the diagnosis, care and treatment of the plaintiffs in defendant East Side Associates, were agents, servants and/or employees of defendant NYPH.

303. At all times herein mentioned, all of the physicians, nurses and other personnel involved in the diagnosis, care and treatment of the plaintiffs in defendant Columbia-Presbyterian Medical Center, East Side Associates, were agents, servants and/or employees of defendant Columbia-Presbyterian Medical Center, East Side Associates.

304. At all times herein mentioned, all of the physicians, nurses and other personnel involved in the diagnosis, care and treatment of the plaintiffs in defendant East Side Associates, were agents, servants and/or employees of defendant East Side Associates.

305. At all times herein mentioned, all of the physicians, nurses and other personnel involved in the diagnosis, care and treatment of the plaintiffs in defendant Columbia-Presbyterian Medical Center, East Side Associates, were agents, servants and/or employees of defendant CUCPS.

306. At all times herein mentioned, all of the physicians, nurses and other personnel involved in the diagnosis, care and treatment of the plaintiffs in defendant East Side Associates, were agents, servants and/or employees of defendant CUCPS.

307. At all times herein mentioned, all of the physicians, nurses and other personnel involved in the diagnosis, care and treatment of the plaintiffs in defendant Columbia-Presbyterian

Medical Center, East Side Associates, were agents, servants and/or employees of defendant CPMC.

308. At all times herein mentioned, all of the physicians, nurses and other personnel involved in the diagnosis, care and treatment of the plaintiffs in defendant East Side Associates, were agents, servants and/or employees of defendant CPMC.

309. At all times herein mentioned, all of the physicians, nurses and other personnel involved in the diagnosis, care and treatment of the plaintiffs in defendant Columbia-Presbyterian Medical Center, East Side Associates, were agents, servants and/or employees of defendant CUMC.

310. At all times herein mentioned, all of the physicians, nurses and other personnel involved in the diagnosis, care and treatment of the plaintiffs in defendant East Side Associates, were agents, servants and/or employees of defendant CUMC.

311. At all times herein mentioned, all of the physicians, nurses and other personnel involved in the diagnosis, care and treatment of the plaintiffs in defendant Columbia-Presbyterian Medical Center, East Side Associates, were agents, servants and/or employees of defendant PHPSO.

312. At all times herein mentioned, all of the physicians, nurses and other personnel involved in the diagnosis, care and treatment of the plaintiffs in defendant East Side Associates, were agents, servants and/or employees of defendant PHPSO.

313. At all times herein mentioned, all of the physicians, nurses and other personnel involved in the diagnosis, care and treatment of the plaintiffs in defendant Columbia-Presbyterian Medical Center, East Side Associates, were agents, servants and/or employees of defendant CCNP.

314. At all times herein mentioned, all of the physicians, nurses and other personnel involved in the diagnosis, care and treatment of the plaintiffs in defendant East Side Associates, were agents, servants and/or employees of defendant CCNP.

315. At all times herein mentioned, all of the physicians, nurses and other personnel involved in the diagnosis, care and treatment of the plaintiffs in defendant Columbia-Presbyterian Medical Center, East Side Associates, were agents, servants and/or employees of defendant CCC.

316. At all times herein mentioned, all of the physicians, nurses and other personnel involved in the diagnosis, care and treatment of the plaintiffs in defendant East Side Associates, were agents, servants and/or employees of defendant CCC.

317. At all times herein mentioned, all of the physicians, nurses and other personnel involved in the diagnosis, care and treatment of the plaintiffs in defendant Columbia-Presbyterian Medical Center, East Side Associates, were agents, servants and/or employees of defendant SLOANE.

318. At all times herein mentioned, all of the physicians, nurses and other personnel involved in the diagnosis, care and treatment of the plaintiffs in defendant East Side Associates, were agents, servants and/or employees of defendant SLOANE.

319. At all times herein mentioned, defendant ROBERT HADDEN, was a physician duly licensed to practice medicine in the State of New York.

320. At all times herein mentioned, Defendant ROBERT HADDEN, was an agent, servant or employee of Defendant COLUMBIA, Defendant TRUSTEES, Defendant CUCPS, Defendant NYPH, Defendant CPMC-ESA, Defendant ESA, Defendant CPMC, Defendant CUMC, Defendant PHPSO, Defendant CCNP, Defendant CCC, and/or Defendant SLOANE

(hereinafter collectively "CORP. ENTITIES").

321. Prior to January 1993, defendant "CORP. ENTITIES", their agents, servants and/or employees, hired, employed, credentialed, contracted and/or enlisted Defendant ROBERT HADDEN, to render gynecologic and/or obstetric care to their patients.

322. At all times herein mentioned, defendant ROBERT HADDEN was a sexual predator.

323. ROBERT HADDEN sexually assaulted patients on the premises of defendant "CORP. ENTITIES".

324. ROBERT HADDEN sexually assaulted patients on the premises of defendant "CORP. ENTITIES" under the guise of rendering medical care.

325. Defendant "CORP. ENTITIES" enabled defendant ROBERT HADDEN to sexually assault patients on their premises.

326. Defendant "CORP. ENTITIES" failed to timely and properly supervise and/or monitor defendant ROBERT HADDEN.

327. Defendant "CORP. ENTITIES" knew, or should have known, that defendant ROBERT HADDEN was sexually assaulting patients under the guise of rendering medical care.

328. Defendant "CORP. ENTITIES" knew, or should have known, that defendant ROBERT HADDEN was sexually assaulting patients on their premises.

329. Defendant "CORP. ENTITIES" did not have policies or procedures in place to protect patients from being sexually assaulted by defendant ROBERT HADDEN.

330. Medical personnel, including nurses, administrators and supervisors of defendant "CORP. ENTITIES" knew that defendant ROBERT HADDEN was sexually assaulting patients on their premises.

331. Defendant "CORP. ENTITIES" created an environment which caused medical personnel, including nurses and administrators, to not report the sexual assaults being committed by defendant ROBERT HADDEN for fear of reprisals.

332. Medical personnel, including nurses, administrators and supervisors at defendant "CORP. ENTITIES" have known for 25-years that defendant ROBERT HADDEN is a sexual predator who has sexually assaulted patients on their premises.

333. Medical personnel, including nurses, administrators and supervisors at defendant "CORP. ENTITIES" facilitated defendant ROBERT HADDEN in the sexual assaults he was committing on the premises of "CORP. ENTITIES".

334. Defendant "CORP. ENTITIES" have failed to take action or levy penalties against defendant ROBERT HADDEN for the sexual assaults he has committed on their premises.

335. Defendant "CORP. ENTITIES" have failed to undertake a meaningful investigation to ascertain the facts and circumstances that allowed the sexual assaults to be committed by defendant ROBERT HADDEN upon their premises.

336. Defendant "CORP. ENTITIES" have approved disability payments to defendant ROBERT HADDEN for a purported "disability" which he claims caused him to be unable to work - when in reality ROBERT HADDEN's lack of current employment is the result of decades of sexual predation.

337. Defendant ROBERT HADDEN was convicted of criminal and felonious sexual assault of patients that he committed on the premises of defendant "CORP. ENTITIES".

338. Defendant "CORP. ENTITIES", their agents, servants, and/or employees, failed to monitor and supervise the actions of Defendant ROBERT HADDEN which enabled the sexual assaults to take place.

339. Defendant "CORP. ENTITIES", their agents, servants, and/or employees, were complicit in the actions of ROBERT HADDEN which enabled the sexual assaults to take place.

340. Defendant "CORP. ENTITIES", their agents, servants, and/or employees, failed to act upon information and facts that Defendant ROBERT HADDEN was sexually assaulting patients on their premises.

341. Defendant "CORP. ENTITIES" have enabled defendant ROBERT HADDEN to collect disability income despite the fact that he is a sexual predator - and is now registered as a convicted sexual felon - as a result of his having sexually assaulted patients on the premises of defendant "CORP. ENTITIES".

342. Defendant "CORP. ENTITIES" have enabled defendant ROBERT HADDEN to collect disability income for a purported mental "disability" which he claims is causing him to be unable to work - when in reality ROBERT HADDEN's lack of current employment is the result of decades of sexual predation.

343. Defendant "CORP. ENTITIES" have entered into an arrangement with defendant ROBERT HADDEN in exchange for his cooperation with them in the civil lawsuits involving his decades-long sexual assaults and predation of female patients.

344. There has been no disciplinary action by defendant "CORP. ENTITIES" against defendant ROBERT HADDEN.

345. There has been no disciplinary action by defendant "CORP. ENTITIES" against any of the nurses and administrators who enabled defendant ROBERT HADDEN to sexually assault patients on their premises.

346. Defendant "CORP. ENTITIES" have taken no disciplinary action against defendant ROBERT HADDEN, from the first time that ROBERT HADDEN obtained privileges with the named "CORP. ENTITIES" through the present.

347. Defendant "CORP. ENTITIES" have taken no disciplinary action against defendant ROBERT HADDEN between January 1993 and the present.

348. Prior to January 2015, Defendant "CORP. ENTITIES", their agents, servants, and/or employees, were aware of complaints that defendant ROBERT HADDEN had sexually assaulted patients upon the premises of Defendant "CORP. ENTITIES".

349. Prior to January 2014, Defendant "CORP. ENTITIES", their agents, servants, and/or employees, were aware of complaints that defendant ROBERT HADDEN had sexually assaulted patients upon the premises of Defendant "CORP. ENTITIES".

350. Prior to January 2013, Defendant "CORP. ENTITIES", their agents, servants, and/or employees, were aware of complaints that defendant ROBERT HADDEN had sexually assaulted patients upon the premises of Defendant "CORP. ENTITIES".

351. Prior to January 2012, Defendant "CORP. ENTITIES", their agents, servants, and/or employees, were aware of complaints that defendant ROBERT HADDEN had sexually assaulted patients upon the premises of Defendant "CORP. ENTITIES".

352. Prior to January 2011, Defendant "CORP. ENTITIES", their agents, servants, and/or employees, were aware of complaints that defendant ROBERT HADDEN had sexually assaulted patients upon the premises of Defendant "CORP. ENTITIES".

353. Prior to January 2010, Defendant "CORP. ENTITIES", their agents, servants, and/or employees, were aware of complaints that defendant ROBERT HADDEN had sexually assaulted patients upon the premises of Defendant "CORP. ENTITIES".

354. Prior to January 2009, Defendant "CORP. ENTITIES", their agents, servants, and/or employees, were aware of complaints that defendant ROBERT HADDEN had sexually assaulted patients upon the premises of Defendant "CORP. ENTITIES".

355. Prior to January 2008, Defendant "CORP. ENTITIES", their agents, servants, and/or employees, were aware of complaints that defendant ROBERT HADDEN had sexually assaulted patients upon the premises of Defendant "CORP. ENTITIES".

356. Prior to January 1998, Defendant "CORP. ENTITIES", their agents, servants, and/or employees, were aware of complaints that defendant ROBERT HADDEN had sexually assaulted patients upon the premises of Defendant "CORP. ENTITIES".

357. Prior to January 1993, Defendant "CORP. ENTITIES", their agents, servants, and/or employees, were aware of complaints that defendant ROBERT HADDEN had sexually assaulted patients upon the premises of Defendant "CORP. ENTITIES".

358. Defendant "CORP. ENTITIES", their agents, servants, and/or employees knew, or should have known, that defendant ROBERT HADDEN had sexually assaulted patients upon their premises as far back as the 1990s.

359. Defendant "CORP. ENTITIES", their agents, servants, and/or employees, observed defendant ROBERT HADDEN sexually assaulting patients as far back as the 1990s.

360. Defendant "CORP. ENTITIES", their agents, servants, and/or employees witnessed defendant ROBERT HADDEN sexually assaulting patients as far back as the 1990s.

361. Defendant "CORP. ENTITIES", their agents, servants, and/or employees, were informed and/or aware of sexual assaults being committed by defendant ROBERT HADDEN and failed to protect patients from further sexual assaults and sexual abuse.

362. Defendant "CORP. ENTITIES", their agents, servants, and/or employees knew, or should have known, of sexual assaults being committed by defendant ROBERT HADDEN and failed to protect patients from further sexual assaults and/or sexual abuse.

363. Defendant "CORP. ENTITIES", their agents, servants, and/or employees reported to other defendant "CORP. ENTITIES" personnel that defendant ROBERT HADDEN was sexually assaulting patients as far back as the 1990s.

364. Defendant "CORP. ENTITIES", their agents, servants, and/or employees had received complaints by patients who had been sexually assaulted and sexually abused by ROBERT HADDEN prior to ROBERT HADDEN entering a plea of being criminally guilty on February 22, 2016.

365. Defendant "CORP. ENTITIES", their agents, servants, and/or employees took no action on the information and knowledge they had concerning patients being sexually abused and sexually assaulted by ROBERT HADDEN prior to ROBERT HADDEN entering a plea of criminal guilt on February 22, 2016.

366. Defendant "CORP. ENTITIES", their agents, servants, and/or employees have taken no action on the information and knowledge they have about patients being sexually assaulted and sexually abused by ROBERT HADDEN since Defendant ROBERT HADDEN entered his plea of criminal guilt on February 22, 2016.

367. Defendant "CORP. ENTITIES", their agents, servants, and/or employees have taken no action on the information and knowledge they have about patients being sexually assaulted and sexually abused by ROBERT HADDEN since Defendant ROBERT HADDEN was sentenced in the Criminal Case on March 29, 2016.

368. Defendant "CORP. ENTITIES", their agents, servants, and/or employees have a legal, professional and/or ethical duty, responsibility and obligation to report all suspicions of sexual assaults by doctors or other medical personnel to Criminal Authorities.

369. Defendant "CORP. ENTITIES", their agents, servants, and/or employees have a legal, professional and/or ethical duty, responsibility and obligation to report all suspicions of sexual assaults by doctors or other medical personnel to Defendant Medical Entity supervisors.

370. Defendant "CORP. ENTITIES", their agents, servants, and/or employees have a legal, professional and/or ethical duty, responsibility and obligation to report all suspicions of sexual assaults by doctors or other medical personnel to both Criminal Authorities and Defendant Medical Entity supervisors.

371. Defendant "CORP. ENTITIES" should encourage all medical personnel, as well as all of their agents, servants, and/or employees, to immediately report all suspected sexual assaults to the Administration as well as to Criminal Authorities.

372. Defendant "CORP. ENTITIES", their agents, servants, and/or employee created an environment which discouraged reporting medical doctors to Administrators and Criminal Authorities - even where medical doctor were sexually assaulting patients.

373. Defendant "CORP. ENTITIES", their agents, servants, and/or employees never reported ROBERT HADDEN to any Administrators for having sexually assaulted patients.

374. Defendant "CORP. ENTITIES", their agents, servants, and/or employees did report ROBERT HADDEN to Administrators for having sexually assaulted patients.

375. Defendant "CORP. ENTITIES", their agents, servants, and/or employees never took any disciplinary action against ROBERT HADDEN for having sexually assaulted patients.

376. Defendant "CORP. ENTITIES", their agents, servants, and/or employees continued to grant ROBERT HADDEN privileges despite the fact that they knew, or should have known, that he was sexually assaulting patients.

377. Defendant "CORP. ENTITIES", their agents, servants, and/or employees had a duty to timely and properly monitor and/or supervise their medical personnel, including ROBERT HADDEN, to ensure that patients were not being sexually assaulted.

378. Defendant "CORP. ENTITIES", their agents, servants, and/or employees failed to timely and properly monitor and/or supervise their medical personnel, including ROBERT HADDEN, to ensure that patients were not being sexually assaulted.

379. Defendant "CORP. ENTITIES", their agents, servants, and/or employees never reported ROBERT HADDEN to any Criminal Authorities.

380. Defendant "CORP. ENTITIES", their agents, servants, and/or employees allowed ROBERT HADDEN to continue to work as a medical doctor upon their premises after he sexually assaulted patients.

381. Defendant "CORP. ENTITIES", their agents, servants, and/or employees allowed ROBERT HADDEN to continue to work as a medical doctor upon their premises after they knew, or should have known, that ROBERT HADDEN sexually assaulted patients.

382. Defendant "CORP. ENTITIES", their agents, servants, and/or employees failed to protect their patients from further sexual assaults, sexual exploitation, and sexual abuse by ROBERT HADDEN.

383. Defendant "CORP. ENTITIES", their agents, servants, and/or employees failed to conduct timely and proper investigations into the information and reports that ROBERT HADDEN sexually assaulted patients.

384. Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and "CORP. ENTITIES" continued judicial and extrajudicial denials that ROBERT HADDEN sexually assaulted patients despite the fact that they possessed conclusive proof that ROBERT HADDEN is guilty of criminal sexual assaults.

385. Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and "CORP. ENTITIES" have continued their judicial and extrajudicial denials that ROBERT HADDEN sexually assaulted and sexually abused patients despite the fact that they possessed conclusive proof that ROBERT HADDEN is guilty of criminal sexual assaults.

386. Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and "CORP. ENTITIES", through their agents, servants, and/or employees are actively and fraudulently misrepresenting, deceiving, and lying to each of the Plaintiffs herein, and the public at large, about the facts surrounding ROBERT HADDEN's serial sexual assaults and sexual abuses of female patients by telling everyone that ROBERT HADDEN is out on "medical leave", that they've "never heard of anyone else saying this about him", and that ROBERT HADDEN is just "old school" and not a sexual predator.

387. Defendant ROBERT HADDEN continues to maintain his own judicial and extrajudicial denials that he sexually assaulted countless patients despite the fact that ROBERT HADDEN is, in fact, guilty of countless criminal sexual assaults.

388. Defendant ROBERT HADDEN has betrayed a position of respect and trust by committing criminal sexual assaults on medical patients.

389. Defendant "CORP. ENTITIES" have betrayed a position of respect and trust by permitting defendant ROBERT HADDEN to criminal sexual assaults on medical patients upon their premises.

390. Defendant "CORP. ENTITIES" have long known that ROBERT HADDEN was a sexual predator, but instead of terminating ROBERT HADDEN's medical privileges and reporting him to Criminal Authorities, defendant "CORP. ENTITIES", their agents, servants, and/or employees instead chose to simply move defendant ROBERT HADDEN to other medical facilities at other locations within Defendant "CORP. ENTITIES"s control where he continued to sexually assault other patients.

391. Defendant "CORP. ENTITIES", their agents, servants, and/or employees have violated a sacrosanct relationship of Trust by failing to protect female patients from being sexually assaulted by defendant ROBERT HADDEN.

392. By tolerating the sexual misconduct of ROBERT HADDEN, Defendant "CORP. ENTITIES", their agents, servants, and/or employees have completely violated the sacrosanct relationship of Trust by placing their patients in the way of harm and being sexually assaulted by defendant ROBERT HADDEN.

393. Defendant ROBERT HADDEN has violated a sacrosanct relationship of Trust by sexually assaulting patients.

394. Defendant "CORP. ENTITIES", their agents, servants, and/or employees were informed and/or aware of the sexual assaults being committed by ROBERT HADDEN and failed to protect their patients from further sexual assaults and sexual abuse.

395. Defendant "CORP. ENTITIES", their agents, servants, and/or employees were not informed and/or have not become aware of the sexual assaults being committed by ROBERT HADDEN.

396. Defendant ROBERT HADDEN is guilty of committing a Criminal Sexual Act in the Third Degree upon a patient in violation of P.L. § 130.40(1).

397. On February 7, 2012 Defendant ROBERT HADDEN engaged in Oral Sexual Contact with an Individual who was incapable of consent by reasons of some factor other than being less than seventeen years old in violation of P.L. § 130.40(1).

398. On February 7, 2012 Defendant ROBERT HADDEN engaged in Oral Sexual Contact with a patient in violation of P.L. § 130.40(1).

399. Defendant ROBERT HADDEN is guilty of the Crime of Forcibly Touching "JANE DOE #6" (hereinafter "JANE DOE #6") in a related action in violation of P.L. § 130.52.

400. On May 7, 2012, ROBERT HADDEN intentionally and for no legitimate purpose forcibly touched the sexual and other intimate parts of a female patient for the purpose of degrading and abusing her and for the purpose of gratifying his sexual desire.

401. On May 7, 2012, Defendant ROBERT HADDEN Forcibly Touched a female patient in violation of P.L. § 130.52.

402. The female patient referenced above was HIV-positive when she was under the care and treatment of defendants, their agents, servants, and/or employees.

403. Defendant ROBERT HADDEN was fully aware that female patient referenced above was HIV-positive while she was under his care and treatment in May of 2012.

404. Defendant "CORP. ENTITIES" were fully aware that the patient referenced above was HIV-positive while she was under their care and treatment in May of 2012.

405. Defendant ROBERT HADDEN forcibly touched the sexual and other intimate parts of the female patient referenced above for the purpose of degrading and abusing her and for the purpose of gratifying his sexual desire on May 7, 2012, despite his full knowledge and awareness that she was HIV-positive.

406. Despite defendant ROBERT HADDEN's full knowledge and awareness that the above referenced patient was HIV-positive, ROBERT HADDEN criminally sexually assaulted her on May 7, 2012, and exposed her and other patients and personnel to an increased risk of harm though his deviant, bottomless conduct, and wanton, careless, and reckless disregard of patient safety.

407. Defendant ROBERT HADDEN sexually assaulted the above referenced patient on May 7, 2012.

408. Defendant ROBERT HADDEN sexually assaulted the above referenced patient on dates prior to May 7, 2012.

409. ROBERT HADDEN is a convicted sexual felon.

410. ROBERT HADDEN is a registered sex offender.

411. Had plaintiffs not commenced their Civil lawsuits against defendant ROBERT HADDEN and Defendant "CORP. ENTITIES", defendant "CORP. ENTITIES" would have continued to allow ROBERT HADDEN to retain his medical privileges and sexually abuse and sexually assault obstetric & gynecologic patients upon the premises of defendant "CORP. ENTITIES".

412. ROBERT HADDEN has sexually abused and sexually assaulted countless patients over the course of his career as a medical doctor upon the premises of defendant "CORP. ENTITIES".

413. ROBERT HADDEN has sexually abused and sexually assaulted patients going back as far as the 1990's, all while under the employment and supervision of defendant "CORP. ENTITIES".

414. Defendant "CORP. ENTITIES" were aware of defendant ROBERT HADDEN's criminal and outrageous behavior prior to August 2012.

415. Defendant "CORP. ENTITIES" have chosen to turn their backs on the patients who have been sexually abused and sexually assaulted by defendant ROBERT HADDEN.

416. Defendant "CORP. ENTITIES", their agents, servants, and/or employees have failed to report instances of sexual misconduct and sexual abuse committed by defendant ROBERT HADDEN.

417. Defendant "CORP. ENTITIES", their agents, servants, and/or employees have failed to act on instances of sexual misconduct and sexual abuse committed by defendant ROBERT HADDEN.

418. Defendant "CORP. ENTITIES" deny responsibility for the sexual abuse their patients have endured at the hands of defendant ROBERT HADDEN.

419. The answering defendants feel they are not responsible for the sexual abuse that their patients have endured at the hands of defendant ROBERT HADDEN.

420. Defendant "CORP. ENTITIES" have taken no disciplinary action against defendant ROBERT HADDEN as a result of the sexual assaults and sexual abuse he has committed on their premises.

421. Defendant "CORP. ENTITIES" have made no effort to right the wrongs that have been committed upon their premises with regard to the within individually named survivors.

422. Defendant "CORP. ENTITIES" refuse to take responsibility for the sexual abuse their patients have endured as a result of the complicity of their agents, servants and/or employees who failed to report, terminate and/or take any disciplinary or legal action against ROBERT HADDEN.

423. Defendant ROBERT HADDEN denies violating the standard of care with regard to the care and treatment rendered to the above referenced patient on May 7, 2012.

424. Defendant TRUSTEES denies that ROBERT HADDEN violated the standard of care with regard to the care and treatment rendered to the above referenced patient on May 7, 2012.

425. Defendant CUCPS denies that ROBERT HADDEN violated the standard of care with regard to the care and treatment rendered to the above referenced patient on May 7, 2012.

426. Defendant NYPH denies that ROBERT HADDEN violated the standard of care with regard to the care and treatment rendered to the above referenced patient on May 7, 2012.

427. Defendant CPMC denies that ROBERT HADDEN violated the standard of care with regard to the care and treatment rendered to the above referenced patient on May 7, 2012.

428. Defendant CUMC denies that ROBERT HADDEN violated the standard of care with regard to the care and treatment rendered to the above referenced patient on May 7, 2012.

429. Defendant PHPSO denies that ROBERT HADDEN violated the standard of care with regard to the care and treatment rendered to the above referenced patient on May 7, 2012.

430. Defendant CCC denies that ROBERT HADDEN violated the standard of care with regard to the care and treatment rendered to the above referenced patient on May 7, 2012.

431. Defendant CCNP denies that ROBERT HADDEN violated the standard of care with regard to the care and treatment rendered to the above referenced patient on May 7, 2012.

432. Defendant COLUMBIA PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES denies that ROBERT HADDEN violated the standard of care with regard to the care and treatment rendered to the above referenced patient on May 7, 2012.

433. Defendant EAST SIDE ASSOCIATES denies that ROBERT HADDEN violated the standard of care with regard to the care and treatment rendered to the above referenced patient on May 7, 2012.

434. Defendant SLOANE denies that ROBERT HADDEN violated the standard of care with regard to the care and treatment rendered to the above referenced patient on May 7, 2012.

435. Defendant ROBERT HADDEN denies violating the standard of care with regard to the care and treatment rendered to the patient he sexually assaulted in another related action (hereinafter "JANE DOE #1") on February 7, 2012.

436. Defendant COLUMBIA denies that ROBERT HADDEN violated the standard of care with regard to the care and treatment rendered to "JANE DOE #1" on February 7, 2012.

437. Defendant TRUSTEES denies that ROBERT HADDEN violated the standard of care with regard to the care and treatment rendered to the above referenced patient on February 7, 2012.

438. Defendant CUCPS denies that ROBERT HADDEN violated the standard of care with regard to the care and treatment rendered to the above referenced patient on February 7, 2012.

439. Defendant NYPH denies that ROBERT HADDEN violated the standard of care with regard to the care and treatment rendered to the above referenced patient on February 7, 2012.

440. Defendant CPMC denies that ROBERT HADDEN violated the standard of care with regard to the care and treatment rendered to the above referenced patient on February 7, 2012.

441. Defendant CUMC denies that ROBERT HADDEN violated the standard of care with regard to the care and treatment rendered to the above referenced patient on February 7, 2012.

442. Defendant PHPSO denies that ROBERT HADDEN violated the standard of care with regard to the care and treatment rendered to the above referenced patient on February 7, 2012.

443. Defendant CCC denies that ROBERT HADDEN violated the standard of care with regard to the care and treatment rendered to the above referenced patient on February 7, 2012.

444. Defendant CCNP denies that ROBERT HADDEN violated the standard of care with regard to the care and treatment rendered to the above referenced patient on February 7, 2012.

445. Defendant COLUMBIA PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES. denies that ROBERT HADDEN violated the standard of care with regard to the care and treatment rendered to the above referenced patient on February 7, 2012.

446. Defendant EAST SIDE ASSOCIATES denies that ROBERT HADDEN violated the standard of care with regard to the care and treatment rendered to the above referenced patient on February 7, 2012.

447. Defendant SLOANE denies that ROBERT HADDEN violated the standard of care with regard to the care and treatment rendered to the above referenced patient on February 7, 2012.

448. Plaintiffs are informed, and believe, and on this basis state, that Defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES benefitted financially from retaining ROBERT HADDEN as an OBGYN at "CORP. ENTITIES"' hospitals, offices, and clinics by offering his services to COLUMBIA UNIVERSITY female patients, at those patients' expense. Plaintiffs are further informed and believe, and on this basis state, that Defendant COLUMBIA UNIVERSITY, THE

TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES benefitted financially from actively concealing the myriad complaints of sexual exploitation and abuse made by its female patients against ROBERT HADDEN by protecting its own reputation and financial coffers. Defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES' deliberate and fraudulent concealment included, but was not limited to: paying ROBERT HADDEN a significant financial bonus which enabled him to quietly resign in 2012 after a criminal investigation revealed that ROBERT HADDEN routinely made lurid and sexually inappropriate remarks to female patients; kept a collection of pornography at his offices, had pornographic images and videos on his work computer system, hard drive, and internet browser cache; and had documented complaints against him lodged to Defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES dating back over the course of more than two (2) decades. Defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES paid ROBERT HADDEN this financial bonus and facilitated and enabled him to collect "disability benefits" in a deliberate attempt to conceal from the Plaintiffs, and the public at large, that ROBERT HADDEN is a serial sexual predator who the Defendants allowed to run rampant amongst female patients in need of basic gynecologic and obstetric care, and in order for COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES to try and avoid criminal consequences, civil liability and damage to its reputation.

449. At all times relevant hereto, agents, servants, medical staff members, and/or employees of COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES including Defendant ROBERT HADDEN, were acting in the course and scope of their authority, agency, service and/or employment for COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES.

450. Beginning in the early 1990's, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES began receiving reports from OBGYN patients and COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA

UNIVERSITY, and CORP. ENTITIES' own agents, servants, and/or employees regarding concerns about Defendant ROBERT HADDEN's conduct and purported gynecologic and obstetric "treatment" of his patients; nonetheless COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES failed to take any action in response to such complaints. COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES received numerous complaints of serious misconduct, including sexual misconduct by ROBERT HADDEN made to nursing supervisors and ROBERT HADDEN's supervisors and other Administrators employed by COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES.

451. Rather than addressing and properly investigating the complaints, including taking appropriate disciplinary action, reporting ROBERT HADDEN to criminal prosecutors, reporting ROBERT HADDEN to the State Medical Authorities, and/or terminating the employment of HADDEN, Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES, their agents, servants, and/or employees, kept the complaints secret to avoid negative publicity, despite their actual knowledge of such misconduct, so that for over 20 years, defendant ROBERT HADDEN had unfettered access to female patients – many of them as young as 15 or 16 years of age.

452. COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES, as well as their agents, servants and/or employees, hid the complaints despite the fact that many of the complaints came directly from their own employees, medical personnel and staff, including nurses and medical assistants, who were physically present during the examinations as "chaperones," and witnessed the sexual misconduct firsthand. Despite receiving years of serious complaints of significant misconduct about ROBERT HADDEN, including sexual misconduct, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, CORP. ENTITIES and their agents, servants and/or employees failed to take any meaningful action to address the complaints until they were finally forced to do so in August 2012.

453. Upon information and belief, the complaints made to COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES and their agents, servants and/or employees included, but are not limited to: ROBERT HADDEN making gratuitous, suggestive comments about patients' bodies during gynecological examinations; touching patients' bodies in a manner that had no medical purpose; requiring patients to lie fully nude on the table during gynecological examinations; and making improper, inappropriate and sexual comments about their bodies and other comments of a sexual and/or prurient nature; performing prolonged and non-medically indicated breast examinations; performing serial and medically unnecessary vaginal examinations; performing serial and medially unnecessary PAP Smears; requiring patients to expose their naked bodies in non-medical, sexual, and compromising ways; posing patients by instructing patients to strip naked and position themselves in non-medical, sexually deviant, and compromising ways; digitally penetrating patients in a non-medical manner for his own sexual gratification; sexually exploiting and abusing female patients; sexually exploiting and abusing female co-workers; and sexually exploiting and abusing female former co-workers.

454. COLUMBIA UNIVERSITY's "Patient Bill of Rights" provides, *inter alia*, that patients have the right to:

"Receive considerate and respectful care in a clean and safe environment".

It further provides that patients have the right to:

"Receive treatment without discrimination as to race, color, religion, sex [gender]".

455. At all times relevant hereto, Plaintiffs are, or were, female patients who sought medical, gynecologic and/or obstetric care through COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES health system and were patients of defendant ROBERT HADDEN during his tenure at COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES. Plaintiffs had no reason to suspect Defendant ROBERT HADDEN was anything other than a competent and ethical physician.

456. Knowing that Plaintiffs were trusting and vulnerable – and in many cases pregnant – Defendant ROBERT HADDEN used his position of authority to require Plaintiffs to fully disrobe for no reasonable medical purpose, engaged in touching, fondling and groping of Plaintiffs' breasts, and other parts of their bodies, while making suggestive, inappropriate and improper comments, engaged in nonconsensual vaginal penetration, nonconsensual sexual touching and fondling of the vaginal and genital region for the purpose of ROBERT HADDEN's own sexual arousal, sexual exploitation, sexual gratification, and/or sexual abuse. Defendant ROBERT HADDEN also made sexist, misogynistic, pejorative and sexually harassing comments to female patients at COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES.

457. Through his employment with COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES, Defendant ROBERT HADDEN used his position of authority as a medical professional, and access granted by CORP. ENTITIES, to perform countless nonconsensual, sexually exploitative and abusive "examinations" of female patients, their bodies, breasts, and genitalia under the guise of "medical treatment."

458. Virtually none of the women ROBERT HADDEN targeted knew that what he was doing during the examinations was not proper protocol, and did not realize he was engaging in sexual misconduct, sexually violating them, and/or taking advantage of them.

459. Defendant ROBERT HADDEN carried out these acts without fully explaining the "treatment" or obtaining informed consent of Plaintiffs.

460. All of Defendant ROBERT HADDEN's acts were conducted under the guise of providing medical care at COLUMBIA UNIVERSITY and CORP. ENTITIES' hospitals, offices and medical clinics.

461. The failure to give proper notice or to obtain consent for the purported "treatment" from Plaintiffs negated their ability to reject the "treatment."

462. Defendant ROBERT HADDEN used his position of trust and authority in an abusive manner causing Plaintiffs to suffer a variety of injuries including, but not limited to, sexual exploitation, sexual abuse, shame, mortification, shock, humiliation, emotional distress and

related physical manifestations thereof, embarrassment, loss of self-esteem, loss of trust in the medical profession and in medical care providers, self-doubt, disgrace, loss of enjoyment of life and negative impacts on their ultimate career, professional prospects and interpersonal relationships.

463. COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES and their agents, servants, and/or employees, gave ROBERT HADDEN access and authority to sexually abuse and exploit Plaintiffs and other patients of the within named defendants; but for the access and authority provided by Defendants, ROBERT HADDEN could not have abused Plaintiffs and countless other female patients. To wit, defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES, their agents, servants, and/or employees enabled ROBERT HADDEN to serially sexually abuse female patients for a period of two (2) decades upon the premises and clinics of defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES.

464. Defendants were put on notice of ROBERT HADDEN's actions after receiving complaints from COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES employees, including nurses, chaperones, medical staff, and survivors concerning both the inappropriate commentary ROBERT HADDEN made and the disturbing sexual behavior toward patients as far back as the 1990's, and yet defendants took no action to protect their female patients for a period of over 20 years.

465. Upon information and belief, despite complaints to COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES, and their agents, servants, employees and/or representatives, the complaints, reports, concerns and allegations went unaddressed in violation of reporting policies and procedures and in a manner that was wholly reckless, deliberately indifferent, and grossly negligent.

466. Upon information and belief, because Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES, their agents, servants and/or employees all failed to take action to investigate the complaints, or to take corrective

action regarding ROBERT HADDEN's actions, Plaintiffs and other female patients were sexually assaulted, exploited, harassed, abused, and molested by Defendant ROBERT HADDEN through predatory grooming, unnecessary vaginal digital examinations, vaginal penetration, unnecessary and non-medical touching and groping of their breasts and other areas of their body, verbal sexual exploitation, physical sexual exploitation, psychological manipulation and abuse, and through sexually-suggestive, inappropriate, and gratuitous comments and statements about them, their lifestyles, their bodies, and their anatomies.

467. Upon information and belief, in or around 1992 or 1993, complaints about ROBERT HADDEN were made to supervisors at COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES, about ROBERT HADDEN's sexual abuse of a young female patient who he began digitally penetrating after a nurse chaperone left the examining room.

468. In response to the report by the Chaperone, the Chaperone's supervisor directed the Chaperone to keep her mouth shut and just stay with her doctor and not let him get himself into trouble.

469. Further, it became well known throughout COLUMBIA UNIVERSITY, CORP. ENTITIES, and their offices, hospitals, clinics and medical centers that ROBERT HADDEN had a proclivity for sexually exploiting and abusing female patients when the chaperones would leave the room. This information was so widely discussed that it became a topic of conversation among employees of other departments including, but not limited to, Defendants' employee lunchrooms.

470. At no time did Defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES or their agents, servants and/or employees inform Plaintiffs, the public or any other patients of the concerns that led to Defendant ROBERT HADDEN being relieved from his duties at COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES and his subsequent "retirement."

471. Further, in an effort to "manage risk" COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES, their agents, servants and/or

employees, have contracted with lawyers and legal consultants in a surreptitious effort to obtain statements from witnesses and survivors of the sexual assaults committed by ROBERT HADDEN.

472. Through this effort, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES, their agents, servants and/or employees have accessed, viewed, shared and illegally disclosed the names, identities, private contact information, and protected health information about the survivors - not with health providers and specialists in clinical crisis intervention - but with their lawyers, and their lawyers' legal staff, in order to try and obtain a tactical advantage over the sexual assault survivors in the courts and possibly the media.

473. Further, defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES have actively and intentionally lied to the plaintiffs herein, as well as all the other patients of COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES, and the public at large, by affirmatively stating to the patients and the Press that ROBERT HADDEN was on some kind of "medical leave". The truth of the matter is that ROBERT HADDEN is a perverted sexual predator who has serially sexually assaulted female patients on a daily basis for a period of 20 years upon the premises of COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES, as well as their related hospitals, clinics, offices, and medical centers.

474. ROBERT HADDEN, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES", inclusive, are sometimes collectively referred to herein as "Defendants" and/or as "All Defendants"; such collective reference refers to all specifically named Defendants as well as their related entities, clinics, offices, hospitals, and medical centers.

475. Plaintiffs are informed and believe, and on that basis state that at all times mentioned herein, each Defendant was responsible, in some manner or capacity, for the occurrences herein

stated, and that Plaintiffs' damages, as herein set-forth, were proximately caused by each and all of said Defendants.

476. At all times mentioned herein, each and every Defendant was an agent, servant and/or employee of Defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES", inclusive, and/or was under their complete control and/or supervision. Defendants and each of them are individuals, corporations, partnerships and/or other entities that engaged in, joined in, and conspired with other Defendants and wrongdoers in carrying out the tortuous and unlawful activities described in this Complaint.

477. Plaintiffs are informed and believe, and on that basis state that at all times mentioned herein, there existed a unity of interest and ownership among Defendants and each of them such that any individuality and separateness between Defendants, and each of them, ceased to exist. Defendants and each of them were the successors-in-interest and/or alter egos of the other Defendants, and each of them, in that they purchased, controlled, dominated and operated each other without any separate identity, observation of formalities, or other manner of division. To continue maintaining the facade of a separate and individual existence between and among Defendants, and each of them, would serve to perpetrate a fraud and injustice.

478. Plaintiffs are informed and believe, and on that basis state that at all times mentioned herein, Defendants ROBERT HADDEN, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES were the agents, servants and/or employees of each and every other Defendant. In doing the things hereinafter stated, Defendants and each of them, were acting within the course and scope of said work and alternative personality, capacity, identity, agency, representation and/or employment and were within the scope of their authority, whether actual or apparent.

479. Plaintiffs are informed and believe, and on that basis state that at all times mentioned herein, Defendants ROBERT HADDEN, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES were the TRUSTEES, Partners, Servants, joint venturers, shareholders, contractors, and/or employees of each and every

other Defendant, and the acts and omissions herein stated were done by them, acting individually, through such capacity and within the scope of their authority, and with the permission and consent of each and every other Defendant and that said conduct was thereafter ratified by each and every other Defendant, and that each of them is jointly and severally liable to Plaintiffs.

**FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS BY ALL PLAINTIFFS**

480. Plaintiffs are informed and believe, and on that basis state, that while Plaintiffs were female patients of Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES, that Defendants engaged in a pattern and practice of ignoring complaints, failing to investigate sexual harassment and abuse complaints about ROBERT HADDEN, deliberately concealing information from abuse victims and survivors, and contributed to a sexually hostile and exploitative environment on campus at Defendant COLUMBA UNIVERSITY, which is now known to have a culture of pervasive sexual misconduct and sexual abuse throughout its campus, schools, hospitals, medical clinics, academic departments, Administration, and Administrators including the Dean of Students.

481. It is upon information, and therefore belief, that Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES", have a long history and a systemic problem in failing to properly handle sexual harassment and sexual abuse allegations, contrary to their mandates under the law and prevailing ethical standards. This pattern and practice was evidenced by, *inter alia,* the previous investigations of Defendant COLUMBIA UNIVERSITY's handling of numerous sexual assault and rape cases, during which students and patients came forward to complain of Defendant COLUMBIA UNIVERSITY's gross mishandling of those cases.

482. Furthermore, Plaintiffs are informed and believe, and on that basis state, that the numerous complaints lodged against defendant COLUMBIA UNIVERSITY, its related CORP. ENTITIES, and their agents, servants and employees, including but not limited to ROBERT HADDEN, that were actively concealed by Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES",

illustrate that Defendants had – and continue to have – a culture of ignoring, minimizing and sanitizing complaints about their sexual predator ROBERT HADDEN. Yet, Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES", have inexplicably allowed ROBERT HADDEN to sexually abuse women at their offices and premises, and since 2012 have enabled ROBERT HADDEN to obtain "disability coverage" and retain his retirement benefits.

483. Notwithstanding the tone-deaf, if not obtuse, silence on these issues, defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES" continued to put female Patients directly in harms' way by enabling their resident-predator ROBERT HADDEN to sexually exploit and abuse female patients for over 20 years.

484. Plaintiffs are informed and believe, and on that basis state, that Defendants knew, or should have known, of ROBERT HADDEN's propensity, disposition and proclivity to engage in sexual exploitation and misconduct with female patients as he sexually abused and molested Plaintiffs (and hundreds of other female COLUMBIA UNIVERSITY and their related "CORP. ENTITIES" patients), and knew of the probability that ROBERT HADDEN would assault, exploit and molest other patients with whom he came into contact, including but not limited to Plaintiffs. Moreover, Plaintiffs are informed and believe that, the majority of the times that ROBERT HADDEN sexually abused a female patient at Defendant COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES", an agent, servant and/or employee Chaperone of the defendants was present — witnessing the predatory grooming and sexual abuse — yet did nothing to intervene. Instead, before the patient was clothed, the Chaperone would just walk out of the room.

485. Defendants failed to act in any kind of reasonable manner, and failed to implement reasonable and necessary safeguards to avoid acts of unlawful sexual conduct and abuse by ROBERT HADDEN in the future, including avoiding placement of HADDEN in a position where contact and interaction with vulnerable patients was an inherent part of his work. Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY,

and their related "CORP. ENTITIES" ignored, hid and suppressed all of the sexual misconduct that ROBERT HADDEN had engaged in.

486. Plaintiffs are informed and believe, and on that basis state, that Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES" were apprised, knew, or should have known, and/or were put on notice of ROBERT HADDEN's past sexual abuse and rampant sexual exploitation of female patients, past complaints and/or investigations, and Defendant ROBERT HADDEN's propensity, proclivity and disposition to engage in such unlawful sexual exploitation and abuse of female patients, such that Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES" knew, or should have known, that ROBERT HADDEN would commit wrongful sexual acts with female patients, including Plaintiffs.

487. Plaintiffs are informed and believe, and on that basis state, that personnel and/or employment records and other records of Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES", reflect numerous incidents of inappropriate sexual contact and conduct with patients by ROBERT HADDEN, and other professionals, employees, assistants, agents, supervisors and others, on the physical premises of such Defendants. Based on these records, Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES", knew and/or should have known of ROBERT HADDEN's history of sexual abuse, past claims and/or past investigations, and his propensity and disposition to engage in unlawful activity and unlawful sexual activity with patients, such that Defendants knew, or should have known, that ROBERT HADDEN would commit wrongful sexual acts with those patients, including Plaintiffs.

488. The sexual exploitation and abuse of female patients is a foreseeable act which was known to Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES". It is also a foreseeable act which is known in medicine and by medical practitioners worldwide. Because of how well known the

risk of sexual abuse is, the governing bodies in general, and COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES" in particular, have enacted Rules concerning the provision of Chaperones at their hospitals, offices, and clinics which provide gynecologic and obstetric services. Thus, foreseeability is not an issue. The risk to be perceived, does indeed, define the duty to obey. The duty that COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES", have are to provide a safe, professional, medical environment where female patients can receive gynecologic and obstetric care and treatment. Any suggestion by Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES" that they didn't know of ROBERT HADDEN's abuse has not only proven to be untrue, it is also an admission that Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES" failed in their duty to take the steps necessary to ensure that a safe, professional, medical environment for female gynecology and obstetrical patients was being provided.

489. Because of the relationship between Plaintiffs and Defendants, Defendants had an obligation, responsibility and duty, under the law, not to hide material facts and information about ROBERT HADDEN's past, and his deviant sexual behavior and propensities. Additionally, Defendants had an affirmative duty to inform, warn, and institute appropriate protective measures to safeguard patients who were reasonably likely to come in contact with ROBERT HADDEN — including, at a minimum, terminating ROBERT HADDEN's employment and reporting him to the Police and the New York State Medical Board. Defendants willfully refused to notify, give adequate warning and implement appropriate safeguards, thereby creating the peril that ultimately damaged Plaintiffs and hundreds of other female COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES" Patients.

490. Pursuant to New York Social Services Law, Article 6, Title 6, and Section 413, Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their

related "CORP. ENTITIES", ROBERT HADDEN, and their agents, servants, and/or employees are "mandated reporters" of childhood sexual abuse. As such, any healthcare practitioner employed in a healthcare facility, clinic, physician's office, hospital local or state public health department, or a clinic or other type of facility, operated by a local or state public health department who, in his/her professional capacity or within the scope of his/her employment, provides medical services to a minor who he/she knows, or reasonably suspects, has been sexually exploited, or sexually abused by an adult perpetrator, must report to a local law enforcement agency by telephone, immediately or as soon as is practicable, and also by written report after receiving the information regarding the perpetrator of the abuse. By and through its health practitioner agents, servants, and/or employees - and Defendant ROBERT HADDEN himself - Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES", ROBERT HADDEN, and their agents, servants, and/or employees violated the foregoing laws of the State of New York by failing to report the sexual exploitation and sexual abuse committed by ROBERT HADDEN upon a minor to local law enforcement each time it witnessed, perpetrated, and/or reports were received of ROBERT HADDEN committing a sexual assault or battery upon a minor female patient. Furthermore, Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES", ROBERT HADDEN, and their agents, servants, and/or employees have deliberately attempted to conceal their recurring failures to comply with State Laws and medical ethics by publicly and falsely claiming that it had no legal duty to report ROBERT HADDEN's sexually abusive behavior to law enforcement, that ROBERT HADDEN had/ has acted in a medically appropriate manner at times, and that ROBERT HADDEN was out on "medical leave" beginning in or around August 2012.

491. Plaintiffs are informed and believe, and on that basis state, that as part of Defendants' conspiratorial and fraudulent attempt to hide ROBERT HADDEN's propensity to sexually abuse and molest female patients, and minor female patients, from public scrutiny and criminal investigation, that Defendants implemented various measures designed to make

ROBERT HADDEN's conduct harder to detect and served to ensure that other patients and minors with whom he came into contact, such as Plaintiffs, would be sexually abused, including:

- Permitting ROBERT HADDEN to remain in a position of authority and trust after Defendants knew or should have known that he sexually exploited and abused female patients;

- Placing ROBERT HADDEN in a separate and secluded environment at Defendant COLUMBIA UNIVERSITY, their related "CORP. ENTITIES", and their offices, hospitals, and clinics, which granted him unfettered access and authority over patients as purported to conduct extremely sensitive obstetric and gynecologic treatment, thereby allowing ROBERT HADDEN to physically and sexually interact with and exploit the female patients, including each of the Plaintiffs herein;

- Moving ROBERT HADDEN from one clinic to another every few years as complaints of his sexual exploitation and abuse mounted during each new move;

- Failing to disclose and actively concealing ROBERT HADDEN's prior record of misconduct, sexual abuse, sexual exploitation, harassment and molestation and his propensity to commit such acts towards patients, from plaintiffs herein, defendants' other patients, the public at large, and law enforcement;

- Enabling a known predator such as ROBERT HADDEN to have unfettered and un-controlled access to female patients, including the Plaintiffs herein;

- Enabling pedophilia and sexual abuse of minors;

- Holding out ROBERT HADDEN to Plaintiffs, other patients of Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES", the alumni members of COLUMBIA UNIVERSITY, and the public at large as a trustworthy and honest person of high ethical and moral standards who was capable and worthy of being granted unsupervised access to female patients of Defendants COLUMBIA UNIVERSITY,

THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES".

- Failing to investigate and otherwise confirm or deny such facts about ROBERT HADDEN, including prior complaints, and/or claims and investigations of sexual exploitation and abuse;

- Falsely, and fraudulently, denying the truth surrounding ROBERT HADDEN's known sexual exploitation and abuse of female patients in a concerted and well scripted effort to actively dissuade women from filing lawsuits against COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES", ROBERT HADDEN, and their agents, servants, and/or employees.

- Failing to inform, and actively concealing from Plaintiffs, other patients, the State of New York Office of Professional Medical Conduct, and law enforcement officials, the fact that Plaintiffs, and other patients, were or may have been sexually abused, exploited, harassed and/or molested, after Defendants knew or should have known that ROBERT HADDEN may have/and had sexually exploited and abused Plaintiffs or others, thereby enabling Plaintiffs to continue to be endangered and sexually exploited, abused, harassed, molested, and/or creating the circumstance where Plaintiffs and others were less likely to receive proper medical and psychological treatment, thus exacerbating the harm to Plaintiffs;

- Holding out ROBERT HADDEN to Plaintiffs and to the community as being a person in good standing, trustworthy, knowledgeable and authoritative;

- Cloaking ROBERT HADDEN's sexual misconduct with patients within the facade of normalcy, thereby disguising the nature of his sexual exploitation and abuse;

- Failing to take reasonable steps and to implement safeguards to avoid acts of unlawful sexual conduct by ROBERT HADDEN such as avoiding placement of ROBERT HADDEN in functions and/or environments in which his intimate contact with female patients was inherent;

- Failing to put in place a system, or procedure, to supervise or monitor physicians (and specifically ROBERT HADDEN), chaperones, and agents to ensure they do not molest and/or abuse patients in Defendants' care, and that they further report all reasonable suspicions of sexual assault and battery to law enforcement pursuant to the mandatory reporter laws.

492. By his association and professional relationship within the Defendants' Corp. Entities, Defendant ROBERT HADDEN attained a position of authority and influence over Plaintiffs and others. Defendants' conduct created a situation of peril that was not, and could not, be appreciated by Plaintiffs. By virtue of Defendants' exploitative, conspiratorial and fraudulent conduct, and in keeping with their intent to fail to disclose and hide ROBERT HADDEN's past and present conduct from the COLUMBIA UNIVERSITY community, the Patients of Defendants and their Corp. Entities, the public at large, the State Medical Board, and law enforcement, Defendants allowed ROBERT HADDEN to remain in a position of influence and authority where his unsupervised, and/or negligently supervised, conduct with patients made the exploitation, molestation and abuse of female patients, including the Plaintiffs herein, possible.

493. Through his position within the Defendants' institutions and clinics, Defendants and ROBERT HADDEN demanded and required that Plaintiffs respect ROBERT HADDEN in his position as a OBGYN physician for Defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES".

494. The sexual harassment, exploitation and abuse of Plaintiffs by HADDEN, outlined herein, took place while ROBERT HADDEN was an OBGYN physician employed, retained, managed, and supervised by Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES", and Plaintiffs were patients of Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES", offices, hospitals, and clinics while ROBERT HADDEN was serving as an agent, servant, and employee of Defendants in his capacity as a physician and faculty member.

    a.    In his capacity as a physician and faculty member with Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES", ROBERT HADDEN was given custody, control, supervision, and authority over patients, including Plaintiffs. ROBERT HADDEN used this position of authority to groom and exploit female patients, to concede to his prurient sexual demands, using his authority and position of trust to exploit and manipulate them physically, sexually, and emotionally;

    b.    Plaintiffs were patients of COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES" in or around the early 1990's through 2012, during which time, Plaintiffs came into contact with ROBERT HADDEN at the premises, hospitals, offices, and clinics, of defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES". Plaintiffs are informed and believe ROBERT HADDEN would use the guise of obstetric and gynecologic care and treatment to groom female patients, and normalize intimate, inappropriate, exploitative and sexually abusive contact with Plaintiffs. During this period, Plaintiffs were patients under ROBERT HADDEN's direct supervision and control.

    c.    Plaintiffs are informed and believe ROBERT HADDEN's physical and sexual abuse of Plaintiffs commenced in or around 1992 and continued through in or around 2012. During this period, Plaintiffs were patients under ROBERT HADDEN's, and Defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES"'s direct supervision and control. Using his position as a physician, ROBERT HADDEN would interact with Plaintiffs under the guise of providing them care and treatments necessary for their health and well-being. Under these circumstances, ROBERT HADDEN would, among other abusive acts, force Plaintiffs to strip naked, grope their bare breasts and digitally penetrate their vaginas, in the presence of other medical professional staff, for non-medical reasons. ROBERT HADDEN's sexual abuse, exploitation, molestation, and harassment of Plaintiffs occurred on the premises of

Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES" offices, clinics and hospitals.

    d.    During these occurrences, ROBERT HADDEN groped, penetrated, verbally violated, manipulated, groomed and otherwise sexually abused and exploited Plaintiffs - under the guise of performing medical procedures - for ROBERT HADDEN's own sexual gratification and prurient interests. ROBERT HADDEN would have the Plaintiffs remove all of their clothes and lay on the treatment table naked. ROBERT HADDEN would then perform his acts of sexual abuse upon Plaintiffs, in front of another medical professionals employed as chaperones by defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES".

    e.    ROBERT HADDEN's sexual abuse and harassment of Plaintiffs was done for ROBERT HADDEN's personal sexual gratification, and it annoyed, disturbed, exploited, irritated, and offended Plaintiffs as it would have any reasonable person. Plaintiffs did not, and could not, consent to the sexual abuse, exploitation and harassment by ROBERT HADDEN.

495. As set forth more fully herein above, ROBERT HADDEN did sexually abuse, exploit, harass and molest Plaintiffs, who were female OB/GYN patients at the time of the acts at issue. Plaintiffs are informed and believe, and on that basis state, that such conduct by ROBERT HADDEN was based upon Plaintiffs' gender, and was done for ROBERT HADDEN's own illicit sexual gratification. These actions upon Plaintiffs were performed by ROBERT HADDEN without the free consent of Plaintiffs.

496. During the period Plaintiffs were being sexually exploited, abused and harassed by ROBERT HADDEN, Defendants had the authority and ability to prevent such abuse by removing ROBERT HADDEN from his position as an obstetrical and gynecological physician at Defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES". They failed to do so, allowing the abuse to occur and to continue unabated. Plaintiffs are informed and believe, and on that basis state, that this failure was a part of Defendants' conspiratorial plan and arrangement to

conceal ROBERT HADDEN's wrongful acts, to avoid and inhibit detection, to block public disclosure, to avoid scandal, to avoid the disclosure of their tolerance of doctor-sexual-abuse, to preserve a false appearance of propriety, and to avoid investigation and action by public authorities including law enforcement and the New York State Medical Board, Office of Professional Medical Conduct. Such actions were motivated by a desire to protect the reputation of Defendants and protect the monetary support of Defendants provided by alumni and other donors, while fostering an environment where such abuse could, would, and has continued to occur.

497. As a direct result of the sexual harassment and abuse of Plaintiffs by ROBERT HADDEN, Plaintiffs have had difficulty in meaningfully interacting with others, including those in positions of authority over Plaintiffs including other physicians, gynecologists, athletic supervisors, professors, superiors at work, and other men in general. Plaintiffs have been limited in their ability to meaningfully interact with others due to the trauma of this sexual exploitation and abuse. This inability to interact creates a conflict with Plaintiffs' values of trust and confidence in others, and has caused Plaintiffs substantial emotional distress, anxiety, nervousness and fear. As a direct result of the sexual abuse, exploitation and molestation by ROBERT HADDEN, Plaintiffs suffered immensely, including, but not limited to, encountering issues with a lack of trust, various negative psychological and emotional sequelae, depressive symptoms, eating disorders, anxiety, and nervousness.

498. As a direct and proximate result of Defendants' tortious acts, omissions, fraudulent concealment, wrongful conduct and breaches of their duties, Plaintiffs' employment and professional development have been adversely affected. Plaintiffs have lost wages and will continue to lose wages in an amount to be determined at trial. Plaintiffs have suffered substantial economic injury, all to Plaintiffs' general, special and consequential damage in an amount to be proven at trial, but in no event less than the minimum jurisdictional amount of this Court.

499. As a further direct and proximate result of Defendants' wrongful actions, as herein stated, Plaintiffs have been injured and/or damaged in their health, strength and activity. Plaintiffs

have sustained permanent and continuing injury to their nervous systems and persons, which has caused and continues to cause great mental, physical, emotional and nervous pain, suffering, fright, upset, grief, worry and shock in an amount according to proof at trial but in no event less than the jurisdictional minimum requirements of this Court.

500. As is set forth herein, defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES" and ROBERT HADDEN have failed to uphold numerous mandatory duties required of them by state law, as well as their own internal written policies and procedures, including but not limited to:

- Duty of health care professionals to report reasonable suspicions of sexual abuse to law enforcement;
- Duty to use reasonable care to protect participants and members from known or foreseeable dangers;
- Duty to protect participants and patients and members and staff, and provide adequate supervision;
- Duty to ensure that any direction given to participants and members is lawful, and that adults act fairly, responsibly and respectfully towards participants and members;
- Duty to properly train staff so that they are aware of their individual responsibilities for creating and maintaining a safe environment;
- Duty to review the criminal history of applicants and current employees;
- Duty to provide diligent supervision over patients;
- Duty to act promptly and diligently and not ignore or minimize problems;
- Duty to report suspected incidents of sexual abuse;

501. Defendants and each of them had and have a duty to protect patients, including Plaintiffs. Defendants were required to, and failed, to provide adequate supervision, and failed to be properly vigilant in ensuring that supervision was sufficient at defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES" offices, hospitals, and clinics to protect the safety of Plaintiffs and others.

502. Despite having a duty to do so, Defendants failed to adequately train and supervise all staff to create a positive and safe environment, specifically including training to perceive, report prevent and/or stop inappropriate sexual exploitation and conduct by other members of the staff, specifically including ROBERT HADDEN and female patients.

503. Defendants failed to enforce their own rules and regulations designed to protect the health and safety of its patients and Plaintiffs. Further, they failed to adopt and implement safety rules, policies and procedures designed to protect patients, such as Plaintiffs, from the sexually exploitive and abusive acts of their agents, servants, and employees such as ROBERT HADDEN and the chaperones who continued to leave the rooms knowing full well of the sexual exploitation and abuse that was being perpetrated by ROBERT HADDEN.

504. In subjecting Plaintiffs to the wrongful treatment herein described, Defendants ROBERT HADDEN, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES" acted willfully and maliciously with the intent to harm Plaintiffs, and in conscious disregard of Plaintiffs' Rights, so as to constitute malice and/or oppression. Plaintiffs are informed, and on that basis state, that specifically, the Defendants acted in concert, and under their authority both as an educational institution and medical provider, with reckless disregard for the concern of the female students and female patients in their charge, in order to further financially benefit its businesses's growth. The Defendants' action are intentional and create an environment that harbors molesters, puts its vulnerable patients at risk of harm, ignores clear warning signs and their duties to report sexual abusers and molesters in their ranks, to maintain a facade of normalcy, in order to maintain its funding, and donations, and provide further financial growth of defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES", on the International level. The safety of the patients that were entrusted to defendants ROBERT HADDEN, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES" and was compromised due to Defendants' collective desire to maintain the *status quo* of the defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY,

their related "CORP. ENTITIES" organizations, to continue to enjoy the financial support of their alumni, and avoid any public scrutiny of their long-standing and pervasive misconduct. Plaintiffs are informed, and on that basis state, that these willful, exploitative, malicious, and/ or oppressive acts, as stated herein above, were ratified by COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES", and the Officers, Directors, Administrators, and/or managing agents of the Defendants. Plaintiffs are, therefore, entitled to recover punitive damages, in an amount to be determined by the court, against Defendants ROBERT HADDEN, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES".

### STATUTES OF LIMITATIONS ARE TOLLED

505. The conduct underlying the various causes of action set forth herein were committed at different times.

506. Upon information and belief, Defendants and their attorneys have violated each of the Plaintiffs' privacy protections under New York State law by illegally accessing Plaintiff's private and protected medical records without their authorization or consent. Further, Defendants have caused, and are continuing to cause, Plaintiffs to endure mental and emotional pain, suffering, and duress as a result of Defendants' refusal to issue letters permitting the removal of ROBERT HADDEN's name from the birth certificates of their children. The presence of the name of sexual felon ROBERT HADDEN - who sexually assaulted each of the women herein - on the birth certificates of Plaintiffs' minor children is repugnant to the senses and must be removed. Defendants abject refusal to issue a letter which would permit Plaintiffs to remove ROBERT HADDEN's name from the birth certificates is an act of intimidation, malice, and intentional wrongdoing which is ongoing. Thus Plaintiffs' claims for damages as to all these acts and omissions are timely.

507. Further, Plaintiffs were each sexually abused by ROBERT HADDEN upon Defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related CORP. ENTITIES' campuses, hospitals, offices, and medical clinics from in or around 1992 to in or about August 2012, while Plaintiffs were patients of the within named Defendants, their agents, servants, and/or employees.

508. The sexual abuse that each Plaintiff endured which was committed by ROBERT HADDEN, was wholly enabled by COLUMBIA UNIVERSITY, THE TRUSTEES ODF COLUMBIA UNIVERSITY, CORP. ENTITIES, and their agents, servants, and/or employees. In each of these cases, a chaperone employed by Defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related CORP. ENTITIES" witnessed the abuse and did nothing to intervene.

509. In a concerted and well orchestrated effort, Defendants actively set out to coach and train its employees on the importance of concealing and suppressing the multitude of complaints about ROBERT HADDEN's sexually abusive behavior. Such efforts were specifically designed to deceive Plaintiffs into believing that ROBERT HADDEN's sexual exploitation and abuse was a form of "legitimate medical treatment".

510. Indeed, each of the Plaintiffs, and countless other patients of COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related CORP. ENTITIES' have tried to report, and have actually reported, ROBERT HADDEN's misconduct to defendants and their agents. Yet, each plaintiff was induced to believe that their complaints were without merit. In essence, Plaintiffs were duped, lied to, and told various false stories by Defendants such as ROBERT HADDEN is "just old-school", "didn't mean it that way", is "out on

medical leave right now", "You're the only person who has ever said anything like that, so I'm sure it's not true" and "that's just his way of doing things". Even within COLUMBIA UNIVERSITY and CORP. ENTITIES, the Chaperones who tried to report were told "Just stay with your doctor and don't let him get himself in trouble." Defendants' massive coverups and overt efforts to convince Plaintiffs that ROBERT HADDEN's conduct was somehow acceptable was intentionally designed to confuse and mislead plaintiffs who were sexually abused by ROBERT HADDEN.

511. All of said statement, and more, which were made by Defendants were knowingly false and cleverly designed to get the Plaintiffs to forbear in filing a formal Complaint against defendants. In furtherance of the coverups, no one from Defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES" has ever - to this day - contacted Plaintiffs, or any other patients of ROBERT HADDEN, to inform them that ROBERT HADDEN's actions were inappropriate, illegal, and abusive.

512. Upon information and belief, in or around August of 2012, Defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES" began paying defendant ROBERT HADDEN financial compensation in exchange for his quiet resignation or medical leave, in order to continue to conceal ROBERT HADDEN's sexually abusive nature from the public, other patients, and specifically the Plaintiffs herein. Defendants actions are intentionally designed to insulate itself from both civil liability and a criminal investigation.

513. Based on the words and conduct of each of the defendants, their agents, servants, and/or employees, plaintiffs were induced to not file a complaint earlier. Because defendants have fraudulently induced Plaintiffs to forbear in filing a formal complaint, each of Plaintiff's statute of limitations has been tolled, and Defendants ROBERT HADDEN, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES" are each equitably estopped from asserting the statute of limitations as a defense.

514. Defendants ROBERT HADDEN, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES" acted wrongfully in ignoring and actively concealing the myriad of complaints of sexual misconduct lodged against ROBERT HADDEN, and further breached numerous mandatory duties owed to Plaintiffs by holding ROBERT HADDEN out as a trusted, safe, and legitimate medical professional, and failing to warn Plaintiffs of ROBERT HADDEN's proclivity to sexually abuse young female patients. Moreover, Plaintiffs were coerced into not talking about the abusive acts they endured by the threatening and intimidating actions of ROBERT HADDEN and CORP. ENTITIES' nurse Chaperones — who placed them under duress and also in imminent fear — and only came forward once the coercive nature of his acts subsided, due to the media's revelation of ROBERT HADDEN's pattern of misconduct and the subsequent police investigation allowing such women, including Plaintiffs, to come forward without fear of retribution by Defendants ROBERT HADDEN, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related "CORP. ENTITIES".

515. Furthermore, Plaintiffs were led to believe that ROBERT HADDEN's sexual abuse was not, in fact, sexual abuse, but rather was legitimate obstetrical and gynecological treatment, due to the fact that ROBERT HADDEN, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related CORP. ENTITIES's Chaperones witnessed the sexual exploitation and abuse yet did nothing to intervene. Many of the Plaintiffs were young women at the time they were sexually abused by ROBERT HADDEN, and for some of Plaintiffs, their appointments with ROBERT HADDEN were their first visits to a gynecologist or obstetrician, such that they had no prior experiences of legitimate OBGYN examinations to compare ROBERT HADDEN's purported treatments to.

516. Plaintiffs herein were not, and are not, clinical medical professionals and had no specialized or relevant medical training, and thus did not, and could not, have reasonably discovered their abuse at an earlier date than they did. As such, they were blamelessly ignorant of the true facts related to their abuse until it was revealed many years later after ROBERT HADDEN entered his guilty pleas in Criminal Court, when the allegations of sexual misconduct against ROBERT HADDEN received some media attention, that Plaintiffs knew, or had reason to know, that their claims against Defendants ROBERT HADDEN, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related CORP. ENTITIES had accrued. Thus, the Plaintiffs' claims have not accrued as defendants ROBERT HADDEN, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and their related CORP. ENTITIES continue to fraudulently deny any kind of wrongdoing as to any of women that ROBERT HADDEN sexually exploited and abused - including those who ROBERT HADDEN pled guilty to abusing.

517. For several months Defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, CORP. ENTITIES, and ROBERT HADDEN have been affirmatively and directly asking plaintiffs to forbear in filing this complaint and have offered to try to negotiate a private settlement in lieu of filing a formal legal action.

518. Instead of making a good-faith, bona fide effort to compensate the Plaintiffs herein, enact and implement the necessary changes to protect other female patients going forward, and resolve these cases without filing a formal action, COLUMBIA, its TRUSTEES, and CORP. ENTITIES have only compounded the injuries inflicted upon these women by continuing to lie to them in an ongoing effort to prevent the women from filing a formal complaint. Only now has it now become clear that COLUMBIA's false representations - and direct instructions to forbear in filing the additional complaints - were an intentional and premeditated act by Columbia in its ongoing campaign to induce plaintiffs to not file their formal complaints in court.

519. Because of the affirmative and intentionally false statements by CORP. ENTITIES about the propriety of the "medical treatment" being rendered by ROBERT HADDEN; the knowingly false statements to Plaintiffs that what ROBERT HADDEN was doing to Plaintiffs wasn't an act of doctor sexual abuse; the knowingly false statements that what ROBERT HADDEN was doing was some form of legitimate medical treatment — or on account of ROBERT HADDEN simply being an "old-school" doctor; the knowingly false statements to Plaintiffs that ROBERT HADDEN was no longer at defendants offices because he was out on "medical disability"; the nurse Chaperones' active and continuing approval of the exploitative and abusive conduct being committed by ROBERT HADDEN; CORP.

ENTITIES' ongoing, direct solicitations of Plaintiffs for financial donations to their institution — both during and following ROBERT HADDEN's criminal prosecution and conviction for doctor-sexual; COLUMBIA UNIVERSITY Law School's (CAPI) propagandized audit of the Manhattan District Attorney's campaign finances, which wholly failed to reference the fact that COLUMBIA's own doctor was part of the public outrage over the District Attorney's failure to prosecute affluent white-men whose lawyers donate money to the District Attorney's re-election campaign; Co-Defendant THE NEW YORK AND PRESBYTERIAN HOSPITAL's award-winning advertising campaign that blanketed the City of New York while ROBERT HADDEN was under criminal investigation for doctor-sexual abuse — that touted the "Amazing Things" happening at their institutions — which was designed to create subterfuge and further convince up to 30,000 women that they were not sexually abused by ROBERT HADDEN; and Defendants' most recent efforts to get plaintiffs to continue to forbear in filing a formal Complaint by encouraging a meeting to discuss both financial remuneration and the enactment of institution-wide policy changes to help prevent doctor-sexual abuse; defendants should therefore be legally estopped from asserting the statute of limitations as a defense.

520. Further, under CPLR § 215(8) the civil statute of limitations is tolled and doesn't start to run until the conclusion of a criminal action that results in a conviction of a defendant. The resolution of the criminal proceedings which resulted in ROBERT HADDEN's conviction occurred in the Spring of 2016. The State's successful conviction was based upon the same pattern of abuse, and institutional enabling, that each of the women herein endured. Further, nearly all of the survivors herein participated in the State's criminal prosecution of ROBERT

HADDEN. While there is no specific time stated in CPLR § 215(8), the statute states that there is "at least" one year to file a civil case following the resolution of the criminal action. The actual statutes for each claim will vary and are based on a variety of other factors including the actual, prevailing, civil statute of limitations for any particular claim. In this case, plaintiffs have asserted claims for various forms of negligence that include: negligent hiring, negligent training, negligent supervision, and negligent retention — all of which are three (3)-year statutes. Since the resolution of the criminal action occurred, at the earliest, on the date of ROBERT HADDEN's sentencing on March 29, 2016, each of plaintiffs' claims for negligence are timely.

521. Further, all of the plaintiffs herein have been physically, mentally and emotionally traumatized by defendants' conduct, sexual exploitation and abuse. As a result of which they have been rendered unable to function and conduct themselves in a normal way in society, and have lacked the capacity to deal with, and confront, the important legal issues and rights herein until the present.

522. As such, the statute of limitations is tolled, and defendants are estopped from asserting the defense of a statute of limitation.

## FIRST CAUSE OF ACTION
## COMMITTING AND ENABLING GENDER VIOLENCE

523. Plaintiffs re-state and incorporate by reference each and every allegation contained herein above as though fully set forth and brought in this cause of action.

524. ROBERT HADDEN's acts of misconduct committed against Plaintiffs, as set-forth herein, including the sexual harassment, exploitation, molestation and abuse of the Plaintiffs constitutes gender-violence and a form of sex discrimination in that one or more of ROBERT HADDEN's acts would constitute a criminal offense under New York State Laws that has as

an element of the use, attempted use, or threatened use of physical force against the person of another, committed at least in part based on the gender of the victim, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction.

525. ROBERT HADDEN's acts committed against Plaintiffs, as set-forth herein, including the sexual harassment, exploitation, molestation and abuse of the Plaintiffs constitutes gender-violence and a form of sex discrimination, and racial discrimination, in that ROBERT HADDEN's conduct caused a physical intrusion or physical invasion of a sexual nature upon Plaintiffs under coercive conditions, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction.

526. Defendants COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS; PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE, LLC; and COLUMBIA CORNELL NETWORK PHYSICIANS, INC., knew not only of ROBERT HADDEN's propensity to commit such acts, but also enabled ROBERT HADDEN to commit those acts by providing ROBERT HADDEN with access to the COLUMBIA and CORP. ENTITIES' female students and patients, as well bestowing upon him authority over those patients. By ignoring, dismissing, and failing to take any action against ROBERT HADDEN such as firing him, reporting him to the police, and/or reporting him to the New York State Medical Board, Defendants COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS;

PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE, LLC; and COLUMBIA CORNELL NETWORK PHYSICIANS, INC., enabled the abuse of hundreds of female COLUMBIA UNIVERSITY and CORP. ENTITIES' patients, including the Plaintiffs herein.

527. As a proximate result of ROBERT HADDEN's acts, as well as Defendants' enabling of those acts over a period of greater than 20-years, Plaintiffs are entitled to actual damages, compensatory damages, punitive damages, injunctive relief, any combination of those, or any other appropriate relief against all Defendants.

528. Accordingly Compensatory and Punitive damages are necessary under these facts as to all defendants.

## SECOND CAUSE OF ACTION
### COMMITTING AND ENABLING SEXUAL HARASSMENT, PREDATORY GROOMING, SEXUAL EXPLOITATION AND SEXUAL ABUSE

529. Plaintiffs re-state and incorporate by reference each and every allegation contained herein above as though fully set forth and brought in this cause of action.

530. ROBERT HADDEN, in sexually harassing, grooming, exploiting and abusing the Plaintiffs and others as herein set-forth, including intending to subject Plaintiffs to numerous instances of sexual exploitation, abuse and molestation during Plaintiffs' time with Defendants at Defendants' COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES", beginning in or around 1992, and lasting for the duration of Plaintiffs' tenures with these Defendants through in or around August of 2012 including, but not limited to, instances of ROBERT HADDEN groping and fondling the Plaintiffs' vaginas and breasts, all while ROBERT HADDEN acted in the course and scope of his agency/employment with Defendants, and each of them and were intended to cause harmful or offensive contact with Plaintiffs' persons, or intended to put Plaintiffs in imminent apprehension of such contact.

531. In doing the things herein stated, Plaintiffs were put in imminent apprehension of a harmful or offensive contact by ROBERT HADDEN and actually believed ROBERT HADDEN had the ability to make harmful or offensive contact with Plaintiffs' persons.

532. Plaintiffs did not, and could not, consent to ROBERT HADDEN's intended harmful or offensive contact with Plaintiffs' persons, or intent to put Plaintiffs in imminent apprehension of such contact.

533. In doing the things herein stated, ROBERT HADDEN and Defendants violated Plaintiffs' Rights of protection from bodily restraint or harm, and from personal insult. In doing the things herein stated, ROBERT HADDEN violated his duty to abstain from injuring the person of Plaintiffs or infringing upon their rights.

534. As a result of the above-described conduct, Plaintiffs have suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, shame, humiliation, and loss of enjoyment of life; have suffered and continue to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

535. Plaintiffs are informed and based thereon state that the conduct of Defendants was oppressive, malicious and despicable in that it was intentional and done in conscious disregard for the rights and safety of others, and was carried out with a conscious disregard of their right to be free from such tortious behavior, such as to constitute oppression, fraud or malice, entitling Plaintiffs to punitive damages against Defendants in an amount appropriate to punish and set an example of Defendants.

536. Accordingly Compensatory and Punitive damages are necessary under these facts as to all defendants.

**THIRD CAUSE OF ACTION**
**COMMITTING AND ENABLING CRIMINAL and CIVIL SEXUAL BATTERY**

537. Plaintiffs re-state and incorporate by reference each and every allegation contained herein above as though fully set forth and brought in this cause of action.

538. During Plaintiffs' time as patients with Defendants COLUMBIA UNIVERSITY, TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES, ROBERT HADDEN intentionally, recklessly and wantonly did acts which were intended to, and did result in harmful and offensive contact with intimate parts of Plaintiffs' persons, including but not limited to being subjected to numerous instances of sexual abuse and sexual exploitation by ROBERT HADDEN, during Plaintiffs' time with Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES", beginning on or around 1992, and lasting for the duration of his tenure with Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES" to in or around 2012, including but not limited to instances of ROBERT HADDEN groping and fondling the Plaintiffs' vaginas, buttocks, and breasts, all while HADDEN acted in the course and scope of his agency/employment with Defendants, and each of them.

539. ROBERT HADDEN did the aforementioned acts with the intent to cause harmful or offensive contact with intimate parts of Plaintiffs' persons, and would offend a reasonable sense of personal dignity. Further, said acts did cause a harmful or offensive contact with intimate parts of Plaintiffs' persons that would offend a reasonable sense of personal dignity.

540. Because of ROBERT HADDEN's position of status and authority over Plaintiffs, and Plaintiffs' mental and emotional states, and Plaintiffs' ages, Plaintiffs did not give meaningful consent, and could not consent, to such acts.

541. As a direct, legal and proximate result of the acts of HADDEN, Plaintiffs sustained serious and permanent injuries to their persons, all of his damage in an amount to be shown according to proof and within the jurisdiction of the Court.

542. As a direct result of the sexual abuse by ROBERT HADDEN, Plaintiffs have difficulty in reasonably or meaningfully interacting with others, including those in positions of authority over Plaintiffs including teachers, and supervisors, and in intimate, confidential and familial

Case 1:19-cv-02878-ALC Document 24-1 Filed 04/29/19     Page 184 of 232

relationships, due to the trauma of the sexual abuse inflicted upon them by Defendants. This inability to interact creates conflict with Plaintiffs' values of trust and confidence in others, and has caused Plaintiffs substantial emotional distress, anxiety, nervousness and fear. As a direct result of the sexual exploitation, abuse and molestation by ROBERT HADDEN, Plaintiffs suffered immensely, including, but not limited to, encountering issues with a lack of trust, various psychological sequelae, depressive symptoms, anxiety, nervousness, and self-medicating behavior.

543. Plaintiffs are informed and based thereon state that the conduct of ROBERT HADDEN was oppressive, malicious and despicable in that it was intentional and done in conscious disregard for the rights and safety of others, and was carried out with a conscious disregard of Plaintiffs' right to be free from such tortious behavior, such as to constitute oppression, fraud or malice, entitling Plaintiffs to punitive damages against ROBERT HADDEN in an amount appropriate to punish and set an example of ROBERT HADDEN and send a message to others similarly situated that they must avoid doing similar things.

544. Further, defendant ROBERT HADDEN was permitted and enabled to commit these criminal acts as a direct and proximate result of the negligence, carelessness, and wanton recklessness of Defendant CORP. ENTITIES and that of their agents, servants and/or employees through their failure to timely and properly train, supervise, monitor, discipline, terminate, and report ROBERT HADDEN to the Criminal Authorities and the New York State Office of Professional Medical Conduct — as well as their failure to take any disciplinary action against ROBERT HADDEN internally.

545. As a direct and proximate result of the aforementioned sexual batteries, Plaintiffs sustained in the past, and will sustain in the future, physical injury, pain and suffering, serious psychological and emotional distress, mental anguish, embarrassment and humiliation.

546. Accordingly Compensatory and Punitive damages are necessary under these facts as to all defendants.

## FIFTH CAUSE OF ACTION
## NEW YORK DECEPTIVE BUSINESS PRACTICES
## GENERAL BUSINESS LAW § 349-350

547. Plaintiffs re-state and incorporate by reference each and every allegation contained herein above as though fully set forth and brought in this cause of action.

548. Plaintiffs are informed and believe and on that basis state that Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, CORP. ENTITIES, and ROBERT HADDEN have engaged in unlawful, unfair and deceptive business practices including allowing and enabling ROBERT HADDEN to engage in repeated harassment of female patients, including Plaintiffs, and failing to take all reasonable steps to prevent harassment and abuse from occurring. The unlawful, unfair and deceptive business practices also included failing to adequately investigate, vet, and evaluate individuals for employment with defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES" and ROBERT HADDEN, refusing to design, implement, and oversee policies regarding sexual harassment and abuse of patients in a reasonable manner that is customary in similar medical and educational environments. Plaintiffs are informed and believe and on that basis state that ROBERT HADDEN and Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES", have engaged in unlawful, unfair and deceptive business practices including concealing sexual harassment, abuse and/or molestation claims by female patients, such as Plaintiffs, so as to retain other similarly situated individuals within Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES" who were not apprised of such illicit sexual misconduct by HADDEN.

549. Plaintiffs are informed and believe that Defendants engaged in a common scheme, arrangement or plan to actively conceal allegations against sexual abusers who were employees, agents, members, and/or participants at Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES",

including ROBERT HADDEN, such that Defendants could maintain their public image, and avoid revelation and detection of such abuse and abusers. Plaintiffs are informed and believe and thereon state that Defendants actively concealed these allegations, such that Defendants would be insulated from public scrutiny, New York State governmental oversight, State Medical Board Investigations, and/or investigation from various state and local law enforcement agencies, all done in order to maintain the false sense of safety for unsuspecting patients and their families and to perpetuate the program financially.

550. By engaging in unlawful, unfair and deceptive business practices, Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES" and ROBERT HADDEN benefitted financially to the detriment of their competitors, who had to comply with the law.

551. Unless restrained, Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES" will continue to engage in the deceptive acts and business practices described above, resulting in great and irreparable harm to Plaintiffs and/or other similarly situated participants and members.

552. Plaintiffs seek restitution for all amounts improperly obtained by ROBERT HADDEN and Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES" through the use of the above-mentioned unlawful business practices, as well as the disgorgement of all ill-gotten gains and restitution on behalf of Plaintiffs and all other similarly situated patients who were also subjected to ROBERT HADDEN and Co-Defendants' illegal and deceptive business practices.

553. Pursuant to New York's Deceptive Business Practices Act and available equitable powers, Plaintiffs are entitled to a preliminary and permanent injunction, enjoining Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES" and ROBERT HADDEN from continuing the unlawful and deceptive business practices described above. Further, Plaintiffs seek the appointment of a court monitor to enforce its orders regarding client safety. In addition, Plaintiffs are entitled to recover reasonable attorneys' fees.

554. Accordingly Compensatory and Punitive damages are necessary under these facts as to all defendants.

### SIXTH CAUSE OF ACTION
### COMMITTING AND ENABLING NEGLIGENT
### INFLICTION OF EMOTIONAL DISTRESS

555. Plaintiffs re-state and incorporate by reference each and every allegation contained herein above as though fully set forth and brought in this cause of action.

556. Defendants ROBERT HADDEN and "CORP. ENTITIES" owed a duty to Plaintiffs to not cause them emotional distress, the initiation of post-traumatic stress disorder, or other harm during the course of gynecological and/or obstetric examinations and other related treatment, which were and are of a very personal nature to the patients.

557. Defendant ROBERT HADDEN, was negligent as to the effect of his conduct in performing unwanted sexual acts without the consent of Plaintiffs during the course and scope of his purported medical treatment of the Plaintiffs.

558. Defendant "CORP. ENTITIES", their agents, servants, and/or employees were negligent as to the effect of their conduct in allowing and enabling defendant ROBERT HADDEN to perform unwanted sexual acts on the Plaintiffs herein, as well as countless other patients, during the course and scope of his purported medical treatment of their patients.

559. Defendant "CORP. ENTITIES," as well as their agents, servants, and/or employees were further negligent and careless in failing to attend to Plaintiffs in a timely and proper manner after they were sexually assaulted by ROBERT HADDEN, and after these facts were brought to the attention of the medical personnel upon the premises of defendant "CORP. ENTITIES".

560. Defendants ROBERT HADDEN and "CORP. ENTITIES", as well as their agents, servants, employees and/or legal teams were further negligent and careless in failing to timely and

properly investigate the reports, claims and legal filings about the sexual assaults upon patients being committed by ROBERT HADDEN, and made false, disparaging and degrading oral and written statements about the lack of veracity of plaintiffs and countless other women.

561. As a direct and proximate consequence of Defendants's negligence, Plaintiffs have suffered physical, emotional, and psychological injuries, along with pain and suffering.

562. Accordingly Compensatory damages are necessary under these facts as to all defendants.

### SEVENTH CAUSE OF ACTION
### COMMITTING AND ENABLING INTENTIONAL
### INFLICTION OF EMOTIONAL DISTRESS

563. Plaintiffs re-state and incorporate by reference each and every allegation contained herein above as though fully set forth and brought in this cause of action.

564. Defendants COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS; PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE, LLC; and COLUMBIA CORNELL NETWORK PHYSICIANS, INC., ROBERT HADDEN, and their agents, servants, and/or employees' conduct toward Plaintiffs, as described herein, was outrageous and extreme.

565. A reasonable person would not expect or tolerate the sexual harassment, exploitation, molestation and abuse of Plaintiffs by ROBERT HADDEN, and Defendants' knowledge and callous indifference thereof. Plaintiffs had placed their trust, faith and confidence in Defendants, which, by virtue of ROBERT HADDEN and Co-Defendants' wrongful conduct, turned to fear, shame and humiliation.

566. A reasonable person would not expect or tolerate Defendants placing ROBERT HADDEN - who was known to Defendants to have physically and sexually abused other female-patients - in a position of care of Plaintiffs and other patients, which enabled ROBERT HADDEN to have access to other patients so that he could commit wrongful sexual acts, including the conduct described herein, with young female patients, including Plaintiffs. Plaintiffs had placed great trust, faith and confidence in Defendants, which, by virtue of Defendants' wrongful conduct, turned to fear, shame and humiliation.

567. A reasonable person would not expect or tolerate the Defendants, their agents, servants, and/or employees to be incapable of supervising, preventing and/or stopping ROBERT HADDEN from committing wrongful sexual acts with patients, including Plaintiffs, or to be incapable or unwilling to supervise ROBERT HADDEN. Plaintiffs had placed great trust, faith and confidence in Defendants, which, by virtue of Defendants' wrongful conduct, turned to fear, shame and humiliation.

568. Defendants' conduct described herein was deliberately indifferent, wanton, grossly reckless, premeditated, intentionally deceitful, reckless, intentional and malicious and done for the purpose of causing or with the substantial certainty that Plaintiffs would suffer humiliation, mental anguish, and emotional and physical distress.

569. As a result of the above-described conduct, Plaintiffs have suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, shame, humiliation, and loss of enjoyment of life; have suffered and continue to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

570. In subjecting Plaintiffs to the wrongful treatment herein described, Defendants COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL CENTER, EAST SIDE

ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS; PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE, LLC; and COLUMBIA CORNELL NETWORK PHYSICIANS, INC., and ROBERT HADDEN acted willfully and maliciously with the intent to harm Plaintiffs, and in conscious disregard of Plaintiffs' rights, so as to constitute malice and/or oppression. Plaintiffs are informed, and on that basis state, that these willful, malicious, and/or oppressive acts, as stated herein above, were ratified by the officers, directors, and/or managing agents of the Defendants. Plaintiffs are therefore entitled to recover punitive damages, in an amount to be determined by the Court, against Defendants COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS; PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE, LLC; and COLUMBIA CORNELL NETWORK PHYSICIANS, INC., and ROBERT HADDEN.

571. Accordingly Compensatory and Punitive damages are necessary under these facts as to all defendants.

### EIGHTH CAUSE OF ACTION
### CONSTRUCTIVE FRAUD

572. Plaintiffs re-state and incorporate by reference each and every allegation contained herein above as though fully set forth and brought in this cause of action.

573. By holding ROBERT HADDEN out as an agent of Defendants, and by allowing him to undertake the medical care of female patients such as Plaintiffs, Defendants entered into a confidential, fiduciary, and special relationship with Plaintiffs.

574. By holding themselves out as a pre-eminent university medical center, thereby enticing Plaintiffs to seek medial care and treatment through Defendants' hospitals, medical centers, and clinics, Defendants entered into a confidential, fiduciary and special relationship with Plaintiffs.

575. Defendants breached their confidential, fiduciary duty and special duties to Plaintiffs by the wrongful and negligent conduct described above and incorporated into this cause of action, and in so doing, gained an advantage over Plaintiffs in matters relating to Plaintiffs' safety, security and health. In particular, in breaching such duties as stated, Defendants were able to sustain their status as an institution of high moral repute, and preserve their reputation, all at the expense of Plaintiffs' further injury and in violation of Defendants' mandatory duties.

576. By virtue of their confidential, fiduciary and special relationship with Plaintiffs, Defendants owed Plaintiffs a duty to:

- Investigate or otherwise confirm or deny such claims of sexual abuse;
- Reveal such facts to Plaintiffs, the community at large, and law enforcement agencies;
- Refuse to place ROBERT HADDEN and other molesters, sexual predators, and enablers in positions of trust and authority within Defendants' institutions;
- Refuse to hold out ROBERT HADDEN and other molesters to the public, the community, parents and law enforcement agencies as being in good standing, reputable and, trustworthy in keeping him and his position as a physician, faculty member and authority figure;
- Refuse to assign ROBERT HADDEN and other molesters, sexual predators and enablers to positions of power within Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES", and over female patients; and
- Disclose to Plaintiffs, the public, the school community, the state medical board, and law enforcement agencies the wrongful, tortious, and sexually exploitive acts that ROBERT HADDEN and his enablers had engaged in with patients.

577. Defendants' breach of their respective duties included:

- Not making reasonable investigations of ROBERT HADDEN;

- Issuing no warnings about ROBERT HADDEN;

- Not making reasonable investigations of ROBERT HADDEN's enablers;

- Issuing no warnings about ROBERT HADDEN's enablers;

- Enabling ROBERT HADDEN to routinely be supervised only by untrained chaperones, who were consistently derelict in their duty to report ROBERT HADDEN's sexual abuse to law enforcement;

- Not adopting a policy to prevent ROBERT HADDEN from routinely having patients and patients in his unsupervised control;

- Making no reports of any allegations of ROBERT HADDEN's abuse of patients prior to or during his employment and/or agency at Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, their related "CORP. ENTITIES";

- Assigning and continuing to assign ROBERT HADDEN to duties which placed him in positions of authority and trust over female patients, positions in which ROBERT HADDEN could easily isolate, sexually exploit, and sexually abuse other female patients; and

- Enabling ROBERT HADDEN to serially sexually assault female patients for a period of over 20 years upon Defendants' medical facilities, clinics and/or premises.

578. At the time that Defendants engaged in such suppression and concealment of ROBERT HADDEN's tortious, exploitative and despicable acts, such acts were done for the purpose of causing Plaintiffs to forbear on their rights.

579. Defendants' misconduct did reasonably cause Plaintiffs to forbear on Plaintiffs' Rights.

580. The misrepresentations, suppressions and concealment of facts by Defendants were intended to, and were likely to, mislead Plaintiffs and others to believe that Defendants had no knowledge of any charges against ROBERT HADDEN, or that there were no other charges of unlawful or sexual misconduct against ROBERT HADDEN or others and that there was no need for them to take further action or precaution.

581. The concerted misrepresentations, suppressions and concealment of facts by Defendants was likely to mislead Plaintiffs, and others, to believe that Defendants had no knowledge of the fact that ROBERT HADDEN was a molester, sexual predator, and was known to commit wrongful and exploitative sexual acts with female patients, including Plaintiffs.

582. Defendants knew or should have known at the time they suppressed and concealed the true facts regarding others' sexual molestations, that the resulting impressions were misleading.

583. Defendants suppressed and concealed the true facts regarding ROBERT HADDEN with the purpose of: preventing Plaintiffs and others, from learning that ROBERT HADDEN and others had been and were continuing to sexually harass, sexually exploit, molest and abuse patients, ROBERT HADDEN and Defendants' control, direction, and guidance, with complete impunity; inducing people, including Plaintiffs and other benefactors and donors to participate and financially support Defendants' program and other enterprises of Defendants; preventing further reports and outside investigations into ROBERT HADDEN and Defendants' conduct; preventing discovery of Defendants' own conduct; avoiding damage to the reputations of Defendants; protecting Defendants' power and status in the community; avoiding damage to the reputation of Defendants, or Defendants' institutions; and avoiding the civil and criminal liability of Defendants, of ROBERT HADDEN, of ROBERT HADDEN's enablers, and of others.

584. At all times mentioned herein, Defendants, and in particular Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and ROBERT HADDEN with knowledge of the tortious and exploitative nature of their own, and ROBERT HADDEN's conduct, knowingly and collectively conspired and provided each other substantial assistance to perpetrate the misrepresentations, fraud and deceit stated herein— covering up the past allegations of sexual misconduct lodged against ROBERT HADDEN, and allowing and enabling ROBERT HADDEN to remain in his position as a physician, faculty member and doctor, so they could maintain their reputations and continue with their positions within the organization.

585. Plaintiffs and others were misled by Defendants' suppressions and concealment of facts, and in reliance thereon, were induced to act or induced not to act, exactly as intended by Defendants. Specifically, Plaintiffs were induced to believe that there were no allegations of criminal or sexual abuse against ROBERT HADDEN, and that he posed no danger to his patients. This inducement was caused by intentionally and knowingly false statements about the cause of ROBERT HADDEN's abrupt, but silent departure as a physician at the hospitals, offices, and medical clinics of CORP. ENTITIES. Had Plaintiffs, and others, known the true facts about ROBERT HADDEN, they would have not participated further in activities of Defendants, or continued to financially support Defendants' activities. They would have reported the matters to the proper authorities, to other patients so as to prevent future recurrences; they would not have allowed themselves, and their children, including Plaintiffs, to be alone with, or have any relationship with ROBERT HADDEN; they would not have allowed female patients, including Plaintiffs, to attend or be under the control of Defendants; they would have undertaken their own investigations which would have led to discovery of the true facts; and they would have sought psychological counseling for Plaintiffs, and for other female patients, who had been abused by ROBERT HADDEN.

586. By giving ROBERT HADDEN the position of physician and faculty member, Defendants both impliedly and affirmatively represented that ROBERT HADDEN was safe and morally fit to give medical care and provide gynecologic and obstetric treatment. Further, the placement of chaperones in the room, who simply stood by and watched - or left the room - as the abuse was happening, served to validate the idea that what was happening was some form of legitimate medical treatment, when in fact it was sexual exploitation and abuse.

587. When Defendants made these affirmative or implied representations and non-disclosures of material facts, Defendants knew, or should have known, that the facts were otherwise. Defendants knowingly and intentionally suppressed the material facts that ROBERT HADDEN, had on numerous, prior occasions sexually, physically, and mentally abused patients of Defendants, including Plaintiffs, and knew of, or learned of conduct, or should have known of conduct by ROBERT HADDEN which placed Defendants on notice that

ROBERT HADDEN had previously been suspected of, and committed, felonies, including unlawful sexual conduct with patients, and was sexually exploiting and abusing female patients under his care.

588. Because of the status of ROBERT HADDEN with CORP. ENTITIES as a trusted, authority figure to Plaintiffs, Plaintiffs were vulnerable to ROBERT HADDEN. ROBERT HADDEN sought Plaintiffs out, and was empowered by and accepted Plaintiffs' vulnerability. Plaintiffs' vulnerability also prevented Plaintiffs from effectively protecting themselves from the sexual advances of ROBERT HADDEN.

589. Defendants had the duty to obtain and disclose information relating to sexual misconduct of ROBERT HADDEN.

590. Defendants affirmatively misrepresented, actively concealed and failed to disclose information relating to sexual misconduct of ROBERT HADDEN.

591. Defendants knew that they had misrepresented, concealed and failed to disclose information related to sexual misconduct of ROBERT HADDEN.

592. Plaintiffs justifiably relied upon Defendants for information relating to sexual misconduct of ROBERT HADDEN.

593. Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, CORP. ENTITIES and ROBERT HADDEN, in concert with each other and with the intent to conceal and defraud, conspired and came to a meeting of the minds whereby they would misrepresent, conceal or fail to disclose information relating to the sexual misconduct of ROBERT HADDEN, the inability of Defendants to supervise or stop ROBERT HADDEN from sexually harassing, exploiting, molesting and abusing Plaintiffs, and their own failure to properly investigate, supervise and monitor his conduct with patients.

594. By so concealing, Defendants committed at least one act in furtherance of the conspiracy.

595. As a result of the above-described conduct, Plaintiffs have suffered and continue to suffer great pain of mind and body, shock, emotional distress, shame, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, shame,

humiliation, and loss of enjoyment of life; have suffered and continue to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

596. In addition, when Plaintiffs finally discovered the fraud of Defendants, and continuing thereafter, Plaintiffs experienced recurrences of the above-described injuries. Plaintiffs experienced extreme and severe mental anguish and emotional distress that Plaintiffs had been the victim of Defendants' fraud; that Plaintiffs had not been able to help other young female patients to avoid being molested because of the fraud, and that Plaintiffs had not been able because of the fraud to receive timely medical treatment needed to deal with the problems Plaintiffs had suffered and continue to suffer as a result of the sexual harassment, molestation and abuse.

597. In subjecting Plaintiffs to the wrongful treatment herein described, Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, CORP. ENTITIES and ROBERT HADDEN acted willfully and maliciously with the intent to harm Plaintiffs, and in conscious disregard of Plaintiffs' rights, so as to constitute malice, gross recklessness and/or oppression. Plaintiffs are informed, and on that basis state, that these willful, wanton, malicious, and/or oppressive acts, as stated herein above, were ratified by the officers, directors, trustees and/or managing agents of the Defendants. Plaintiffs are therefore entitled to recover punitive damages, in an amount to be determined by the Court, against Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, CORP. ENTITIES and ROBERT HADDEN.

598. Accordingly Compensatory and Punitive damages are necessary under these facts as to all defendants.

**NINTH CAUSE OF ACTION**
**COMMITTING AND ENABLING NEGLIGENCE**
**AND PROFESSIONAL NEGLIGENCE**

599. Plaintiffs re-state and incorporate by reference each and every allegation contained herein above as though fully set forth and brought in this cause of action.

600. Prior to, and after the first incident of ROBERT HADDEN's sexual harassment, exploitation, molestation and abuse of Plaintiffs herein, through the present, Defendants, knew and/or should have known that ROBERT HADDEN had, and was capable of, sexually, physically, and mentally abusing, exploiting and harassing Plaintiffs and others.

601. Defendants and each of them had special duties to protect the Plaintiffs and other female patients, when such individuals were entrusted to Defendants' care. Plaintiffs' care, welfare and physical custody was entrusted to Defendants. Defendants voluntarily accepted the entrusted care of Plaintiffs. As such, Defendants owed Plaintiffs as women, students, minors, as well as pregnant and non-pregnant female patients, a special duty of care that ethical adults and medical professionals dealing with vulnerable medical patients owe to protect them from harm. The duty to protect and warn arose from the special, trusting, confidential, and fiduciary relationship between Defendants and Plaintiffs.

602. Further, Defendant ROBERT HADDEN and defendant "CORP. ENTITIES" owed a duty to Plaintiffs herein to not cause them emotional distress, the initiation of post-traumatic stress disorder, the trigger of past sexual abuse, or other harm during the course of gynecological and/or obstetric examinations and other related treatment, which are of a very personal nature to these patients.

603. Defendant ROBERT HADDEN, was negligent as to the effect of his conduct in performing unwanted sexual acts without the consent of Plaintiffs herein during the course and scope of his purported medical treatment of the Plaintiffs and other women.

604. Defendant CORP. ENTITIES, their agents, servants, and/or employees were negligent as to the effect of their conduct in allowing and enabling defendant ROBERT HADDEN to perform unwanted sexual acts on Plaintiffs herein, as well as other patients, during the course and scope of his purported medical treatment of their patients.

605. Defendant CORP. ENTITIES, as well as their agents, servants, and/or employees were further negligent and careless in failing to attend to Plaintiffs in a timely and proper manner

after they were sexually assaulted by ROBERT HADDEN, and after these facts were brought to the attention of the medical personnel upon the premises of defendant CORP. ENTITIES.

606. Defendants ROBERT HADDEN and CORP. ENTITIES, as well as their agents, servants, employees, administrators and/or legal teams were further negligent and careless in failing to timely and properly investigate the reports, claims and legal filings about the sexual assaults upon patients being committed by ROBERT HADDEN, and made false, disparaging and degrading oral and written statements about the lack of veracity of plaintiffs and other women.

607. Defendants breached their duty of care to the Plaintiffs by allowing ROBERT HADDEN to come into contact with the Plaintiffs and other female patients without effective supervision; by failing to adequately hire, train and supervise ROBERT HADDEN whom they permitted and enabled to have access to Plaintiffs; by concealing from Plaintiffs, the public and law enforcement that ROBERT HADDEN was sexually harassing, molesting and abusing patients; and by holding ROBERT HADDEN out to Plaintiffs as being of high moral and ethical repute, in good standing and trustworthy.

608. Defendants breached their duties to Plaintiffs by failing to investigate or otherwise confirm or deny such facts of sexual abuse by ROBERT HADDEN, failing to reveal such facts to Plaintiffs, the community and law enforcement agencies, and by placing ROBERT HADDEN into a position of trust and authority, holding him out to Plaintiffs and the public as being in good standing and trustworthy.

609. Defendants breached their duty to Plaintiffs by failing to adequately monitor and supervise ROBERT HADDEN and failing to prevent ROBERT HADDEN from committing wrongful sexual acts with medical patients, including Plaintiffs. Defendants' past observations, reports, and records of sexual misconduct by ROBERT HADDEN caused Defendants to know, or gave them information where they should have known, of ROBERT HADDEN's incapacity to serve as a physician, and faculty member at Defendants' institutions, providing for the physical care of pregnant and non-pregnant, adult and minor, female patients.

610. As a result of the above-described conduct, Plaintiffs have suffered and continue to suffer great pain of mind and body, shock, emotional distress, shame, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, shame, humiliation, and loss of enjoyment of life; have suffered and continue to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

611. Accordingly Compensatory damages are necessary under these facts as to all defendants.

### TENTH CAUSE OF ACTION
### NEGLIGENT SUPERVISION

612. Plaintiffs re-state and incorporate by reference each and every allegation contained herein above as though fully set forth and brought in this cause of action.

613. By virtue of Plaintiffs' special relationships with Defendants, and Defendants' relation to ROBERT HADDEN, Defendants owed Plaintiffs a duty to provide reasonable supervision of ROBERT HADDEN, to use reasonable care in investigating ROBERT HADDEN's background, and to provide adequate warning to Plaintiffs and other patients of ROBERT HADDEN's dangerous propensities and unfitness. As organizations and individuals responsible for, and entrusted with, the welfare of patients, Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES had a duty to protect, supervise, monitor, and prevent the Plaintiffs from being preyed upon by sexual predators, and to supervise and monitor ROBERT HADDEN such that he would not be placed in seclusion with vulnerable medical patients, including the Plaintiffs.

614. As representatives of Defendants COLUMBIA UNIVERSITY, THE BOARD OF TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES, Defendants' agents servants and/or employees expressly and implicitly represented that physicians, faculty and staff, including ROBERT HADDEN, were not a sexual threat to those individuals and others who would fall under ROBERT HADDEN's influence, control, direction, and care.

615. Defendants, by and through their respective agents, servants and employees, knew or should have known, of ROBERT HADDEN's dangerous and exploitive propensities and that ROBERT HADDEN was an unfit agent and practitioner. Despite such knowledge, Defendants negligently failed to supervise ROBERT HADDEN in his position of trust and authority as a physician, gynecologist, faculty member and authority figure over female patients and young women, where he was able to commit wrongful acts of sexual misconduct against Plaintiffs. Defendants failed to provide reasonable supervision of ROBERT HADDEN, failed to use reasonable care in investigating ROBERT HADDEN, and failed to provide adequate warning to Plaintiffs of ROBERT HADDEN's dangerous propensities and unfitness. Defendants further failed to take reasonable steps to ensure the safety of patients, including Plaintiffs, from sexual harassment, sexual assault, sexual battery, molestation, and abuse.

616. At no time during the periods of time set-forth herein did Defendants have in place a reasonable system or procedure to investigate, supervise and monitor ROBERT HADDEN, to prevent pre-sexual grooming and sexual harassment, sexual exploitation, molestation and abuse of those individuals, nor did they implement a system or procedure to oversee or monitor conduct toward patients and others in Defendants' care.

617. Defendants were aware, or should have been aware, of how vulnerable these patients were to sexual grooming, harassment, exploitation, molestation and abuse by physicians, male-gynecologists in particular, faculty members and other persons of authority within Defendants' entities. Recent news reports about the Dean of Students having sexually exploited and abused an incoming female freshman shows that the exploitation and abuse of women at Columbia University and its affiliated offices, clinics, hospitals, and entities is a systemic problem which Defendants' are not capable of handling or managing.

618. Defendants were put on notice, knew and/or should have known that ROBERT HADDEN had previously engaged in, and was continuing to engage in, unlawful sexual conduct with female patients, minors, and other pregnant and non-pregnant patients, and that he had committed and perpetrated sexual felonies against those patients, for his own personal sexual

gratification, and that it was foreseeable that he was engaging, or would engage, in illicit sexual activities with Plaintiffs, and others, under the cloak of the authority, confidence, and trust, bestowed upon him by Defendants.

619. Defendants were placed on actual or constructive notice that ROBERT HADDEN had molested, groomed, abused, and exploited other female patients during his employment with Defendants. Defendants were informed of molestations of patients committed by ROBERT HADDEN prior to Plaintiffs' sexual abuse, and of conduct by ROBERT HADDEN that would put a reasonable person on notice of such propensity to molest, groom, exploit and abuse young female patients.

620. Even though Defendants knew, or should have known, of the illicit and exploitative sexual activities being perpetrated by ROBERT HADDEN, Defendants failed to reasonably investigate, supervise, monitor, and end ROBERT HADDEN's access to female patients. Instead, Defendants simply enabled ROBERT HADDEN to keep exploiting and sexually abusing more and more female patients.

621. Defendants' conduct was a breach of their duties to Plaintiffs and all female patients, as well as their family members.

622. Defendants, and each of them, have breached their duty to Plaintiffs by, *inter alia*, failing to adequately monitor and supervise ROBERT HADDEN and stop ROBERT HADDEN from committing wrongful sexual acts with female patients, including Plaintiffs.

623. As a result of the above-described conduct, Plaintiffs have suffered and continue to suffer great pain of mind and body, shock, emotional distress, shame, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; have suffered and continue to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

624. Accordingly Compensatory damages are necessary under these facts as to all defendants.

**ELEVENTH CAUSE OF ACTION**

## NEGLIGENCE *PER SE* CONDUCT IN VIOLATION OF
## MANDATORY NEW YORK STATE REPORTING LAWS

625. Plaintiffs re-state and incorporate by reference each and every allegation contained herein above as though fully set forth and brought in this cause of action.

626. Under applicable law, Defendants, by and through their employees and agents, were medical care providers and were under a statutory duty to report known or suspected incidents of sexual molestation or abuse of patients, or any individuals in their care, to the appropriate authorities, and not to impede the filing or investigation of any such report.

627. Defendants knew, and should have known, that their gynecological physician, ROBERT HADDEN, had sexually molested, abused, exploited, or caused touching, battery, harm, and/or other injuries to female patients including Plaintiffs, giving rise to a duty to report such conduct.

628. Defendants knew, and should have known, in the exercise of reasonable diligence, that an undue risk to patients, including Plaintiffs, existed because Defendants did not comply with mandatory reporting requirements.

629. By failing to report the continuing sexual molestations and abuse by ROBERT HADDEN, which Defendants knew and should have known about, and by ignoring the fulfillment of the mandated compliance with the reporting requirements, Defendants created the risk and danger contemplated by the applicable mandated state reporting laws, and as a result, unreasonably and wrongfully exposed Plaintiffs and other patients to sexual molestation and abuse.

630. Further, defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES actively and intentionally impeded the criminal indictment and investigation of ROBERT HADDEN through the intimidation of Assistant District Attorneys, as well as the intimidation of Defendants' own agents, servants, and/or employees, all in an effort to dissuade them from reporting the exploitation and abuse to the authorities and others. In doing so, defendants illegally interjected themselves into the criminal prosecution of ROBERT HADDEN, used force and coercion in an effort to derail

the criminal investigation, and sent high-ranking risk-managers and corporate personnel to accompany and intimidate its nurses and medical chaperones before, during, and after their interviews with the Manhattan District Attorneys office relative to the criminal indictment and prosecution of ROBERT HADDEN.

631. Plaintiffs were members of the class of persons for whose protection the applicable mandated reporting laws were specifically designed and adopted to protect.

632. Had Defendants adequately reported the molestation of female patients, including Plaintiffs, as required by applicable mandated reporting laws, further harm to Plaintiffs and other individuals would have been avoided.

633. As a proximate result of Defendants' failure to follow New York's mandatory reporting requirements, Defendants wrongfully denied Plaintiffs, and other women, the intervention of law enforcement and the appropriate authorities. Such public agencies would have changed the then-existing arrangements and conditions which provided the necessary access and opportunities for the molestation of Plaintiffs by ROBERT HADDEN.

634. The physical, mental, and emotional damages and injuries resulting from the sexual molestation of Plaintiffs by ROBERT HADDEN were the type of occurrence and injuries that the applicable mandated reporting laws were designed to prevent.

635. As a result, Defendants' failure to comply with the mandatory reporting requirements constituted a per se breach of Defendants' duties to Plaintiffs.

636. Defendants, and each of them, breached their duty to Plaintiffs by, *inter alia*, failing to adequately monitor and supervise ROBERT HADDEN and stop ROBERT HADDEN from committing wrongful sexual acts with patients, including Plaintiffs.

637. As a result of the above-described conduct, Plaintiffs have suffered and continue to suffer great pain of mind and body, shock, emotional distress, shame, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; have suffered and continue to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of

life; will sustain loss of earnings and earning capacity, and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

638. Accordingly Compensatory and Punitive damages are necessary under these facts as to all defendants.

## TWELFTH CAUSE OF ACTION
### NEGLIGENT HIRING, RETENTION and RATIFICATION

639. Plaintiffs re-state and incorporate by reference each and every allegation contained herein above as though fully set forth and brought in this cause of action.

640. By virtue of Plaintiffs' special relationship with Defendants, and Defendants' relation to ROBERT HADDEN, Defendants owed Plaintiffs a duty to not hire and/or retain HADDEN, given his dangerous and exploitive propensities, which Defendants knew, or should have known, about had they engaged in a reasonable, meaningful and adequate investigation of his background prior to his hiring or retaining him.

641. Defendants expressly and implicitly represented that ROBERT HADDEN was a legitimate gynecologist and obstetrician, and not a sexual threat to female patients.

642. At no time during the periods of time stated herein did Defendants have in place a reasonable system or procedure to timely and properly investigate, supervise and monitor its hospitals, offices, medical clinics, physicians and healthcare personnel, including ROBERT HADDEN, to prevent sexual grooming, sexual harassment, sexual exploitation, molestation and abuse of female patients, nor did they implement a system or procedure to oversee or monitor conduct toward female patients and/or others in Defendants' care.

643. Defendants were aware, or should have been aware, and understood how vulnerable female patients were to sexual grooming, sexual harassment, sexual exploitation, molestation and abuse by faculty members, physicians, and other persons of authority within the control of Defendants prior to Plaintiffs' sexual abuse and exploitation by ROBERT HADDEN.

644. Defendant "CORP. ENTITIES", their agents, servants, and/or employees, failed to timely and properly investigate complaints made by the sexual assault survivors of ROBERT HADDEN, as well as suspicious circumstances wherein ROBERT HADDEN and other

medical staff, agents, servants, and/or employees placed patients in compromised and unprotected situations which either led, or should have led, to an investigation of defendant ROBERT HADDEN and other medical staff, agents, servants, and/or employees' negligence, carelessness, recklessness, and/or criminal and wanton misconduct.

645. Defendants were put on notice, and should have known that ROBERT HADDEN had previously engaged, and continued to engage, in unlawful sexual conduct with female patients, and was committing other felonies, for his own deviant sexual gratification, and that it was foreseeable, or should have been foreseeable, that ROBERT HADDEN was engaging in, or would engage in, illicit deviant sexual activities with Plaintiffs, and others, under the cloak of his authority, confidence, and trust, bestowed upon him through Defendants, their agents, servants and/or employees.

646. Defendants were placed on actual or constructive notice that ROBERT HADDEN had molested or was molesting female patients, both before his employment with the within named Defendants, and during that employment. Defendants had knowledge of inappropriate conduct, exploitation and serial molestations committed by ROBERT HADDEN before and during his employment, yet chose to allow him to remain unsupervised where he serially sexually abused Plaintiffs herein.

647. Despite the fact that Defendants knew, or should have known, of these sexually exploitive activities being perpetrated by ROBERT HADDEN, Defendants failed to use reasonable care in investigating ROBERT HADDEN and did nothing to reasonably investigate, supervise or monitor and/or terminate ROBERT HADDEN to ensure the safety of patients.

648. Defendants' conduct in enabling ROBERT HADDEN to serially sexually assault countless female Patients upon its premises was a long-standing, gross, and inexcusable violation of the duty of care owed to Plaintiffs herein because Defendants:

(a)    had actual knowledge of the sexual exploitation, abuse and harassment being committed by HADDEN;

(b)     failed to take action such as terminating their employment of ROBERT HADDEN, reporting ROBERT HADDEN to the police, and/or reporting ROBERT HADDEN to the New York State Medical Board as mandated by State Laws;

(c)     failed to take action such as terminating their employment of ROBERT HADDEN, reporting ROBERT HADDEN to the police, and/or reporting ROBERT HADDEN to the New York State Medical Board as mandated by State Laws;

(d)     failed to take action such as terminating their employment of ROBERT HADDEN, reporting ROBERT HADDEN to the police, and/or reporting ROBERT HADDEN to the New York State Medical Board as mandated by medical and academic standards of care;

(e)     failed to take action such as terminating their employment of ROBERT HADDEN, reporting ROBERT HADDEN to the police, and/or reporting ROBERT HADDEN to the New York State Medical Board as mandated by basic standards of ethics and decency;

(f)     consciously and intentionally enabled ROBERT HADDEN to continue to sexually exploit, abuse, and harass female patients by failing to take any of the above actions; and

(g)     consciously and intentionally concealed all of ROBERT HADDEN's exploitative, abusive, and harassing behaviors from female patients, the Plaintiffs herein, and the public at large, Defendants have enabled, permitted, and ratified the conduct of ROBERT HADDEN as set forth herein.

(h)     knew of ROBERT HADDEN's mental defects and propensity to act out in sexually inappropriate ways but failed to institute stringent supervision, or remove him from patient contact

649. Defendants, their agents, servants, and/or employees knew ROBERT HADDEN was sexually exploiting, abusing and harassing female patients and refused to take any action to stop him. Moreover, Defendants, their agents, servants, and/or employees hid this information so ROBERT HADDEN could continue to work for COLUMBIA UNIVERSITY, its hospital, offices, medical clinics and facilities. With knowledge of ROBERT HADDEN's sexual misconduct, no disciplinary action was taken by Defendants and he was inexplicably allowed to be alone with female patients. Defendants, their agents, servants, and/or

employees are thus responsible for ROBERT HADDEN's acts of sexual exploitation, sexual assault, sexual abuse, sexual battery, discrimination, and harassment.

650. Further, defendant "CORP. ENTITIES" prior to the granting or renewing of privileges or employment of defendants, residents, nurses and others medical personnel involved in plaintiffs' care, failed to investigate the qualifications, competence, capacity, abilities and capabilities of said defendants, residents, nurses and other employees, including but not limited to obtaining the following information: patient grievances, criminal investigations, governmental inquiries, negative health care outcomes, incidents injurious to patients, medical malpractice actions commenced against said persons, including the outcomes thereof, any history of association, privilege and/or practice at other institutions, and discontinuation of said association, employment, privilege and/or practice at said institution, and any pending professional misconduct proceedings in this State or another State, the substance of the allegations in such proceedings and any additional information concerning such proceedings and the findings of the proceedings and defendant "CORP. ENTITIES" failed to make sufficient inquiry of the physicians, nurses, employees other personnel and institutions which should and did have information relevant to the capacity, capability, ability and competence of said persons rendering treatment, including defendant ROBERT HADDEN - as well as the medical staff with which he was associated - upon Defendants' premises.

651. Defendant "CORP. ENTITIES" failed to timely and properly educate, train, supervise and/ or monitor its agents, servants, and/or employees with regard to the policies and procedures that must be followed when sexual abuse by a physician is suspected or observed, and instead created an environment where sexual misconduct by physicians was tolerated.

652. Defendant "CORP. ENTITIES" created an environment where its agents, servants and/or employees who suspected - or even witnessed - sexual misconduct by a physician, were more fearful about their prospects for future employment if they said something, than they were about the safety and well-being of the patients who were being sexually abused.

653. Had defendant "CORP. ENTITIES" made the above stated inquiry, or in the alternative, had it reviewed and analyzed the information obtained and available to it in a timely and proper manner, privileges and/or employment would not have been granted and/or renewed.

654. Defendant "CORP. ENTITIES" were additionally negligent, grossly reckless, wanton and willful, in failing to supervise, monitor, chaperone and/or investigate defendant ROBERT HADDEN, and/or failed to create, institute and/or enforce rules, policies, procedures and/or regulations for defendant ROBERT HADDEN's treatment of Plaintiffs and countless other women.

655. By reason of defendant "CORP. ENTITIES" failures to meet the aforementioned obligations, Plaintiffs were treated by physicians, nurses, medical personnel and other employees who were lacking the requisite skills, abilities, competence, capacity and supervision, as a result of which Plaintiffs sustained significant injuries and complications.

656. The aforesaid injuries resulting therefrom were caused wholly and solely as a result of the defendant "CORP. ENTITIES"'s negligent and reckless supervision of its agents, servants, and/or employees, and created a foreseeable risk of harm to its patients.

657. Specifically, on Friday, June 29, 2012 a female patient known as JANE DOE #1 was sexually abused by ROBERT HADDEN who touched his tongue to her vagina during a vaginal examination. JANE DOE #1, in shock and fear, hurriedly dressed and ran out of Defendants' offices. A short while later, two (2) members of the New York City Police Department presented to the medical office, located at 16 East 60th Street, seeking ROBERT HADDEN. Defendants' staff informed ROBERT HADDEN of the police officers' desire to speak with him. The police officers then proceeded to question ROBERT HADDEN about sexual assault he committed and escorted ROBERT HADDEN out of the main office area. ROBERT HADDEN informed the police that he had called JANE DOE #1 on her cell phone after the assault "to straighten out a situation". The police and the District Attorney's Office then proceeded to engage in a verbal altercation over the telephone - the Police Officers wanted to arrest ROBERT HADDEN but the District Attorney's Office insisted that ROBERT HADDEN be let go. The District Attorney then overrode the Police and mandated

that ROBERT HADDEN be released from their custody. The following week ROBERT HADDEN returned to Defendants' medical offices, and continued to sexually exploit and abuse female patients as if nothing had happened. Despite the knowledge of a female patient running out of the office - and the Police Officers' arrival at Defendants' offices a short-time later in an effort to apprehend ROBERT HADDEN - Defendants took no action against ROBERT HADDEN, wholly failed to investigate the matter, failed to suspend ROBERT HADDEN, failed to report the incident to other people of authority at COLUMBIA and its related CORP. ENTITIES, failed to terminate ROBERT HADDEN, and utterly failed to protect the sanctity of the relationship of trust which is supposed to exist between the Defendants through their agents, servants, employees, and the patients who they are supposed to serve.

658. Defendant "CORP. ENTITIES"'s negligence and recklessness further lies in having placed Defendant ROBERT HADDEN in a position to cause foreseeable harm, of which Plaintiffs would have been spared, had the defendant "CORP. ENTITIES" taken reasonable care in the supervision and investigation of its employees - including, but not limited to, defendant ROBERT HADDEN, himself.

659. In a claim for negligent hiring and/or retention, an employer is held liable and responsible for its negligence or recklessness in hiring, retaining and/or supervising an employee, whereas under respondeat superior, the employer is vicariously liable for the torts of the agent, servant or employee. Thus, while Defendant "CORP. ENTITIES" may or may not be vicariously liable under respondeat superior for an act of an employee that was committed outside the scope of the employee's employment, Defendant "CORP. ENTITIES" are nevertheless liable for their failure to exercise reasonable care in hiring, retention and/or supervising their agents, servants and/or employees - including, but not limited to, defendant ROBERT HADDEN, himself, as well as its useless and complicit chaperones who failed to report ROBERT HADDEN's conduct.

660. In a claim for negligent supervision, the employer is held liable and responsible for its negligence or recklessness in failing to timely and properly supervise an agent, servant, and/

or employee, whereas under respondeat superior, the employer is vicariously liable for the torts of the employee. Thus, while Defendant "CORP. ENTITIES" may or may not be vicariously liable under respondeat superior for an act of an agent, servant, or employee that was committed outside the scope of the employee's employment, Defendant "CORP. ENTITIES" are nevertheless liable for their own failure to exercise reasonable care in hiring, retaining, monitoring, investigating, and/or supervising their agents, servants and/or employees - including, but not limited to, defendant ROBERT HADDEN, himself.

661. As a result of the above referenced conduct, Plaintiffs have suffered and continue to suffer great pain of mind and body, shock, emotional distress, shame, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; have suffered and continues to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

662. As a result of Defendants' reckless conduct, gross indifference, and wanton lack of regard for the safety and well-being of its patients, malice, criminal indifference to civil obligations, and outrageous disregard of moral and professional obligations, both Compensatory and Punitive damages are necessary under these facts as to all defendants.

## THIRTEENTH CAUSE OF ACTION
### FAILURE TO WARN, TRAIN or EDUCATE

663. Plaintiffs re-state and incorporate by reference each and every allegation contained herein above as though fully set forth and brought in this cause of action.

664. Defendants COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS; PRESBYTERIAN HOSPITAL

PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE, LLC; and COLUMBIA CORNELL NETWORK PHYSICIANS, INC., owed Plaintiffs a duty to take reasonable protective measures to safeguard Plaintiffs, and other female patients, from the risk of sexual harassment, sexual exploitation, molestation and abuse by ROBERT HADDEN by properly warning, training or educating Plaintiffs and others, including their own medical personnel, medical staff, Administrators, and other agents, servants, and/or employees about how to avoid such a risk and what to do when such inappropriate conduct is witnessed, observed, reported, and/or discovered.

665. Defendants breached their duty to take reasonable measures to protect Plaintiffs, and other female patients, from the risk of sexual harassment, sexual exploitation, molestation and abuse by ROBERT HADDEN, such as the failure to properly warn, train and/or educate Plaintiffs, and other patients, about how to avoid such a particular risk that ROBERT HADDEN posed.

666. Defendants breached their duty to take reasonable protective measures to safeguard Plaintiffs and other patients from the risk of sexual harassment, sexual exploitation, molestation and abuse by ROBERT HADDEN, by failing to supervise and stop employees of Defendants, such as ROBERT HADDEN, and prevent them from committing sexually abusive and exploitive acts upon female patients, including Plaintiffs.

667. As a result of the above-referenced conduct, Plaintiffs have suffered and continue to suffer great pain of mind and body, shock, emotional distress, shame, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; have suffered and continue to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

668. Accordingly Compensatory and Punitive damages are necessary under these facts as to all defendants.

## FOURTEENTH CAUSE OF ACTION
### GROSS NEGLIGENCE, WANTON, WILLFUL and RECKLESS CONDUCT

669. Plaintiffs re-state and incorporate by reference each and every allegation contained herein above as though fully set forth and brought in this cause of action.

670. Defendants COLUMBIA UNIVERSITY, THE NEW YORK AND PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL CENTER, EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES; THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS; PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL CARE, LLC; COLUMBIA CORNELL NETWORK PHYSICIANS, INC., and ROBERT HADDEN) owed Plaintiffs, and other female patients, a duty to use due care to ensure their safety and freedom from sexual assault, sexual exploitation, sexual abuse, sexual discrimination, misogyny, racial discrimination, and molestation while interacting with their agents, servants, and/or employees, including ROBERT HADDEN.

671. ROBERT HADDEN owed Plaintiffs a duty of due care in carrying out ethical and safe medical care and treatment as an agent, servant and/or employee of the Defendants.

672. By seeking medical treatment from ROBERT HADDEN in the course of his employment, agency, and/or representation of the Defendants, a special, confidential, and fiduciary relationship between Plaintiffs and ROBERT HADDEN was created, resulting in each of the Defendants and ROBERT HADDEN owing Plaintiffs a duty to use due care.

673. Defendants' failures to adequately supervise ROBERT HADDEN, especially after they knew or should have known of complaints regarding ROBERT HADDEN's nonconsensual sexual abuse, exploitation, touching and assaults during medical examinations was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs.

674. ROBERT HADDEN's conduct in sexually assaulting, sexual exploiting, sexually abusing, and molesting Plaintiffs in the course of his employment, agency, and/or representation of the Defendants, and under the guise of rendering "medical treatment", was so wanton and reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs and hundreds of other female patients.

675. Defendants, their agents, servants, and/or employees, failed to timely and properly investigate complaints made by the sexual assault survivors of ROBERT HADDEN, and chaperones, as well as suspicious circumstances wherein ROBERT HADDEN and other medical staff, agents, servants, and/or employees placed patients in compromised and unprotected situations which either led, or should have led, to an investigation of defendant ROBERT HADDEN and other medical staff, agents, servants, and/or employees's negligence, carelessness, recklessness, and/or criminal and wanton misconduct.

676. Defendants, their agents, servants, and/or employees, failed to timely and properly act upon complaints made by the sexual assault survivors of ROBERT HADDEN, and chaperones, as well as suspicious circumstances wherein ROBERT HADDEN, and/or other medical staff, agents, servants, and/or employees, placed patients in compromised and unprotected situations, all of which caused and/or enabled further and additional negligent, careless, reckless, criminal and/or wanton acts and harm to be inflicted upon Plaintiffs, as well as hundreds of other female patients.

677. By reason of Defendants, and/or their agents, servants, and/or employees' failures to meet the aforementioned obligations and duties, Plaintiffs, as well as hundreds of other female patients, were subjected to physical and mental injury, mental manipulation, harm, duress, sexual objectification, sexual exploitation, racial discrimination, sexual assault, and sexual abuse.

678. Defendant ROBERT HADDEN's sexual assaults of Plaintiffs - and hundreds of other named and unnamed patients - as well as Defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES's gross negligence, willfulness, and wantonness concerning the improper hiring, retention, blatant coverups and

concealments, lack of supervision, abject enabling, and other reckless acts and omissions set forth herein, constitute intentional, extreme, and outrageous conduct of the highest order.

679. Such grossly reckless conduct is motivated by greed, self-seeking, self-interest, deliberate indifference, deviant sexual desire, and is the product of malicious and evil minds such that the imposition of punitive damages are warranted.

680. Punitive damages are justified in cases like this to both punish the wrongdoers - and also to hold them out as examples to the rest of the community - such that these Defendants, and others that may be similarly situated, are clearly and explicitly discouraged from engaging in these kinds of grossly deviant and abhorrent behaviors in the future.

681. For purposes of particularization of the acts and omissions of the within named Defendants which constitute, warrant, and mandate the imposition of punitive damages, it is stated that defendant ROBERT HADDEN - while pretending to render medical care to female patients - serially, and criminally, sexually exploited, assaulted, demeaned, and abused hundreds of female patients at Defendants' medical facilities and clinics. Further, evidence exists that Defendants enabled ROBERT HADDEN to continue to sexually assault, exploit and abuse their patients, including Plaintiffs herein, and instead of terminating him and reporting him to Criminal Authorities and the State Medical Board, they took no action and further enabled him to continue to sexually exploit and abuse even more female patients in new and different ways. Moreover, evidence has surfaced which demonstrates that defendant ROBERT HADDEN has been sexually assaulting, sexually exploiting, and sexually abusing patients on the premises of Defendants and their medical facilities and clinics for over 20 years — as far back as the early 1990's. All the while, Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY and CORP. ENTITIES, knew of the abuse but instead of terminating ROBERT HADDEN and immediately reporting him to law enforcement, they moved him from clinic to clinic in an intentional, but covert, effort to hide and conceal the abuse from their patients, the Plaintiffs herein, and the public at large.

682. Defendant ROBERT HADDEN should have already been the subject of an internal, Criminal, and State Medical Board Investigation by the time that he sexually assaulted each

of the Plaintiffs herein. However, Defendants failed to act on the information they had and enabled defendant ROBERT HADDEN to continue to sexually assault, sexually abuse and sexually exploit other female patients on its premises - despite a long history of sexually assaulting patients - for in excess of 20-years.

683. While being allowed to continue preying on young female patients at Defendant COLUMBIA UNIVERSITY and CORP. ENTITIES' hospitals, offices, and medical facilities and clinics without any restrictions, limitations, preceptors, chaperones or additional supervision, defendant ROBERT HADDEN continued to sexually exploit and assault female patients.

684. While sexually exploiting, abusing and assaulting female patients - seemingly at will due to the utter indifference of Defendants, their agents, servants, and/or employees - Defendant ROBERT HADDEN sexually exploited, abused, and assaulted Plaintiffs and hundreds of other female patients upon Defendants' premises.

685. Plaintiffs were patients of Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES at the time when defendant ROBERT HADDEN sexually exploited, abused, and assaulted them.

686. On several occasions, no chaperones were present in the room when Defendant ROBERT HADDEN, sexually exploited, abused, and assaulted plaintiffs on the premises of Defendants' medical offices, facilities and clinic.

687. On other occasions, chaperones were present in the room when Defendant ROBERT HADDEN, sexually exploited, abused, and assaulted Plaintiffs on the premises of Defendants' medical offices, facilities and clinics, and yet stood by and did nothing to protect the Plaintiffs and hundreds of other female patients.

688. On many occasions, since the early 1990's, chaperones were present in the room when Defendant ROBERT HADDEN, sexually exploited, abused, and assaulted Plaintiffs, and other female patients, on the premises of Defendants' medical offices, hospitals, facilities and clinics, who then tried to report the illegal conduct of ROBERT HADDEN to supervisors and other administrators of the within named Defendants, but whose reports

were wholly and utterly ignored and/or dismissed as not important, and not followed up on by the COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY and CORP. ENTITIES.

689. The history of sexual exploitation, sexual assault, and sexual abuse of female patients at the COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY and CORP. ENTITIES at the hands of serial predator ROBERT HADDEN spans a period of over 20-years.

690. Defendants, their agents, servants, and/or employees had knowledge and/or awareness of the prior sexually exploitive and sexually abusive conduct by ROBERT HADDEN, and chose to do nothing to protect their female patients, including Plaintiffs herein, from being sexually exploited and abused by Defendant ROBERT HADDEN.

691. As a result of Defendants' gross indifference and wanton lack of regard for the safety and well-being of its patients, malice, criminal indifference to civil obligations, and outrageous disregard of moral and professional ethics, duties and standards, Plaintiffs have each become yet another one of the countless sexual assault survivors of Defendant ROBERT HADDEN and Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY and CORP. ENTITIES.

692. Defendants' indolence and complicity in enabling serial sexual predator ROBERT HADDEN, is abhorrent conduct worthy of punishment.

693. Defendants' conduct demonstrates a willful disregard of any and all precautions necessary to ensure Plaintiffs' Safety.

694. Defendants' conduct as described above, demonstrated a willful disregard for the substantial and known risks that ROBERT HADDEN posed to Plaintiffs and other female patients.

695. Defendants have breached the duties owed to Plaintiffs, and other female patients, and were grossly negligent when they conducted themselves as described above, said acts having been committed with reckless disregard for Plaintiffs, and other female patients' health, safety, medical, ethical, and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

696. As a direct and/or proximate result of Defendants' actions and/or inactions, Plaintiffs and other female patients were damaged.

697. Accordingly Compensatory and Punitive damages are necessary under these facts as to all Defendants.

## FIFTEENTH CAUSE OF ACTION
## INVASION OF PRIVACY UNDER NEW YORK MENTAL HEALTH LAW § 33.13

698. Plaintiffs restate and incorporate by reference the preceding paragraphs as if fully set forth herein, and, to the extent necessary, pleads this cause of action in the alternative.

699. Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, CORP. ENTITIES and ROBERT HADDEN have intruded upon Plaintiffs' solitude, seclusion or private affairs and concerns by illegally accessing Plaintiffs' protected and private medical records, illegally viewing protected and private healthcare information, and intruding into their private and personal medical conditions - not for purposes of rendering medical care and treatment - but instead for the sole purpose of gaining a tactical advantage in litigation. Plaintiffs herein have never authorized the access of their medical records, and yet upon information and belief, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, CORP. ENTITIES and ROBERT HADDEN have illegally and surreptitiously accessed their records in abject violation of New York State Law. This intrusion is highly offensive to reasonable individuals, such as Plaintiffs, and was totally unwarranted and unjustified, constituting invasion of privacy, and a violation of New York MHY § 33.13.

700. Defendants carried out such actions through their agents and/or representatives by querying their medical records, medical archives, and electronic medical records (EMR) for information related to the Plaintiffs, their health related issues, complications, conditions, and treatments.

701. Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, CORP. ENTITIES, ROBERT HADDEN, and each of their agents, servants, employees, lawyers, and representatives have accessed, and continue to access, Plaintiffs'

private and protected health information for purposes other than the diagnosis, care and treatment of Plaintiffs.

702. Specifically, it is believed that Defendants have accessed, and continue to access, read, and use Plaintiffs' confidential medical information - without Plaintiffs' authorization or consent - in order to try to defend themselves against the myriad of lawsuits they now face for enabling ROBERT HADDEN to sexually exploit and sexually abuse female patients over the past couple decades at their hospitals, offices, and medical clinics.

703. Defendants have illegally used said information, *inter alia*, in an effort to dissuade Plaintiffs, and other female patients, from filing lawsuits against Defendants. Defendants have also illegally accessed and used Plaintiffs' protected health information for the purpose of obtaining facts and statements from Plaintiffs, and other female patients, such that Defendants will, and are, using said information to try and defend themselves against said lawsuits.

704. Defendants' conduct as described herein is despicable and was committed maliciously, fraudulently, and/or oppressively with the wrongful intention of injuring Plaintiffs and with a willful and conscious disregard for their rights, justifying an award of punitive damages.

705. Accordingly Compensatory and Punitive damages are necessary under these facts as to all Defendants.

### SIXTEENTH CAUSE OF ACTION
### DEFAMATION, LIBEL AND SLANDER

706. Plaintiffs restate and incorporate by reference the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

707. Since the time of the initial Civil filing in the related cases, through the present, the defendants, through their agents, servants, employees, lawyers and legal team, trustees and administrators, have made knowingly false and harmful judicial and extra-judicial statements - libelous written averments and slanderous verbal statements - wherein it has been asserted that each of the sexual abuse survivors in these cases are variously: making it up; lying; unworthy of being believed; out to ruin this distinguished doctor's career; are at fault for

their own abuse; are making abhorrently false claims; are acting in an appalling manner; are just doing it for the money; and even that some of them have sexually transmissible diseases such that it would have precluded Robert Hadden from sexual assaulting them. All of those statements by the defense are false, and defendants knew them to be false at the time the statements were made.

708. Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK PRESBYTERIAN HOSPITAL and CORP. ENTITIES have now made at least two additional false, defamatory, extrajudicial, statements to national new media outlets about the plaintiffs herein. These defamatory, slanderous, and libelous statements have caused, and will continue to cause, injury to these women as well as personal harm, suffering and duress.

709. Over the past several month, a spokesperson for defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK PRESBYTERIAN HOSPITAL and CORP. ENTITIES has stated to the national media that the "allegations" and the "accusations" made by the plaintiffs herein are "abhorrent". In short, defendants are again accusing each of these women of lying - but this time they have taken their scurrilous claims to the national media.

710. In a statement made to CBS News, that was published on December 5, 2018, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK PRESBYTERIAN HOSPITAL and CORP. ENTITIES, via their designated spokesperson, told the national news media that the allegations made by the women against Hadden in the criminal cases, as well as the "accusations" contained in this recent complaint, are "abhorrent". See, CBS News quote: **"The allegations leading to Robert Hadden's 2016 guilty plea and the accusations contained in this recent complaint are abhorrent"** See, CBS News, 17 women sue Columbia University, its hospitals, claim "massive coverup" of doctor's sex abuse, December 5, 2018.

711. Two days later, on December 7, 2018, defendants Columbia and NYPH doubled-down on their defamatory statements by telling CNN that not only were the allegations and statements

of these women "abhorrent" but that they **stand with medical professionals everywhere in condemning this appalling behavior."** See CNN News quote: The university added that though it "cannot comment on matters in litigation, we stand with medical professionals everywhere in condemning this appalling behavior." See, CNN News, Columbia University and its hospitals sued over doctor's sexual abuse, December 7, 2018.

712. These outrageous statement made by defendants are tasteless and wholly defamatory to the women who have come forward, and are also being used as a dog-whistle to ROBERT HADDEN — reminding him that this same University which kept his professional profile up on their website for years after he was indicted and throughout the pendency of the criminal action, fought to expose the names of his accusers in court filings, and fought for Hadden's own anonymity in the court papers, continues to "stand with him" in condemning the accusations being made against him.

713. At no time have defendants made an effort to "stand with the survivors" in an effort to help ameliorate — or even acknowledge — the exploitation and abuse they endured by their physician Robert Hadden. Defendants clearly do not "stand with the survivors" in condemning doctor-sexual abuse. Instead, defendants have overtly declared that they "stand with medical professionals everywhere" in condemning the survivors' behavior for coming forward and accusing a medical professional of sexual misconduct.

714. It is important to recognize that these same defendants have engaged in a consistent course of intimidation - fighting for years to expose the identities of these women to the public - and have consistently been criticizing the legitimacy of these women as survivors of doctor-sex-abuse.

715. Since the outset, defendants have done nothing except deny any culpability for themselves and for Robert Hadden. At one point the lawyers for COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, NEW YORK PRESBYTERIAN HOSPITAL, and CORP. ENTITIES petitioned this court for anonymity - not just for themselves - but also for Robert Hadden in this case. They did so despite the fact that they do not legally represent

Robert Hadden. Thus, it remains clear that defendants continue to stand with Robert Hadden and other medical personnel in direct opposition to the abuse survivors in this case.

716. Plaintiffs can neither wind back the clock, nor can they unring the bell, on defendants's undignified, false, and malicious statements about their lack of veracity, abhorrent allegations, and ethical conduct.

717. Defendants' false, defamatory, and injurious attacks on these women constitute defamation per se, slander, and now libel.

718. The within named defendants are all jointly and severally liable for the defamation of the names and reputations of the plaintiffs named herein in an amount to be determined at trial.

## SEVENTEENTH CAUSE OF ACTION
## REMOVAL OF SEXUAL PREDATOR ROBERT HADDEN'S NAME FROM THE BIRTH CERTIFICATES OF THE CHILDREN WHOSE MOTHERS WERE SEXUALLY ASSAULTED AND ABUSED

719. Plaintiffs restate and incorporate by reference the preceding paragraphs as if fully set forth herein, and, to the extent necessary, pleads this cause of action in the alternative.

720. ROBERT HADDEN had a long history of predatory grooming, sexually assaulting, and sexually abusing female patients at the hospitals, offices, and medical clinics of Defendant COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES.

721. Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES knew of the sexual exploitation and abuse being committed by ROBERT HADDEN.

722. Instead of terminating and/or firing ROBERT HADDEN, and reporting him to law enforcement, Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES engaged in a course of coverups, over lies, and deceit in an effort to protect their reputation and image as one of the top universities and medical centers in the world.

723. In their effort to protect their reputation and image, COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES covertly moved ROBERT HADDEN from one clinic to the next every few years as the incidents of his sexual exploitation and abuse escalated.

724. ROBERT HADDEN has been sexually exploiting and sexually abusing women since the early 1990's, and as early as 1992.

725. One basis for removing a name of a person "in attendance" from a birth certificate is that the name was put there in error.

726. The fact that ROBERT HADDEN has been sexually abusing female patients at Defendants' hospitals, offices, and medical clinics since 1992, should have led to ROBERT HADDEN's termination, and he should have been reported to law enforcement.

727. Had ROBERT HADDEN been terminated, and reported to law enforcement, he would not have been in attendance at any of the births of the children of Plaintiffs herein.

728. The fact that ROBERT HADDEN was sexually exploiting and abusing women since 1992 means that his presence at the birth of the children of plaintiffs herein was in error.

729. Since it is erroneous to have a sexual predator such as ROBERT HADDEN in attendance at the birth of the children of the women he is sexually exploiting and abusing upon Defendant's premises, it follows that the presence of ROBERT HADDEN's name as the person "in attendance" is in error.

730. Plaintiffs have repeatedly requested that Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES issue a letter, stating that ROBERT HADDEN's name on the birth certificates of Plaintiffs' children appears there in error.

731. There is no legal impediment to issuing a letter that would allow ROBERT HADDEN's name to be removed from the birth certificates of Plaintiffs' children, instead Defendant CORP. ENTITIES' refusal to issue such a letter is rooted in malice and intimidation.

732. Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES' refusal to comply with Plaintiffs' reasonable request

for a letter enabling them to remove their assailant and abuser's name from their children's birth certificates has resulted in, and continues to result in, significant personal pain, frustration, duress, an emotional trigger, and stress to the Plaintiffs herein.

733. The presence of ROBERT HADDEN's name on the birth certificates of Plaintiffs' children only serves to further injure, harm and traumatize the Plaintiffs who are survivors of ROBERT HADDEN's long-standing sexual exploitation and sexual abuse.

734. Defendant CORP. ENTITIES' refusal to issue a letter that would permit Plaintiffs to remove ROBERT HADDEN's name from their children's birth certificates, from the time of their request in the summer 2018, through the present, and continuing into the future, constitutes an aggravation of a pre-existing injury for which COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, CORP. ENTITIES, and their agents, servants, and employees are responsible.

735. As a result of Defendants' refusal to issue the letter permitting the removal of ROBERT HADDEN's name from their children's birth certificates, Plaintiffs have had to expend time, money, and significant personal and emotional resources in their effort right the wrong that Defendants have created - and now refuse to fix themselves.

736. The refusal of Defendants COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY, and CORP. ENTITIES to issue said letter is the result of malice, deliberate indifference, intentional, wanton and reckless behavior designed only to further traumatize, intimidate and harm Plaintiffs, their children, and their families. Said trauma, intimidation and harm is serious, unnecessary, ongoing, and designed solely to inflict additional injury to the Plaintiffs and countless other women in their position.

737. Defendants should be enjoined from carrying out their ongoing campaign of intimidation and abhorrent conduct which serves to further traumatize and re-traumatize the Plaintiffs, and an Order should be issued directing Defendants to produce a letter permitting Plaintiffs to remove ROBERT HADDEN's name from the birth certificates of their children.

738. Accordingly Injunctive, Compensatory and Punitive damages are necessary under these facts as to all Defendants.

**WHEREFORE**, Plaintiffs pray for a jury trial and for judgment against Defendants for injunctive, compensatory and punitive damages.

Dated: New York, New York
March 24, 2019

Law Office of Anthony T. DiPietro, P.C.

By:
**Anthony T. DiPietro, Esq.**
**New York Patient Safety &**
**Medical Malpractice Attorney**
Attorneys for Plaintiffs
Marissa Hoechstetter, JANE DOE #8,
JANE DOE #9, JANE DOE #10, JANE DOE #11
JANE DOE #12, JANE DOE #13, JANE DOE #14,
JANE DOE #15, JANE DOE #16, JANE DOE #17,
JANE DOE #18, JANE DOE #19, JANE DOE #21,
JANE DOE #22, JANE DOE #23, JANE DOE #26,
JANE DOE #27, JANE DOE #28 AND JANE DOE
#30
233 Broadway, Suite 880
New York, New York 10279
(212) 233-3600

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK                                        Index No.: 161335/2018
-----------------------------------------------------------------------------x
MARISSA HOECHSTETTER, JANE DOE #8,
JANE DOE #9, JANE DOE #10, JANE DOE #11
JANE DOE #12, JANE DOE #13, JANE DOE #14,
JANE DOE #15, JANE DOE #16, JANE DOE #17,
JANE DOE #18, JANE DOE #19, JANE DOE #21,
JANE DOE #22, JANE DOE #23, JANE DOE #26,
JANE DOE #27, JANE DOE #28 AND JANE DOE #30,

                                        Plaintiffs,

                        - against -

COLUMBIA UNIVERSITY; THE NEW YORK AND
PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN     **ATTORNEY**
MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL      **VERIFICATION**
CENTER; COLUMBIA-PRESBYTERIAN MEDICAL
CENTER, EAST SIDE ASSOCIATES; EAST SIDE
ASSOCIATES; ROBERT HADDEN; THE TRUSTEES OF
COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK;
COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS
AND SURGEONS; PRESBYTERIAN HOSPITAL
PHYSICIAN SERVICES ORGANIZATION, INC.;
COLUMBIA-CORNELL CARE, LLC; COLUMBIA
CORNELL NETWORK PHYSICIANS, INC.;
SLOANE HOSPITAL FOR WOMEN,

                                        Defendants.
-----------------------------------------------------------------------------x

STATE OF NEW YORK      )
                       ) ss:
COUNTY OF NEW YORK     )

        ANTHONY T. DIPIETRO, an attorney duly admitted to practice law in the Courts of the

State of New York, and attorney for the plaintiffs in the within action, hereby affirms under the

penalty of perjury:

        That he has read the within complaint and knows the contents thereof, and that the same

is true to his own knowledge, except as to the matters therein stated to be alleged upon

information and belief, and that as to those matters he believes it to be true. That the sources of

his information and knowledge are investigations and records in the file.

That the reasons this verification is made by affirmant and not by the plaintiffs is in order

to protect the identity of the plaintiff under NY Civil Rights Law § 50-b.

Dated: New York, New York
       March 24, 2019

                                            Law Office of Anthony T. DiPietro, P.C.

                                            By:
                                            **Anthony T. DiPietro, Esq.**
                                            **New York Patient Safety &**
                                            **Medical Malpractice Attorney**
                                            Attorneys for Plaintiffs
                                            Marissa Hoechstetter, JANE DOE #8,
                                            JANE DOE #9, JANE DOE #10, JANE DOE #11
                                            JANE DOE #12, JANE DOE #13, JANE DOE #14,
                                            JANE DOE #15, JANE DOE #16, JANE DOE #17,
                                            JANE DOE #18, JANE DOE #19, JANE DOE #21,
                                            JANE DOE #22, JANE DOE #23, JANE DOE #26,
                                            JANE DOE #27, JANE DOE #28 AND JANE DOE
                                            #30
                                            233 Broadway, Suite 880
                                            New York, New York 10279
                                            (212) 233-3600

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No.: 161335/2018

-------------------------------------------------------------------x

MARISSA HOECHSTETTER, JANE DOE #8,
JANE DOE #9, JANE DOE #10, JANE DOE #11
JANE DOE #12, JANE DOE #13, JANE DOE #14,
JANE DOE #15, JANE DOE #16, JANE DOE #17,
JANE DOE #18, JANE DOE #19, JANE DOE #21,
JANE DOE #22, JANE DOE #23, JANE DOE #26,
JANE DOE #27, JANE DOE #28 AND JANE DOE #30,

Plaintiffs,

- against -

COLUMBIA UNIVERSITY; THE NEW YORK AND
PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN
MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL          **CERTIFICATE**
CENTER; COLUMBIA-PRESBYTERIAN MEDICAL               **OF MERIT**
CENTER, EAST SIDE ASSOCIATES; EAST SIDE
ASSOCIATES; ROBERT HADDEN; THE TRUSTEES OF
COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK;
COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS
AND SURGEONS; PRESBYTERIAN HOSPITAL
PHYSICIAN SERVICES ORGANIZATION, INC.;
COLUMBIA-CORNELL CARE, LLC; COLUMBIA
CORNELL NETWORK PHYSICIANS, INC.;
SLOANE HOSPITAL FOR WOMEN,

Defendants.

-------------------------------------------------------------------x

STATE OF NEW YORK     )
COUNTY OF NEW YORK   ) ss:

ANTHONY T. DIPIETRO, being duly sworn, deposes and states the following to be true under the penalties of perjury of the State of New York.

I have reviewed the facts of this case and have consulted with at least one physician who is licensed to practice medicine in the State of New York and who I reasonably believe is knowledgeable in the relevant issues involved in this matter. I have concluded on the basis of the review and the consultation that there is a reasonable basis for the commencement of this action.

Dated: New York, New York
March 24, 2019

Anthony T. DiPietro, Esq.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK                                    Index No.: 161335/2018
--------------------------------------------------------------------------------x
MARISSA HOECHSTETTER, JANE DOE #8,
JANE DOE #9, JANE DOE #10, JANE DOE #11
JANE DOE #12, JANE DOE #13, JANE DOE #14,
JANE DOE #15, JANE DOE #16, JANE DOE #17,
JANE DOE #18, JANE DOE #19, JANE DOE #21,
JANE DOE #22, JANE DOE #23, JANE DOE #26,
JANE DOE #27, JANE DOE #28 AND JANE DOE #30,

                                   Plaintiffs,


                    - against -


COLUMBIA UNIVERSITY; THE NEW YORK AND
PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN          **NOTICE REGARDING**
MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL          **AVAILABILITY OF**
CENTER; COLUMBIA-PRESBYTERIAN MEDICAL               **ELECTRONIC FILING**
CENTER, EAST SIDE ASSOCIATES; EAST SIDE
ASSOCIATES; ROBERT HADDEN; THE TRUSTEES OF
COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK;
COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS
AND SURGEONS; PRESBYTERIAN HOSPITAL
PHYSICIAN SERVICES ORGANIZATION, INC.;
COLUMBIA-CORNELL CARE, LLC; COLUMBIA
CORNELL NETWORK PHYSICIANS, INC.;
SLOANE HOSPITAL FOR WOMEN,

                                   Defendants.
--------------------------------------------------------------------------------x

  **PLEASE TAKE NOTICE** that plaintiff(s)/defendant(s) in the case captioned above consents and intends that this matter shall proceed as an electronically-filed case in the Filing by Electronic Means System ("FBEM") in accordance with the procedures therefor, described below. Service of papers by electronic means cannot be made upon a party unless that party consents to use of the system. As soon as possible after service of this Notice, each party served must indicate whether it consents.

General Information

  In New York State, actions may be commenced and cases processed by means of the FBEM system in (1) tax certiorari claims in the Supreme Court in New York City and in Monroe, Westchester, and Suffolk Counties; (2) tort claims, and commercial claims in the Commercial Division, in the Supreme Court in New York City and in Albany, Monroe, Nassau, Suffolk, and Westchester counties; (3) commercial claims in the Commercial Division of Supreme Court, and proceedings in Surrogate's Court, in Erie County; and (4) selected claims against the State of New York.

Electronic filing offers significant benefits for attorneys and litigants, permitting papers to be filed with the court and served in a simple, convenient and expeditious manner. FBEM case documents are filed with the court by filing on the FBEM Website (go to "E-Courts" at www.nycourts.gov), which can be done at any time of the day or night. The documents are deemed filed when they are received by the Unified Court System server. The use of FBEM is governed by Section 202.5-b (Supreme Court), and 206.5 and 206.5-aa (Court of Claims) of the Uniform Rules for the Trial Courts.

Instructions

1.      The service of this Notice constitutes a statement of intent by the undersigned that the FBEM system be used in this case. When an action or proceeding is being commenced by means of the system, this Notice must accompany service of the initiating papers.

2.      As soon as possible after service of this Notice, the party served shall advise all parties whether it will agree to have the matter proceed by FBEM. Where the party served agrees, that party must, as soon as possible after service, file with the court and serve on all parties a Consent to FBEM. A Consent form can be found in the "Forms" Section of the FBEM Website. The form and other aspects of FBEM are explained in the User's Manual, available on the Website. When this Notice Regarding Availability is served with papers initiating a lawsuit, the consent must be filed prior to service of or with the responsive pleadings or motion addressed to the pleadings.

3.      Once parties agree that the case will be subject to FBEM, each must PROMPTLY submit a Filing User Registration form (see the "Forms" section of the Website) to obtain the confidential Filing User Identification Number and Password necessary to use the system. A party represented by an attorney who has previously registered as a Filing User in another case may file and serve the Consent to FBEM electronically by checking the designated box and following the instructions on the FBEM Website.

4.      For additional information about FBEM, see the User's Manual and Frequently Asked Questions on the Website or contact the court in question or the FBEM Resource Center (at 646-386-3033).

Dated:      New York, New York
            March 24, 2019          Law Office of Anthony T. DiPietro, P.C.

By:
Anthony T. DiPietro
New York Patient Safety and
Medical Malpractice Attorney
Attorney for Plaintiffs
The Woolworth Building
233 Broadway - Suite 880
New York, New York 10279-0137
Phone: (212) 233-3600
Fax: (212) 202-7575
email: Cases@ATDLaw.com

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK                                    Index No.: 161335/2018
------------------------------------------------------------------------x
MARISSA HOECHSTETTER, JANE DOE #8,
JANE DOE #9, JANE DOE #10, JANE DOE #11
JANE DOE #12, JANE DOE #13, JANE DOE #14,
JANE DOE #15, JANE DOE #16, JANE DOE #17,
JANE DOE #18, JANE DOE #19, JANE DOE #21,
JANE DOE #22, JANE DOE #23, JANE DOE #26,
JANE DOE #27, JANE DOE #28 AND JANE DOE #30,

                                    Plaintiffs,


                     - against -


COLUMBIA UNIVERSITY; THE NEW YORK AND
PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN
MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL          **CONSENT TO FBEM**
CENTER; COLUMBIA-PRESBYTERIAN MEDICAL
CENTER, EAST SIDE ASSOCIATES; EAST SIDE
ASSOCIATES; ROBERT HADDEN; THE TRUSTEES OF
COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK;
COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS
AND SURGEONS; PRESBYTERIAN HOSPITAL
PHYSICIAN SERVICES ORGANIZATION, INC.;
COLUMBIA-CORNELL CARE, LLC; COLUMBIA
CORNELL NETWORK PHYSICIANS, INC.;
SLOANE HOSPITAL FOR WOMEN,
                                    Defendants.
------------------------------------------------------------------------x

        **ANTHONY T. DIPIETRO**, an attorney duly admitted to practice law before the Courts

of the State of New York, and member of the **LAW OFFICE OF ANTHONY T. DIPIETRO**,

attorney for the plaintiffs herein, hereby consents to the use of FBEM in this action.  We further

consent to be bound by the service and filing provisions of the FBEM Rules 22 N.Y.C.R.R. §

202.5-b and to comply with the User's Manual approved by the Chief Administrator of the

Courts.

        We have designate and set forth below the following internet email address for the

purposes of service and giving notice of each filing:

Cases@ATDLaw.com

Dated: New York, New York
      March 24, 2019

                                    Law Office of Anthony T. DiPietro, P.C.

                                    By:
                                    Anthony T. DiPietro
                                    New York Patient Safety and
                                    Medical Malpractice Attorney
                                    Attorney for Plaintiffs
                                    The Woolworth Building
                                    233 Broadway - Suite 880
                                    New York, New York  10279
                                    (212) 233-3600

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK          Index No.: 161335/2018
==================================================

MARISSA HOECHSTETTER, JANE DOE #8,
JANE DOE #9, JANE DOE #10, JANE DOE #11
JANE DOE #12, JANE DOE #13, JANE DOE #14,
JANE DOE #15, JANE DOE #16, JANE DOE #17,
JANE DOE #18, JANE DOE #19, JANE DOE #21,
JANE DOE #22, JANE DOE #23, JANE DOE #26,
JANE DOE #27, JANE DOE #28 AND JANE DOE #30,

                                        Plaintiffs,

                    - against -

COLUMBIA UNIVERSITY; THE NEW YORK AND
PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN
MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL
CENTER; COLUMBIA-PRESBYTERIAN MEDICAL
CENTER, EAST SIDE ASSOCIATES; EAST SIDE
ASSOCIATES; ROBERT HADDEN; THE TRUSTEES OF
COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK;
COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS
AND SURGEONS; PRESBYTERIAN HOSPITAL
PHYSICIAN SERVICES ORGANIZATION, INC.;
COLUMBIA-CORNELL CARE, LLC; COLUMBIA
CORNELL NETWORK PHYSICIANS, INC.;
SLOANE HOSPITAL FOR WOMEN,

                                        Defendants.

==================================================
PLAINTIFFS' VERIFIED COMPLAINT
==================================================

**LAW OFFICE OF ANTHONY T. DIPIETRO, P.C.**
Attorney for Plaintiffs
Office and Post Office Address and Telephone Number:
The Woolworth Building
233 Broadway - Suite 880
New York, New York 10279
(212) 233-3600

==================================================
To: ALL PARTIES
==================================================