1  SUPREME COURT OF THE STATE OF NEW YORK
   COUNTY OF NEW YORK – CIVIL TERM – PART: 46
2  ------------------------------------------------------X
   MARISSA HOECHSTETTER, JANE DOE #8, JANE DOE #9,
3  JANE DOE #10, JANE DOE #11, JANE DOE #12, JANE
   DOE #13, JANE DOE #14, JANE DOE #15, JANE DOE
4  #16, JANE DOE #17, JANE DOE #18, JANE DOE #19,
   JANE DOE #21, JANE DOE #22, JANE DOE #23, and
5  JANE DOE #26,

6                                    PLAINTIFFS,

7                                    INDEX#
              –against–              161335/2018
8                                    MOTION

9

10 COLUMBIA UNIVERSITY; THE NEW YORK AND
   PRESBYTERIAN HOSPITAL; COLUMBIA PRESBYTERIAN
11 MEDICAL CENTER; COLUMBIA UNIVERSITY MEDICAL
   CENTER; COLUMBIA–PRESBYTERIAN MEDICAL CENTER,
12 EAST SIDE ASSOCIATES; EAST SIDE ASSOCIATES;
   ROBERT HADDEN; THE TRUSTEES OF COLUMBIA
13 UNIVERSITY IN THE CITY OF NEW YORK; COLUMBIA
   UNIVERSITY COLLEGE OF PHYSICIANS AND SURGEONS;
14 PRESBYTERIAN HOSPITAL PHYSICIAN SERVICES
   ORGANIZATION, INC.; COLUMBIA–CORNELL CARE, LLC;
15 COLUMBIA CORNELL NETWORK PHYSICIANS, INC.;
   SLOANE HOSPITAL FOR WOMEN,
16                                 DEFENDANTS.
   ------------------------------------------------------X
17                                 71 Thomas Street
                                   New York, New York
18                                 June 20, 2019

19 B E F O R E :
                   HONORABLE LUCY BILLINGS,
20                 JUSTICE OF THE SUPREME COURT

21

22

23

24

25

            **CHARISSE KITT, CRI, CSR, RMR, FCRR**

```
 1    SUPREME COURT OF THE STATE OF NEW YORK
      COUNTY OF NEW YORK - CIVIL TERM - PART: 46
 2    ------------------------------------------------------X
      JANE DOE #3, JANE DOE #4, JANE DOE #5, and JANE
 3    DOE #6,

 4                                      PLAINTIFFS,

 5                                      INDEX#
                -against-               152438/2017
 6                                      MOTION

 7


 8    THE NEW YORK PRESBYTERIAN HOSPITAL; COLUMBIA
      PRESBYTERIAN MEDICAL CENTER; COLUMBIA UNIVERSITY
 9    MEDICAL CENTER; COLUMBIA-PRESBYTERIAN MEDICAL
      CENTER, EAST SIDE ASSOCIATES; EAST SIDE
10    ASSOCIATES; ROBERT HADDEN; THE TRUSTEES OF
      COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK;
11    COLUMBIA UNIVERSITY COLLEGE OF PHYSICIANS AND
      SURGEONS; PRESBYTERIAN HOSPITAL PHYSICIAN
12    SERVICES ORGANIZATION, INC.; COLUMBIA-CORNELL
      CARE, LLC; COLUMBIA CORNELL NETWORK PHYSICIANS,
13    INC.; SLOANE HOSPITAL FOR WOMEN,
                                      DEFENDANTS.
14    ------------------------------------------------------X
                                71 Thomas Street
15                              New York, New York
                                June 20, 2019
16
      B E F O R E :
17              HONORABLE LUCY BILLINGS,
                JUSTICE OF THE SUPREME COURT
18
      A P P E A R A N C E S :
19
           THE LAW OFFICE OF ANTHONY T. DIPIETRO
20         Attorney for the Plaintiffs
           233 Broadway
21         New York, New York 10279
      BY:  ANTHONY T. DIPIETRO, ESQ.
22         NORMAN A. OLCH, ESQ.

23         (APPEARANCES CONTINUED ON THE NEXT PAGE.)

24

25
                CHARISSE KITT, CRI, CSR, RMR, FCRR
```

```
1    A P P E A R A N C E S:  (CONT'D)

2

3           HEIDELL, PITTONI, MURPHY & BACH, LLP
            Attorneys for the New York
            Presbyterian Hospital
4           99 Park Avenue
            New York, New York 10016
5    BY:    DENISE A. HOLZKA, ESQ.

6

7           VASLAS LEPOWSKY HAUSS & DANKE LLP
            Attorneys for Dr. Hadden
            201 Edward Curry Avenue
8           Staten Island, New York 10314
     BY:    KENNETH M. DALTON, ESQ.
9

10          AARONSON RAPPAPORT FEINSTEIN & DEUTSCH, LLP
            Attorneys for the Corporate Defendants
11          600 Third Avenue
            New York, New York 10016
12   BY:    JAY A. RAPPAPORT, ESQ.
            DEIRDRE TRACEY, ESQ.
13

14

15

16

17

18

19

20

21

22

23

24

25
                    CHARISSE KITT, CRI, CSR, RMR, FCRR
```

Proceedings

1          THE COURT:  Is this plaintiffs' motion to

2     extend the time to serve defendants.  There's

3     tremendous focus on the filing of an amended

4     complaint.  To me, there's two fairly critical

5     issues.  One is the service, not the filing, the

6     service of some complaint, whether it be the original

7     one that was filed in December of 2018, or some

8     amended complaint after that, on all of the

9     defendants.  And then the second is the potential

10     merit of the action primarily as to whether it was

11     within the statute of limitations.

12          So some complaint needed to be served on all

13     of the defendants within 120 days of December 4,

14     2018, which I believe you all agree is April 3, 2019;

15     that's when the 120 days ran.

16          MR. DIPIETRO:  I think it was December 14th.

17          THE COURT:  If not, we'll figure it out.

18          MS. HOLZKA:  Yes, your Honor, the April 3rd.

19          THE COURT:  Okay.

20          MS. HOLZKA:  And we would also agree, your

21     Honor, that that was served on our clients and based

22     upon that we moved it to federal court where it's

23     pending.

24          THE COURT:  Okay.  So you agree that all of

25     your clients were served within the -- before

**CHARISSE KITT, CRI, CSR, RMR, FCRR**

Proceedings

1    April 3rd?

2            MS. HOLZKA:  With the complaint that

3    contained the federal causes of action, correct.

4            THE COURT:  All right.  Only that one?

5            MS. HOLZKA:  Correct.

6            THE COURT:  Has any other complaint ever been

7    served?

8            MS. HOLZKA:  In that action, no.  In that

9    2018 action, no.

10           THE COURT:  You all refer to -- I think to

11   the four different versions of the complaint.

12   Correct?  There is the original complaint that was

13   filed --

14           MS. HOLZKA:  In December.

15           THE COURT:  -- in December of 2018, then

16   there was an amended complaint which, we'll call it

17   the first amended complaint, what you call Complaint

18   B, was served on at least the hospital and the

19   university defendants.

20           MS. HOLZKA:  Correct.  That was --

21           THE COURT:  Was that also served on

22   Dr. Hadden.

23           MR. DALTON:  Your Honor, I can say this,

24   Dr. Hadden was served with a complaint which does not

25   contain the federal actions, the federal causes of

              **CHARISSE KITT, CRI, CSR, RMR, FCRR**

6

Proceedings

1    action, but Dr. Hadden was not served with the

2    complaint that has the federal action that was the

3    one in Complaint A that was filed in December, on

4    December 4.  So I have a different version of a

5    complaint that was served on Dr. Hadden.

6            THE COURT:  So were you served with Complaint

7    C or D?

8            MR. DALTON:  C or D after April 3rd, yes.

9            THE COURT:  Oh, after April 3rd?

10           MR. DALTON:  Yes, your Honor.

11           THE COURT:  When?

12           MR. DALTON:  If I remember, Judge, I think it

13   was the 14th, but it could be later than that, Judge,

14   I just -- I don't have that in front of me now and I

15   don't recall, but it was definitely after that date.

16           THE COURT:  So the hospital/university

17   defendants were served only with that one version of

18   the complaint to date?

19           MS. HOLZKA:  Correct.

20           THE COURT:  So plaintiffs are actually

21   seeking an extension of time not for two days, but

22   for now a few months to serve defendants other than

23   Hadden; is that correct?

24           MR. DIPIETRO:  No, your Honor.  Actually, the

25   university and corporate defendants were served with

**CHARISSE KITT, CRI, CSR, RMR, FCRR**

7

Proceedings

1   this as an exhibit to the motion asking for more time

2   to serve.

3           THE COURT:  That's not -- that's not service

4   as required by the CPLR.

5           MR. DIPIETRO:  I understood --

6           THE COURT:  You served them -- I'm not sure

7   what kind of business entities each of these

8   defendants is, but the hospital, the medical center,

9   the various medical centers, East Side Associates and

10  the university, the College of Physicians and

11  Surgeons, the Physician Services Organization Inc.,

12  that's a corporation, obviously.  Columbia-Cornell

13  Care, LLC is a limited liability company.

14          Were they all served in the manner required

15  by CPLR 311, 311-A?

16          MR. DIPIETRO:  They all were individually

17  served, not on defense counsel, but they were all

18  individually served with the motion and I understood

19  the case law to mean that when you make the motion

20  you can -- you have to attach the pleadings to that

21  motion.

22          THE COURT:  You're not answering my question.

23  They were not served then by the secretary of state

24  or by service, as otherwise required by CPLR 311 or

25  311-A, depending upon the type of business

               **CHARISSE KITT, CRI, CSR, RMR, FCRR**

8

Proceedings

1    organization?

2         MR. DIPIETRO:  None of them in any of the

3    actions dating back six years were served by the

4    secretary of state, they were all served personally

5    at their corporate offices.

6         THE COURT:  On an officer that's specified in

7    CPLR 311 or 311-A?

8         MR. DIPIETRO:  That's my understanding, yeah,

9    they designate a window for proper service of -- the

10   university has a window for service of process.

11        THE COURT:  Okay.  And you're contesting

12   that?

13        MS. HOLZKA:  It wasn't served.  We're not

14   contesting that it was served on April 3rd with that

15   original amended complaint, Complaint B, as you refer

16   to.

17        THE COURT:  Right.  You're saying you were

18   never served at all with any other version of the

19   complaint?

20        MS. HOLZKA:  Our clients were not served, no.

21        THE COURT:  Okay.  And he's saying they were.

22        MS. HOLZKA:  They weren't.  They were with

23   the motion.  He keeps saying with the motion.

24        THE COURT:  Okay.  Do you know whether it was

25   version C or version D that Dr. Hadden was served

                **CHARISSE KITT, CRI, CSR, RMR, FCRR**

1    with, or can plaintiffs clarify that?

2            MR. DIPIETRO:  Yes, your Honor, that was the

3    actual filed version which would be D.

4            THE COURT:  D?

5            MR. DIPIETRO:  Yes.

6            THE COURT:  All right.  But it was after

7    April 3rd?

8            MR. DIPIETRO:  Well, yes, because we

9    didn't -- it wasn't accepted until April 4th.  The

10   clerk -- by the clerk, I'm saying.  The clerk didn't

11   approve it.

12           THE COURT:  Okay.  There was nothing that

13   prevented you from serving that original complaint

14   from December of 2018 in a 120-day period, worry

15   about amending the complaint later.  I don't

16   understand why the uncertainty about who was going to

17   be included in the action had any bearing, should

18   cause any delay in serving that original complaint

19   within the 120-day period.

20           MR. DIPIETRO:  Your Honor, we already have

21   three index numbers and I just thought, you know, to

22   kind of simplify things, not just for me but for the

23   Court.

24           THE COURT:  I wouldn't play with fire that

25   way.

                **CHARISSE KITT, CRI, CSR, RMR, FCRR**

Proceedings

1          MR. DIPIETRO:  I wasn't trying to, your

2     Honor.  I was trying not to create more confusion by

3     having all these extra index numbers.

4          THE COURT:  And it was April 4th that

5     Dr. Hadden was served?

6          MR. DALTON:  No, your Honor, it was well

7     after that.

8          THE COURT:  I'm sorry, you said about two

9     weeks later.  Right?

10          MR. DALTON:  Yes, between two and three weeks

11     later, Judge.

12          THE COURT:  After April 3rd?

13          MR. DALTON:  Yes.

14          THE COURT:  And that was the one that was

15     accepted for filing?

16          MR. DIPIETRO:  Yes.

17          THE COURT:  You knew as of March 26, 2019,

18     that Dr. Hadden -- that Dr. Hadden's attorney, I

19     guess it was, refused to accept service for him.

20     Right?

21          MR. DIPIETRO:  That's when they refused to

22     accept service on March 26th, correct.

23          THE COURT:  Right.  But you didn't inquire

24     until March 25th?

25          MR. DIPIETRO:  Correct.  I think March 24th,

                    **CHARISSE KITT, CRI, CSR, RMR, FCRR**

Proceedings

1   but, yes.

2           THE COURT:  Oh, okay, you're right.  Then I

3   don't understand what is this three-year period from

4   Dr. Hadden's sentencing?  I believe under CPLR

5   Section 215 -- first of all, the biggest hurdle is

6   that the criminal action has to pertain to the claims

7   in the civil action and I believe plaintiffs concede

8   that the charges in the criminal action pertain to

9   other women.

10          MR. DIPIETRO:  No, your Honor, we don't.

11          THE COURT:  You don't?

12          MR. DIPIETRO:  No, not at all.

13          MR. DALTON:  That's certainly our position,

14  that the claims in Complaint B, C, or D apply to

15  people who are not -- who were not parties in the

16  criminal action.

17          THE COURT:  How about Complaint A?

18          MR. DALTON:  Complaint A, the original

19  complaint, the one that we worked with the four Jane

20  Does, 3 through 6.

21          MS. HOLZKA:  No, no, no, no, no.  Complaint A

22  would be --

23          THE COURT:  Do any of the complaints --

24          MS. HOLZKA:  No, not this --

25          THE COURT:  -- include any of the women who

**CHARISSE KITT, CRI, CSR, RMR, FCRR**

12

Proceedings

1    are -- with whose abuse Dr. Hadden was charged in the

2    criminal actions?

3              MR. DALTON:  No.

4              MS. HOLZKA:  The only one I would say is that

5    there's Jane -- I believe it's Jane Doe Number 6

6    is -- she is one -- she is one of -- she's one

7    claimant who Dr. Hadden pleaded guilty to a crime.

8              THE COURT:  Okay.  And was sentenced on --

9              MS. HOLZKA:  Back --

10             THE COURT:  In March 2016.

11             MS. HOLZKA:  Correct.  But she's already part

12   of other prior summonses.

13             THE COURT:  She brought an action earlier?

14             MR. DALTON:  Correct.

15             MS. HOLZKA:  Correct, your Honor.

16             THE COURT:  I just want to get the exact text

17   of CPLR 315.

18             MR. DIPIETRO:  I think it's 215, your Honor.

19             THE COURT:  I'm sorry, 215, you're right.  "A

20   criminal action against the same defendant has been

21   commenced with respect to the event or occurrence

22   from which a claim governed by the section arises."

23             A claim, meaning, a claim that otherwise must

24   be commenced within one year.  So it's got to be the

25   same women.  Clearly each occurrence of sexual abuse

**CHARISSE KITT, CRI, CSR, RMR, FCRR**

Proceedings

1    was a different occurrence.

2         MR. OLCH:  Your Honor, you might also want to

3    look, your Honor, I think it's 213-B, which deals

4    with victims of sex offenses who are not necessarily

5    victims --

6         THE COURT:  Well, yes.  No, I agree.  That's

7    why I said -- I don't know why you keep talking about

8    three years.  It's either one year from the

9    termination of the criminal action for most offenses

10   or for a rape and sexual abuse and other related

11   offenses it's five years.

12        MR. OLCH:  Correct.  Yes, I agree, your

13   Honor.

14        THE COURT:  Okay.  So I don't know why

15   plaintiffs keep talking about three years.

16        MR. DIPIETRO:  Because --

17        THE WITNESS:  The bigger problem is that the

18   criminal charges did not relate to these plaintiffs.

19        MR. OLCH:  Your Honor, I think under 213 it's

20   not necessary that they do that, that they be

21   related; and, in fact, it specifically says in the

22   statute, as I recall, that the -- there never even

23   had to be a criminal prosecution.

24        THE COURT:  CPLR 213 or 215?

25        MR. OLCH:  No, 213.  I think 213-B

         **CHARISSE KITT, CRI, CSR, RMR, FCRR**

14
Proceedings

1      specifically says --

2              THE COURT:  I'm now looking at 215-8(2).

3              MR. OLCH:  Right, but your Honor also just

4      referred to the five years which was --

5              THE COURT:  Five years is CPLR 215-8(2).

6              MR. OLCH:  All right.

7              THE COURT:  Now, are we talking about the

8      same section?

9              MR. OLCH:  No, I was referring to Section

10     213-B.

11             THE COURT:  Okay.

12             MR. OLCH:  Which deals with situations of

13     victims of sex offenses bringing civil actions in

14     situations in which the defendant in the civil action

15     need not even have been criminally prosecuted.

16             THE COURT:  In which defendant what --

17             MR. OLCH:  In which the defendant in the

18     civil action need not have actually been a defendant

19     in a criminal proceeding.  I mean, there's two

20     different periods of time, and I thought that's what

21     your Honor was referring to --

22             THE COURT:  No.

23             MR. OLCH:  -- as the five years.

24             MS. HOLZKA:  Your Honor, if I may respond to

25     the three years that you -- the three years would

                **CHARISSE KITT, CRI, CSR, RMR, FCRR**

15

Proceedings

1    have nothing to do with those particular statutes

2    because it has to do with the negligence claims as to

3    the hospital and to the university.  There is no

4    tolling based upon negligence on either of those

5    statutes that we're talking, 213 --

6              THE COURT:  213 what?

7              MR. OLCH:  I think it's 213-B.  There is a

8    B --

9              THE COURT:  There is no 213-B.

10             MR. OLCH:  As I recall it's 213, letter B.

11             THE COURT:  213 hyphen B?

12             MR. OLCH:  Yes.  Correct.

13             THE COURT:  Hyphen B?

14             MR. OLCH:  Hyphen B, yes.  I'm sorry.

15             THE COURT:  I don't even think there's such a

16   statute.  There is, okay.  All right.  You're right.

17   But, again, it's a crime which is the subject of such

18   action.

19             MR. DIPIETRO:  Right.  And your Honor, it's

20   plaintiffs' position that all of these women, 17

21   women came forward; they were all part of that

22   action.  They all helped procure the conviction.  We

23   have a letter from the district attorney's office to

24   one of the women that has been exchanged to Columbia

25   University and Robert Hadden that says that Hadden

**CHARISSE KITT, CRI, CSR, RMR, FCRR**

Proceedings

1    knows he assaulted all of them and they were all part

2    of procuring the conviction.

3              Further, one -- excuse me.  Further, one of

4    the women was within the criminal statute of

5    limitations.  The District Attorney could have --

6              THE COURT:  I think that many of them may

7    still be within the five years under CPLR 215-8(b) --

8    I'm sorry, 8 -- I'm sorry, it's 215(8) (b), not

9    subsection (2).  Excuse me.

10             MR. DALTON:  Your Honor, of course it's our

11   position, and contrary to counsel's statement --

12             MR. DIPIETRO:  I didn't finish.

13             MR. DALTON:  -- that none of these women were

14   named as individuals.  They were not complaining

15   witnesses; they were not people who were involved in

16   the criminal action.

17             I know that there may be some letters saying,

18   well, Hadden knows that he did something.  Well,

19   that's just nonsense.  There's absolutely no way that

20   a statement made or a self-congratulatory letter from

21   an assistant district attorney is going to convert

22   people who were not parties to that criminal action

23   in June; parties who actually were complaining

24   witnesses in a criminal proceeding.

25             MR. DIPIETRO:  I don't think the assistant

**CHARISSE KITT, CRI, CSR, RMR, FCRR**

1    district attorney is congratulating herself.  What

2    she was doing was expressing the reality that all

3    these women --

4         THE COURT:  I'm going to go by the text of

5    the statute, I'm sorry.  But I think that you are

6    still within -- I mean, I shouldn't be giving any

7    advice, but it appears to me that you are still

8    within the statute of limitations, even now, right,

9    or -- it was -- March 2016 was the sentencing.

10   Right?

11        MR. DIPIETRO:  Correct.

12        THE COURT:  Under CPLR 215-8(b) to the extent

13   it would apply to anyone, but it doesn't sound to me

14   like it does.

15        MR. DIPIETRO:  It does apply to all of them

16   because as -- and even part of the plea agreement

17   that was entered into, the defendant and the district

18   attorney agreed to not prosecute him for any women

19   that they knew of at the time that the plea was

20   entered.  These women were used as part of the

21   negotiation.  They were very much a part of this

22   criminal action, and I think to say that they weren't

23   part of this criminal action kind of demeans them and

24   the courage that it took them to come forward.

25        THE COURT:  I don't have any of this in the

**CHARISSE KITT, CRI, CSR, RMR, FCRR**

Proceedings

1   record here.

2           MS. HOLZKA:  No, absolutely not and --

3           MR. DIPIETRO:  I'm telling you what the

4   reality is.

5           MS. HOLZKA:  And Anthony -- Mr. DiPietro, why

6   don't you tell the judge when half of these women

7   came forward, and that they're not *Molineux* witnesses

8   or part of the D.A.'s investigation.  You've been

9   touting in the media and to this Court how many more

10  plaintiffs you've gained since this time.  So, who's

11  who?

12          And regardless, Judge, this is not before --

13  none of this actual evidence is before your Honor

14  and, in addition, it's completely irrelevant to the

15  university and to the hospital, as we were not a

16  criminal defendant.

17          MR. OLCH:  Your Honor, I would note there's a

18  bit of talking about fairness and what's before the

19  Court.  What's before the Court is the question of

20  enlarging the time to serve this.  As I recall, their

21  papers did not raise; questions regarding the statute

22  of limitations.

23          THE COURT:  But there were several criteria

24  that you articulate and that I'm very familiar with

25  and that I take into consideration in deciding

                **CHARISSE KITT, CRI, CSR, RMR, FCRR**

19
Proceedings

1    whether to extend the time.  One is that you did

2    nothing to try to serve these defendants before the

3    deadline.

4              MR. OLCH:  I appreciate that.

5              THE COURT:  Virtually nothing.

6              MR. OLCH:  Right.  Well, I don't agree.

7              THE COURT:  And the second is that there has

8    to be some colorable merit to the action.

9              MR. OLCH:  I'm only pointing out that --

10             THE COURT:  You're past the statute of

11   limitations; that's it.

12             MR. OLCH:  I understand that, your Honor, but

13   I think what's a little bit unfair and which is

14   blindsiding the plaintiffs unfairly, the plaintiffs

15   in this case unfairly, is that the statute of

16   limitations was not raised as an objection.  I

17   understand your Honor --

18             MS. HOLZKA:  That's not true.

19             THE COURT:  It's raised in opposition to this

20   motion.

21             MR. OLCH:  Excuse me?

22             THE COURT:  It's raised in opposition to this

23   motion.

24             MS. HOLZKA:  Paragraph 52, your Honor, we

25   claim that the one-year, three-year, and six-year

**CHARISSE KITT, CRI, CSR, RMR, FCRR**

20
Proceedings

1    statute of limitations had clearly expired as to

2    our -- my clients.

3              MR. DIPIETRO:  And, your Honor, I don't think

4    it's fair to say that we've done nothing, when

5    this -- when this -- when the papers --

6              THE COURT:  I agree that defendants knew

7    about the claims from, you know, your pre-suit

8    discussions.

9              MR. DIPIETRO:  You know --

10             THE COURT:  But that's not attempts to serve

11   them.

12             MR. DIPIETRO:  When this new action was

13   filed, the media monitors the court system.  It was

14   picked up by CBS and the phone started ringing and

15   people came in.  And I had to review those cases.

16             Again, I tried to consolidate it for

17   everybody's convenience and include them all in one

18   case instead of having these separate actions out

19   there.  And then in February, completely

20   unpredictable, the State of New York changed the law

21   that directly affects one of the women.

22             THE COURT:  How did that have any effect on

23   your just simply serving that December 2018 complaint

24   and then decide if you want to join other plaintiffs

25   or you want to delete anyone, to discontinue their

                **CHARISSE KITT, CRI, CSR, RMR, FCRR**

21
Proceedings

1    claims, fine, or you want to add other substantive

2    claims to the action?  I don't see how any of that

3    affected your ability to serve the defendants.

4         MR. DIPIETRO:  The law provides 120 days and

5    women were coming forward.

6         THE COURT:  Right.  Right.  But then you

7    don't wait until the 119th day to do something about

8    it.

9         MR. DIPIETRO:  We didn't, your Honor, we

10   really didn't.  And, again, the law changed in

11   February --

12        THE COURT:  And even now you haven't served

13   them.

14        MR. DIPIETRO:  Well --

15        THE COURT:  Except for Dr. Hadden.

16        MR. DIPIETRO:  It's my understanding the case

17   law said that when you file the motion and you attach

18   the exhibit, it can be deemed service.

19        THE COURT:  That's not service pursuant to

20   CPLR Article 3, okay?

21        MS. HOLZKA:  In addition, your Honor, there

22   was one -- there's one change as to one plaintiff

23   that we're talking about that had to do with being a

24   minor, it had nothing to do with all the other

25   plaintiffs.  Our clients weren't served, period.

                **CHARISSE KITT, CRI, CSR, RMR, FCRR**

22
Proceedings

1      MR. DIPIETRO:  And there's also case law that

2  says I can't serve unless I seek leave of court to

3  extend the time, your Honor.  So, I mean --

4      THE COURT:  There was nothing, nothing that

5  stopped you from serving that December 2018 complaint

6  that I can see.

7      MR. DIPIETRO:  Well, the fact that the clerk

8  didn't approve it until after the 120 days and then I

9  immediately made the --

10      THE COURT:  It didn't approve the December --

11  you filed the December 2018 complaint?

12      MR. DIPIETRO:  No, the amended complaint I'm

13  referring to.

14      THE COURT:  Forget about the amended

15  complaint.  Worry about that later.

16      MR. DIPIETRO:  I immediately filed the motion

17  to extend the time immediately.

18      THE COURT:  I'm not relying on any of that.

19  I don't -- I can understand, you know, the problems

20  that you may have had with filing the amended

21  complaint.  I would -- I would give you -- I would

22  excuse any of those problems; it's the problem

23  between December 4th and the end of March.

24      MR. DIPIETRO:  Your Honor, I gained

25  nothing -- there's no intentional delay.  I gained

**CHARISSE KITT, CRI, CSR, RMR, FCRR**

1    nothing by waiting.

2             THE COURT:  No, it's true --

3             MR. DIPIETRO:  I waited for a reason.

4             THE COURT:  It's true, I don't think

5    defendants are prejudiced, but the statute on

6    limitations does not depend on prejudice.

7             MR. DIPIETRO:  But the grant of the extension

8    of the 120 days does, and there is no prejudice.  And

9    to the extent that they had preregistered with the

10   electronic filing system when the amended complaint

11   was uploaded, actually, pursuant to the court rules

12   they were served because they made an appearance.  So

13   they were served when the clerk accepted the amended

14   complaint.

15            MS. HOLZKA:  Your Honor, it is not true.

16   That is not the rules, number one.  Number two, we

17   made no appearance, quote/unquote, pursuant to the

18   CPLR.  In addition to that, we had registered the day

19   before on April -- excuse me, on April 4th, the day

20   after, when we made -- when we removed --

21            THE COURT:  I don't care about who did

22   what --

23            MS. HOLZKA:  But we removed the case.

24            THE COURT:  As I said --

25            MS. HOLZKA:  We removed the case to federal

**CHARISSE KITT, CRI, CSR, RMR, FCRR**

24
Proceedings

1    court.

2           THE COURT:  -- that's not my issue here.  My

3    issue is the complete lack of diligence in attempting

4    to serve and the potential merit of the action.

5           Now, the intentional torts that are claimed,

6    it's just assault and battery or --

7           MR. DIPIETRO:  No, your Honor, there's

8    assault.  There's --

9           THE COURT:  I know there's also defamation

10   and negligence, but you just -- there is a reference

11   to intentional torts, so I'm assuming the intentional

12   torts are assault and battery?

13          MR. DIPIETRO:  Assault, battery, rape in the

14   first degree -- excuse me.

15          THE COURT:  Not in a civil action.

16          MR. DIPIETRO:  Just plain generally assault

17   and battery.

18          THE COURT:  Right.  Isn't that what your

19   claims are?

20          MR. DIPIETRO:  Yes.

21          THE COURT:  Okay.  I just want to be clear

22   about what the intentional torts were.

23          MR. DIPIETRO:  And also negligence as well.

24          THE COURT:  Yes.  There is this whole issue

25   about commencing the action using pseudonyms for all

                **CHARISSE KITT, CRI, CSR, RMR, FCRR**

Proceedings

 1   but one of the plaintiffs, but I don't -- I don't

 2   believe I really need to get into that issue.  I

 3   mean, the original complaint was not rejected.

 4   Right?

 5        MR. DIPIETRO:  No.  And also, your Honor, I

 6   think for completeness, it would be -- I think it's

 7   important that the Court understands the history that

 8   led up to the filing of the complaint.  There were

 9   discussions that began last year.

10        THE COURT:  No, I understand that.  I'm

11   taking all that into account.

12        MR. DIPIETRO:  The defendants --

13        THE COURT:  I agree, there's no prejudice

14   here.

15        MR. DIPIETRO:  Right.  Well, this one part is

16   important.  The defendants asked for us to hold off

17   on filing the new complaint starting last summer and

18   to mediate the cases.

19        THE COURT:  That's your estoppel argument.

20        MR. DIPIETRO:  But then -- but then, your

21   Honor --

22        THE COURT:  Is that your estoppel argument?

23        MR. DIPIETRO:  Well, that's estoppel, yes,

24   but it's also important for this, and here's why.

25   Then they said --

**CHARISSE KITT, CRI, CSR, RMR, FCRR**

Proceedings

26

1    THE COURT:  It's important for what?

2    MR. DIPIETRO:  It's important for this

3    discussion, and here's why.  They said that after we

4    mediated the cases and they said they would try to

5    resolve them for everyone, then they said, Well,

6    we're only looking to resolve for women whose case

7    have been filed.  So I filed the case in December,

8    but then I had more people coming forward.  And so

9    I'm, like, Well I must include these new women in

10   this case.  So it's important --

11   THE COURT:  That has nothing to do with the

12   120 days.

13   MS. HOLZKA:  Judge, it has nothing to do with

14   the 120 days.  It's untrue, many of the things that

15   Mr. DiPietro just said.  In addition to that, not one

16   time did he ask for, in this purported period of time

17   where anybody said that they would resolve all of his

18   cases, or whatever that's supposed to mean.  But at

19   no time, no time, whether when he first signed these

20   people up, purportedly signed these people up, or

21   not, asked for any type of tolling agreement.  That's

22   what we usually get from plaintiffs' counsel who are

23   concerned about statute of limitations and wish to

24   discuss resolution instead.  Plaintiffs' attorneys

25   request tolling agreements.  That was never -- if

**CHARISSE KITT, CRI, CSR, RMR, FCRR**

27

Proceedings

1    that was an issue in this case, if that was actually

2    going on in this case, then, where are they?

3              In addition to that, there were four

4    plaintiffs where they said come to the table, let's

5    see what else you have.  And I would like any part of

6    the discussion about resolution in this case to be

7    either off the record or under seal, your Honor,

8    please.  But in addition to that, afterwards, in -- I

9    believe it was in November --

10             THE COURT:  You don't have to discuss it.

11             MS. HOLZKA:  Okay.

12             THE COURT:  Also, you can all remain seated.

13   As long as you keep your voices up, you don't need to

14   stand.  It's up to you.  I just want to be clear, I'm

15   not sure it's that important, but Jane Doe Number 16

16   is the one who is a minor?

17             MR. DIPIETRO:  Yes, your Honor.

18             THE COURT:  So she can commence an action

19   under the new law starting in August.  Correct?

20             MR. DIPIETRO:  Yes, August 14th, I believe.

21             THE COURT:  And she -- she is omitted from

22   the amended complaints that were rejected but then

23   she was added back in, in the ultimate version D?

24             MR. DIPIETRO:  That's what the clerk

25   required, yes.

                **CHARISSE KITT, CRI, CSR, RMR, FCRR**

28
Proceedings

1        THE COURT:  Okay.

2        MR. DIPIETRO:  Your Honor hasn't addressed

3    the Gender Violence Act, which is another statute,

4    which is a seven-year statute, which potentially

5    could run for some of the women that commenced back

6    in 2000 -- you know, it would have started back in

7    2012.

8        THE COURT:  I'm sorry, is that one of the new

9    laws?

10        MR. DIPIETRO:  The Gender Violence Act?

11        THE COURT:  Yes.

12        MR. DIPIETRO:  Actually, that's not new.

13    It's been on the books for a while, but it was part

14    of Amended Complaint D and some of the women would be

15    within the statute as of December 2018 but not

16    potentially if I had to refile this today.

17        MS. HOLZKA:  I don't believe that's part of

18    Amended Complaint D, your Honor, that cause of

19    action.  He filed a new cause of action with a 2019

20    index number with a sole claim based upon that

21    statute.  That doesn't have to do with this case.

22        MR. DIPIETRO:  I will pull it up.

23        THE COURT:  Well, I believe that you both

24    attach all the versions of the complaint.  Right?

25        MS. HOLZKA:  I believe so, your Honor.
                **CHARISSE KITT, CRI, CSR, RMR, FCRR**

29
Proceedings

1          MR. DIPIETRO:  I think it's public action 1.

2          MS. HOLZKA:  And like I said, I don't have it

3     in front of me but there's a lot of different

4     complaints.

5          THE COURT:  Let me just see.  Do you recall,

6     Ms. Holzka, which of your exhibits is the ultimate

7     Amended Complaint D.?  That's just because I now have

8     your opposition right in front of me.

9          Is it your Exhibit F?

10         MS. HOLZKA:  I'm sorry, your Honor, I'm

11     looking for it.  It is F, your Honor.

12         MR. DIPIETRO:  So, the first cause of action

13     in Amended Complaint D starts --

14         THE COURT:  Amended Complaint D?

15         MR. DIPIETRO:  Yeah, starts at paragraph 523.

16     First cause of action committing and enabling gender

17     violence.

18         THE COURT:  I'm sorry, which paragraph again?

19         MR. DIPIETRO:  Right before -- 523.

20         THE COURT:  It's gender discrimination.

21         MR. DIPIETRO:  I think it's called gender

22     violence; it's part of the New York City Code.

23         THE COURT:  Well, I'm looking at paragraph

24     523, it's based on 20 USC Section 1681.

25         MR. DIPIETRO:  No, that would not be the

**CHARISSE KITT, CRI, CSR, RMR, FCRR**

Proceedings

1        right -- I don't know if you have D.

2              THE COURT:  I must be looking at the wrong

3        amended complaint then.  Are you sure it's Exhibit F?

4              MR. DIPIETRO:  It's not -- well, that's in

5        Ms. Holzka's --

6              THE COURT:  Exhibit F --

7              MR. DIPIETRO:  No, that's the problem, it's

8        my exhibit.

9              THE COURT:  All right.  So let me look at

10       plaintiffs'.

11             MR. DIPIETRO:  That's not what was filed in

12       the court.  What was filed is Exhibit A --

13             THE COURT:  I'm looking for what you both

14       refer to as Complaint D, as in dog.

15             MR. DIPIETRO:  Right.  Well -- so I don't

16       think counsel attached Complaint D --

17             MS. HOLZKA:  Yes, we did.

18             MR. DIPIETRO:  We have attached it as

19       Exhibit A.

20             THE COURT:  Okay.  Paragraph 523 --

21             MR. DIPIETRO:  Yes, your Honor.

22             THE COURT:  -- it doesn't cite any statute.

23             MR. DIPIETRO:  It's the gender violence

24       statute.

25             THE COURT:  I don't even see that.
                 **CHARISSE KITT, CRI, CSR, RMR, FCRR**

Proceedings

1          MR. DIPIETRO:  First cause of action

2     committing and enabling gender violence.

3          THE COURT:  Right.  But I don't see any --

4     okay.  It just says, constitutes a criminal offense

5     under New York state laws.  Which statute are you

6     relying on?

7          MR. DIPIETRO:  I believe there's a series of

8     them that start at NYC Amend Code Section 8-902.

9          THE COURT:  Okay.  Is it set forth --

10          MS. HOLZKA:  Your Honor, that's not the

11     complaint.

12          THE COURT:  Is it set forth earlier on in

13     your complaint?

14          MR. DIPIETRO:  Well, no, but I don't think

15     it's a requirement to cite the specific statute.

16          THE COURT:  No, it's not, but I need to know

17     that it exists.

18          MR. DIPIETRO:  Yes.  Well --

19          THE COURT:  Otherwise it's just an assault

20     and battery claim.

21          MR. DIPIETRO:  No.  So it's New York City

22     Code 8-902 et. seq.

23          THE COURT:  Let me just get back to the

24     plaintiffs in the action.  Complaint D, in the

25     operative amended complaint that was accepted for

**CHARISSE KITT, CRI, CSR, RMR, FCRR**

1  filing, do we have the three new plaintiffs in that

2  action?

3         MR. DIPIETRO:  Yes.

4         THE COURT:  So all of the amended complaints

5  include three new plaintiffs starting with the two

6  that were rejected for filing and then the last one?

7         MR. DIPIETRO:  Yes.  Sixteen was out of one

8  of them but then --

9         THE COURT:  Right.  She was out of the first

10  one, Complaint B.  So the statute of limitations

11  would be tolled for them at the earliest the time

12  when those amended complaints were filed.  Right?

13         MR. DIPIETRO:  I think it relates back to

14  December, the initial filing date.

15         THE COURT:  I'm not sure if that -- I don't

16  think for new plaintiffs.  I think only if the

17  original plaintiff had added causes of action.

18         MS. HOLZKA:  I think you're right, your

19  Honor.  To the extent that there are new plaintiffs,

20  you don't get to tag on a plaintiff to a prior

21  previously filed action who is new, and the statute

22  of limitations was already tolled, or expired.

23         THE COURT:  When the amended complaint was

24  first filed, even though it was rejected, I think

25  that probably would be the date and finally whether

**CHARISSE KITT, CRI, CSR, RMR, FCRR**

Proceedings 33

1    the amended complaint was actually accepted for

2    filing.  Those few dates probably do not make any

3    difference.

4         MS. HOLZKA:  You're right, your Honor.  I

5    would just state for the record, since this is on the

6    record, that, you know, and we've alluded to this in

7    the papers or at least put it within it, but, you

8    know, none of these tolls that we're talking about we

9    would concede or even that they would apply to the

10   university or to the hospital, particularly --

11        THE COURT:  Right.

12        MS. HOLZKA:  Okay.

13        THE COURT:  And they only apply to

14   Dr. Hadden, if I were to construe CPLR 213-B or

15   215-8(b) to include their claims, to incorporate

16   their claims, apply to their claims.

17        MR. DALTON:  Of course, your Honor.  Just for

18   the record --

19        MR. DIPIETRO:  Your Honor --

20        MR. DALTON:  Can I finish?

21        MR. DIPIETRO:  Under the case of *Alford* in

22   the First Department their claims do relate to the

23   employer.  This was res judicata in this case.  This

24   was already decided by Judge Mendez that the claims,

25   the tolling under CPLR 215 applies to both the

**CHARISSE KITT, CRI, CSR, RMR, FCRR**

Proceedings

1   perpetrator and the employer.

2          MS. HOLZKA:  Your Honor, first of all, that

3   has to do with certain causes of action under those

4   particular statutes, number one.  Number two, there

5   was issues about whether there was an issue of fact

6   as to one plaintiff in that case.  In addition,

7   there's been a clarification of that law, that was

8   signed yesterday, that should clear up this issue for

9   the Court entirely; but in addition to that, it only

10   applies to certain causes of action.

11          THE COURT:  You're talking about Justice

12   Mendez's decision?  Is that what --

13          MS. HOLZKA:  No.  In terms of this one

14   decision out there by the First Department that it

15   doesn't really talk to -- it doesn't really speak to

16   the facts as to why a particular employee could be

17   responsible under an employee for the purposes of

18   that statute.

19          And the bottom line is, is that it has

20   nothing to do with the extension of negligence claims

21   or anything like that under those statutes.

22          THE COURT:  And also I have to determine

23   whether that statute even applies to begin with.

24          MR. DALTON:  Your Honor, just --

25          THE COURT:  213-B or 215.

**CHARISSE KITT, CRI, CSR, RMR, FCRR**

Proceedings

1    MR. DALTON:  Your Honor, just to complete my

2    thought from before, I just wanted to be clear on the

3    record that Dr. Hadden --

4         THE COURT:  You have to keep your voice up.

5         MR. DALTON:  Sure.  I just want it to be

6    clear for the record that Dr. Hadden does not in any

7    way concede that any of these tolls would apply to

8    him.  I know your Honor will perhaps construe those

9    statutes, but Dr. Hadden certainly objects to --

10        THE COURT:  The tolls under CPLR --

11        MR. DALTON:  Yes.

12        THE COURT:  -- 213-B, or 215-8(b) or

13   something else?

14        MR. DALTON:  I -- the ones you just

15   mentioned, your Honor.

16        THE COURT:  Okay.  I don't think those are

17   really tolling statutes, they're just statute of

18   limitation.  Those time periods, those limitation

19   periods, that's what you're talking about?

20        MR. DALTON:  Yes, Judge.

21        THE COURT:  So the administrative code

22   section that you're relying on, the plaintiffs are

23   relying on is Section 8-902?

24        MR. DIPIETRO:  I believe that's correct, your

25   Honor.  At least two of the women, your Honor, would

**CHARISSE KITT, CRI, CSR, RMR, FCRR**

Proceedings

1    be prejudiced if the December filing didn't exist.  I

2    mean, they are within the seven years as a result of

3    the December filing.

4         THE COURT:  The seven-year statute of

5    limitations under that statute?

6         MR. DIPIETRO:  Yes.

7         THE COURT:  When did the -- when did

8    Dr. Hadden's actions about which you complained end?

9    When in 2012?

10         MR. DIPIETRO:  Well, it's different for

11   everyone.  He stopped working there -- I still don't

12   have exact dates from defense counsel, but it seems

13   to be between August and September of 2012.  But some

14   people didn't see him in August 2012, some saw him --

15   the last visit was March 2012, or May 2012.  And so

16   those women need the filing from December 2018 to be

17   within the seven years.

18         THE COURT:  Those three women, those three

19   additional women who were added, it pertains to them?

20         MR. DIPIETRO:  No, they were from the

21   original Complaint A.

22         THE COURT:  Oh.  Well, they -- they are

23   allowed the December -- they have the December filing

24   date, so it doesn't matter.

25         MR. DIPIETRO:  Okay.

                **CHARISSE KITT, CRI, CSR, RMR, FCRR**

Proceedings

1    THE COURT:  Okay.  Are defendants still

2    relying on failure to seek permission to proceed with

3    a pseudonym?

4    MS. HOLZKA:  Your Honor, we didn't make a

5    cross-motion to dismiss on that point because quite

6    frankly I'm not sure where this is.  When the action

7    was filed in December it seemingly was filed with an

8    Order to Show Cause to allow the plaintiff to proceed

9    with that.

10    THE COURT:  I think plaintiffs will concede

11    there is no order permitting them to proceed --

12    MS. HOLZKA:  Right.  I mean, as of right now

13    it's not technically correct, so I couldn't

14    concede -- I couldn't concede anything.

15    THE COURT:  I don't see that that affects the

16    filing of the complaint.

17    MS. HOLZKA:  Whether it does or not, I --

18    THE COURT:  The service of the complaint.

19    MS. HOLZKA:  No.

20    THE COURT:  You agree it does not?

21    MS. HOLZKA:  Well, I mean, to the extent that

22    should they have had -- do they have standing, I'm

23    not sure.  I don't know -- you know, technically they

24    have to have permission to proceed, so technically --

25    THE COURT:  In other words, the question is

**CHARISSE KITT, CRI, CSR, RMR, FCRR**

Proceedings

1   whether proceeding via a pseudonym without permission

2   would undermine the merits of the action.

3          MS. HOLZKA:  I wouldn't go that far because

4   certainly we looked at this case law before and it

5   doesn't under -- it doesn't not undermine the merits

6   or speak to the causes of action, but I would not

7   concede more than that.  I don't think it would

8   affect service, your Honor, if that's what you're

9   asking.

10          MR. DIPIETRO:  And to be clear, your Honor,

11   the plaintiffs were instructed to not file that by

12   the county clerk who issued the index number.

13   They -- the county clerk who issues the index number

14   said you do not need an order --

15          THE COURT:  The county clerk does not -- I

16   respect him very much, but he does not make the law.

17   Okay?  I don't really care what the county clerk

18   says, I just care what the law provides.

19          MR. DIPIETRO:  But as an attorney I can't do

20   anything unless the -- unless I follow the county

21   clerk's rules.  I can't file or not file unless I do

22   what they say.

23          THE COURT:  That may be an excuse for, you

24   know, being late about something and so forth, but

25   that's all.

          **CHARISSE KITT, CRI, CSR, RMR, FCRR**

Proceedings

1          What has happened in federal court?

2          MR. DIPIETRO:  Various letters were sent back

3     and forth to Judge Carter.  We filed a motion to

4     remand, defendants opposed.  We filed a reply and we

5     are, as of this morning, still waiting to hear from

6     Judge Carter as to whether or not he's going to ask

7     us in for oral argument or simply issue some type of

8     letter or mandate.

9          MS. HOLZKA:  We're waiting for a decision on

10     the motion, your Honor.

11          THE COURT:  You'll let me know as soon as you

12     hear anything on that, because it's a different

13     complaint.  But there is the law that -- if it is

14     treated as the complaint in this action, I'm not sure

15     that I can do anything with subsequent -- a

16     subsequent complaint that deleted the federal claims.

17          Do we have an actual date that Dr. Hadden was

18     served?

19          MR. DALTON:  Your Honor, it was December 4.

20     I don't recall if it was on the 14th or the 30th of

21     April.  I just don't know.

22          THE COURT:  Fourteenth or the what?

23          MR. DIPIETRO:  Thirtieth of April.  It was

24     sometime in that period.

25          THE COURT:  So, who is it that you're

                    **CHARISSE KITT, CRI, CSR, RMR, FCRR**

Proceedings

1    referring to, Mr. DiPietro, when you say that

2    defendants were served on day 122?  You just mean

3    that that's when they were served with this motion

4    that's attached to the complaint; is that right?

5          MR. DIPIETRO:  With -- yes, the motion to

6    extend the time, yes, your Honor.

7          Well, again, not just that but also the fact

8    that by virtue of being registered for the e-filing

9    system service is now done electronically.

10   Defendants were all registered with the

11   e-filing system.

12         THE COURT:  No, not when you commence an

13   action.  That may suffice for serving the amended

14   complaint once you've served the original complaint.

15         MR. DIPIETRO:  Correct.  But you don't serve

16   both.  You only serve the amended complaint.  When

17   you amend a complaint, you don't serve the original

18   complaint when you amend it as a right.

19         MS. HOLZKA:  Your Honor, we did not do a

20   notice of appearance in the case.  It's CPLR --

21         THE COURT:  Now, in your reply on this

22   motion, you refer to the New York Gender-Motivated

23   Violence Act.  You're saying New York City Code, I

24   think you mean New York City Administrative Code

25   Section 8-101.  The citation you just gave me was

**CHARISSE KITT, CRI, CSR, RMR, FCRR**

41
Proceedings

1    8-902.

2              MR. DIPIETRO:  Let me check that.

3              THE COURT:  And nowhere in this motion do you

4    appear to rely on CPLR 213-B, you only rely on CPLR

5    215.  That's why I went to that statute and not the

6    one that your co-counsel is referring to.  And where

7    you say that plaintiff has pleaded various tolling

8    provisions, you do that in your complaint?

9              MR. DIPIETRO:  Yes.

10             THE COURT:  Where in your complaint?

11             MR. DIPIETRO:  8-101 is a correct citation.

12   I'm not sure that the other one is incorrect.  I

13   think they both may be applicable.  I think 8-101 is

14   also correct.

15             THE COURT:  Where in your complaint do you

16   plead tolling --

17             MR. DIPIETRO:  I'm pull that up right now.

18             THE COURT:  -- your theories of tolling?

19             MR. DIPIETRO:  Sure.  So I believe I have

20   done that separately for each individual plaintiff.

21   Let me find that.

22             THE COURT:  Give me an example.

23             MR. DIPIETRO:  Okay.  So paragraph 10.

24             THE COURT:  Okay.  This is with respect

25   to plaintiff Hoechstetter?

                 **CHARISSE KITT, CRI, CSR, RMR, FCRR**

Proceedings
42

1          MR. DIPIETRO:  Yes.  "Based on the words and

2     conduct of each defendant, their agents, servants

3     and/or employees, plaintiff was induced to not file a

4     complaint earlier.  Further, plaintiff has been

5     emotionally traumatized by the defendants' conduct

6     and abuse and has lacked the capacity to deal with

7     and confront the important legal issues and rights

8     herein until the present."

9          So there is the estoppel argument, your

10    Honor, as well as the lack of capacity.

11         MS. HOLZKA:  Your Honor, if there is lack of

12    capacity, then I would -- then none of these

13    plaintiffs are able to carry the suit.

14         THE COURT:  Well, it could be that they

15    regained their capacity, that's conceivable.

16         MS. HOLZKA:  Okay.

17         THE COURT:  All right.  So it may be that the

18    statute of limitations issues need to be flushed out

19    upon a motion to dismiss.  If there's enough that's

20    been raised here to demonstrate potential, you know,

21    merit to the action -- in other words, time limits of

22    the action -- then I'll have to -- then I'll rely on

23    the other factors that they're on extending time.

24         As I say, I'm not that concerned about the

25    difference between the end of March and April 4th.

                **CHARISSE KITT, CRI, CSR, RMR, FCRR**

Proceedings

1    I'm more concerned about doing nothing from December

2    to the end of March.  And then there are the other

3    factors, such as the lack of -- the absence of any

4    prejudice.  Is there any prejudice here to

5    defendants?

6           MS. HOLZKA:  There is prejudice in the fact,

7    your Honor, that, you know, an action is filed,

8    nothing has been served; that's prejudice in and of

9    itself.  The fact is that our clients at this point

10   have a right to know, you know, who's bringing

11   actions, who's claiming these tollings, who's

12   claiming all kinds of different things, and I don't

13   think we're served pursuant to the CPLR.  That's the

14   prejudice.

15          THE COURT:  Anything else?

16          MR. DIPIETRO:  No, your Honor, I don't think

17   there could be any credible claim of prejudice.  I

18   offered to serve them and they're -- they rejected

19   that offer.

20          THE COURT:  Right.  Which they're perfectly

21   entitled to do, of course.

22          MR. DIPIETRO:  But they can't then claim

23   prejudice by not being served.

24          MS. HOLZKA:  There is a CPLR that governs.

25   In addition to that, your Honor, we were served what

                 **CHARISSE KITT, CRI, CSR, RMR, FCRR**

Proceedings 44

1    we were served with and what we were asked to accept

2    as service was the complaint that had the federal

3    causes of action.  We were obviously severely

4    prejudiced.  The fact that we got that, we removed it

5    to federal court, and we have a motion pending in

6    federal court.

7         And frankly, your Honor, with all due

8    respect, and I mean that not in a sarcastic way where

9    I know sometimes judges may take it that way, but at

10   this point the case is in federal court.  There is a

11   motion pending, and right now I'm really not sure if

12   there's jurisdiction here based upon that.

13        THE COURT:  Right.  It probably would be wise

14   to wait for a decision there, unless it's not

15   forthcoming.

16        MS. HOLZKA:  Yeah, we don't know.

17        THE COURT:  All right.  Off the record.

18        (Off the record.)

19        THE COURT:  Would you agree that when I

20   decide the motion, assuming I don't dismiss the

21   action, I'm required -- I mean, there still hasn't

22   been service on the other -- there's only been

23   service on one defendant.  I would hope that perhaps

24   plaintiff would proceed with that in the meantime,

25   and if you do, please let me know, Mr. DiPietro.

                **CHARISSE KITT, CRI, CSR, RMR, FCRR**

Proceedings

1       MR. DIPIETRO:  I will, your Honor.

2       THE COURT:  Otherwise, if I don't dismiss the

3    action, then I'm going to order service pronto and

4    I'm going to require the defendants to answer by the

5    applicable deadlines and then I would schedule a

6    preliminary conference.

7       MS. HOLZKA:  Judge, I would object to the

8    extent that there's still the fact that we've removed

9    the case to federal court.

10      THE COURT:  I'm going to wait for that

11   decision as well, unless it's not forthcoming.

12   There's only so long I'm going to wait.

13      Is anyone going to be ordering the transcript

14   from this morning?

15      MR. DIPIETRO:  Yes, your Honor.

16      MS. TRACEY:  Yes, your Honor.

17      MR. DALTON:  Yes, Judge.

18      THE COURT:  Do you anticipate there might be

19   a motion to dismiss if I don't dismiss the action?

20      MS. HOLZKA:  Your Honor, I'm not in a

21   position to state whether or not there would be

22   a motion -- pre-answer motion to dismiss or not.

23      MR. DIPIETRO:  And --

24      THE COURT:  Mr. Dalton?

25      MR. DALTON:  Your Honor, that would be a

**CHARISSE KITT, CRI, CSR, RMR, FCRR**

Proceedings                46

1    possibility.  I would certainly need to review that.

2            THE COURT:  Your time is running, as far as

3    I'm concerned.

4            MR. DALTON:  For a pre-answer motion?

5            THE COURT:  Excuse me?

6            MR. DALTON:  For a pre-answer motion

7    to dismiss you're suggesting, Judge?

8            THE COURT:  To answer or to move, yes.  I

9    think it's run.

10           MR. DIPIETRO:  Your Honor, I have contacted

11   my office.  They are -- as soon as they can create 12

12   copies of the pleadings, they will be served.  I've

13   already done that.

14           THE COURT:  Okay.  Well, please let me know

15   when that's actually been effected.

16           (Continued on the next page.)

17

18

19

20

21

22

23

24

25

                **CHARISSE KITT, CRI, CSR, RMR, FCRR**

Proceedings

1          MR. DIPIETRO:  Okay.

2          THE COURT:  All right.  I'm going to move on

3      to the status conference in the other actions.  We're

4      off the record now on this.

5          MR. DIPIETRO:  Okay.

6          (Adjourned.)

7              *      *      *      *      *

8   CERTIFIED TO BE A TRUE AND ACCURATE TRANSCRIPTION OF

9   THE ORIGINAL STENOGRAPHIC MINUTES TAKEN OF THIS

10  PROCEEDING.  THE COPYING OF THIS TRANSCRIPT IS

11  PROHIBITED.

12     ******SIGNATURE IS WRITTEN IN BLUE INK.******

13

14     _____

15                 CHARISSE KITT, CSR, CRI, RMR, FCRR
                     SENIOR COURT REPORTER
16

17

18

19

20

21

22

23

24

25

                    **CHARISSE KITT, CRI, CSR, RMR, FCRR**